## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**KENNETH HALL**

      *Plaintiff,*

                               **CIVIL ACTION NO.: _____**

**v.**

**STATE OF LOUISIANA,
PIYUSH ("BOBBY") JINDAL,
in his official capacity as Governor
of the State of Louisiana,
JAMES "BUDDY" CALDWELL, in
his official capacity as Attorney General,
and TOM SCHEDLER, in his official
capacity as the Louisiana Secretary of State**

      *Defendants.*

---

## COMPLAINT

1. This is an action to enjoin violations of the (a) democratic principles of majority rule and individualistic egalitarianism of the United States Constitution; (b) Fourteenth and Fifteenth Amendments to the United States Constitution; and (c) Sections 2 and 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973.

## JURISDICTION AND VENUE

2. Pursuant to 42 U.S.C. §§ 1973c, 1973j, 1973l, 1983, and 1988, this Court has jurisdiction to afford the Plaintiff the judicial relief he seeks for violation of his rights protected by the aforesaid constitutional principles and statutory provisions.

3. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b).

1

**PARTIES**

4.  Plaintiff, Kenneth Hall, is a Black citizen, resident of the United States and a resident of, a qualified elector and a registered Democratic voter in the City of Baton Rouge, Parish of East Baton Rouge, Louisiana, which is located within the electoral and territorial boundary of the State of Louisiana's 1993 *Judicial Election Plan*, Section 2's sub-district; an integral part of the geographical boundary and object of this complaint.

5.  Defendant, State of Louisiana, is a sovereign State of the United States of America.

6.  Defendant, Piyush ("Bobby") Jindal, is the Chief Executive Officer of Defendant, State of Louisiana and he is sued in his official capacity as Governor of the State of Louisiana.

7.  Defendant, James ("Buddy") Caldwell, is the Chief Legal Officer of Defendant, State of Louisiana and he is sued in his official capacity as the Attorney General of the State of Louisiana.

8.  Defendant, Tom Schedler, is the Chief Election Officer of the Defendant, State of Louisiana, with authority over elections in Louisiana and he is sued in his official capacity as the Louisiana Secretary of State.

9.  All of the individual Defendants are elected state officials and are respectfully sued both as individually elected state Defendants and as successors in office to their prior respective State of Louisiana office holders.

**FACTS ALLEGED**

10. The City of Baton Rouge, Louisiana is an incorporated political subdivision of the State of Louisiana.  Members of its court (at times hereafter City Court) are now elected by

2

municipal vote within two respective election sub-districts and are considered state officers.

11. The City of Baton Rouge, Louisiana is within the Parish of East Baton Rouge, Louisiana. Members of City Court are regulated and governed by home rule charter via a Metropolitan Plan of Government and are subject to legislative rule and executive authority by the Defendants.

12. There are 46 city courts in Louisiana. Only two Louisiana cities, Baton Rouge and Shreveport, Louisiana have sub-district judicial election plans for city judgeships to remedy violations of minority vote dilution and to establish the *one-person, one-vote* policy for the election of judges in Louisiana.

13. In the original Plan of Government for the City of Baton Rouge (adopted August 12, 1947 with an effective date of January 1, 1949), a single judge of City Court, City of Baton Rouge, charter of home rule, was qualified to be elected by a plurality of votes cast at the municipal election within the formerly at-large citywide election system. Successive amendments by citizens of Baton Rouge to the Plan of Government modified some of the provisions of the home rule charter, particularly incrementally for an increase in the number of City Court judges. The Plan of Government now provides for the election of five judges on City Court. The amendments in the Plan of Government which pertain to the allotment of the number of judges were codified in the State of Louisiana reapportionment Judicial Election Plan adopted in Louisiana Legislative Senate Bill 1126, Regular Session, 1993 via LSA-R.S. §13:1952 Section 1(4) (a) (b) and (c), and Section 2 (A) (B) (C), and Section 3 (A) (B) (C).

14. Section 5 of the Voting Rights Act of 1965 applies to the State of Louisiana, East Baton Rouge Parish, and the City of Baton Rouge, Louisiana.  Each entity must obtain federal approval or "preclearance" before making changes to state and municipal voting laws. On information and belief, the State of Louisiana, East Baton Rouge Parish, and the City of Baton Rouge, Louisiana may not have obtained requisite Section 5 preclearance for voting changes affecting territory, precinct assignments, elections, and the number of judgeships and qualifications for the office of City Court Judge.  Particularly, on information and belief, on September 11, 1982 and on November 3, 1998, Section 11.04 of the Plan of Government of the Parish of East Baton Rouge and the City of Baton Rouge was amended adding to the number and qualifications of judges for City Court and with lack of information and without approval from the United States Justice Department.

15. The Louisiana House and Governmental Affairs Committee and Louisiana Senate and Governmental Affairs Committee have state jurisdiction over redistricting of City Court.

16. The Louisiana Legislature has joint authority with the City of Baton Rouge over all judicial redistricting and the allotment number of judges for City Court.

17. Judges of City Court within respective election sub-districts are elected every six (6) years.  Special elections are held in case of vacancies or newly created sections.  The State of Louisiana, nor the City of Baton Rouge has added any newly created sections nor judgeships to City Court subsequent to the remedial voting rights action of the Judicial Election Plan adopted in Regular Session 1993 via LSA-R.S. §13:1952 Section 1(4) (a) (b) and (c), and Section 2 (A) (B) (C), and Section 3 (A) (B) (C).

18. City Court is domiciled in Baton Rouge, Louisiana, and is a City of Baton Rouge politically created judicial court administering and adjudicating state and local laws and

court services according to Defendant Louisiana pursuant to the enabling provisions in LSA-R.S. §13:1952(4) (a) (b) and (c), and Section 2 (A) (B) (C), and Section 3 (A) (B) (C).

19. The 2010 United States Census altered the population of the City of Baton Rouge, Louisiana.   As of 2010, Baton Rouge consisted of 229,493 persons with a Black population of 124,542 or 54.3% of the total population.  The population of White persons not Hispanic was 86,679 or 37.8% of the City of Baton Rouge.  As of the 2010 Census, the Black voting age population of Baton Rouge, Louisiana is more than 50% of the total voting age population in Baton Rouge, Louisiana.

20. The 2000 United States Census population of the City of Baton Rouge, Louisiana was 227,818 with a Black population of 113,953 or 50%.  The population of White persons made up 45.7% of Baton Rouge's population with a population of 104,117.  The Black voting age population of Baton Rouge, Louisiana was less than 50% of the total voting age population in 2000.

21. The 1990 United States Census population of the City of Baton Rouge was 219,531 with a Black population of 96,346 (43.8%).  The population of White persons made up 53.9% of Baton Rouge's population with a population of 118,429.

22. Twenty years ago, a final judgment was entered against the State of Louisiana in the *Clark v. Edwards*, 958 F.2d 614 (5th Cir. 1992) litigation, which established vote dilution liability against the Defendants, above all in the election of judges to state court judgeships in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana based on race discrimination [according to threshold standards established in and articulated by the U.S. Supreme Court in *Thornburg v. Gingles*, 478 U.S. 30, 50-51 (1986)] by Whites

against Blacks in most state court electoral jurisdictional districts, but particularly within the enumerated majority White voting precincts of Sections 1 and 2 of the 1993 Judicial Election Plan within the City of Baton Rouge and within East Baton Rouge Parish, Louisiana.

23. The State of Louisiana via the Louisiana Legislature by Act 609 of the 1993, Regular Session, amended the at-large citywide City Court judicial election system via LSA-R.S. §13:1952(4)(a) (b) and (c), Sections 2(A) (B) (C); Section 3 (A) (B) (C) [heretofore and hereafter sometimes referred to as the "Judicial Election Plan"] for the City of Baton Rouge.

24. Early in 1993, at the direction of Senator Charles Jones, a bill was introduced to subdivide Baton Rouge City Court's citywide election district.  On May 23, 1993 in the Senate Judiciary A Committee Hearing, the State of Louisiana accepted, acknowledged, and then remedied past racial voter discrimination against Blacks by Whites when it approved favorably at the request of several Black senators Senate Bill 1126's amendment to LSA-R.S. §13:1952 [Judicial Election Plan], through provisions (4) a, b, and c; Sections 2(A) (B) (C); Section 3 (A) (B) (C).

25. In the amended 1993 Judicial Election Plan, the State of Louisiana created two judicial election districts (Election Section 1 and Election Section 2) within the City of Baton Rouge and it assigned various, selective, and enumerated voting precincts to Election Sections 1 and 2, apportioning and redistricting the citywide election district of the City of Baton Rouge by population and codified the American Constitution's basic principles to "value each individual citizen's vote as equivalent" and the American Constitution's Majority Rule Principle, as well as, to integrate by state statute the reapportionment

requirements of the one-person, one-vote principle of the Equal Protection Clause of the United States Constitution, particularly to remedy the effects of vote dilution in the *at that point* White majority precincts which the defendant, State of Louisiana assigned to Election Sections 1 and 2.

26. Using the 1990 U.S. Census data, on a proportional population data basis, Election Section 1 was assigned Divisions B and D, and Election Section 2 was assigned Divisions A, C, and E by the State of Louisiana.

27. The State of Louisiana has adopted the same one-person, one-vote pattern of proportional precinct allocation and allotment of judgeships for state district and appellate court judgeships where vote dilution was established in the *Clark v. Edwards*, 958 F.2d 614 (5th Cir. 1992) case.  For example, see Louisiana House Bill 105, 3rd Extraordinary Session, 1994.

28. Election Section 1, when originally created, contained a majority population of Black citizens as well as a majority of the Black voting age population.  Election Section 2, when originally created, contained a majority of White citizens as well as a majority of the White voting age population.

29. State authorities statutorily created the current Judicial Election Plan, Election Sections 1 and 2, specifically invoking the American Constitution's basic individualistic principle to value each individual citizen's vote as equivalent, as well as, to fulfill the American Constitution's Majority Rule Principle, and also to incorporate by statute the one-person, one-vote principle of the Equal Protection Clause of the United States Constitution into State of Louisiana Act 609 as their legal bases for electing judges to Baton Rouge City

7

Court.  State authorities reaffirmed the one-person, one-vote principle by creating similar sub-districts in the election of judges for Shreveport City Court.

30. Based on the 1990 U.S. Census population data and on the *then* existing April 1, 1991 City of Baton Rouge and Parish of East Baton Rouge precincts and precinct data, the 1993 Judicial Election Plan allocated a particular and selective number of majority and minority race-based precincts to Election Section 1 and Election Section 2.  On the allotment basis, Election Section 1 was assigned two (2) judicial election offices and Election Section 2 was assigned three (3) judicial election offices and the allocation intended that the individualistic egalitarianism, majority rule, and the one-person, one-vote principle apply politically and become effective for prospective elections of judges to City Court.

31. Louisiana's precincts are established by the governing authorities of the particular parish/city in accordance with La. R.S.18:532 and R.S. 18:532.1, and are validated by the Legislature of Louisiana.

32. The proportional population allocation ratio (approximately 60% majority White race equated to three judgeships and 40% minority Black race equated to two judgeships) assignments were also based on 1993 Louisiana Voter Registration data (City of Baton Rouge voting age population), the 1990 United States Census data, and in consideration of perspective litigation against it, as well as, implications from the judgments against the State of Louisiana in the *Clark v. Edwards*, 958 F.2d 614 (5th Cir. 1992) and *Chisom v. Roemer*, 501 U.S. 380, 111 S.Ct. 2354 (1991) judicial action suits, which were both ultimately settled based on the principle of the one-person, one-vote policy for the election of state court judges in Louisiana.

33. Former State Senator John Guidry (now a judge on the Court of Appeal, First Circuit) pronounced the 1993 Judicial Election Plan was statutorily created based on the principle of "one-person, one-vote" of the United States Constitution, in contrast to the *Wells v. Edwards*, 409 U.S. 1095 (1973) decision, and was implemented to enforce and remedy potential, existing, and recurring violations of the minority rights principle, the Equal Protection and Due Process Clauses of the United States Constitution, and Section 2 of the 1965 United States Voting Rights Act.

34. Prior to the enactment of the 1993 Judicial Election Plan, five (5) City Court judges were elected from a single citywide election district based upon the territorial area of the City of Baton Rouge articulated in its Plan of Government, as from time to time amended.

35. The 1993 amended Judicial Election Plan has remained in effect and has been enforced for all subsequent elections for the office of City Judge, for all divisions of City Court (Divisions A, B, C, D, and E), since June 15, 1993.  Baton Rouge City Court remains comprised of five (5) elected judges from these two election districts (Election Section 1 and Election Section 2).

36. Black candidate, Donald "Don" Johnson, was the first judge elected under the 1993 Judicial Election Plan, in Election Section 1, Division B; followed in 1995 by Black candidate Yvette Alexander in Division D and successively re-elected (currently holding office); then in 1999 by Black candidate Trudy White in Division B, and lastly in 2009 by Black candidate, Kelli Temple in Division B (currently holding office).  In 1993, in Division E, White Judge, Suzan Ponder (currently holding office), initially was elected in the former citywide election plan, and she has been successively re-elected in Section 2, Division E, under the Judicial Election Plan.  White candidates, Alex "Brick" Wall

(currently holding office) in 1999 in Division C and Laura P. Davis in 2000 (currently holding office) in Division D were also elected pursuant to the 1993 Judicial Election Plan in Section 2.  All reconfirmed judges have been reelected in their original division.

37. Between the 1990 Census (when the enabling basis -- Louisiana Voter Registration data and the United States Census population -- of the Judicial Election Plan was amended) and the 2010 Census, the City of Baton Rouge's overall population increased. The Black population increased from 43.8% to 54.3%.   The White population decreased from 53.95% to 37.8% during this decade.

38. Between the 1990 U.S. Census and the 2010 Census, Election Section 1's population increased during which time the Black population in this section also increased.  White population in this section declined during this decade.

39. Between the 1990 U.S. Census and the 2010 Census, Election Section 2's population increased during which time the Black population in this section also increased.  White population in this section declined during this decade.

40. Between the 1990 U.S. Census and the 2010 Census, Election Section 1's Black voting age population increased.  White voting age population in this section declined during this decade.

41. Between the 1990 U.S. Census and the 2010 Census, Election Section 2's Black voting age population increased during which time the White voting age population in this section decreased during this decade.

42. The most current United States Census data and the United States Estimated Census data, Louisiana Department of Elections and Registration records, and Baton Rouge City precinct data show significant changes to the demographics in population and voting age

population in Baton Rouge in the current election districts for Baton Rouge City Court since 1990.

43. Blacks now constitute at least 54.3% of the City of Baton Rouge total population.  As of October 12, 2012, the total number of Black registered voters was 71,375 (52.4%); the total number of White registered voters was 58,411 (42.9%); and the total number of Other race voters was 6,330 (4.7%).

44. The foreseen nor actual demographic and population changes occurring since 1990 (although qualified electors and residents are participating and voting in sub-district elections) are included non-discriminatorily and rationally (viz., the 60/40% population standard) apportioned in the current implementation and enforcement of the 1993 Judicial Election Plan in accordance with the Majority Rule Principle, and the Equal Protection and Due Process Clauses, of the United States Constitution, and Sections 2 and 5 of the 1965 Voting Rights Act, despite voting data changes.

45. All demographical, population, voting age, and voter registration changes in Baton Rouge which occurred since 1990 were with knowledge of the State of Louisiana, particularly local elected officials of the City of Baton Rouge, East Baton Rouge Parish, and state representatives of the Louisiana Legislature, and such changes occurred predictably, steadily, and more often than not consistently over the past 20 years, during which period the State of Louisiana and its political subdivisions selectively required redistricting/reapportionment in some of its publically elected offices; and, did in fact redistrict/reapportion most of its numerous other electorally representative single and multi-member offices of the State of Louisiana and representatives to the federal

government, but failed to redistrict/reapportion almost all of its courts, including Baton Rouge City Court, despite requests to do so by Black citizens.

46. Defendants' current Judicial Election Plan now as applied discriminates against Blacks predominantly for racial reasons in violations of the Fourteenth and Fifteenth Amendments to the U.S. Constitution.  It further impermissibly dilutes the voting strength of the Plaintiff, individually, and collectively with other similarly situated Blacks and other minorities in violation of Section 2 of the 1965 Voting Rights Act.

47. Defendants' current Judicial Election Plan now as applied is tantamount to an apartheid judicial election system in favor of White judicial candidates running for City Court election in Section 2 based on 1990 population and 1991 voting registration data within Section 2's precincts within a predominantly Black majority city in violations of the Majority Rule Principle, and the Fourteenth and Fifteenth Amendments to the U.S. Constitution.

48. More specifically, Defendants' current Judicial Election Plan impermissibly dilutes and diminishes the voting rights and strength of the Plaintiff, individually, and collectively with other similarly situated Blacks, and other minorities, in that Blacks, alone, as well as collectively with other minorities, now constitute a major majority of citizens by population, voting age population, and registered voters in the City of Baton Rouge,  but are presently voter constrained in strength as assigned precinct wise according to the Judicial Election Plan to voting in enumerated precincts in Election Sections 1 and 2, in violation of the Majority Rule principle, Fourteenth and Fifteenth Amendments to the United States Constitution, and in violation of Section 2 of the 1965 Voting Rights Act. The remedial effect of the 1993 Judicial Election Plan thereby sustains, extends, and

12

compounds the original harm, which the *then* revised 1993 Judicial Election Plan intended to eliminate (disparate impact and intentional discrimination against Blacks predominantly for racial reasons by Whites).

49. Defendants' current Judicial Election Plan does not permit the election of any more than two (2) judges from Election Section 1. Defendants' current Judicial Election Plan does not permit the creation of a third or fourth elective office in Election Section 1. It prevents and limits any more than two judges from being elected to this Section for discriminatory racial and non-majority reasons.

50. Defendants' 1993 Judicial Election Plan's boundaries can be redrawn by the state legislature to remedy the alleged violations of the United States Constitution and violations of Sections 2 and 5 of the 1965 Voting Rights Act.

51. Defendants' current Judicial Election Plan now favors, permits, and maintains the election preference of three (3) White (formerly the majority in population, voting age population, and voter registration population) race judges from Election Section 2 based on the now outdated proportional allocated judgeships and of the precincts assigned in 1993, of which the then-majority White race precincts historically and impermissibly diluted the Black voting strength for racial reasons.

52. The Black voting age population of Baton Rouge is sufficiently geographically compact to comprise a majority of citizen voting age persons in redrawn districts and/or in a re-allotment in the number of allocated judgeships in Election Sections 1 and 2.

53. Blacks in the City of Baton Rouge, including those residing in Election Sections 1 and 2, are politically cohesive. Most Whites in Section 2 vote sufficiently as a block to enable them – in the absence of special circumstances – to defeat the Black voter's preferred

candidates in the City of Baton Rouge and East Baton Rouge Parish, and to thereby effectively and impermissibly maintain a White racial majority on City Court, despite now being in the minority.

54. Unless reapportioned every ten years, most other elective offices in the City/Parish of East Baton Rouge metropolitan form of government would more likely than not maintain elective offices in violation of the 1965 Voting Rights Act to the disadvantage of Blacks.

55. The current Judicial Election Plan will continue to interact with social, economic, political and historical conditions to cause inequality in the opportunity of Black voters to elect judicial candidates for their choice as compared to White voters in violation of the Majority Rule Principle, the Fourteenth and Fifteenth Amendments to the United States Constitution, and Section 2 of the 1965 Voters Rights Act.

56. Changes occurring since 1990 in the United States Census data, the Louisiana Voter Registration records and the City of Baton Rouge's voting precincts for Election Sections 1 and 2 of the Judicial Election Plan are known by the elected officials of the City/Parish Government of East Baton Rouge who recently reapportioned council districts in accordance with the 2010 census; and these officials are regularly updated with population and voter changes from the U.S. Census Bureau which are distributed to and maintained by act of the Louisiana Legislature as particularly required by the Defendant, State of Louisiana.

57. Black citizens and voters of Baton Rouge on more than one occasion between 2004 and the filing of this action requested of the Louisiana Legislature amendments to the 1993 Judicial Election Plan (*viz*., House Bill 985 of Regular Session 2006; and House Bill 1013 of Regular Session 2004) to adequately address and to further remedy new and recurring

violations of the Majority Rule Principle, the Equal Protection and Due Process clauses of the United States Constitution and Section 2 of the 1965 Voting Rights Act, to no avail.

58. Via class action, Black citizens and voters of Baton Rouge on March 16, 2006 filed a state action solely and limited to alleged State of Louisiana violations of the Louisiana Constitution, Article I, Declaration of Rights, against the Defendants' predecessors in office and requested the State's Judiciary of the State of Louisiana formal judgment seeking amendments to the Judicial Election Plan (*viz.*, *Reverend Jerry Johnson v. State of Louisiana, et al.*, Civil Action No. 541,528, 19th Judicial District Court, East Baton Rouge Parish, State of Louisiana) to further address and to remedy potential, known, and discoverable state legislative and Defendants' actions in violation of the Louisiana Constitution's equal protection clause, individual voting rights, nondiscrimination, and due process clauses, to no avail, the case being dismissed adverse to the plaintiff.

59. Black citizens and voters of Baton Rouge on more than one occasion between 2004 and the filing of this action formally and informally requested of the Metro City-Parish Government of East Baton Rouge Parish action seeking amendments to the 1993 Judicial Election Plan to address the assertions herein and further remedy violations of Section 2 of the 1965 Voting Rights Act and the United States Constitution's majoritarian edict, equal protection and due process clauses, to no avail.

60. Black citizens and voters of Baton Rouge and most or all of City Court's Black judges on several occasions between 2004 and prior to the filing of this action requested White judges of City Court to join and to assist them in seeking changes, particularly not to oppose the redistricting of the 1993 Judicial Election Plan, to further address disparities in the allotment of judgeships and to remedy any violation of the United States

Constitution's Majority Rule Principle, Equal Protection and Due Process clauses, and Section 2 of the 1965 Voting Rights Act, to no avail.

61. White judges on City Court have personally, politically, and repeatedly opposed any changes to address Black citizens' alleged race-based voting and majority rule complaints and the recurring population and voting age population disparities in the 1993 Judicial Election Plan and each has on one or more occasion appeared in person, through formal and informal actions, by legal representatives, agents, or otherwise and/or in private settings, and has testified at official public hearings in absolute opposition to redress Plaintiff's claims for relief.

62. Further, the State of Louisiana by its omission and commission has been on notice for more than ten years that the current Judicial Election Plan now covertly and overtly intentionally discriminates and has disparate impacts against Black voters by over compacting and reducing the Black population and its voting strength into Election Section 1, to the benefit of persons and electors residing in Election Section 2, as well as, to the benefit of White candidates qualifying for judgeships in Section 2's Divisions A, C, and E, in order to prevent Black voters from being able to elect other candidates of their choice.

63. The Defendants' current Judicial Election Plan, as now implemented intentionally discriminates against Black voters by (a) failing to provide for or to require a re-drawing of the election sub-districts and/or remapping of boundaries on regular intervals; and by (b) failing to take into account and to reflect demographic and voting age population changes in the City of Baton Rouge on a regular and recurring basis in violation of the

Majority Rule Principle,  the Fourteenth and Fifteenth Amendments to the United States Constitution, and Section 2 of the 1965 Voting Rights Act.

64. The Defendants' current Judicial Election Plan now prevents unfairly equalization or proportionality between and within the City Court's Election Districts and among the electors and any qualifying candidates and as such is in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution and Section 2 of the 1965 Voting Rights Act.

65. The State of Louisiana, the Parish of East Baton Rouge, and the City of Baton Rouge have an improved, but long and immense history of racial and voting rights discrimination in violation of basic civil and human rights, fundamental principles of American Democracy, the Fourteenth and Fifteenth Amendments to the United States Constitution, and Section 2 of the 1965 Voting Rights Act.

66. The next scheduled election for the office of City Judge, City of Baton Rouge, in all divisions, for Baton Rouge City Court is set for November 6, 2012.  The qualifying period has ended and two judicial offices (Divisions C and E) remain electorally contested. However, no putatively elected judge has received the oath of office for the term commencing January 1, 2013.

67. Defendant, Piyush ("Bobby") Jindal, the Chief Executive Officer of Defendant, State of Louisiana and in his official capacity as Governor of the State of Louisiana has either prevented legislative bills and at times via specific action has opposed or vetoed with the exception of Louisiana House Bill 767 of 2012, and/or objected to legislative action, act(s), and bills to increase the number of Black judges on various state court districts of

Louisiana.  The Governor has the authority to veto any state redistricting plan for any reason.

68. Defendant, State of Louisiana, at all times relevant herein acted under color of state law, and Defendants, Governor "Bobby" Jindal, Attorney General James "Buddy" Caldwell, and Secretary of State Tom Schedler, are enforcement officials maintaining, executing, and enforcing the 1993 Judicial Election Plan in the form it currently exits.

## CAUSES OF ACTION

## VIOLATIONS OF THE UNITED STATES CONSTITUTION

## PURPOSEFUL DISCRIMINATION

69. Paragraphs 1 – 68 above are re-alleged as if set out fully herein.

70. Louisiana is lopsided in the population of Louisiana court districts, having intentionally failed to redraw the Louisiana Supreme Court districts since 1997; its various Court of Appeal, District Courts, and its Baton Rouge and Shreveport City Courts election districts since the 1990 U.S. Census.

71. The State of Louisiana, the Parish of East Baton Rouge, and the City of Baton Rouge, Louisiana have a long history of utilizing the state constitution, the power of central state and local home rule government, to deny Blacks the ability to govern, to make and to enforce laws of their choice, and to elect and promote candidates of their choice.

72. Despite, former Louisiana Attorney General Richard Ieyoub's affidavit that under the terms of the consent decree he helped craft in 1992, Black Justice Bernette Johnson was entitled to the seniority that would make her the next chief justice of the Louisiana Supreme Court, Governor, Piyush ("Bobby") Jindal of Louisiana, and the State of Louisiana on August 12, 2012, intentionally took state interventionist action (sought

dismissal of Justice Bernette Johnson's Motion to Reopen the *Chisom* case and for Contempt against fellow justices) adverse to the senior judicial officer of the State Supreme Court of Louisiana and sought to deny the position of Chief Justice to Justice Bernette Johnson as proscribed for and as provided for in the settlement of the *Chisom* case (*See* recent action in *Chisom v. Jindal*, 2012 WL 3891594 (E.D. La. 9/1/2012)).

73. Moreover, Governor, Piyush ("Bobby") Jindal vetoed Louisiana Senate Bill 429, which would have allocated another judgeship in the court's "minority district" in 2009; a veto that delayed for several years creation of a third minority judgeship on the 24th Judicial District Court in Gretna, Louisiana.

74. The actions of Defendants complained of herein perpetuate the aforesaid historical discrimination against Blacks in Louisiana and their actions have the racially discriminatory purpose and/or effect of denying Plaintiff and all others similarly situated the ability to elect representatives of their choice in violation of the fundamental majoritarian principle of the American Constitution, the Fourteenth and Fifteenth Amendments to the United States Constitution, and Sections 2 and 5 of the Voting Rights Act, 42 U.S.C. § 1973.

75. On lack of information and belief, Defendants have not conducted any hearings, nor provided notice of the voting effectual changes of the 1993 Judicial Election Plan to the public, or to the U.S. Justice Department as may be required by Section 2 of the 1965 Voting Rights Act, nor afforded Plaintiff an equal opportunity to participate in the political process and to elect equally with other Baton Rouge citizens (as well as, other Louisiana citizens in other municipal courts), representatives of his choice to Baton Rouge City Court, and denies Plaintiff the right to majority rule vote in such elections without

19

valid distinction of race, color, or previous condition of servitude in violation of the basic and fundamental principle of individualistic and majoritarian democracy embedded in the United States Constitution, the Fourteenth and Fifteenth Amendments to the United States Constitution, and Sections 2 and 5 of the 1965 Voting Rights Act, 42 U.S.C. § 1973.

76. Defendants failed to equally consider and pass into law Louisiana House Bill 1013 in Regular Session 2004, and/or House Bill 963 in Regular Session 2006, which would have partially or fully negated the disparate and now consequential adverse impact upon Black citizens and voters in Baton Rouge and remedied the complaints alleged herein and legally salvaged the current Judicial Election Plan.

77. Former White City Court Judge Rosemary Pillow publicly appeared before the Louisiana Legislature and opposed Senate Bill 1126 which created the 1993 amendment to the Judicial Election Plan.  Subsequently, Judges Suzan Ponder, Division E, Alex "Brick" Wall, Division C, and Laura P. Davis, Division A, each actively campaigned and testified in opposition to Louisiana House Bill 1013 in Regular Session 2004 filed by Black Representative Michael Jackson.  City Court Judge Yvette Alexander, Division D, and former City Court Judge Trudy White, Division B, both actively canvassed and attested in support of House Bill 1013, to no avail.  White City Court judges, particularly senior Judge Suzan Ponder also actively opposed Louisiana House Bill 985 of Regular Session 2006 to reapportion, redistrict, and reallot City Court judgeships filed by Black Representative Avon Honey.

### VIOLATION OF § 2 OF THE VOTING RIGHTS ACT

78. Paragraphs 1 – 77 above are re-alleged as if set out fully herein.

79. Louisiana is subject to the 1965 U. S. Voting Rights Act and it historically receives highly precise U.S. Census population data for the purpose of drawing judicial and legislative boundaries.

80. Defendants' actions complained of herein and the current Judicial Election Plan (LSA-R.S. 13:1952 Section 1(4) (a) (b) and (c), and Section 2 (A) (B) (C), and Section 3 (A) (B) (C) have resulted in the denial of Plaintiff's basic human and civil right to fairly participate in the electoral and political process, the right to vote, and the right to vote for candidates of his choice as other citizens of Baton Rouge.

81. Actions of the State of Louisiana have had the disparate effect of canceling out or minimizing Black voting strength, and/or minimizing the collective voting strength as majorities in Baton Rouge, Louisiana in violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973.

82. Defendants' actions complained of herein and the current Judicial Election Plan (LSA-R.S. 13:1952 Section 1(4) (a) (b) and (c), and Section 2 (A) (B) (C), and Section 3 (A) (B) (C) have resulted in the abridgement, denial, and dilution of Plaintiff's right to vote and the right to vote for Black members of the class he seeks to represent; and has intentionally and overly concentrated the City's Black population and voting strength into Election Section 1, by limiting its membership to two (2) candidates, instead of three or more of the five offices for City Judge of Baton Rouge in violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973.

83. The City of Baton Rouge, the Parish of East Baton Rouge, and the State of Louisiana are subject to the 1965 U. S. Voting Rights Act and at times they historically have not sought in advance preclearance as required by Section 5 of the Act, particularly as it relates to

state and local laws regulating, affecting, and governing elections and annexations for City Court.

84. Defendants' actions complained of herein and the effect of the current Judicial Election Plan (LSA-R.S. 13:1952 Section 1(4) (a) (b) and (c), and Section 2 (A) (B) (C), and Section 3 (A) (B) (C) have resulted in the denial of Plaintiff's basic human and civil right to fairly participate in the electoral and political process, the right to vote, and the right to vote for candidates of his choice as other citizens of Baton Rouge.

## VIOLATION OF § 5 OF THE VOTING RIGHTS ACT

85. Paragraphs 1 – 82 above are re-alleged as if set out fully herein.

86. The City of Baton Rouge, Parish of East Baton Rouge, through council amendments via the Plan of Government and the State of Louisiana Legislature via Acts, and legislative voting actions of state and local officials and agents of the State of Louisiana have had the disparate effect of canceling out or minimizing Black voting strength, and/or minimizing the collective voting strength as majorities in Baton Rouge, Louisiana in violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, and such official actions were not and should have been presented to the U.S. Justice Department for preclearance in accordance with Section 5 of the 1965 Voting Rights Act.

## COSTS AND EXPENSES

87. Plaintiff seeks to recover attorney's fees, expenses, costs and all other equitable relief afforded.

## PRAYER FOR RELIEF

88. **WHEREFORE**, Plaintiff respectfully prays that this Court will grant him the following relief:

a.  Grant him class action status to represent all citizens of Baton Rouge, particularly Blacks and other minorities to pursue the claims asserted.

b.  Enter a preliminary and permanent injunction enjoining the Defendants herein and those acting in concert with them or at their discretion:

    i.  From further calling, holding, supervising, or certifying any elections, particularly the upcoming November 6, 2012 under the current Judicial Election Plan.  Plaintiff has no adequate remedy at law other than the judicial relief sought herein and unless the Defendants are enjoined from using the challenged 1993 Judicial Election Plan, Plaintiff and those similarly situated will be irreparably harmed, directed to past, present, continuous and ongoing violations of the American constitution's Majority Rule Principle; the Fourteenth and Fifteenth Amendment to the United States Constitution; and Sections 2 and 5 of the Voting Rights Act of 1965;

    ii.  Set an immediate and reasonable deadline for the State of Louisiana authorities to enact and adopt a new legislative redistricting/reapportionment Judicial Election Plan for all judicial offices of Baton Rouge City Court, Louisiana, to include the upcoming elections, and any future election sections, that (1) does not dilute, cancel out or minimize the voting strength of Black voters, which includes a permanent decennial redistricting/reapportionment order; (2) does not violate procedural and substantive due process rights of Plaintiff; (3) does not violate the American Constitution's majority rule substantive and process

23

rights of Plaintiff; and (4) does not violate the 14th and 15th Amendments to the United States Constitution.

    iii.  Set an immediate deadline for the State of Louisiana authorities to respond to the complaint, motions for discovery and request for admissions in a timely manner permitting the Plaintiff to acquire additional facts in support of the assertions herein above, and injunctive relief, and motions for summary judgment; and

    iv.  Require the State of Louisiana, pursuant to the United States Constitution and Sections 2 and 5 of the Voting Rights Act, to include regular intervals, permitting assessment and redrawing of its election sections, geographic boundary lines for Baton Rouge City Court, Divisions A, B, C, D, and E, and any future divisions, no less than once every ten (10) years; or

    v.  And, as well, alternatively, require the State of Louisiana, pursuant to the United States Constitution and Sections 2 and 5 of the Voting Rights Act, to eliminate Election Sections 1 and 2, and return the 1993 Judicial Election Plan to its former plurality election territorial system, a citywide geographic boundary for Baton Rouge City Court, Divisions A, B, C, D, and E, and any future divisions.

c.  Issue a declaratory judgment determining the State of Louisiana is in violation of the federal constitution's Majority Rule Principle, the Fourteenth and Fifteenth Amendments to the United States Constitution; and Sections 2 and 5 of the 1965 Voting Rights Act by (1) failing to notify voting changes to the U.S. Justice Department; and (2) using now outdated and/or inaccurate and non-adjusted

United States Census and Louisiana Department of Elections and Registration and voting and population data to conduct elections in the number of allotted judicial offices, and in the selection and assignment of precincts and in the district boundaries of City Judge, Divisions A, B, C, D, and E of the Baton Rouge City Court under its current Judicial Election Plan;

d.  Issue a declaratory judgment determining the State of Louisiana is in violation of Section 2 of the 1965 Voting Rights Act by illegally diluting the voting rights of Black voters in the City of Baton Rouge, Louisiana;

e.  Issue a declaratory judgment determining the State of Louisiana's 1993 Judicial Election Plan illegally enforces and maintains mal-districted/mal-apportioned Election Districts, in violation of the Majority Rule Principle embedded in the national constitution, the Fourteenth and Fifteenth Amendments to the United States Constitution, and Sections 2 and 5 of the 1965 Voting Rights Act when measured individually and collectively against the 1900 United States Census data; the 2000 United States Census data, the 2010 United States Census data; the State of Louisiana Department of Election and Registration data from 1990 to the present; and the current voting age population, voting patterns, and demographic changes in Baton Rouge, Louisiana since the Plan's enactment;

f.  Issue a declaratory judgment determining the State of Louisiana's 1993 Judicial Election Plan violates the federal constitution's procedural and substantive due process of law clauses by its failure to incorporate regular intervals for redistricting/reapportionment of its elective offices for City Judges, Divisions A,

25

B, C, D, and E, City of Baton Rouge, Louisiana, as all other elective multimember district offices containing more than one elected member;

g.  Issue a declaratory judgment determining the State of Louisiana's 1993 Judicial Election Plan impermissibly fails to provide regular intervals to assess, implement and enforce redistricting/reapportionment of its elective offices for City Judges, Divisions A, B, C, D, and E, City of Baton Rouge, Louisiana in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution;

h.  If the State of Louisiana, through its state authorities, fails to enact or adopt with all deliberate speed a valid redistricting/reapportionment plan by this Court's deadline (which judgment is requested to have retroactive effect for the November 6, 2012 elections and terms of office commencing January 1, 2013 and to become effective for all future elections), order a judicial redistricting/reapportionment plan for Election Sections 1 and 2 of Louisiana's Baton Rouge City Court, Divisions A, B, C, D, and E; that (1) does not eliminate Black majority rule in the City of Baton Rouge; (2) does not dilute, cancel out or minimize the voting strength of Black voters; (3) does not violate the Fourteenth and Fifteenth Amendments to the United States Constitution; and (4) does not violate Plaintiff's procedural and substantive due process rights;

i.  Adjudge all costs and expenses against Defendants, including equitable costs;

j.  Retain and maintain jurisdiction, as needed, or when requested to render any and all further and future orders that this Court may from time to time deem appropriate to include interpretation of any judgment and consent decree rendered

and to reopen the case if necessary for failure to comply with any judgment issued herein and consent decree; and

k.   Grant any and all further relief to which Plaintiff may show himself entitled, under the principles of equal justice and due process of law.

Date, 15th day of October, 2012.

RESPECTFULLY SUBMITTED:

*The Law Offices of Ronald R. Johnson*

/s/ Ronald R. Johnson
_____
Ronald R. Johnson (La. Bar Roll No. 14402)
Law Offices of Ronald R. Johnson
5550 North Foster Drive
Baton Rouge, Louisiana 70805
Telephone: 225-356-3408
Facsimile: 225-356-4438
ronaldjohnson@bellsouth.net
Attorney for the Plaintiff
Lead Counsel

Stephen M. Irving (La. Bar Roll No. 7170)
Steve Irving, LLC
111 Founders Drive
Baton Rouge, Louisiana 70810
Telephone: 225-752-2688
Facsimile: 225-752-2663
steve@Steveirvingllc.com
Attorney for the Plaintiff
Associate Counsel

Joel G. Porter (La. Bar Roll No. 21825)
Attorney at Law
1208 Julia Street
Baton Rouge, Louisiana 70802
Telephone: 225-978-1955
Facsimile: 225-456-2886
joelg9962@gmail.com
Attorney for the Plaintiff
Associate Counsel