UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **KENNETH HALL** | **CIVIL ACTION** |
| **VERSUS** | |
| **STATE OF LOUISIANA, ET AL.** | **NO.: 12-00657-BAJ-RLB** |

RULING AND ORDER

Before the Court is **Plaintiff Kenneth Hall's Application for a Three-Judge Court (Doc. 71)**, requesting this Court to petition the Chief Judge of the United States Court of Appeals for the Fifth Circuit to empanel a three-judge court, pursuant to 28 U.S.C. § 2284, to hear Plaintiffs claims under Section 5 of the Voting Rights Act of 1965. The motion is unopposed. Oral argument is not necessary. The Court has jurisdiction pursuant to 28 U.S.C. 1331.

Also before the Court is **Plaintiff Hall's Motion for Preliminary Injunction to Enforce Section 5 of the 1965 Voting Rights Act (Doc. 102)**, seeking an order from this Court granting his request for a preliminary injunction against Defendants, pursuant to Section 5 of the Voting Rights Act of 1965. Defendant Tom Schedler opposes the motion. (Doc. 107.) Defendants the City of Baton Rouge and the Parish of East Baton Rouge also oppose the motion. (Doc. 109.) Oral argument is not necessary. The Court has jurisdiction pursuant to 28 U.S.C. 1331.

## I. Plaintiff Kenneth Hall's Allegations

Plaintiff Kenneth Hall[1] ("Hall") filed this lawsuit[2] pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. §§ 1983[3] ("Section 1983"), 1986; Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973; Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c; the First Amendment to the United States Constitution, U.S. CONST. amend. I; the Fourteenth Amendment to the United States Constitution, U.S. CONST. amend. XIV, § 1; the Fifteenth Amendment to the United States Constitution, U.S. CONST. amend. XV, § 1, and "the democratic principles of majority rule and individualist egalitarianism of the United States Constitution"[4]

---

[1] On May 1, 2013, Byron Sharper was added as an Intervenor-Plaintiff in this matter. (Doc. 127.) Subsequently, Sharper filed a Complaint (Doc. 128) and a Supplemental Complaint (Doc. 133). As discussed below, this Ruling and Order shall also apply to Sharper's Section 5 claims.

[2] Hall's original complaint was filed as a class action. (Doc. 1.) Subsequently, Hall filed Plaintiff's Motion to Certify Case as a Class Action (Doc. 58), which was denied as premature, without prejudice to Hall's right to re-file the motion, if necessary, after the Court issues its rulings on the pending dispositive motions. *(*Doc. 172.)

[3] "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.' [T]his provision safeguards certain rights conferred by federal statutes." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citing *Maine v. Thiboutot*, 448 U.S. 1 (1980)).

While it is not clear from Hall's pleadings, it appears that Hall's Section 1983 claims include: (1) a Section 1983 claim that the 1993 Judicial Election Plan violates the First Amendment's guarantee of freedom of speech, made applicable to the States by the Equal Protection Clause of the Fourteenth Amendment; (2) a Section 1983 claim that the 1993 Judicial Election Plan violates the Equal Protection Clause of the Fourteenth Amendment; (3) a Section 1983 claim that the 1993 Judicial Election Plan violates the Due Process Clause of the Fourteenth Amendment; (4) a Section 1983 claim that the 1993 Judicial Election Plan violates the Fifteenth Amendment; (5) a Section 1983 claim that the 1993 Judicial Election Plan violates Section 2 of the Voting Rights Act of 1965; (6) a Section 1983 claim that the 1993 Judicial Election Plan violates Section 5 of the Voting Rights Act of 1965; and (7) a Section 1983 claim that the 1993 Judicial Election Plan violates the "democratic principles of majority rule and individualistic egalitarianism" related to the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment.

[4] While it is not clear which Constitutional Amendment or federal statute Hall is referencing, it appears that the reference to the "democratic principles of majority rule and individualistic

against Defendants the State of Louisiana, Governor Piyush Jindal[5], Attorney General James D. Caldwell[6], Secretary of State Tom Schedler[7], the City of Baton Rouge, the Parish of East Baton Rouge, the City Court of Baton Rouge, Mayor Melvin Holden[8], the Louisiana House of Representatives[9], the Louisiana Senate[10], Judge Laura Davis[11], Judge Suzan Ponder[12], and Judge Alex Wall.[13] (Docs. 1, 13, 74, and 76.) Hall alleges that the current judicial election plan, enacted by the Louisiana State Legislature in

---

egalitarianism" is related to the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

[5]Defendant Piyush "Bobby" Jindal is sued in his official capacity as the Governor of the State of Louisiana.

[6]Defendant James D. "Buddy" Caldwell is sued in his official capacity as the Attorney General of the State of Louisiana.

[7]Defendant Tom Schedler is sued in his official capacity as the Louisiana Secretary of State.

[8]Defendant Melvin "Kip" Holden is sued in his official capacity as the Mayor of the City of Baton Rouge.

[9]The Louisiana House of Representatives is sued by and through Charles E. "Chuck" Kleckley, in his official capacity as Speaker of the Louisiana House of Representatives, and Walt Leger, III, in his official capacity as Speaker Pro Tempore of the Louisiana House of Representatives.

[10]The Louisiana Senate is sued by and through John A. Alario, Jr., in his official capacity as President of the Louisiana Senate, and Sharon Weston Broom, in her official capacity as President Pro Tempore of the Louisiana Senate.

[11]Hall originally sued Defendant Laura Davis in her individual and official capacities as a Judge on the City Court of Baton Rouge. However, during the May 31, 2013 hearing on Davis, Ponder, and Wall's Motion to Dismiss (Doc. 99), the Court dismissed Hall's claims pursuant to 42 U.S.C. § 1983 and Section 2 of the Voting Rights Act of 1965 against Davis in her individual capacity.

[12]Hall originally sued Defendant Suzan Ponder in her individual and official capacities as a Judge on the City Court of Baton Rouge. However, during the May 31, 2013 hearing on Davis, Ponder, and Wall's Motion to Dismiss (Doc. 99), the Court dismissed Hall's claims pursuant to 42 U.S.C. § 1983 and Section 2 of the Voting Rights Act of 1965 against Ponder in her individual capacity.

[13]Hall originally sued Defendant Alex "Brick" Wall is his individual and official capacities as a Judge on the City Court of Baton Rouge. However, during the May 31, 2013 hearing on Davis, Ponder, and Wall's Motion to Dismiss (Doc. 99), the Court dismissed Hall's claims pursuant to 42 U.S.C. § 1983 and Section 2 of the Voting Rights Act of 1965 against Wall is his individual capacity.

3

1993, diluted and diminishes the voting rights of African American voters in the City of Baton Rouge, in violation of the U.S. Constitution and the Voting Rights Act of 1965. Hall further alleges that the judicial election plan, codified at La. R.S. § 1(4)(a)(b)(c), which divides the City of Baton Rouge into two election Sections (Sections 1 and 2) and five election Divisions (Divisions A, B, C, D, and E)[14], impermissibly dilutes the votes of African Americans, who now make up 54.3% of the total City population.[15]

According to Hall, the current Judicial Election Plan discriminates against African Americans because African American voters, who make up the majority of Section 1 and the City population, are only allotted two judges, while White voters, who make up the majority of Section 2 but a minority of the City population, are allotted three judges. Hall further alleges that the Defendants' refusal to reapportion the City Court judges and/or redraw the geographic boundaries of the Divisions in accordance with the City of Baton Rouge's 2010 Census demographic data is an intentional attempt to dilute the votes of African Americans.

Accordingly, Hall seeks a ruling and judgment declaring, *inter alia*, that the 1993 Judicial Election Plan violates: (1) the First Amendment's guarantee of freedom of speech, made applicable to the States by the Equal Protection Clause of the

---

[14]Under the current Judicial Election Plan, the City of Baton Rouge is divided into two judicial election sections: Section 1 and Section 2. Each Section then divided into multiple Divisions. Section 1 is divided into Divisions B and D, and Section 2 is divided into Divisions A, C, and E. Each Division elects one judge to the City Court of Baton Rouge.

[15]Hall also points the Court to the United States Census Data, which indicates that the total population of Whites, not Hispanic or Latino, in the City of Baton Rouge decreased from 118,429 or 53.9% in the year 1990 to 86,679 or 37.8% in the year 2010. (Doc. 1, ¶¶ 19-21.)

4

Fourteenth Amendment; (2) the Equal Protection Clause of the Fourteenth Amendment; (3) the Due Process Clause of the Fourteenth Amendment; (4) the Fifteenth Amendment; (5) Section 2 of the Voting Rights Act of 1965; (6) Section 5 of the Voting Rights Act of 1965; and (7) the "democratic principles of majority rule and individualistic egalitarianism" related to the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment. Further, Hall requests an injunction forbidding Defendants from enforcing the 1993 Judicial Election Plan, including enjoining Defendants from "calling, holding, supervising, or certifying" any future elections. Hall also seeks a ruling and judgment holding Defendants liable under Section 1983, and granting him attorney's fees, pursuant to 42 U.S.C. § 1988.

## II. Plaintiff Hall's Motions for a Three-Judge Court and a Preliminary Injunction

As to Plaintiff Kenneth Hall's Application for a Three-Judge Court (Doc. 71), Hall alleges that Defendants failed to obtain federal preclearance for the current Judicial Election Plan, in violation of Section 5 of the Voting Rights Act. Specifically, Hall claims that Defendants failed to submit for review and approval by the United States Department of Justice or the United States District Court for the District of Columbia: (1) the City of Baton Rouge's conversion from plurality to majority vote; (2) creation of the Divisions; (3) creation of additional judgeships; (4) changes in the judge's terms of office; (5) changes in judge qualifications; and (6) the City of Baton Rouge's annexations; thereby rendering those alleged "voting changes" legally unenforceable. Accordingly, Hall requests this Court to petition the Chief Judge of the

Fifth Circuit to empanel a three-judge court, pursuant to 28 U.S.C. § 2284, to hear Plaintiffs claims under Section 5 of the Voting Rights Act.[16] The motion is unopposed.

As to Plaintiff Hall's Motion for Preliminary Injunction to Enforce Section 5 of the 1965 Voting Rights Act (Doc. 102), Hall seeks an order from this Court enjoining Defendants from enforcing "voting changes" that allegedly have not been precleared, as required by Section 5 of the Voting Rights Act. Specifically, Hall requests an order

---

[16] 28 U.S.C. § 2284 states:

(a) A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body.

(b) In any action required to be heard and determined by a district court of three judges under subsection (a) of this section, the composition and procedure of the court shall be as follows:

(1) Upon the filing of a request for three judges, the judge to whom the request is presented shall, unless he determines that three judges are not required, immediately notify the chief judge of the circuit, who shall designate two other judges, at least one of whom shall be a circuit judge. The judges so designated, and the judge to whom the request was presented, shall serve as members of the court to hear and determine the action or proceeding.

(2) If the action is against a State, or officer or agency thereof, at least five days' notice of hearing of the action shall be given by registered or certified mail to the Governor and attorney general of the State.

(3) A single judge may conduct all proceedings except the trial, and enter all orders permitted by the rules of civil procedure except as provided in this subsection. He may grant a temporary restraining order on a specific finding, based on evidence submitted, that specified irreparable damage will result if the order is not granted, which order, unless previously revoked by the district judge, shall remain in force only until the hearing and determination by the district court of three judges of an application for a preliminary injunction. A single judge shall not appoint a master, or order a reference, or hear and determine any application for a preliminary or permanent injunction or motion to vacate such an injunction, or enter judgment on the merits. Any action of a single judge may be reviewed by the full court at any time before final judgment.

(1) voiding, as illegal, the City Court of Baton Rouge's November 6 and December 8, 2012 elections; (2) decertifying the qualifying results for the November 6 and December 8, 2012 elections; (3) invalidating commissions to any and all of the winning candidates; (4) enjoining Defendants from further administering or implementing voting changes concerning the City Court of Baton Rouge elections; and (5) further requiring Defendants to take corrective action to resolve the alleged underlying Section 5 violations by ordering Defendants to file a declaratory judgment action seeking Section 5 preclearance within 30 days of an order from this Court, or to hold a new election within 120 days for all judicial positions in Divisions A, B, C, D, and E that use the uncleared annexations.

In opposition, Defendant Schedler argues that a retroactive injunction is not warranted. Schedler further argues that he is not a proper party to this litigation, that Hall has failed to demonstrate a substantial likelihood of success on the merits, and that Hall has failed to demonstrate that he would suffer irreparable injury in the event the November 6 and December 8, 2012 elections are upheld. Thus, Schedler contends Hall's motion should be denied.

In further opposition, Defendants City of Baton Rouge and Parish of East Baton Rouge argue that all voting changes enacted subsequent to the effective date of Section 5 of the Voting Rights Act have been precleared.[17] Thus, Hall cannot demonstrate a

---

[17]Defendants the City of Baton Rouge and the Parish of East Baton Rouge's memorandum in opposition erroneously states, "[i]n his prior attempt to enjoin the Baton Rouge City Court elections, Plaintiff failed to prove that any voting changes affecting the election of Baton Rouge City Court Judges that were enacted subsequent to the effective date [*sic*] Section 5 of the Voting Rights [*sic*] of 1965 have not been precleared." However, the record indicates that at the conclusion of the Court's hearing on

7

likelihood of success on the merits of his Section 5 claims, and his motion for a preliminary injunction should be denied.

### III. The Court's Hearing on the Applicability of *Shelby County v. Holder* to Hall's Voting Rights Claims

Following the United States Supreme Court's opinion in *Shelby County, Alabama v. Eric H. Holder, Attorney General, et al.*, 133 S. Ct. 2612 (2013) ("*Shelby County*"), the Court ordered the parties to submit memoranda regarding the applicability of *Shelby County* to Hall's claims under the Voting Rights Act.[18] (Doc. 148.) In response, Plaintiff Hall[19] and Defendants Schedler, the City of Baton Rouge and the Parish of East Baton Rouge, Jindal and Caldwell[20], the Louisiana House of Representatives and the Louisiana Senate, and Davis, Ponder, and Wall each submitted memoranda. *See* Docs. 156, 152, 153, 154, 157, and 158, respectively. During the July 26, 2013 hearing on the matter, counsel for Hall and counsel for

---

Hall's initial request for a preliminary injunction, this Court concluded that "Plaintiff satisfactorily demonstrated a likelihood of success on the merits of the underlying claims. However, the Court further concludes that the Plaintiff failed to prove a substantial threat of irreparable injury if a preliminary injunction is not granted." (Doc. 45, pp. 1-2.)

[18]The order further required the parties to address the applicability of *Shelby County* to Intervenor-Plaintiff Sharper's claims under the Voting Rights Act. (Doc. 148.)

[19]Plaintiff Hall's memorandum was jointly submitted by Hall and Intervenor-Plaintiff Sharper. (Doc. 156.)

[20]In response to the Court's order, Defendants Jindal and Caldwell filed a document entitled, "Memoranda [*sic*] Regarding the Applicability of the Ruling in *Shelby County v. Holder* to Plaintiff Kenneth Hall's and Intervenor Plaintiff Byron Sharper's Claims Under the Voting Rights Act of 1965." (Doc. 154.) However, contrary to the title of the document, Defendants Jindal and Caldwell only filed one memorandum into the record.

8

Defendants Jindal, Caldwell, the Louisiana House of Representatives, and the Louisiana Senate presented oral argument to the Court.[21]

After hearing the parties' arguments on the matter and reviewing the Supreme Court's opinion in *Shelby County*, Hall's claims under Section 5 of the Voting Rights Act, and the parties submissions, the Court concludes that *Shelby County* renders Hall's Section 5 claims a nullity, thus rendering Hall's motions moot.

IV.  **Analysis**

    A.    <u>**Sections 4 and 5 of the Voting Rights Act of 1965**</u>

Section 5 of the Voting Rights Act prevents certain "covered" jurisdictions from implementing any change to voting practices or procedures unless and until the jurisdiction demonstrates to federal authorities that the change "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color."  42 U.S.C. § 1973c.  Section 4(b) of the Voting Rights Act establishes the formula by which federal authorities determine which jurisdictions are subject to Section 5's preclearance requirements.  As originally enacted, a jurisdiction was "covered" under Section 4(b) if it maintained a voting test or device as of November 1, 1964, and had less than 50% voter registration or turnout in the 1964 presidential election.[22]  42 U.S.C. § 1973b.  The jurisdictions originally covered by this formula were

---

[21] Counsel for Defendants Schedler, the City of Baton Rouge, the Parish of East Baton Rouge, Davis, Ponder, and Wall chose not to present oral argument to the Court.

[22] A voting "test or device" was defined by statute as a requirement that a person "(1) demonstrate the ability to read, write, understand, or interpret any matter, (2) demonstrate any educational achievement or his knowledge of any particular subject, (3) possess good moral character, or (4) prove his qualifications by the voucher of registered voters or members of any other class."  42 U.S.C. § 1973b(c).

9

Alabama, Georgia, Louisiana, Mississippi, South Carolina, and Virginia. Certain political subdivisions (usually counties) in Arizona, Hawaii, Idaho, and North Carolina also qualified for coverage. Since that time, the list of "covered" jurisdictions has expanded to include the states of Alaska, Arizona, and Texas, and additional counties in California, Florida, New York, North Carolina, and South Dakota. 28 C.F.R. Pt. 51, App.

### B. <u>Procedural History of *Shelby County*</u>

In 2010, plaintiff Shelby County, Alabama, a jurisdiction covered by Section 4(b), filed suit against defendant United States Attorney General Eric. H. Holder, Jr., seeking a declaratory judgment that Sections 4(b) and 5 of the Voting Rights Act are facially unconstitutional. It also sought a permanent injunction against their enforcement.[23] Subsequently, the United States District Court for the District of Columbia denied Shelby County's motion for summary judgment, and granted summary judgment to the Attorney General. *Shelby County v. Holder*, 811 F. Supp. 2d 424 (D.D.C. 2011). The United States Court of Appeals for the District of Columbia Circuit affirmed the decision of the District Court. *Shelby County v. Holder*, 679 F.3d 848 (D.C. Cir. 2012). In response, Shelby County filed a petition for writ of certiorari, which was granted by the Supreme Court on November 9, 2012. *Shelby County v. Holder*, 133 S. Ct. 594 (2012).

---

[23]Specifically, Shelby County alleged that Section 4(b)'s coverage formula and Section 5's preclearance obligation for covered jurisdictions exceeded Congress' enforcement authority under the Fourteenth and Fifteenth Amendments, and violated the principle of "equal sovereignty" embodied in the Tenth Amendment and Article IV of the United States Constitution.

10

## C. The Supreme Court's Opinion

On June 25, 2013, the Supreme Court issued its opinion declaring Section 4(b) of the Voting Rights Act unconstitutional. *Shelby County v. Holder*, 133 S. Ct. 2612 (2013). In a five to four opinion, the Court reversed the District of Columbia Circuit's decision, and held that the Section 4(b) "coverage formula" could not be used as a basis for subjecting jurisdictions to preclearance by federal authorities. *Id.* at 2631. The Court reasoned that Congress' failure to update Section 4(b)'s coverage formula when it reauthorized the Voting Rights Act in 2006, left the Court "with no choice but to declare § 4(b) unconstitutional." *Id.* According to the Court, "[t]he formula in that section can no longer be used as a basis for subjecting jurisdictions to preclearance." *Id.* The Court made clear, however, that its decision, "in no way affects the permanent, nation-wide ban on racial discrimination in voting found in § 2." *Id.*

As it relates to Section 5, the Court stated, "[w]e issue no holding on § 5 itself, only the coverage formula." *Id.* However, as a result of the Court's opinion, the Voting Rights Act no longer has a formula by which federal authorities may determine which jurisdictions are subject to preclearance under Section 5. *Id.* at 2633, n.1 (Ginsburg, J., dissenting) ("The Court purports to declare unconstitutional only the coverage formula set out in § 4(b) . . . But without that formula, § 5 is immobilized.").

Case 3:12-cv-00657-BAJ-RLB   Document 173   09/27/13   Page 11 of 16

### D. The Applicability of *Shelby County* to Hall's Claims Under the Voting Rights Act

In their submissions to the Court, and during the Court's July 26, 2013 hearing on the matter, counsel for all parties agreed that *Shelby County* does not affect Hall's claims under Section 2. Thus, Hall's Section 2 claims are not at issue.

As it relates to Hall's claims under Section 5, during the hearing, counsel for Hall conceded that Sections 4 and 5 must be read together. Counsel for Hall also acknowledged that *Shelby County* "immobilized" Section 5.[24] Counsel contended, however, that *Shelby County* should not be applied retroactively. Specifically, counsel for Hall argued that any pending Section 5 claims based on actions that allegedly occurred before Congress' reauthorization of the Voting Rights Act in 2006 are unaffected by *Shelby County*.

A review of the record reveals that Hall's Section 5 claims are based on actions that allegedly occurred between 1982 and 2012. As noted above, Hall concedes that any Section 5 claims based on actions that allegedly occurred *after* Congress' reauthorization of the Voting Rights Act in 2006 are a nullity. Thus, the only remaining issue for the Court is whether *Shelby County* also nullified Hall's Section 5 claims based on actions that allegedly occurred *before* Congress' reauthorization of the Voting Rights Act in 2006.

---

[24]In their memorandum to the Court, Hall and Intervenor-Plaintiff Sharper further concede, "until new section 4 criteria are adopted by Congress[,] Louisiana is not presently a covered jurisdiction." (Doc. 156, p. 3.)

In support of his argument, Hall cites *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971) for the proposition that the Court must apply a balancing test to determine whether to apply the Supreme Court's holding in *Shelby County* retroactively.[25] Hall further argues that when the *Chevron Oil* test is applied to the instant matter, retroactive application is not warranted.

The Court notes, however, that the *Chevron Oil* test was overruled by the Supreme Court in *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993), in which the Court held:

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

*Id.* at 97. In *Harper*, the Court further opined that when it does not "'reserve the question whether its holding should be applied to the parties before it' . . . an opinion announcing a rule of federal law . . . must be 'read to hold . . . that its rule should apply retroactively to the litigants then before the Court.'" *Id.* at 97-98 (quoting *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 539 (1991). The Fifth Circuit has

---

[25]In *Chevron Oil*, the Supreme Court set out the following factors:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' Finally, we have weighed the inequity imposed by retroactive application. . . .

*Chevron Oil Co.*, 404 U.S. at 106-107 (citations omitted).

Case 3:12-cv-00657-BAJ-RLB   Document 173   09/27/13   Page 13 of 16

affirmed that *Harper* is the law, resulting in the retroactive application of judicial decisions in all cases still open on direct review.[26]

When the Supreme Court issued its opinion in *Shelby County*, it did not expressly indicate whether its decision should be applied retroactively. However, under the prevailing rules governing the application of judicial decisions, the Court's opinion "is properly understood to have followed the normal rule of retroactive application." *Harper*, 509 U.S. at 97. In sum, because the Supreme Court did not state a contrary intention in *Shelby County*, the general rule that a rule of law set out by the Court must be given retroactive effect in cases that are still under direct review applies.[27]

In accordance with this general rule, the Supreme Court's holding invalidating Section 4(b) and immobilizing Section 5 "must be given full retroactive effect" in the instant matter. Thus, the Supreme Court's holding in *Shelby County* must be retroactively applied to *all* of Hall's Section 5 claims, including those claims that are based on actions that allegedly occurred before Congress' reauthorization of the Voting Rights Act in 2006.

---

[26]*Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 282 (5th Cir. 1999) ("[o]f course, Supreme Court decisions apply retroactively and prospectively to all cases on direct appeal whenever applied to the litigants before the Court." (citing *Harper*, 509 U.S. at 97)).

[27]The Court further notes that the retroactive application of judicial decisions is a longstanding maxim. "The general principle that statutes operate prospectively and judicial decisions apply retroactively [has] been followed by the common law and the Supreme Court's decisions 'for near a thousand years.'" *Hulin v. Fibreboard Corp.*, 178 F.3d 316, 329 (5th Cir. 1999) (quoting *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372 (1910)).

14

Case 3:12-cv-00657-BAJ-RLB   Document 173   09/27/13   Page 14 of 16

In sum, as a result of *Shelby County*, the Voting Rights Act no longer has a formula by which federal authorities may identify the jurisdictions that are subject to preclearance under Section 5, thereby eliminating the requirement that Defendants in this matter obtain preclearance. Because the Supreme Court's holding in *Shelby County* must be applied retroactively to "all events, regardless of whether such events predate or postdate" the Court's holding, Section 5 no longer offers Hall a remedy for Defendants' alleged failure to obtain preclearance. Accordingly, *all* of Hall's Section 5 claims must be dismissed. Further, *all* of Intervenor-Plaintiff Sharper's Section 5 claims must also be dismissed.

## V. Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff Kenneth Hall's claims under Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c are **DISMISSED**, without prejudice to Hall's right to request leave of Court to re-urge such claims should the United States Congress pass into law a new coverage formula that includes the State of Louisiana, the Parish of East Baton Rouge, or the City of Baton Rouge as a covered jurisdiction.

**IT IS FURTHER ORDERED** that Intervenor-Plaintiff Byron Sharper's claims under Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c are **DISMISSED**, without prejudice to Sharper's right to request leave of Court to re-urge such claims should the United States Congress pass into law a new coverage formula

that includes the State of Louisiana, the Parish of East Baton Rouge, or the City of Baton Rouge as a covered jurisdiction.

**IT IS FURTHER ORDERED** that **Plaintiff Kenneth Hall's Application for a Three-Judge Court (Doc. 71)** is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that **Plaintiff Hall's Motion for Preliminary Injunction to Enforce Section 5 of the 1965 Voting Rights Act (Doc. 102)** is **DENIED AS MOOT**.

Baton Rouge, Louisiana, this 27th day of September, 2013.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**