UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| KENNETH HALL | CIVIL ACTION |
| VERSUS | |
| STATE OF LOUISIANA, ET AL. | NO.: 12-00657-BAJ-RLB |

RULING AND ORDER

Before the Court is a **Motion on Behalf of the State of Louisiana, Louisiana Governor Bobby Jindal and Louisiana Attorney General James D. "Buddy" Caldwell to Dismiss Complaint, First Amending and Supplemental Complaint and Request for Preliminary Injunction and Permanent Injunction (Doc. 39)**, filed by Defendants the State of Louisiana, Governor Piyush Jindal ("Jindal"), and Attorney General James Caldwell ("Caldwell") (collectively "Defendants"), seeking an order from this Court dismissing Plaintiffs Kenneth Hall's ("Hall") claims against them, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] Hall opposes the motion. (Doc. 51.) The motion was heard with oral argument. The Court has jurisdiction pursuant to 28 U.S.C. 1331.

---

[1] Since the filing of the instant motion to dismiss, Hall filed a Second Amending and Supplemental Complaint and a Third Amending and Supplemental Complaint. (Docs. 74 and 76.) Where, as here, the plaintiff's subsequent complaints refer to, adopt, and incorporate the original complaint, it cannot be said that the subsequent complaints superceded the original complaint. *Stewart v. City of Houston Police Dep't*, 372 Fed. Appx. 475, 478 (5th Cir. 2010) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Thus, in considering the instant motion, the Court shall analyze Hall's Original Complaint (Doc. 1), First Amending and Supplemental Complaint (Doc. 13), Second Amending and Supplemental Complaint (Doc. 74), and Third Amending and Supplemental Complaint (Doc. 76).

## I.  Background

Hall[2] filed this lawsuit[3] pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. §§ 1983[4] ("Section 1983"), 1986; Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973; Section 5 of the Voting Rights Act of 1965[5], as amended, 42 U.S.C. § 1973c; the First Amendment to the United States Constitution, U.S. CONST. amend. I; the Fourteenth Amendment to the United States Constitution, U.S. CONST. amend. XIV, § 1; the Fifteenth Amendment to the United States Constitution,

---

[2] On May 1, 2013, Byron Sharper ("Sharper") was added as an Intervenor-Plaintiff in this matter. (Doc. 127.) Subsequently, Sharper filed a Complaint (Doc. 128) and a Supplemental Complaint (Doc. 133). However, this ruling and order relates to Hall's claims only.

[3] Hall's original complaint was filed as a class action. (Doc. 1.) Subsequently, Hall filed Plaintiff's Motion to Certify Case as a Class Action (Doc. 58), which was denied as premature, without prejudice to Hall's right to re-file the motion, if necessary, after the Court issues its rulings on the pending dispositive motions. (Doc. 172.)

[4] "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.' [T]his provision safeguards certain rights conferred by federal statutes." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citing *Maine v. Thiboutot*, 448 U.S. 1 (1980)).

While it is not clear from Hall's pleadings, it appears that Hall's Section 1983 claims include: (1) a Section 1983 claim that the 1993 Judicial Election Plan violates the First Amendment's guarantee of freedom of speech, made applicable to the States by the Equal Protection Clause of the Fourteenth Amendment; (2) a Section 1983 claim that the 1993 Judicial Election Plan infringes Hall's fundamental right to vote, as protected by the Fourteenth Amendment; (3) a Section 1983 claim that the 1993 Judicial Election Plan violates the Equal Protection Clause of the Fourteenth Amendment; (4) a Section 1983 claim that the 1993 Judicial Election Plan violates the Due Process Clause of the Fourteenth Amendment; (5) a Section 1983 claim that the 1993 Judicial Election Plan violates the Fifteenth Amendment; (6) a Section 1983 claim that the 1993 Judicial Election Plan violates Section 2 of the Voting Rights Act of 1965; and (7) a Section 1983 claim that the 1993 Judicial Election Plan violates the "democratic principles of majority rule and individualistic egalitarianism" related to the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment.

[5] Hall's original Complaint, and subsequent Amending and Supplemental Complaints alleged that Defendants failed to obtain federal preclearance for the current Judicial Election Plan, in violation of the Voting Rights Act of 1965. However, in light of the United States Supreme Court's opinion in *Shelby County, Alabama v. Eric H. Holder, Attorney General, et al.*, 570 U.S. ___ (2013), this Court dismissed Hall's Section 5 claims, without prejudice. (Doc. 173.) Thus, Hall's Section 5 claims shall not be considered by the Court.

U.S. CONST. amend. XV, § 1, and "the democratic principles of majority rule and individualist egalitarianism of the United States Constitution"[6] against Defendants the State of Louisiana, Governor Piyush Jindal[7], Attorney General James Caldwell[8], Secretary of State Tom Schedler[9], the City of Baton Rouge, the Parish of East Baton Rouge, the City Court of Baton Rouge, Mayor Melvin Holden[10], the Louisiana House of Representatives[11], the Louisiana Senate[12], Judge Laura Davis[13], Judge Suzan Ponder[14], and Judge Alex Wall.[15] (Docs. 1, 13, 74, and 76.) Hall alleges that the current judicial election plan, enacted by the Louisiana State Legislature in 1993,

---

[6]While it is not clear which Constitutional Amendment or federal statute Hall is referencing, it appears that the reference to the "democratic principles of majority rule and individualistic egalitarianism" is related to the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

[7]Defendant Piyush "Bobby" Jindal is sued in his official capacity as the Governor of the State of Louisiana.

[8]Defendant James "Buddy" Caldwell is sued in his official capacity as the Attorney General of the State of Louisiana.

[9]Defendant Tom Schedler is sued in his official capacity as the Louisiana Secretary of State.

[10]Defendant Melvin "Kip" Holden is sued in his official capacity as the Mayor of the City of Baton Rouge.

[11]The Louisiana House of Representatives is sued by and through Charles "Chuck" Kleckley, in his official capacity as Speaker of the Louisiana House of Representatives, and Walt Leger, III, in his official capacity as Speaker Pro Tempore of the Louisiana House of Representatives.

[12]The Louisiana Senate is sued by and through John Alario, Jr., in his official capacity as President of the Louisiana Senate, and Sharon Weston Broom, in her official capacity as President Pro Tempore of the Louisiana Senate.

[13]Hall originally sued Defendant Laura Davis in her individual and official capacities as a Judge on the City Court of Baton Rouge.

[14]Hall originally sued Defendant Suzan Ponder in her individual and official capacities as a Judge on the City Court of Baton Rouge.

[15]Hall originally sued Defendant Alex "Brick" Wall is his individual and official capacities as a Judge on the City Court of Baton Rouge.

3

dilutes and diminishes the voting rights of African American voters in the City of Baton Rouge, in violation of the U.S. Constitution and the Voting Rights Act of 1965. Hall further alleges that the judicial election plan, codified at La. R.S. § 1(4)(a)(b)(c), which divides the City of Baton Rouge into two election Sections (Sections 1 and 2) and five election Divisions (Divisions A, B, C, D, and E)[16], impermissibly dilutes the votes of African Americans, who now make up 54.3% of the total City population.[17]

According to Hall, the current Judicial Election Plan discriminates against African Americans because African American voters, who make up the majority of Section 1 and the City population, are allotted only two judges, while White voters, who make up the majority of Section 2 but a minority of the City population, are allotted three judges. Hall further alleges that the Defendants' refusal to reapportion the City Court judges and/or redraw the geographic boundaries of the Divisions in accordance with the City of Baton Rouge's 2010 Census demographic data is an intentional attempt to dilute the votes of African Americans.

Accordingly, Hall seeks a ruling and judgment declaring, *inter alia*, that the 1993 Judicial Election Plan violates: (1) the First Amendment's guarantee of freedom of speech, made applicable to the States by the Equal Protection Clause of the

---

[16]Under the current Judicial Election Plan, the City of Baton Rouge is divided into two judicial election Sections: Section 1 and Section 2. Each Section then divided into multiple Divisions. Section 1 is divided into Divisions B and D, and Section 2 is divided into Divisions A, C, and E. Each Division elects one judge to the City Court of Baton Rouge.

[17]Hall also points the Court to the United States Census Data, which indicates that the total population of Whites, not Hispanic or Latino, in the City of Baton Rouge decreased from 118,429 or 53.9% in the year 1990 to 86,679 or 37.8% in the year 2010. (Doc. 1, ¶¶ 19-21.)

4

Fourteenth Amendment; (2) Hall's fundamental right to vote, as protected by the Fourteenth Amendment; (3) the Equal Protection Clause of the Fourteenth Amendment; (4) the Due Process Clause of the Fourteenth Amendment; (5) the Fifteenth Amendment; (6) Section 2 of the Voting Rights Act of 1965; and (7) the "democratic principles of majority rule and individualistic egalitarianism" related to the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment. Further, Hall requests an injunction forbidding Defendants from enforcing the 1993 Judicial Election Plan, including enjoining Defendants from "calling, holding, supervising, or certifying" any future elections. Hall also seeks a ruling and judgment holding Defendants liable under Section 1983, and granting him attorney's fees, pursuant to 42 U.S.C. § 1988.

As to the instant motion, the Defendants seek an order from this Court dismissing Hall's claims against them, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Defendants contend that the Court lacks subject matter jurisdiction to adjudicate claims brought against them, as they are protected by Eleventh Amendment immunity. In the alternative, they argue that Hall has failed to state a claim upon which relief can be granted because he has failed to make direct allegations against Jindal and Caldwell, and because neither Defendant is the proper party to provide Hall the relief he seeks. Accordingly, Defendants contend Hall is not entitled to declaratory relief or attorney's fees, pursuant to Section 2 of the Voting

Rights Act or 42 U.S.C. § 1988.[18]

Hall opposes the motion and argues that the Court has subject matter jurisdiction, as Defendants are not immune from suit. He further contends that he has sufficiently pled claims upon which relief can be granted under Section 2 of the Voting Rights Act.[19] Thus, Hall argues that his claims against Defendants should not be dismissed.

## II. Standard of Review

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286-287 (5th Cir. 2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998)). Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim. *Id.* (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A court should consider a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th

---

[18]Defendants further request that the Court deny Hall's request for a preliminary injunction. However, during the Court's November 2, 2012 hearing on the matter, the undersigned denied Hall's request for a preliminary injunction. (Doc. 45.) Thus, Defendants' request that the Court deny Hall's request for a preliminary injunction is moot.

[19]Hall further argues that he has sufficiently pled claims upon which relief can be granted under Section 5 of the Voting Rights Act. However, as noted above, such claims have been dismissed. Thus, this Court will not evaluate Hall's Section 5 claims.

6

Cir. 2001), *cert. denied*, 536 U.S. 960 (2001)). Considering a Rule 12(b)(1) motion to dismiss first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* (citing *Ramming*, 281 F.3d at 161).

A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Benton v. U.S.*, 960F.2d 19, 21 (5th Cir. 1992). A complaint is subject to dismissal under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010) ("Under the Rule 12(b)(6) standard, all well-pleaded facts are viewed in the light most favorable to the plaintiff . . . ."); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In ruling on a Rule 12(b)(1) motion, however, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009), *cert. denied*, 558 U.S. 1111 (2009); *Ramming*, 281 F.3d at 161 (stating that a court ruling on a Rule 12(b)(1) motion may evaluate "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed

facts.)"[20]  A motion to dismiss for lack of subject matter jurisdiction should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief.  *Wagstaff v. United States Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007).

However, "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."  *Celestine v. TransWood, Inc.*, 467 Fed. Appx. 317, 318 (5th Cir. 2012) (quoting *Ramming*, 281 F.3d at 161).  "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."  *Id.* (quoting *Ramming*, 281 F.3d at 161).  A pleading stating a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction[.]"  *Id.* (citing Fed. R. Civ. P. 8(a)(1)).  In federal question cases, the party must demonstrate a non-frivolous claim based on federal law.  *Gibbs v. Buck*, 307 U.S. 66, 72 (1939).  When a district court finds it lacks subject matter jurisdiction, its determination is not on the merits of the case, and does not bar the plaintiff from pursuing the claim in a proper jurisdiction.  *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (*per curiam*).

---

[20]Here, none of the parties have submitted affidavits, testimony, or other evidentiary materials. Thus, the Court's review is limited to whether the allegations in Hall's Original Complaint and subsequent Amending and Supplemental Complaints are sufficient to establish subject matter jurisdiction.  *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) ("[I]f the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true.  If those jurisdictional allegations are sufficient the complaint stands.").

### III. Analysis

#### A. <u>Subject Matter Jurisdiction</u>

The Eleventh Amendment of the U.S. Constitution provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. This language expressly encompasses not only suits brought against a state by citizens of another state, but suits against a state by citizens of that same state. *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, (1984); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). "A state's Eleventh Amendment immunity extends to any state agency or entity deemed an alter ego or arm of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). In general, therefore, a suit in which the state or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. *Lewis v. University of Texas Medical Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) (citing *Pennhurst*, 465 U.S. 89, 100 (1984)). This jurisdictional bar applies regardless of the nature of the relief sought. *Id.*

The Eleventh Amendment also bars a suit against a state official when "the state is a real, substantial party in interest." *Pennhurst*, 465 U.S. at 101-02 (citations omitted). Thus, the general rule is that relief sought against an officer is in fact against the sovereign if the decree would operate against the latter. And, as when the

9

state itself is named as the defendant, a suit against state officials that is in fact a suit against a state is barred regardless of whether it seeks damages or injunctive relief. *Pennhurst*, 465 U.S. at 101-02 (citations omitted); *see also Okpalobi v. Foster*, 244 F.3d 405, 412 (5th Cir. 2001) (plaintiff cannot evade Eleventh Amendment immunity by naming an individual state officer as a defendant in lieu of the state itself).

A state's immunity from suit is not absolute, however, and the Supreme Court has recognized several situations in which an individual may sue a state in federal court. *Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011). First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment.[21] *Coll. Sav. Bank v. Fla. Prepared Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999)); *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976). Second, a state may waive its Eleventh Amendment immunity by voluntarily invoking federal court jurisdiction, or by making a "clear declaration" that it intends to submit itself to federal court jurisdiction. *Coll. Sav. Bank*, 527 U.S. at 670. Third, an individual may sue a state under the doctrine set forth by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908).[22]

---

[21]In *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721 (2003), the Supreme Court held that although the Constitution does not provide for federal jurisdiction over suits against nonconsenting states, Congress may abrogate such immunity in federal court "if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power [to enforce the constitutional guarantee of due process] under § 5 of the Fourteenth Amendment." *Id.* at 726. Congress has "parallel power" to abrogate state sovereign immunity in the enforcement of the Fifteenth Amendment as well. *City of Boerne*, 521 U.S. at 518 (citing *South Carolina v. Katzenbach*, 383 U.S. 301, 308 (1966)).

[22]In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity, thereby permitting suits against state officials in their official capacity in order to enjoin enforcement of an unconstitutional state statute. *Okpalobi*, 244 F.3d at 411 (citing *Ex parte*

10

### 1. Congress' Authorization of Lawsuits Against the State in Federal Court

First, the Court notes that Congress has abrogated the states' sovereign immunity for claims arising under the Voting Rights Act. *See, e.g.*, *Mixon v. State of Ohio*, 193 F.3d 389, 398-99 (6th Cir. 1999); *Reaves v. United States DOJ*, 355 F. Supp. 2d 510, 515 (D.D.C. 2005) ("it is reasonable to conclude that Congress, in passing the Voting Rights Act, effected a valid abrogation of state sovereign immunity."); *see also City of Boerne*, 521 U.S. 507, 518 (1997) (noting that the Supreme Court has "concluded that other measures protecting voting rights are within Congress' power to enforce the Fourteenth and Fifteenth Amendments, despite the burdens those measures placed on the States.") (citing *Katzenbach*, 383 U.S. at 308). Further, during the hearing on the matter, counsel for Defendants conceded that Defendants do *not* have immunity as it relates to the Voting Rights Act. Thus, the Court concludes that Hall's Section 2 of the Voting Rights Act claims against the Defendants are not proscribed by Eleventh Amendment sovereign immunity.

As it relates to Hall's Section 1983 claims, it is uncontested that Congress has not abrogated the states' sovereign immunity for claims arising under Section 1983. *Inyo County, Cal. v. Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony*, 538 U.S. 701, 709 (2003).

### 2. The State's Waiver of Eleventh Amendment Immunity

It is also uncontested that the State of Louisiana has not waived its immunity

---

*Young*, 209 U.S. at 157).

from suit in federal court. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)); La. R.S. § 13:5106(a). Accordingly, the Court concludes that Hall's Section 1983 claims against the State of Louisiana are proscribed by Eleventh Amendment sovereign immunity, and such claims must be dismissed.[23]

Thus, the only remaining question is whether the *Ex parte Young* doctrine applies to Hall's Section 1983 claims against Jindal and Caldwell.

### 3. The *Ex parte Young* Doctrine and Hall's Section 1983 Claims Against Jindal and Caldwell

As noted above, in *Ex parte Young*, the Supreme Court carved out an exception to Eleventh Amendment immunity. *Ex parte Young*, 209 U.S. at 157. In that ruling, the Court permitted suits against state officials in their official capacity in order to enjoin enforcement of an unconstitutional state statute. *Okpalobi*, 244 F.3d at 411 (citing *Ex parte Young*, 209 U.S. at 157). This exception applies when the state official: (1) has some connection with the enforcement of the statute; or (2) is specifically charged with the duty to enforce the statute and is threatening to exercise that duty. *Id.* at 414-15 (citing *Ex parte Young*, 209 U.S. at 157) ("[i]n making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be

---

[23]*Thomas v. Tex. Dep't of Family & Protective Servs.*, 427 Fed. Appx. 309, 312 (5th Cir. 2011) ("[a]lthough the *Ex [p]arte Young* doctrine creates an exception to this rule concerning suits for prospective relief against individual state actors, *Ex [p]arte Young* 'has no application in suits against . . . States and their agencies.'" (citing *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)).

12

unconstitutional . . . such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party.")).

In *Ex parte Young*, the Supreme Court held that enforcement of an unconstitutional law is not an official act because a state cannot confer authority on its officers to violate the Constitution or federal law. *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *American Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 920-21 (5th Cir. 1993)). The *Ex parte Young* exception "has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst*, 465 U.S. at 105. Under this exception an individual official may be liable only for implementing a policy that is "itself [ ] a repudiation of constitutional rights" and "the moving force of the constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (citing *Grandstaff v. City of Borger*, 767 F.2d 161, 169-70 (5th Cir. 1985)).

For *Ex parte Young* to apply, the "suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Aguilar*, 160 F.3d at 1054 (quoting *Saltz v. Tennessee Dep't of Employment Sec.*, 976 F.2d 966, 968 (5th Cir. 1992)). In *Papasan v. Allain*, 478 U.S. 265 (1986), the Supreme Court opined:

Case 3:12-cv-00657-BAJ-RLB   Document 174   09/30/13   Page 13 of 19

> [*Ex parte Young*] has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation. As we have noted: Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.
>
> Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant. This is true if the relief is expressly denominated as damages. It is also true if the relief is tantamount to an award of damages for a past violation of federal law, even though styled as something else. On the other hand, relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury.

*Id. at 277-78* (quotations and citations omitted).

The Supreme Court recently explained more succinctly that in determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Office for Prot. & Advocacy v. Stewart,* 131 S. Ct. 1632, 1639 (2011) (quoting *Verizon Md. Inc. v. Pub. Svc. Comm'n,* 535 U.S. 635, 645 (2002)).

Here, Hall identifies Jindal as the "Chief Executive Officer" of the State of Louisiana, and Caldwell as the "Chief Legal Officer" of the State of Louisiana. (Doc. 1, ¶ 6.) Hall's Original Complaint alleges that Jindal and Caldwell "are enforcement

14

officials maintaining, executing, and enforcing the 1993 Judicial Election Plan in the form it currently exits [*sic*]." (Doc. 1, ¶ 68.) According to Hall, "[a]ll Defendants," including "the Governor" and "the Attorney General", "have separately, jointly, and/or cooperatively acted in such a way that they now must be ordered to comply with the Constitution . . . [Section] 1983 . . . [and] Section 2 . . . of the Voting Rights Act." (Doc. 76, ¶ 10.) Hall alleges that "[a]ll Defendants, including "the Governor" and "the Attorney General of Louisiana" are "particularly aware that . . . their application of the [1993 Judicial Election] Plan invidiously discriminates against, and adversely impacts, Plaintiff . . . [and that] their state action as individuals and/or public officials violate [*sic*]" federal laws. (Doc. 74, ¶ 31.) Hall asserts that this lawsuit is an action to "remedy past, present, ongoing, and future" violations of federal law by Defendants. (Doc. 76, ¶ 3.) His Complaint further alleges that, unless the Court enjoins Defendants from "calling, holding, supervising, or certifying any elections" under the current Judicial Election Plan, he will be "irreparably harmed" by Defendants' "continuous and ongoing violations" of federal law. (Doc. 1, ¶ 88.)

When Hall's Original Complaint, First Amending and Supplemental Complaint, Second Amending and Supplemental Complaint, and Third Amending and Supplemental Complaint are read as one, his Complaint, on its face, alleges that Jindal and Caldwell have some connection with the enforcement of the 1993 Judicial Election Plan, or that they are specifically charged with the duty to enforce the Plan and are currently exercising and/or threatening to exercise that duty. The Court further concludes that Hall's Complaint sufficiently alleges an ongoing violation of federal law,

15

and that he seeks relief that is properly characterized as prospective.

Accordingly, the Court concludes that Hall has met the *Ex parte Young* exception. Thus, Hall's Section 1983 claims against Jindal and Caldwell are not proscribed by Eleventh Amendment sovereign immunity.

### B. Whether Hall Has Sufficiently Pled Claims Upon Which Relief Can Be Granted

In support of their motion, Defendants argue that Hall has failed to make direct allegations against Jindal and Caldwell, and that the few allegations made by Hall are insufficient to state claims under Section 2 of the Voting Rights Act and Section 1983. They further contend that Hall's Complaint fails to sufficiently allege that Jindal and Caldwell are "the proper part[ies] to provide the relief requested by Plaintiff." (Doc. 39-1, p. 5.) Defendants make no further arguments, nor do they specifically identify what standards or claims Hall has allegedly failed to meet.

In opposition, Hall argues that he has sufficiently pled claims under Section 2 of the Voting Rights Act or Section 1983. In support of his argument, Hall points to specific allegations related to his claims that Jindal and Caldwell violated, and continue to violate, federal law.

As summarized above, Hall's Original Complaint, First Amending and Supplemental Complaint, Second Amending and Supplemental Complaint, and Third Amending and Supplemental Complaint include a number of specific allegations against Jindal and Caldwell. Thus, Defendants argument that Hall has failed to make direct allegations against them is unavailing.

16

The Court is also not persuaded by Defendants' argument that Hall has not sufficiently alleged that Jindal and Caldwell are "the proper part[ies] to provide the relief requested." Defendants fail to cite to any law or case to support their assertion that they are not proper parties in this matter. Further, the Court has identified a number of cases in which the governor and/or the attorney general were named as a defendant in a Voting Rights Act case. *See, e.g.*, *Williams v. McKeithen*, No. 05-1180, 2005 U.S. Dist. LEXIS 17788, at *1 (E.D. La. August 8, 2005) (Governor of the State of Louisiana named as a defendant); *Carr v. Edwards*, No. 94-1280, 1994 U.S. Dist. LEXIS 11087, at *1, 1994 WL 419856, at *1 (E.D. La. August 8, 1994) (Governor of the State of Louisiana and Louisiana Attorney General named as defendants); *Clark v. Roemer*, 777 F. Supp. 471 (M.D. La. 1991) (Governor of the State of Louisiana and Louisiana Attorney General named as defendants); *African-American Citizens for Change v. Robbins*, 825 F. Supp. 885, 891 (E.D. Mo. 1993) (concluding that the proper defendant in a Voting Rights Act claim is the state and/or the governor of the state).

To the extent Defendants attempt to assert that Hall has failed to allege sufficient facts to state a plausible claim under Section 2 of the Voting Rights Act and/or Section 1983, Defendants have failed to identify what elements and/or standards Hall has failed to meet. Indeed, Defendants' motion merely states, "[i]t is clear these allegations are insufficient to state a claim under either Section 1983 or the VRA." (Doc. 39-1, p. 5.) It is not the job of the District Court to make arguments on behalf of the movants. Rather, the Court's obligation is limited to evaluating the arguments made by the movants, and the arguments made in opposition thereto.

Accordingly, Defendants' request that the Court dismiss Hall's claims under Section 2 of the Voting Rights Act and Section 1983 is denied.

Based on the conclusions above, and at this stage of the litigation, consideration of Hall's requests for declaratory relief and attorney's fees would be premature. Accordingly, Defendants' request that the Court deny Hall's requests for declaratory relief and attorney's fees is denied as premature.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Defendants the State of Louisiana, Governor Piyush Jindal, and Attorney General James Caldwell's **Motion on Behalf of the State of Louisiana, Louisiana Governor Bobby Jindal and Louisiana Attorney General James D. "Buddy" Caldwell to Dismiss Complaint, First Amending and Supplemental Complaint and Request for Preliminary Injunction and Permanent Injunction (Doc. 39)** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendants' request that the Court dismiss Plaintiff Kenneth Hall's 42 U.S.C. § 1983 claims against the State of Louisiana is **GRANTED**. Hall's 42 U.S.C. § 1983 claims against the State of Louisiana are hereby **DISMISSED**, with prejudice. Consequently, his request for relief under 42 U.S.C. § 1988 against the State of Louisiana is also **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' request that the Court dismiss Hall's 42 U.S.C. § 1983 claims against Governor Piyush Jindal and Attorney General James Caldwell is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' request that the Court dismiss Hall's Section 2 of the Voting Rights Act claims against the State of Louisiana, Governor Piyush Jindal, and Attorney General James Caldwell is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' request that the Court deny Hall's requests for declaratory relief and attorney's fees is **DENIED AS PREMATURE**.

Baton Rouge, Louisiana, this 30th day of September, 2013.

_____
**BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**