# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **KENNETH HALL** | **CIVIL ACTION** |
| **VERSUS** | |
| **STATE OF LOUISIANA, ET AL.** | **NO.: 12-00657-BAJ-RLB** |

## RULING AND ORDER

Before the Court is a **Motion to Dismiss Complaint, First Amending and Supplemental Complaint, and Request for Preliminary and Permanent Injunction Pursuant to Fed.R.Civ.P. Rules 12(b)(1) and 12(b)(6) (Doc. 40)**, filed by Defendant Tom Schedler ("Schedler"), seeking an order from this Court dismissing Plaintiffs Kenneth Hall's ("Hall") claims against him, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] Hall opposes the motion.  (Doc. 50.)

Also before the Court is a **Motion Pursuant to 42 U.S.C. § 1983l(b) (Doc. 42)**, filed by Schedler, seeking an order from this Court dismissing Hall's claims against him, pursuant to Federal Rules of Civil Procedure 12(b)(6).  Hall opposes the motion. (Doc. 50.)

---

[1] Since the filing of the instant motions to dismiss, Hall filed a Second Amending and Supplemental Complaint and a Third Amending and Supplemental Complaint.  (Docs. 74 and 76.) Where, as here, the plaintiff's subsequent complaints refer to, adopt, and incorporate the original complaint, it cannot be said that the subsequent complaints superceded the original complaint.  *Stewart v. City of Houston Police Dep't*, 372 Fed. Appx. 475, 478 (5th Cir. 2010) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).  Thus, in considering the instant motions, the Court shall analyze Hall's Original Complaint (Doc. 1), First Amending and Supplemental Complaint (Doc. 13), Second Amending and Supplemental Complaint (Doc. 74), and Third Amending and Supplemental Complaint (Doc. 76).

Also before the Court is a **Motion to Dismiss Complaint and First Amending and Supplemental Complaint Pursuant to Rule 12(b)(b) (Doc. 47)**, filed by Schedler, seeking an order from this Court dismissing Hall's claims against him, pursuant to Federal Rule of Civil Procedure 12(b)(6). Hall opposes the motion. (Doc. 57.) The Court granted Schedler leave to file a memorandum in response to Hall's memorandum in opposition. (Doc. 119.) The motions were heard with oral argument. The Court has jurisdiction pursuant to 28 U.S.C. 1331.

## I.    Background

Hall[2] filed this lawsuit[3] pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. §§ 1983[4] ("Section 1983"), 1986; Section 2 of the Voting Rights Act of 1965,

---

[2] On May 1, 2013, Byron Sharper ("Sharper") was added as an Intervenor-Plaintiff in this matter. (Doc. 127.) Subsequently, Sharper filed a Complaint (Doc. 128) and a Supplemental Complaint (Doc. 133). However, this ruling and order relates to Hall's claims only.

[3] Hall's original complaint was filed as a class action. (Doc. 1.) Subsequently, Hall filed Plaintiff's Motion to Certify Case as a Class Action (Doc. 58), which was denied as premature, without prejudice to Hall's right to re-file the motion, if necessary, after the Court issues its rulings on the pending dispositive motions. (Doc. 172.)

[4] "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.' [T]his provision safeguards certain rights conferred by federal statutes." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citing *Maine v. Thiboutot*, 448 U.S. 1 (1980)).

While it is not clear from Hall's pleadings, it appears that Hall's Section 1983 claims include: (1) a Section 1983 claim that the 1993 Judicial Election Plan violates the First Amendment's guarantee of freedom of speech, made applicable to the States by the Equal Protection Clause of the Fourteenth Amendment; (2) a Section 1983 claim that the 1993 Judicial Election Plan infringes Hall's fundamental right to vote, as protected by the Fourteenth Amendment; (3) a Section 1983 claim that the 1993 Judicial Election Plan violates the Equal Protection Clause of the Fourteenth Amendment; (4) a Section 1983 claim that the 1993 Judicial Election Plan violates the Due Process Clause of the Fourteenth Amendment; (5) a Section 1983 claim that the 1993 Judicial Election Plan violates the Fifteenth Amendment; (6) a Section 1983 claim that the 1993 Judicial Election Plan violates Section 2 of the Voting Rights Act of 1965; and (7) a Section 1983 claim that the 1993 Judicial Election Plan violates the "democratic principles of majority rule and individualistic egalitarianism" related to the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment.

as amended, 42 U.S.C. § 1973; Section 5 of the Voting Rights Act of 1965[5], as amended, 42 U.S.C. § 1973c; the First Amendment to the United States Constitution, U.S. CONST. amend. I; the Fourteenth Amendment to the United States Constitution, U.S. CONST. amend. XIV, § 1; the Fifteenth Amendment to the United States Constitution, U.S. CONST. amend. XV, § 1, and "the democratic principles of majority rule and individualist egalitarianism of the United States Constitution"[6] against Defendants the State of Louisiana, Governor Piyush Jindal[7], Attorney General James Caldwell[8], Secretary of State Tom Schedler[9], the City of Baton Rouge, the Parish of East Baton Rouge, the City Court of Baton Rouge, Mayor Melvin Holden[10], the Louisiana House

---

[5]Hall's original Complaint, and subsequent Amending and Supplemental Complaints alleged that Defendants failed to obtain federal preclearance for the current Judicial Election Plan, in violation of the Voting Rights Act of 1965. However, in light of the United States Supreme Court's opinion in *Shelby County, Alabama v. Eric H. Holder, Attorney General, et al.*, 570 U.S. ___ (2013), this Court dismissed Hall's Section 5 claims, without prejudice. (Doc. 173.) Thus, Hall's Section 5 claims shall not be considered by the Court.

[6]While it is not clear which Constitutional Amendment or federal statute Hall is referencing, it appears that the reference to the "democratic principles of majority rule and individualistic egalitarianism" is related to the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

[7]Defendant Piyush "Bobby" Jindal is sued in his official capacity as the Governor of the State of Louisiana.

[8]Defendant James "Buddy" Caldwell is sued in his official capacity as the Attorney General of the State of Louisiana.

[9]Defendant Tom Schedler is sued in his official capacity as the Louisiana Secretary of State.

[10]Defendant Melvin "Kip" Holden is sued in his official capacity as the Mayor of the City of Baton Rouge.

of Representatives[11], the Louisiana Senate[12], Judge Laura Davis[13], Judge Suzan Ponder[14], and Judge Alex Wall.[15]   (Docs. 1, 13, 74, and 76.)  Hall alleges that the current judicial election plan, enacted by the Louisiana State Legislature in 1993, dilutes and diminishes the voting rights of African American voters in the City of Baton Rouge, in violation of the U.S. Constitution and the Voting Rights Act of 1965. Hall further alleges that the judicial election plan, codified at La. R.S. § 1(4)(a)(b)(c), which divides the City of Baton Rouge into two election Sections (Sections 1 and 2) and five election Divisions (Divisions A, B, C, D, and E)[16], impermissibly dilutes the votes of African Americans, who now make up 54.3% of the total City population.[17]

---

[11]The Louisiana House of Representatives is being by and through Charles "Chuck" Kleckley, in his official capacity as Speaker of the Louisiana House of Representatives, and Walt Leger, III, in his official capacity as Speaker Pro Tempore of the Louisiana House of Representatives.

[12]The Louisiana Senate is sued by and through John Alario, Jr., in his official capacity as President of the Louisiana Senate, and Sharon Weston Broom, in her official capacity as President Pro Tempore of the Louisiana Senate.

[13]Hall originally sued Defendant Laura Davis in her individual and official capacities as a Judge on the City Court of Baton Rouge.

[14]Hall originally sued Defendant Suzan Ponder in her individual and official capacities as a Judge on the City Court of Baton Rouge.

[15]Hall originally sued Defendant Alex "Brick" Wall is his individual and official capacities as a Judge on the City Court of Baton Rouge.

[16]Under the current Judicial Election Plan, the City of Baton Rouge is divided into two judicial election Sections: Section 1 and Section 2.  Each Section then divided into multiple Divisions.  Section 1 is divided into Divisions B and D, and Section 2 is divided into Divisions A, C, and E.  Each Division elects one judge to the City Court of Baton Rouge.

[17]Hall also points the Court to the United States Census Data, which indicates that the total population of Whites, not Hispanic or Latino, in the City of Baton Rouge decreased from 118,429 or 53.9% in the year 1990 to 86,679 or 37.8% in the year 2010.  (Doc. 1, ¶¶ 19-21.)

According to Hall, the current Judicial Election Plan discriminates against African Americans because African American voters, who make up the majority of Section 1 and the City population, are allotted only two judges, while White voters, who make up the majority of Section 2 but a minority of the City population, are allotted three judges.  Hall further alleges that the Defendants' refusal to reapportion the City Court judges and/or redraw the geographic boundaries of the Divisions in accordance with the City of Baton Rouge's 2010 Census demographic data is an intentional attempt to dilute the votes of African Americans.

Accordingly, Hall seeks a ruling and judgment declaring, *inter alia*, that the 1993 Judicial Election Plan violates: (1) the First Amendment's guarantee of freedom of speech, made applicable to the States by the Equal Protection Clause of the Fourteenth Amendment; (2) Hall's fundamental right to vote, as protected by the Fourteenth Amendment; (3) the Equal Protection Clause of the Fourteenth Amendment; (4) the Due Process Clause of the Fourteenth Amendment; (5) the Fifteenth Amendment; (6) Section 2 of the Voting Rights Act of 1965; and (7) the "democratic principles of majority rule and individualistic egalitarianism" related to the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment.   Further, Hall requests an injunction forbidding Defendants from enforcing the 1993 Judicial Election Plan, including enjoining Defendants from "calling, holding, supervising, or certifying" any future elections.  Hall also seeks a ruling and judgment holding Defendants liable under Section 1983, and granting him attorney's fees, pursuant to 42 U.S.C. § 1988.

As to the instant motion, Schedler seeks an order from this Court dismissing Hall's claims against him, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[18]   Schedler contends that the Court lacks subject matter jurisdiction to adjudicate claims brought against him, as he is protected by Eleventh Amendment immunity.   In the alternative, Schedler argues that Hall has failed to state a claim upon which relief can be granted under the Voting Rights Act because Hall has failed to establish that Schedler violated Louisiana law, or that he engaged in discriminatory conduct.[19] Schedler further contends that he not proper party to provide relief.   Rather, Schedler asserts that the Louisiana Attorney General is the proper defendant in this matter.   Thus, Hall's claims against Schedler must be dismissed.[20]

Hall opposes the motion and argues that the Court has subject matter jurisdiction, as Schedler is not immune from suit.   He further contends that he has sufficiently pled claims upon which relief can be granted under Section 2 of the Voting

---

[18]Schedler also contends that the Court does not have jurisdiction to issue a declaratory judgment, restraining order, or temporary or permanent injunction against him, pursuant to Section 5 of the Voting Rights Act.   However, as noted above, this Court previously dismissed Hall's Section 5 claims.   (Doc. 173.)   Thus, Schedler's request that the Court deny Hall's request for a declaratory judgment, restraining order, or temporary or permanent injunction under Section 5 is moot.

[19]Schedler further contends that Hall's separate claims under the First, Fourteenth, and Fifteenth Amendments must be dismissed because Hall is prohibited from asserting such claims separately.   Schedler fails to cite, nor has the Court identified, any law or case to substantiate this contention.   Thus, it will not be considered by the Court.

[20]Schedler further requests that the Court deny Hall's request for a preliminary injunction. However, during the Court's November 2, 2012 hearing on the matter, the undersigned denied Hall's request for a preliminary injunction.   (Doc. 45.)   Thus, Schedler's request that the Court deny Hall's request for such is moot.

Rights Act.[21] Thus, Hall argues that his claims against Schedler should not be dismissed.

## II. Standard of Review

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286-287 (5th Cir. 2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998)). Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim. *Id.* (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A court should consider a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2001)). Considering a Rule 12(b)(1) motion to dismiss first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* (citing *Ramming*, 281 F.3d at 161).

A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Benton v. U.S.*, 960F.2d 19, 21 (5th Cir. 1992). A complaint is subject to dismissal under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In reviewing a Rule

---

[21]Hall further argues that he has sufficiently pled claims upon which relief can be granted under Section 5 of the Voting Rights Act. However, as noted above, such claims were previously dismissed by the Court.

12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010) ("Under the Rule 12(b)(6) standard, all well-pleaded facts are viewed in the light most favorable to the plaintiff . . . ."); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In ruling on a Rule 12(b)(1) motion, however, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009), *cert. denied*, 558 U.S. 1111 (2009); *Ramming*, 281 F.3d at 161 (stating that a court ruling on a Rule 12(b)(1) motion may evaluate "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.")[22]  A motion to dismiss for lack of subject matter jurisdiction should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support

---

[22]Here, none of the parties have submitted affidavits, testimony, or other evidentiary materials. Thus, the Court's review is limited to whether the allegations in Hall's Original Complaint and subsequent Amending and Supplemental Complaints are sufficient to establish subject matter jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) ("[I]f the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true.  If those jurisdictional allegations are sufficient the complaint stands.").

of his claims entitling him to relief.  *Wagstaff v. United States Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007).

However, "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."  *Celestine v. TransWood, Inc.*, 467 Fed. Appx. 317, 318 (5th Cir. 2012) (quoting *Ramming*, 281 F.3d at 161).  "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."  *Id.* (quoting *Ramming*, 281 F.3d at 161).  A pleading stating a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction[.]"  *Id.* (citing Fed. R. Civ. P. 8(a)(1)).  In federal question cases, the party must demonstrate a non-frivolous claim based on federal law.  *Gibbs v. Buck*, 307 U.S. 66, 72 (1939).  When a district court finds it lacks subject matter jurisdiction, its determination is not on the merits of the case, and does not bar the plaintiff from pursuing the claim in a proper jurisdiction.  *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (*per curiam*).

## III.   Analysis

### A.   Subject Matter Jurisdiction

The Eleventh Amendment of the U.S. Constitution provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.  This language expressly encompasses not only suits brought against a state by citizens of another state, but suits against a state by citizens of that

same state.  *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, (1984); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  "A state's Eleventh Amendment immunity extends to any state agency or entity deemed an alter ego or arm of the state."  *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).  In general, therefore, a suit in which the state or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.  *Lewis v. University of Texas Medical Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) (citing *Pennhurst*, 465 U.S. 89, 100 (1984)).  This jurisdictional bar applies regardless of the nature of the relief sought.  *Id.*

The Eleventh Amendment also bars a suit against a state official when "the state is a real, substantial party in interest."  *Pennhurst*, 465 U.S. at 101-02 (citations omitted).  Thus, the general rule is that relief sought against an officer is in fact against the sovereign if the decree would operate against the latter.  And, as when the state itself is named as the defendant, a suit against state officials that is in fact a suit against a state is barred regardless of whether it seeks damages or injunctive relief. *Pennhurst*, 465 U.S. at 101-02 (citations omitted); *see also Okpalobi v. Foster*, 244 F.3d 405, 412 (5th Cir. 2001) (plaintiff cannot evade Eleventh Amendment immunity by naming an individual state officer as a defendant in lieu of the state itself).

A state's immunity from suit is not absolute, however, and the Supreme Court has recognized several situations in which an individual may sue a state in federal court.  *Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011).

First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment.[23]  *Coll. Sav. Bank v. Fla. Prepared Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999)); *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976). Second, a state may waive its Eleventh Amendment immunity by voluntarily invoking federal court jurisdiction, or by making a "clear declaration" that it intends to submit itself to federal court jurisdiction.  *Coll. Sav. Bank*, 527 U.S. at 670.   Third, an individual may sue a state under the doctrine set forth by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908).[24]

### 1.   Congress' Authorization of Lawsuits Against the State in Federal Court

First, the Court notes that Congress has abrogated the states' sovereign immunity for claims arising under the Voting Rights Act.  *See, e.g.*, *Mixon v. State of Ohio*, 193 F.3d 389, 398-99 (6th Cir. 1999); *Reaves v. United States DOJ*, 355 F. Supp. 2d 510, 515 (D.D.C. 2005) ("it is reasonable to conclude that Congress, in passing the Voting Rights Act, effected a valid abrogation of state sovereign immunity."); *see also City of Boerne*, 521 U.S. 507, 518 (1997) (noting that the Supreme Court has "concluded

---

[23]In *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721 (2003), the Supreme Court held that although the Constitution does not provide for federal jurisdiction over suits against nonconsenting states, Congress may abrogate such immunity in federal court "if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power [to enforce the constitutional guarantee of due process] under § 5 of the Fourteenth Amendment." *Id.* at 726.  Congress has "parallel power" to abrogate state sovereign immunity in the enforcement of the Fifteenth Amendment as well.  *City of Boerne*, 521 U.S. at 518 (citing *South Carolina v. Katzenbach*, 383 U.S. 301, 308 (1966)).

[24]In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity, thereby permitting suits against state officials in their official capacity in order to enjoin enforcement of an unconstitutional state statute.  *Okpalobi*, 244 F.3d at 411 (citing *Ex parte Young*, 209 U.S. at 157).

that other measures protecting voting rights are within Congress' power to enforce the Fourteenth and Fifteenth Amendments, despite the burdens those measures placed on the States.") (citing *Katzenbach*, 383 U.S. at 308).  Thus, the Court concludes that Hall's claims against Schedler under Section 2 of the Voting Rights Act are not proscribed by Eleventh Amendment sovereign immunity.

As it relates to Hall's Section 1983 claims, it is uncontested that Congress has not abrogated the states' sovereign immunity for claims arising under Section 1983. *Inyo County, Cal. v. Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony*, 538 U.S. 701, 709 (2003).

### 2.    The State's Waiver of Eleventh Amendment Immunity

It is also uncontested that the State of Louisiana has not waived its immunity from suit in federal court.  *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)); La. R.S. § 13:5106(a).  Thus, the only remaining question is whether the *Ex parte Young* doctrine applies to Hall's Section 1983 claims against Schedler in his official capacity.

### 3.    The *Ex parte Young* Doctrine and Hall's Section 1983 Claims Against Schedler

As noted above, in *Ex parte Young*, the Supreme Court carved out an exception to Eleventh Amendment immunity.  *Ex parte Young*, 209 U.S. at 157.  In that ruling, the Court permitted suits against state officials in their official capacity in order to enjoin enforcement of an unconstitutional state statute.  *Okpalobi*, 244 F.3d at 411 (citing *Ex parte Young*, 209 U.S. at 157).  This exception applies when the state official:

(1) has some connection with the enforcement of the statute; or (2) is specifically charged with the duty to enforce the statute and is threatening to exercise that duty. *Id.* at 414-15 (citing *Ex parte Young*, 209 U.S. at 157) ("[i]n making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional . . . such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party.")).

In *Ex parte Young*, the Supreme Court held that enforcement of an unconstitutional law is not an official act because a state cannot confer authority on its officers to violate the Constitution or federal law. *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *American Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 920-21 (5th Cir. 1993)). The *Ex parte Young* exception "has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst*, 465 U.S. at 105. Under this exception an individual official may be liable only for implementing a policy that is "itself [ ] a repudiation of constitutional rights" and "the moving force of the constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (citing *Grandstaff v. City of Borger*, 767 F.2d 161, 169-70 (5th Cir. 1985)).

For *Ex parte Young* to apply, the "suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Aguilar*, 160 F.3d at

1054 (quoting *Saltz v. Tennessee Dep't of Employment Sec.*, 976 F.2d 966, 968 (5th Cir. 1992)).  In *Papasan v. Allain*, 478 U.S. 265 (1986), the Supreme Court opined:

> [*Ex parte Young*] has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation. As we have noted: Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.
>
> Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant. This is true if the relief is expressly denominated as damages. It is also true if the relief is tantamount to an award of damages for a past violation of federal law, even though styled as something else. On the other hand, relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury.

*Id. at 277-78* (quotations and citations omitted).

The Supreme Court recently explained more succinctly that in determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as

prospective." *Va. Office for Prot. & Advocacy v. Stewart,* 131 S. Ct. 1632, 1639 (2011)

(quoting *Verizon Md. Inc. v. Pub. Svc. Comm'n,* 535 U.S. 635, 645 (2002)).

Here, Hall identifies Schedler as the "Chief Election Officer" of the State of

Louisiana.  (Doc. 1, ¶ 8.)  Hall's Original Complaint alleges that Schedler is an

"enforcement official[ ] maintaining, executing, and enforcing the 1993 Judicial

Election Plan in the form it currently exits [*sic*]."  (Doc. 1, ¶ 68.)  Hall's Second

Amending and Supplemental Complaint alleges that Schedler:

> is charged with maintaining voter records, and is the enforcement officer
> of the State of Louisiana election laws, and as such, implements and
> maintains State of Louisiana and it municipal election standards,
> regulations, practices, and procedures as required by the State of
> Louisiana, the City of Baton Rouge, and the Parish of East Baton Rouge,
> particularly, governing and regulating the enforcement of the . . . 1993
> Judicial Election Plan.

(Doc. 74, ¶ 9.)  According to Hall, the current Judicial Election Plan, "as written,

maintained[,] and enforced, and presently implemented by the Secretary of State as

the Chief Election and Administrative Officer[,] compels all others, including the

[Defendants] . . . to carry out the discriminatory and disparate effects of the Judicial

Election Plan" against him.  (Doc. 74, ¶ 16.)  Hall further alleges that Schedler

"certifies all candidates elected for public office in Louisiana . . . and issue[s]

commissions to [the judges] elected [to] City Court."  (Doc. 76, ¶ 18.)

Hall's Complaint also alleges that "[a]ll Defendants, including "the Secretary of

State of Louisiana" are "particularly aware that . . . their application of the [1993

Judicial Election] Plan invidiously discriminates against, and adversely impacts,

Plaintiff . . . [and that] their state action as individuals and/or public officials violate

[*sic*]" federal laws.  (Doc. 74, ¶ 31.)  Hall further alleges that "[a]ll Defendants," including "the Secretary of State of Louisiana," "have separately, jointly, and/or cooperatively acted in such a way that they now must be ordered to comply with the Constitution . . . [Section] 1983 . . . [and] Section 2 . . . of the Voting Rights Act."  (Doc. 76, ¶ 10.)

Hall's Complaint also alleges that Schedler "has the legal and administrative capacity, and authority to enforce the election laws of Louisiana[,] and to grant Plaintiff Hall essential aspects of the relief sought[,] particularly not to endorse, or enforce the challenged Judicial Election Plan . . . ."  (Doc. 76, ¶ 11.)  He further asserts that this lawsuit is an action to "remedy past, present, ongoing, and future" violations of federal law by Defendants.  (Doc. 76, ¶ 3.)  According to Hall, unless the Court enjoins Defendants from "calling, holding, supervising, or certifying any elections" under the current Judicial Election Plan, he will be "irreparably harmed" by Defendants' "continuous and ongoing violations" of federal law.  (Doc. 1, ¶ 88.)

When Hall's Original Complaint, First Amending and Supplemental Complaint, Second Amending and Supplemental Complaint, and Third Amending and Supplemental Complaint are read as one, his Complaint, on its face, alleges that Schedler has some connection with the enforcement of the 1993 Judicial Election Plan, or that he is specifically charged with the duty to enforce the Plan and is currently exercising and/or threatening to exercise that duty.  The Court further concludes that Hall sufficiently alleges an ongoing violation of federal law, and that he seeks relief that is properly characterized as prospective.

16

In sum, the Court concludes that Hall has met the *Ex parte Young* exception. Thus, Hall's Section 1983 claims against Schedler are not proscribed by Eleventh Amendment sovereign immunity.   Accordingly, Schedler's request that the Court dismiss Hall's Section 1983 claims against him is denied, and Schedler's request that the Court deny Hall's request for attorney's fees, pursuant to 42 U.S.C. § 1988 is denied as premature.

### B.   Whether Hall Has Sufficiently Pled Claims Upon Which Relief Can Be Granted

#### 1.   Claims Alleged in Hall's Original Complaint But Not in His Subsequent Amending and Supplemental Complaints

On page 20 of his memorandum in support of his Motion to Dismiss Complaint, First Amending and Supplemental Complaint, and Request for Preliminary and Permanent Injunction Pursuant to Fed.R.Civ.P. Rules 12(b)(1) and 12(b)(6) (Doc. 40), Schedler asserts that Hall's First Amending and Supplemental Complaint superceded his Original Complaint.  Thus, any claims asserted in Hall's Original Complaint, but not in his First Amending and Supplemental Complaint, including his claims under 42 U.S.C. § 1973l, must be dismissed.

As explained above, Hall's subsequent Amending and Supplemental Complaints referred to, adopted, and incorporated the original complaint.  Thus, under the law in this Circuit, all four Complaints must be read as one.  *Stewart*, 372 Fed. Appx. at 478 (citing *King*, 31 F.3d at 346).  Accordingly, Schedler's request that the Court dismiss Hall's claims on this basis is denied.

### 2.    Hall's Claims Under Section 1973(j) of the Voting Rights Act

Schedler also contends that Hall has failed to state a claim upon which relief can be granted under 42 U.S.C. § 1973j, because such actions must be brought by the Attorney General of the United States.

Section 1973j(d) of the Voting Rights Act states:

> Civil action by Attorney General for preventive relief; injunctive and other relief. Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2, 3, 4, 5, 7, 10, 11 [42 USCS § 1973, 1973a, 1973b, 1973c, 1973e, 1973h, or 1973i], or subsection (b) of this section, the Attorney General may institute for the United States, or in the name of the United States, an action for preventive relief, including an application for a temporary or permanent injunction, restraining order, or other order, and including an order directed to the State and State or local election officials to require them (1) to permit persons listed under this Act to vote and (2) to count such votes.

42 U.S.C. § 1973j(d).   However, it is well established that the statute's specific references to Attorney General of United States are intended to give the Attorney General power to bring suit to enforce what might otherwise be viewed as private rights.   *See Allen v State Bd. of Elections*, 393 US 544, 555 n. 18 (1969); *Gray v. Main*, F. Supp. 998, 1000 (M.D. Ala. 1966).   Further, the Voting Rights Act does not deny private parties authorization to seek declaratory relief.   *Allen*, 393 US at 555 n. 18. Accordingly, Schedler's request that the Court deny Hall's claims under 42 U.S.C. § 1973(j) is denied.

18

### 3. Hall's Claims Under Section 2 of the Voting Rights Act of 1965

In support of his motion, Schedler argues that Hall has failed to state a claim upon which relief can be granted under Section 2 of the Voting Rights Act.[25]  Schedler generally argues that it is the responsibility of the Louisiana Legislature, and not the Secretary of State to revise the current Judicial Election Plan.  Schedler further contends that Hall has failed to establish that Schedler violated Louisiana's Constitution or statutes, which Schedler contends governs judicial elections, or that he engaged in discriminatory conduct.  According to Schedler, he does not have the authority to grant Hall the remedies he seeks.  Rather, the Louisiana Attorney General is the proper defendant in this matter.  Thus, Hall's claims against Schedler must be dismissed.

---

[25]Section 2 of the Voting Rights Act of 1965 is codified at 42 U.S.C. § 1973 and provides:

(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 4(f)(2) [42 USCS § 1973b(f)(2)], as provided in subsection (b).

(b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

42 U.S.C. § 1973.

19

To prevail on a claim of vote dilution under Section 2 of the Voting Rights Act, Hall must first meet certain threshold requirements set out by the Supreme Court in *Thornburg v. Gingles*, 478 U.S. 30 (1986).   The *Gingles* factors are: (1) that the minority group is sufficiently large and geographically compact to constitute a majority in a single-member district; (2) that the minority group is politically cohesive; and (3) that the white majority votes sufficiently as a bloc to cause it to usually defeat the minority's preferred candidate. *Gingles*, 478 U.S. at 49-50.   If Hall makes these three threshold showings, the question becomes whether under the totality of the circumstances Hall has demonstrated a violation of Section 2. *Westwego Citizens for Better Government v. Westwego*, 946 F.2d 1109, 1116 (5th Cir. La. 1991) (*Westwego III*).

Here, Hall alleges that African Americans constitute at 54.3 % of the City's total population.   He further alleges that, as of October 12, 2012, the total number of African American registered voters exceeded fifty-four percent.   (Doc. 1, ¶ 43.)   Thus, the current Judicial Election Plan, which creates two Divisions in which African Americans voters are the majority and three Divisions in which White voters are the majority, impermissibly dilutes the votes of African Americans, who are now a majority of the City's total population, voting age population, and registered voters.   Hall also alleges that the current Judicial Election Plan: (1) does not permit the election of more than two African American judges, despite the fact that African Americans now constitute a majority of the total population, voting age population, and registered voters; and (2) guarantees three White judges will be elected by diluting the majority African American vote in Divisions A, C, and E.   Hall further alleges that White voters in

Section 2, which is made up of Divisions A, C, and E, "vote sufficiently as a bloc to enable them . . . to defeat the Black voter's preferred candidates." (Doc. 1, ¶ 53.)

When accepting all well plead facts as true, and viewing the facts in the light most favorable to Hall, the Court concludes that Hall has pled sufficient claims to satisfy the *Gingles* factors. Further, under the totality of the circumstances it cannot be said that Hall has failed to plead sufficient facts to state a plausible claim under Section 2 of the Voting Rights Act.

As it relates to Schedler, as outlined in detail above, Hall's Complaint sufficiently alleges that Schedler, in his official capacity as the Secretary of State, has some connection with the enforcement of the 1993 Judicial Election Plan, or that he is specifically charged with the duty to enforce the Plan and is currently exercising and/or threatening to exercise that duty. Further, Schedler fails to cite, nor has the Court identified, any law or case to support his contention that he is an improperly named defendant in this matter. Indeed, Schedler has been named as a defendant in a number of Voting Rights Act cases in the State of Louisiana. *See, e.g.*, *Clark v. Marx*, No. 11-2149, 2012 U.S. Dist. LEXIS 2429, at *31-32 (W.D. La. Jan. 9, 2012) (noting Schedler's role in opening qualifying for elected positions, as well as holding and conducting state elections). Additionally, given Schedler's role as the "chief election officer in the state," La. R.S. § 18:421, it cannot be said that he would not be required to comply with the orders of this Court in this matter, or that he would not be involved in providing, implementing, and/or enforcing whatever injunctive or prospective relief

may be granted to Hall.  For these reasons, Schedler's request that the Court dismiss Hall's claims against him under Section 2 of the Voting Rights Act is denied.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that Defendant Secretary of State Tom Schedler's **Motion to Dismiss Complaint, First Amending and Supplemental Complaint, and Request for Preliminary and Permanent Injunction Pursuant to Fed.R.Civ.P. Rules 12(b)(1) and 12(b)(6) (Doc. 40)** is **DENIED**.

**IT IS FURTHER ORDERED** that Schedler's **Motion Pursuant to 42 U.S.C. § 1983l(b) (Doc. 42)** is **DENIED**.

**IT IS FURTHER ORDERED** that Schedler's **Motion to Dismiss Complaint and First Amending and Supplemental Complaint Pursuant to Rule 12(b)(b) (Doc. 47)** is **DENIED**.

Baton Rouge, Louisiana, this 30th day of September, 2013.

_____
**BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**