UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**KENNETH HALL**                                                                CIVIL ACTION

**VERSUS**

**STATE OF LOUISIANA, ET AL.**                              NO.: 12-00657-BAJ-RLB

**RULING AND ORDER**

Before the Court is a **Motion to Dismiss (Doc. 99)**, filed by Defendants Judge Laura Davis, Judge Suzan Ponder, and Judge Alex Wall (the "Defendant-Judges"), seeking an order from this Court dismissing Plaintiff Kenneth Hall's ("Hall") claims against them, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] Hall opposes the motion. (Doc. 103.) The Defendant-Judges were granted leave to file a memorandum in response to Hall's memorandum in opposition. (Doc. 120.) The motion was heard with oral argument. The Court has jurisdiction pursuant to 28 U.S.C. 1331.

---

[1] Since the filing of the instant motions to dismiss, Hall filed a Second Amending and Supplemental Complaint and a Third Amending and Supplemental Complaint. (Docs. 74 and 76.) Where, as here, the plaintiff's subsequent complaints refer to, adopt, and incorporate the original complaint, it cannot be said that the subsequent complaints superceded the original complaint. *Stewart v. City of Houston Police Dep't*, 372 Fed. Appx. 475, 478 (5th Cir. 2010) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Thus, in considering the instant motions, the Court shall analyze Hall's Original Complaint (Doc. 1), First Amending and Supplemental Complaint (Doc. 13), Second Amending and Supplemental Complaint (Doc. 74), and Third Amending and Supplemental Complaint (Doc. 76).

## I.     Background

Hall[2] filed this lawsuit[3] pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. §§ 1983[4] ("Section 1983"), 1986; Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973; Section 5 of the Voting Rights Act of 1965[5], as amended, 42 U.S.C. § 1973c; the First Amendment to the United States Constitution, U.S. CONST. amend. I; the Fourteenth Amendment to the United States Constitution, U.S. CONST. amend. XIV, § 1; the Fifteenth Amendment to the United States Constitution,

---

[2] On May 1, 2013, Byron Sharper ("Sharper") was added as an Intervenor-Plaintiff in this matter. (Doc. 127.) Subsequently, Sharper filed a Complaint (Doc. 128) and a Supplemental Complaint (Doc. 133). However, this ruling and order relates to Hall's claims only.

[3] Hall's original complaint was filed as a class action. (Doc. 1.) Subsequently, Hall filed Plaintiff's Motion to Certify Case as a Class Action (Doc. 58), which was denied as premature, without prejudice to Hall's right to re-file the motion, if necessary, after the Court issues its rulings on the pending dispositive motions. (Doc. 172.)

[4] "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.' [T]his provision safeguards certain rights conferred by federal statutes." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citing *Maine v. Thiboutot*, 448 U.S. 1 (1980)).

While it is not clear from Hall's pleadings, it appears that Hall's Section 1983 claims include: (1) a Section 1983 claim that the 1993 Judicial Election Plan violates the First Amendment's guarantee of freedom of speech, made applicable to the States by the Equal Protection Clause of the Fourteenth Amendment; (2) a Section 1983 claim that the 1993 Judicial Election Plan infringes Hall's fundamental right to vote, as protected by the Fourteenth Amendment; (3) a Section 1983 claim that the 1993 Judicial Election Plan violates the Equal Protection Clause of the Fourteenth Amendment; (4) a Section 1983 claim that the 1993 Judicial Election Plan violates the Due Process Clause of the Fourteenth Amendment; (5) a Section 1983 claim that the 1993 Judicial Election Plan violates the Fifteenth Amendment; (6) a Section 1983 claim that the 1993 Judicial Election Plan violates Section 2 of the Voting Rights Act of 1965; and (7) a Section 1983 claim that the 1993 Judicial Election Plan violates the "democratic principles of majority rule and individualistic egalitarianism" related to the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment.

[5] Hall's original Complaint, and subsequent Amending and Supplemental Complaints alleged that Defendants failed to obtain federal preclearance for the current Judicial Election Plan, in violation of the Voting Rights Act of 1965. However, in light of the United States Supreme Court's opinion in *Shelby County, Alabama v. Eric H. Holder, Attorney General, et al.*, 570 U.S. ___ (2013), this Court dismissed Hall's Section 5 claims, without prejudice. (Doc. 173.) Thus, Hall's Section 5 claims shall not be considered by the Court.

U.S. CONST. amend. XV, § 1, and "the democratic principles of majority rule and individualist egalitarianism of the United States Constitution"[6] against Defendants the State of Louisiana, Governor Piyush Jindal[7], Attorney General James Caldwell[8], Secretary of State Tom Schedler[9], the City of Baton Rouge, the Parish of East Baton Rouge, the City Court of Baton Rouge, Mayor Melvin Holden[10], the Louisiana House of Representatives[11], the Louisiana Senate[12], Judge Laura Davis, Judge Suzan Ponder, and Judge Alex Wall. (Docs. 1, 13, 74, and 76.) Hall alleges that the current judicial election plan, enacted by the Louisiana State Legislature in 1993, dilutes and diminishes the voting rights of African American voters in the City of Baton Rouge, in violation of the U.S. Constitution and the Voting Rights Act of 1965. Hall further alleges that the judicial election plan, codified at La. R.S. § 1(4)(a)(b)(c), which divides

---

[6] While it is not clear which Constitutional Amendment or federal statute Hall is referencing, it appears that the reference to the "democratic principles of majority rule and individualistic egalitarianism" is related to the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

[7] Defendant Piyush "Bobby" Jindal is sued in his official capacity as the Governor of the State of Louisiana.

[8] Defendant James "Buddy" Caldwell is sued in his official capacity as the Attorney General of the State of Louisiana.

[9] Defendant Tom Schedler is sued in his official capacity as the Louisiana Secretary of State.

[10] Defendant Melvin "Kip" Holden is sued in his official capacity as the Mayor of the City of Baton Rouge.

[11] The Louisiana House of Representatives is sued by and through Charles "Chuck" Kleckley, in his official capacity as Speaker of the Louisiana House of Representatives, and Walt Leger, III, in his official capacity as Speaker Pro Tempore of the Louisiana House of Representatives.

[12] The Louisiana Senate is sued by and through John Alario, Jr., in his official capacity as President of the Louisiana Senate, and Sharon Weston Broom, in her official capacity as President Pro Tempore of the Louisiana Senate.

the City of Baton Rouge into two election Sections (Sections 1 and 2) and five election Divisions (Divisions A, B, C, D, and E)[13], impermissibly dilutes the votes of African Americans, who now make up 54.3% of the total City population.[14]

According to Hall, the current Judicial Election Plan discriminates against African Americans because African American voters, who make up the majority of Section 1 and the City population, are allotted only two judges, while White voters, who make up the majority of Section 2 but a minority of the City population, are allotted three judges.  Hall further alleges that the Defendants' refusal to reapportion the City Court judges and/or redraw the geographic boundaries of the Divisions in accordance with the City of Baton Rouge's 2010 Census demographic data is an intentional attempt to dilute the votes of African Americans.

Accordingly, Hall seeks a ruling and judgment declaring, *inter alia*, that the 1993 Judicial Election Plan violates: (1) the First Amendment's guarantee of freedom of speech, made applicable to the States by the Equal Protection Clause of the Fourteenth Amendment; (2) Hall's fundamental right to vote, as protected by the Fourteenth Amendment; (3) the Equal Protection Clause of the Fourteenth Amendment; (4) the Due Process Clause of the Fourteenth Amendment; (5) the

---

[13]Under the current Judicial Election Plan, the City of Baton Rouge is divided into two judicial election Sections: Section 1 and Section 2.  Each Section then divided into multiple Divisions.  Section 1 is divided into Divisions B and D, and Section 2 is divided into Divisions A, C, and E.  Each Division elects one judge to the City Court of Baton Rouge.

[14]Hall also points the Court to the United States Census Data, which indicates that the total population of Whites, not Hispanic or Latino, in the City of Baton Rouge decreased from 118,429 or 53.9% in the year 1990 to 86,679 or 37.8% in the year 2010.  (Doc. 1, ¶¶ 19-21.)

Fifteenth Amendment; (6) Section 2 of the Voting Rights Act of 1965; and (7) the "democratic principles of majority rule and individualistic egalitarianism" related to the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment. Further, Hall requests an injunction forbidding Defendants from enforcing the 1993 Judicial Election Plan, including enjoining Defendants from "calling, holding, supervising, or certifying" any future elections. Hall also seeks a ruling and judgment holding Defendants liable under Section 1983, and granting him attorney's fees, pursuant to 42 U.S.C. § 1988.

As to the instant motion, the Defendant-Judges seek an order from this Court dismissing Hall's claims against them, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Defendant-Judges contend that the Court lacks subject matter jurisdiction to adjudicate claims brought against them, as they are protected by Eleventh Amendment immunity. In the alternative, they argue that they are protected by judicial immunity and qualified immunity. The Defendant-Judges further contend that Hall has failed to state a claim upon which relief can be granted because his Section 1983 claims are proscribed. They further argue that Hall has failed to state a claim upon which relief can be granted because their alleged actions constitute free speech, which is protected by the First Amendment. In the alternative, the Defendant-Judges argue that Hall has failed to state a claim upon which relief can be granted under the Voting Rights Act because the "one-man, one-vote" principle does not apply to judicial elections, and because the Defendant-Judges are incapable of granting the relief he seeks.

Hall opposes the motion and argues that the Court has subject matter jurisdiction, as the Defendant-Judges are not immune from suit. He further contends that his Section 1983 claims are not proscribed. Hall also argues that he has sufficiently pled claims upon which relief can be granted, as the Defendant-Judges' actions are not protected by the First Amendment, and that the "one-man, one-vote" principle was codified into law by the Louisiana Legislature. Thus, Hall argues that his claims against the Defendant-Judges should not be dismissed.

## II.  Standard of Review

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286-287 (5th Cir. 2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998)). Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim. *Id.* (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A court should consider a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2001)). Considering a Rule 12(b)(1) motion to dismiss first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* (citing *Ramming*, 281 F.3d at 161).

A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Benton v. U.S.*, 960F.2d 19, 21 (5th Cir. 1992). A complaint is subject to dismissal under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010) ("Under the Rule 12(b)(6) standard, all well-pleaded facts are viewed in the light most favorable to the plaintiff . . . ."); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In ruling on a Rule 12(b)(1) motion, however, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009), *cert. denied*, 558 U.S. 1111 (2009); *Ramming*, 281 F.3d at 161 (stating that a court ruling on a Rule 12(b)(1) motion may evaluate "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.")[15] A motion to dismiss for lack of subject matter jurisdiction should only be

---

[15]Here, none of the parties have submitted affidavits, testimony, or other evidentiary materials. Thus, the Court's review is limited to whether the allegations in Hall's Original Complaint and subsequent Amending and Supplemental Complaints are sufficient to establish subject matter

granted if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief. *Wagstaff v. United States Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007).

However, "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Celestine v. TransWood, Inc.*, 467 Fed. Appx. 317, 318 (5th Cir. 2012) (quoting *Ramming*, 281 F.3d at 161). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* (quoting *Ramming*, 281 F.3d at 161). A pleading stating a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction[.]" *Id.* (citing Fed. R. Civ. P. 8(a)(1)). In federal question cases, the party must demonstrate a non-frivolous claim based on federal law. *Gibbs v. Buck*, 307 U.S. 66, 72 (1939). When a district court finds it lacks subject matter jurisdiction, its determination is not on the merits of the case, and does not bar the plaintiff from pursuing the claim in a proper jurisdiction. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (*per curiam*).

### III. Analysis

As an initial matter, the Court notes that the Defendant-Judges were originally sued in their individual and official capacities as Judges of the City Court of Baton Rouge. However, during the May 31, 2013 hearing on the instant motion, the Court dismissed Hall's Section 1983 and Section 2 of the Voting Rights Act claims against the

---

jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) ("[I]f the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands.").

8

Defendant-Judges in their *individual* capacities, after finding that the facts alleged were insufficient to destroy judicial immunity. (Doc. 137.) Thus, the Court's analysis on the motion *sub judice* shall be limited to: (1) all claims against the Defendant-Judges in their *official* capacities; and (2) Hall's claims against the Defendant-Judges in their *individual* capacities under the First, Fourteenth, and Fifteenth Amendments.

### A.  Subject Matter Jurisdiction

In support of their motion, the Defendant-Judges contend that this Court lacks subject matter jurisdiction, and that they are entitled to Eleventh Amendment immunity, judicial immunity, and qualified immunity.

The Eleventh Amendment of the U.S. Constitution provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. This language expressly encompasses not only suits brought against a state by citizens of another state, but suits against a state by citizens of that same state. *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, (1984); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). "A state's Eleventh Amendment immunity extends to any state agency or entity deemed an alter ego or arm of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). In general, therefore, a suit in which the state or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. *Lewis v.*

*University of Texas Medical Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) (citing *Pennhurst*, 465 U.S. 89, 100 (1984)). This jurisdictional bar applies regardless of the nature of the relief sought. *Id.*

The Eleventh Amendment also bars a suit against a state official when "the state is a real, substantial party in interest." *Pennhurst*, 465 U.S. at 101-02 (citations omitted). Thus, the general rule is that relief sought against an officer is in fact against the sovereign if the decree would operate against the latter. And, as when the state itself is named as the defendant, a suit against state officials that is in fact a suit against a state is barred regardless of whether it seeks damages or injunctive relief. *Pennhurst*, 465 U.S. at 101-02 (citations omitted); *see also Okpalobi v. Foster*, 244 F.3d 405, 412 (5th Cir. 2001) (plaintiff cannot evade Eleventh Amendment immunity by naming an individual state officer as a defendant in lieu of the state itself).

A state's immunity from suit is not absolute, however, and the Supreme Court has recognized several situations in which an individual may sue a state in federal court. *Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011). First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment.[16] *Coll. Sav. Bank v. Fla. Prepared Postsecondary Educ.*

---

[16] In *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721 (2003), the Supreme Court held that although the Constitution does not provide for federal jurisdiction over suits against nonconsenting states, Congress may abrogate such immunity in federal court "if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power [to enforce the constitutional guarantee of due process] under § 5 of the Fourteenth Amendment." *Id.* at 726. Congress has "parallel power" to abrogate state sovereign immunity in the enforcement of the Fifteenth Amendment as well. *City of Boerne*, 521 U.S. at 518 (citing *South Carolina v. Katzenbach*, 383 U.S. 301, 308 (1966)).

*Expense Bd.*, 527 U.S. 666, 670 (1999)); *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976). Second, a state may waive its Eleventh Amendment immunity by voluntarily invoking federal court jurisdiction, or by making a "clear declaration" that it intends to submit itself to federal court jurisdiction. *Coll. Sav. Bank*, 527 U.S. at 670. Third, an individual may sue a state under the doctrine set forth by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908).[17]

### 1. Congress' Authorization of Lawsuits Against the State in Federal Court

First, the Court notes that Congress has abrogated the states' sovereign immunity for claims arising under the Voting Rights Act. *See, e.g.*, *Mixon v. State of Ohio*, 193 F.3d 389, 398-99 (6th Cir. 1999); *Reaves v. United States DOJ*, 355 F. Supp. 2d 510, 515 (D.D.C. 2005) ("it is reasonable to conclude that Congress, in passing the Voting Rights Act, effected a valid abrogation of state sovereign immunity."); *see also City of Boerne*, 521 U.S. 507, 518 (1997) (noting that the Supreme Court has "concluded that other measures protecting voting rights are within Congress' power to enforce the Fourteenth and Fifteenth Amendments, despite the burdens those measures placed on the States.") (citing *Katzenbach*, 383 U.S. at 308). Thus, Hall's Section 2 of the Voting Rights Act claims against the Defendant-Judges are not proscribed by Eleventh Amendment sovereign immunity.

---

[17]In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity, thereby permitting suits against state officials in their official capacity in order to enjoin enforcement of an unconstitutional state statute. *Okpalobi*, 244 F.3d at 411 (citing *Ex parte Young*, 209 U.S. at 157).

11

As it relates to Hall's Section 1983 claims, it is uncontested that Congress has not abrogated the states' sovereign immunity for claims arising under Section 1983. *Inyo County, Cal. v. Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony*, 538 U.S. 701, 709 (2003).

### 2. The State's Waiver of Eleventh Amendment Immunity

It is also uncontested that the State of Louisiana has not waived its immunity from suit in federal court. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)); La. R.S. § 13:5106(a). Thus, the remaining question is whether the *Ex parte Young* doctrine applies to Hall's Section 1983 claims against the Defendant-Judges.

### 3. The *Ex parte Young* Doctrine and Hall's Section 1983 Claims

As noted above, in *Ex parte Young*, the Supreme Court carved out an exception to Eleventh Amendment immunity. *Ex parte Young*, 209 U.S. at 157. In that ruling, the Court permitted suits against state officials in their official capacity in order to enjoin enforcement of an unconstitutional state statute. *Okpalobi*, 244 F.3d at 411 (citing *Ex parte Young*, 209 U.S. at 157). This exception applies when the state official: (1) has some connection with the enforcement of the statute; or (2) is specifically charged with the duty to enforce the statute and is threatening to exercise that duty. *Id.* at 414-15 (citing *Ex parte Young*, 209 U.S. at 157).

Hall's Original Complaint alleges that the Defendant-Judges "actively campaigned and testified in opposition to Louisiana House Bill 1013 in Regular Session

2004 . . . [and] actively opposed Louisiana House Bill 985 of Regular Session 2006 to reapportion, redistrict and reallot City Court judgships . . . ." (Doc. 1, ¶ 77.) According to Hall, such Bills would have "partially or fully negated the disparate and now consequential adverse impact on the Black citizens and voters in Baton Rouge and remedied the complaints alleged herein and legally salvaged the current Judicial Election Plan." (Doc. 1, ¶ 76.) In his Second Amending and Supplemental Complaint, Hall alleges that the Defendant-Judges have:

> acted individually and in concert with others in the intentional defiance of the Plaintiff's right of suffrage, right to majority rule, and right of freedom from discrimination as asserted heretofore and herein in their invidious opposition to the Plaintiff's claims individually, and as a group of individuals, who are acting and have acted as State of Louisiana judicial officers and agents, endowed by the State with the powers and functions of government . . . .

(Doc. 74, ¶ 13.) Hall further alleges that Defendant-Judges have "personally benefitted [from] and politically supported maintenance thereof and continuance of the [Judicial Election Plan]. . . ."  (Doc. 74, ¶ 14.) Further, as alleged by Hall, the Defendant-Judges' "actions helped to prevent the successful outcome of the remedial actions of state representatives and the legislative bills filed in 2004 and 2006 before the Louisiana Legislature to ameliorate the disparate impacts of the Judicial Election Plan . . . ." (Doc. 74, ¶ 15.)

Even when accepting all well-pled facts as true and viewing them in a light most favorable to Hall, it cannot be said that he has sufficiently alleged that the Defendant-Judges have some connection with the enforcement of the 1993 Judicial Election Plan, or that they are specifically charged with the duty to enforce the Plan and are

13

threatening to exercise that duty. *See Ex parte Young*, 209 U.S. at 157 ("[i]n making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional . . . such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party."). Therefore, the Court concludes that the *Ex parte Young* exception does not apply, and that Hall's Section 1983 claims against the Defendant-Judges are barred by the Eleventh Amendment.

### B.   Absolute Judicial Immunity

In support of their motion, the Defendant-Judges also contend that they are protected by absolute judicial immunity. Thus, Hall's remaining claims against them must be dismissed. They argue that their testimony before the Louisiana Legislature were judicial acts. Thus, they are immune from suit.

In opposition, Hall argues that the Defendant-Judges' actions were nonjudicial because their testimony before the Louisiana Legislature was not a normal judicial function and because their actions took place outside of the City Court building.[18]

It is well settled that, generally, a judge is immune from suit for any action taken within the scope of the judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (citations omitted). As opined by the Supreme Court:

---

[18]Hall further contends that "[t]he Defendant Judges, when questioned in 2004 by a minority member of the House Committee, testified their actions equated to no less than judicial politics designed to benefit them politically [based on their race] and to preserve themselves in office." (Doc. 103, p. 12.) Hall fails to identify, however, where in his Original Complaint or subsequent Amending and Supplemental Complaints he made this allegation, and fails to point to any evidence in the record to substantiate this contention. Thus, it will not be considered by the Court.

> Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'

*Mireles*, 502 U.S. at 9-10 (quoting *Bradley v. Fisher*, 80 U.S. 335, 13 (1872)). Further, judicial immunity is an immunity from suit, not just the ultimate assessment of damages. *Id.* at 11 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

There are only two circumstances under which judicial immunity may be overcome. *Davis v. Tarrant County Tex.*, 565 F.3d 214, 221 (5th Cir. Tex. 2009). "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Id.* (quoting *Mireles*, 502 U.S. at 11). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* (quoting *Mireles*, 502 U.S. at 11). Allegations of bad faith or malice are not sufficient to overcome judicial immunity. *Id.* (quoting *Mireles*, 502 U.S. at 11 ("judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial.")).

"[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Davis*, 565 F.3d at 222 (quoting *Mireles*, 502 U.S. at 12). "[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.' In other words, [a

15

court should] look to the particular act's relation to a general function normally performed by a judge . . . ." *Davis*, 565 F.3d at 222 (quoting *Mireles*, 502 U.S. at 13).

The Fifth Circuit has adopted a four-factor test for determining whether a judge's actions were judicial in nature: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. *Id.* at 222-23 (citing *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005.)  These factors are broadly construed in favor of immunity. *Id.* at 223 (citing *Ballard*, 413 F.3d at 515).

Here, the Defendant-Judges do not contest that they testified to the Louisiana Legislature in 2004 regarding House Bill 1013, and in 2006 regarding House Bill 985. Instead, they contend that Cannon 4 of the Code of Judicial Conduct[19] permits state

---

[19]Canon 4 of the Louisiana Code of Judicial Conduct states:

**Quasi-Judicial Activities**

**A Judge May Engage in Quasi-Judicial Activities to Improve the Law, the Legal System, and the Administration of Justice**

A judge, subject to the proper performance of judicial duties, may engage in the following quasi-judicial activities, if in doing so the judge does not impair, limit or restrict his or her capacity to decide impartially any issue that the judge knows is likely to come before the judge:

    A.    A judge may speak, write, lecture, teach, and participate in other activities concerning the law, the legal system, and the administration of justice.

    B.    A judge may appear at a public hearing before an executive or legislative body or official on matters concerning the law, the legal system, and the administration of justice, and may otherwise consult with an executive

16

judges to appear in public hearings before a legislative body on matters concerning the law, the legal system, and the administration of justice.

Hall does not allege that the Defendant-Judges' testimony before the Louisiana Legislature were acts not normally performed by a judge. Rather, Hall merely alleges that the Defendant-Judges did so for their own personal benefit. Such allegations, however, are insufficient to establish a plausible claim that the Defendant-Judges' acts were not a normal judicial function. Indeed, Canon 4 of Louisiana's Code of Judicial Conduct suggests that the complained of actions are generally permitted and normally performed by state and local judges.

It is not clear from Hall's Complaint exactly where the complained of acts took place. Nor is the Court aware of the specific content of the Defendant-Judges' testimony. However, nothing in Hall's Complaint suggests that the Defendant-Judges' testimony took place in an inappropriate location, or was outside of the scope of the then pending House Bills or the issues permitted by Canon 4 of Louisiana's Code of Judicial Conduct. Futher, Hall has failed to point to any law or case to support his

---

        or legislative body or official, but only on matters concerning the administration of justice.

C.    A judge may serve as a member, officer, or director of an organization or governmental agency devoted to the improvement of the law, the legal system, or the administration of justice. A judge shall not personally solicit funds for such an organization or agency, or allow his or her name to be used in the solicitation of funds. A judge may make recommendations to the public and private fund-granting agencies on projects and programs concerning the law, the legal system, and the administration of justice.

*Code of Judicial Conduct*, http://www.lasc.org/rules/supreme/cjc.asp (September 30, 2013) (emphasis in original).

contention that the complained of acts were nonjudicial. The Court broadly construes "matter concerning the administration of justice" to include how judicial election Sections and Divisions should be drawn. The likelihood that the Defendant-Judges' testimony was self-serving does not require the Court to conclude that such testimony was not "concerning the administration of justice." Thus, the Court concludes that the Defendant-Judges' actions were judicial in nature.

Hall's Complaint is also void of any allegations that the Louisiana Legislature did not deal with the Defendant-Judges in their judicial capacities. Further, accepting all well-pleaded facts as true and viewing them in a light most favorable to Hall, the Court finds that Hall's Complaint does not sufficiently allege that the Defendant-Judges' actions were taken in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (emphasizing that the scope of a judge's jurisdiction must be construed broadly where the issue is the immunity of the judge); *Holloway v. Walker*, 765 F.2d 517, 523 (5th Cir. 1985).

While it may be true that the Defendant-Judges' actions were taken for their own personal benefit, and not for the benefit of the citizens of Baton Rouge generally, allegations of bad faith or malice are not sufficient to overcome judicial immunity. *Davis*, 565 F.3d at 221 (quoting *Mireles*, 502 U.S. at 11). Moreover, "disagreement with the action taken by a judge . . . does not justify depriving that judge of his immunity," nor does the fact that "tragic consequences" may ensue from the judge's action deprive him of his absolute immunity." *Stump*, 435 U.S. at 363-64. Indeed, judges have absolute judicial immunity for all acts performed in the exercise of judicial functions,

no matter the alleged magnitude or mendacity of the acts. *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994).

In sum, the Court concludes that Hall has not sufficiently alleged facts that would destroy the Defendant-Judges' absolute judicial immunity. Therefore, Hall has failed to state a claim upon which relief can be granted, and his remaining claims against the Defendant-Judges in their respective individual and official capacities must be dismissed.

**IV.     Conclusion**

Accordingly,

**IT IS ORDERED** that Defendants Judge Laura Davis, Judge Suzan Ponder, and Judge Alex Wall's **Motion to Dismiss (Doc. 99)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Kenneth Hall's remaining claims against Judge Laura Davis, Judge Suzan Ponder, and Judge Alex Wall are **DISMISSED**, with prejudice.

Baton Rouge, Louisiana, this 30th day of September, 2013.

_____
**BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**