# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **KENNETH HALL** | **CIVIL ACTION** |
| **VERSUS** | |
| **STATE OF LOUISIANA, ET AL.** | **NO.: 12-00657-BAJ-RLB** |

## RULING AND ORDER

Before the Court is **Louisiana Legislature's Motion to Dismiss Pursuant to Fed. R. Civ. P. Rules 12(b)(1) and 12(b)(6) (Doc. 100)**, filed by Defendants the Louisiana House of Representatives and the Louisiana Senate (collectively the "Legislature"), seeking an order from this Court dismissing Plaintiff Kenneth Hall's ("Hall") claims, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] Hall opposes the motion. (Doc. 104.) The Legislature filed a memorandum in response to Hall's memorandum in opposition. (Doc. 113.) Hall was granted leave to file a sur-reply. (Doc. 121.) Subsequently, the Legislature was granted leave to file a response to Hall's sur-reply. (Doc. 135.) The motion was heard with oral argument. The Court has jurisdiction pursuant to 28 U.S.C. 1331.

---

[1]Since the filing of the instant motions to dismiss, Hall filed a Second Amending and Supplemental Complaint and a Third Amending and Supplemental Complaint. (Docs. 74 and 76.) Where, as here, the plaintiff's subsequent complaints refer to, adopt, and incorporate the original complaint, it cannot be said that the subsequent complaints superceded the original complaint. *Stewart v. City of Houston Police Dep't*, 372 Fed. Appx. 475, 478 (5th Cir. 2010) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Thus, in considering the instant motions, the Court shall analyze Hall's Original Complaint (Doc. 1), First Amending and Supplemental Complaint (Doc. 13), Second Amending and Supplemental Complaint (Doc. 74), and Third Amending and Supplemental Complaint (Doc. 76).

## I. Background

Hall[2] filed this lawsuit[3] pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. §§ 1983[4] ("Section 1983"), 1986; Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973; Section 5 of the Voting Rights Act of 1965[5], as amended, 42 U.S.C. § 1973c; the First Amendment to the United States Constitution, U.S. CONST. amend. I; the Fourteenth Amendment to the United States Constitution, U.S. CONST. amend. XIV, § 1; the Fifteenth Amendment to the United States Constitution,

---

[2] On May 1, 2013, Byron Sharper ("Sharper") was added as an Intervenor-Plaintiff in this matter. (Doc. 127.) Subsequently, Sharper filed a Complaint (Doc. 128) and a Supplemental Complaint (Doc. 133). However, this ruling and order relates to Hall's claims only.

[3] Hall's original complaint was filed as a class action. (Doc. 1.) Subsequently, Hall filed Plaintiff's Motion to Certify Case as a Class Action (Doc. 58), which was denied as premature, without prejudice to Hall's right to re-file the motion, if necessary, after the Court issues its rulings on the pending dispositive motions. (Doc. 172.)

[4] "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.' [T]his provision safeguards certain rights conferred by federal statutes." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citing *Maine v. Thiboutot*, 448 U.S. 1 (1980)).

While it is not clear from Hall's pleadings, it appears that Hall's Section 1983 claims include: (1) a Section 1983 claim that the 1993 Judicial Election Plan violates the First Amendment's guarantee of freedom of speech, made applicable to the States by the Equal Protection Clause of the Fourteenth Amendment; (2) a Section 1983 claim that the 1993 Judicial Election Plan infringes Hall's fundamental right to vote, as protected by the Fourteenth Amendment; (3) a Section 1983 claim that the 1993 Judicial Election Plan violates the Equal Protection Clause of the Fourteenth Amendment; (4) a Section 1983 claim that the 1993 Judicial Election Plan violates the Due Process Clause of the Fourteenth Amendment; (5) a Section 1983 claim that the 1993 Judicial Election Plan violates the Fifteenth Amendment; (6) a Section 1983 claim that the 1993 Judicial Election Plan violates Section 2 of the Voting Rights Act of 1965; and (7) a Section 1983 claim that the 1993 Judicial Election Plan violates the "democratic principles of majority rule and individualistic egalitarianism" related to the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment.

[5] Hall's original Complaint, and subsequent Amending and Supplemental Complaints alleged that Defendants failed to obtain federal preclearance for the current Judicial Election Plan, in violation of the Voting Rights Act of 1965. However, in light of the United States Supreme Court's opinion in *Shelby County, Alabama v. Eric H. Holder, Attorney General, et al.*, 570 U.S. ___ (2013), this Court dismissed Hall's Section 5 claims, without prejudice. (Doc. 173.) Thus, Hall's Section 5 claims shall not be considered by the Court.

U.S. CONST. amend. XV, § 1, and "the democratic principles of majority rule and individualist egalitarianism of the United States Constitution"[6] against Defendants the State of Louisiana, Governor Piyush Jindal[7], Attorney General James Caldwell[8], Secretary of State Tom Schedler[9], the City of Baton Rouge, the Parish of East Baton Rouge, the City Court of Baton Rouge, Mayor Melvin Holden[10], the Louisiana House of Representatives[11], the Louisiana Senate[12], Judge Laura Davis[13], Judge Suzan Ponder[14], and Judge Alex Wall.[15] (Docs. 1, 13, 74, and 76.) Hall alleges that the current judicial election plan, enacted by the Louisiana State Legislature in 1993,

---

[6]While it is not clear which Constitutional Amendment or federal statute Hall is referencing, it appears that the reference to the "democratic principles of majority rule and individualistic egalitarianism" is related to the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

[7]Defendant Piyush "Bobby" Jindal is sued in his official capacity as the Governor of the State of Louisiana.

[8]Defendant James "Buddy" Caldwell is sued in his official capacity as the Attorney General of the State of Louisiana.

[9]Defendant Tom Schedler is sued in his official capacity as the Louisiana Secretary of State.

[10]Defendant Melvin "Kip" Holden is sued in his official capacity as the Mayor of the City of Baton Rouge.

[11]The Louisiana House of Representatives is sued by and through Charles "Chuck" Kleckley, in his official capacity as Speaker of the Louisiana House of Representatives, and Walt Leger, III, in his official capacity as Speaker Pro Tempore of the Louisiana House of Representatives.

[12]The Louisiana Senate is sued by and through John Alario, Jr., in his official capacity as President of the Louisiana Senate, and Sharon Weston Broom, in her official capacity as President Pro Tempore of the Louisiana Senate.

[13]Hall originally sued Defendant Laura Davis in her individual and official capacities as a Judge on the City Court of Baton Rouge.

[14]Hall originally sued Defendant Suzan Ponder in her individual and official capacities as a Judge on the City Court of Baton Rouge.

[15]Hall originally sued Defendant Alex "Brick" Wall is his individual and official capacities as a Judge on the City Court of Baton Rouge.

3

dilutes and diminishes the voting rights of African American voters in the City of Baton Rouge, in violation of the U.S. Constitution and the Voting Rights Act of 1965. Hall further alleges that the judicial election plan, codified at La. R.S. § 1(4)(a)(b)(c), which divides the City of Baton Rouge into two election Sections (Sections 1 and 2) and five election Divisions (Divisions A, B, C, D, and E)[16], impermissibly dilutes the votes of African Americans, who now make up 54.3% of the total City population.

According to Hall, the current Judicial Election Plan discriminates against African Americans because African American voters, who make up the majority of Section 1 and the City population, are allotted only two judges, while White voters, who make up the majority of Section 2 but a minority of the City population, are allotted three judges. Hall further alleges that the Defendants' refusal to reapportion the City Court judges and/or redraw the geographic boundaries of the Divisions in accordance with the City of Baton Rouge's 2010 Census demographic data is an intentional attempt to dilute the votes of African Americans.

Accordingly, Hall seeks a ruling and judgment declaring, *inter alia*, that the 1993 Judicial Election Plan violates: (1) the First Amendment's guarantee of freedom of speech, made applicable to the States by the Equal Protection Clause of the Fourteenth Amendment; (2) Hall's fundamental right to vote, as protected by the Fourteenth Amendment; (3) the Equal Protection Clause of the Fourteenth

---

[16]Under the current Judicial Election Plan, the City of Baton Rouge is divided into two judicial election Sections: Section 1 and Section 2. Each Section then divided into multiple Divisions. Section 1 is divided into Divisions B and D, and Section 2 is divided into Divisions A, C, and E. Each Division elects one judge to the City Court of Baton Rouge.

Amendment; (4) the Due Process Clause of the Fourteenth Amendment; (5) the Fifteenth Amendment; (6) Section 2 of the Voting Rights Act of 1965; and (7) the "democratic principles of majority rule and individualistic egalitarianism" related to the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment. Further, Hall requests an injunction forbidding Defendants from enforcing the 1993 Judicial Election Plan, including enjoining Defendants from "calling, holding, supervising, or certifying" any future elections. Hall also seeks a ruling and judgment holding Defendants liable under Section 1983, and granting him attorney's fees, pursuant to 42 U.S.C. § 1988.

As to the instant motion, the Legislature seeks an order from this Court dismissing Hall's claims against it, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Legislature contends that this Court lacks subject matter jurisdiction to adjudicate claims brought against it, as the Legislature is entitled to Eleventh Amendment immunity[17], legislative immunity, and qualified immunity. In the alternative, the Legislature contends that Hall's Section 1983 claims are proscribed. The Legislature further contends that Hall has failed to state a claim upon which relief can be granted: (1) for declaratory relief; (2) under Section 2 of the Voting Rights Act; (3) under Section 5 of the Voting Rights Act; (4) under the First, Fourteenth, and Fifteenth Amendments to the United States Constitution; (5) under 42 U.S.C. § 1986; or (6) for attorney's fees.

---

[17]The Legislature contends that "the individual members of the Louisiana Legislature" are entitled to Eleventh Amendment immunity from suit "in their official capacities." (Doc. 100-1, p. 8.)

5

Hall opposes the motion and argues that the Court has subject matter jurisdiction, as the Legislature is not immune from suit. According to Hall, the Legislature is a necessary party that is capable of granting the relief he seeks. Hall further contends that his Section 1983 claims are not proscribed, and that he is entitled to attorney's fees should he prevail. Hall also argues that he has sufficiently pled a claim upon which relief can be granted under Section 2 of the Voting Rights Act. He further contends that he has sufficiently pled claims upon which relief can be granted under the First, Fourteenth, and Fifteenth Amendments. Thus, the Legislature's motion to dismiss should be denied.

## II.  Standard of Review

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286-287 (5th Cir. 2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998)). Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim. *Id.* (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A court should consider a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2001)). Considering a Rule 12(b)(1) motion to

dismiss first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* (citing *Ramming*, 281 F.3d at 161).

A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Benton v. U.S.*, 960F.2d 19, 21 (5th Cir. 1992). A complaint is subject to dismissal under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010) ("Under the Rule 12(b)(6) standard, all well-pleaded facts are viewed in the light most favorable to the plaintiff . . . ."); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In ruling on a Rule 12(b)(1) motion, however, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009), *cert. denied*, 558 U.S. 1111 (2009); *Ramming*, 281 F.3d at 161 (stating that a court ruling on a Rule 12(b)(1) motion may evaluate "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed

7

Case 3:12-cv-00657-BAJ-RLB   Document 178   09/30/13   Page 7 of 19

facts.)"[18]  A motion to dismiss for lack of subject matter jurisdiction should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief.  *Wagstaff v. United States Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007).

However, "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."  *Celestine v. TransWood, Inc.*, 467 Fed. Appx. 317, 318 (5th Cir. 2012) (quoting *Ramming*, 281 F.3d at 161).  "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."  *Id.* (quoting *Ramming*, 281 F.3d at 161).  A pleading stating a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction[.]"  *Id.* (citing Fed. R. Civ. P. 8(a)(1)).  In federal question cases, the party must demonstrate a non-frivolous claim based on federal law.  *Gibbs v. Buck*, 307 U.S. 66, 72 (1939).  When a district court finds it lacks subject matter jurisdiction, its determination is not on the merits of the case, and does not bar the plaintiff from pursuing the claim in a proper jurisdiction.  *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (*per curiam*).

---

[18]Here, none of the parties have submitted affidavits, testimony, or other evidentiary materials. Thus, the Court's review is limited to whether the allegations in Hall's Original Complaint and subsequent Amending and Supplemental Complaints are sufficient to establish subject matter jurisdiction.  *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) ("[I]f the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true.  If those jurisdictional allegations are sufficient the complaint stands.").

Case 3:12-cv-00657-BAJ-RLB   Document 178   09/30/13   Page 8 of 19

### III. Analysis

#### A. <u>Subject Matter Jurisdiction</u>

In support of its motion, the Legislature contends that this Court lacks subject matter jurisdiction, and that it is entitled to Eleventh Amendment immunity, legislative immunity, and qualified immunity.

The Eleventh Amendment of the U.S. Constitution provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. This language expressly encompasses not only suits brought against a state by citizens of another state, but suits against a state by citizens of that same state. *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, (1984); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). "A state's Eleventh Amendment immunity extends to any state agency or entity deemed an alter ego or arm of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). In general, therefore, a suit in which the state or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. *Lewis v. University of Texas Medical Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) (citing *Pennhurst*, 465 U.S. 89, 100 (1984)). This jurisdictional bar applies regardless of the nature of the relief sought. *Id.*

The Eleventh Amendment also bars a suit against a state official when "the state is a real, substantial party in interest." *Pennhurst*, 465 U.S. at 101-02 (citations omitted). Thus, the general rule is that relief sought against an officer is in fact against the sovereign if the decree would operate against the latter. And, as when the state itself is named as the defendant, a suit against state officials that is in fact a suit against a state is barred regardless of whether it seeks damages or injunctive relief. *Pennhurst*, 465 U.S. at 101-02 (citations omitted); *see also Okpalobi v. Foster*, 244 F.3d 405, 412 (5th Cir. 2001) (plaintiff cannot evade Eleventh Amendment immunity by naming an individual state officer as a defendant in lieu of the state itself).

A state's immunity from suit is not absolute, however, and the Supreme Court has recognized several situations in which an individual may sue a state in federal court. *Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011). First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment.[19] *Coll. Sav. Bank v. Fla. Prepared Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999)); *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976). Second, a state may waive its Eleventh Amendment immunity by voluntarily invoking federal court jurisdiction, or by making a "clear declaration" that it intends to submit

---

[19]In *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721 (2003), the Supreme Court held that although the Constitution does not provide for federal jurisdiction over suits against nonconsenting states, Congress may abrogate such immunity in federal court "if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power [to enforce the constitutional guarantee of due process] under § 5 of the Fourteenth Amendment." *Id.* at 726. Congress has "parallel power" to abrogate state sovereign immunity in the enforcement of the Fifteenth Amendment as well. *City of Boerne*, 521 U.S. at 518 (citing *South Carolina v. Katzenbach*, 383 U.S. 301, 308 (1966)).
10

itself to federal court jurisdiction. *Coll. Sav. Bank*, 527 U.S. at 670. Third, an individual may sue a state under the doctrine set forth by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908).[20]

### 1. Congress' Authorization of Lawsuits Against the State in Federal Court

First, the Court notes that Congress has abrogated the states' sovereign immunity for claims arising under the Voting Rights Act. *See, e.g.*, *Mixon v. State of Ohio*, 193 F.3d 389, 398-99 (6th Cir. 1999); *Reaves v. United States DOJ*, 355 F. Supp. 2d 510, 515 (D.D.C. 2005) ("it is reasonable to conclude that Congress, in passing the Voting Rights Act, effected a valid abrogation of state sovereign immunity."); *see also City of Boerne*, 521 U.S. 507, 518 (1997) (noting that the Supreme Court has "concluded that other measures protecting voting rights are within Congress' power to enforce the Fourteenth and Fifteenth Amendments, despite the burdens those measures placed on the States.") (citing *Katzenbach*, 383 U.S. at 308). Thus, Hall's claims against the Legislature under Section 2 of the Voting Rights Act are not proscribed by Eleventh Amendment sovereign immunity.

As it relates to Hall's Section 1983 claims, it is uncontested that Congress has not abrogated the states' sovereign immunity for claims arising under Section 1983. *Inyo County, Cal. v. Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony*, 538 U.S. 701, 709 (2003).

---

[20]In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity, thereby permitting suits against state officials in their official capacity in order to enjoin enforcement of an unconstitutional state statute. *Okpalobi*, 244 F.3d at 411 (citing *Ex parte Young*, 209 U.S. at 157).

Case 3:12-cv-00657-BAJ-RLB   Document 178   09/30/13   Page 11 of 19

### 2. The State's Waiver of Eleventh Amendment Immunity

It is also uncontested that the State of Louisiana has not waived its immunity from suit in federal court. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)); La. R.S. § 13:5106(a). Thus, the remaining question is whether the *Ex parte Young* doctrine applies to Hall's Section 1983 claims against the Legislature.

### 3. The *Ex parte Young* Doctrine and Hall's Section 1983 Claims

As noted above, in *Ex parte Young*, the Supreme Court carved out an exception to Eleventh Amendment immunity. *Ex parte Young*, 209 U.S. at 157. In that ruling, the Court permitted suits against state officials in their official capacity in order to enjoin enforcement of an unconstitutional state statute. *Okpalobi*, 244 F.3d at 411 (citing *Ex parte Young*, 209 U.S. at 157). This exception applies when the state official: (1) has some connection with the enforcement of the statute; or (2) is specifically charged with the duty to enforce the statute and is threatening to exercise that duty. *Id.* at 414-15 (citing *Ex parte Young*, 209 U.S. at 157).

Hall's Original Complaint alleges that the Legislature "convenes and drafts state laws of Louisiana" and "has joint authority with the City of Baton Rouge over all judicial redistricting and the allotment number of judges for City Court." (Doc. 1, ¶ 16; Doc. 76, ¶¶ 5, 13) Under its authority, the Legislature passed into law the 1993 Judicial Election Plan. (Doc. 1, ¶¶ 23-24.) According to Hall, the current Election Plan can be revised by the Legislature to remedy the alleged federal violations. (Doc. 1, ¶

50.) However, according to Hall, leaders of the Legislature have "repeatedly reneged on promises, commitments, or overtures to revamp state courts . . . despite having been asked by Louisiana citizens and other elected and/or public officials; showing and evidencing no intent to address or remedy" the alleged federal violations. (Doc. 74, ¶¶ 30, 33.) Hall further alleges that, despite making adjustments to other state court election plans, the Legislature "has refused irrationally to redistrict the . . . City Court of Baton Rouge, evidencing invidious discrimination . . . ." (Doc. 76, ¶ 58.)

Even when accepting all well pled facts as true and viewing them in a light most favorable to Hall, it cannot be said that he has sufficiently alleged that the Legislature has some connection with the enforcement of the 1993 Judicial Election Plan; or that they are specifically charged with the duty to enforce the Plan and are threatening to exercise that duty. *See Ex parte Young*, 209 U.S. at 157 ("[i]n making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional . . . such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party."). Indeed, Hall's Original Complaint and subsequent Amending and Supplemental Complaints merely allege that the Legislature has failed to pass into law a revised Judicial Election Plan. Therefore, the Court concludes that the *Ex parte Young* exception does not apply, and that Hall's Section 1983 claims against the Legislature are barred by the Eleventh Amendment.

13

B.  **Absolute Legislative Immunity**

In support of its motion, the Legislature argues that it is immune from suit pursuant to legislative immunity. The Legislature contends that its alleged actions fall within the "sphere of legitimate legislative activity" set out by the Supreme Court in *Dombrowski v. Eastland*, 387 U.S. 82 (1967), thereby making it absolutely immune to civil suits for damages. Hall did not present any argument in opposition.

1. **Whether State Legislators Are Protected by Absolute Legislative Immunity When Sued in Their Official Capacities**

It is well established that state legislatures acting within the scope of their legislative duties are immune from civil suits for damages. *See, e.g.*, *Tenney v. Brandhove*, 341 U.S. 367 (1951); *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (stating that the purpose of legislative immunity, which is derived from the Speech or Debate Clause of the Constitution[21], is to protect legislators engaged in the sphere of legitimate legislative activity from the consequences of litigation's results and the burden of defending themselves) (quotations and citations omitted). However, where, as here, state legislators are sued solely in their official capacities, the question is whether the Legislature is entitled to absolute legislative immunity from official capacity suits for prospective or injunctive relief.

Notwithstanding arguably contradictory *dicta* in *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985), the Fifth Circuit's holding in *Minton v. St. Benard Parish School*

---

[21]U.S. CONST. art. I, § 6.

14

*Board*, 803 F.2d 129, 134 (5th Cir. 1986), and opinions in other circuits in which the courts have held that legislator-defendants are not entitled to legislative immunity when they are sued in their official capacities only[22], this Court holds that legislative immunity bars not only Hall's claims for damages against state legislators in their personal capacity, but also precludes Hall's claims seeking prospective and injunctive relief against state legislators in their official capacities. *Consumers Union v. Supreme Court of Virginia*, 446 U.S. 719, 732-34 (1980) (holding that the Virginia Supreme Court's chief justice was protected by absolute legislative immunity when sued in his official capacity for acts taken in his legislative capacity); *accord State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 85-87 (2d Cir. 2007) (distinguishing its prior decision in *Almonte*, 478 F.3d 100, and holding that claims for injunctive relief against state officials sued in their official capacities may be barred by the doctrine of legislative immunity, notwithstanding arguably contradictory *dicta* in *Graham*, 473 U.S. 159); *Scott v. Taylor*, 405 F.3d 1251, 1255 (11th Cir. 2005) (holding that legislator-defendants in an official capacity suit for prospective relief are entitled to absolute immunity); *Larsen v. Senate of the Commonwealth*, 152 F.3d 240, 252-54 (3d Cir. 1998), *cert. denied*, 525 U.S. 1145 (1999) (following *Consumers Union* and holding that state senators sued for declaratory and injunctive relief in their

---

[22] *See Roach v. Stouffer*, 560 F.3d 860 (8th Cir. 2009) (holding that legislature-defendants were not entitled to legislative immunity because they were sued only in their official capacities); *Cady v. Arenac County*, 574 F.3d 334, 342 (6th Cir. 2009) ("absolute immunity is a personal defense that is unavailable in an official-capacity action")*; Almonte v. City of Long Beach*, 478 F.3d 100, 106 (2d Cir. 2007) (immunity, whether absolute or qualified, is a personal defense that is available only when officials are sued in their individual capacities).

15

official capacities were protected by legislative immunity); *Risser v. Thompson*, 930 F.2d 549, 551 (7th Cir. 1991), *cert. denied*, 112 S. Ct. 180 (1991) ("Legislators' immunity is absolute, and extends to injunctive as well as to damages suits.") (citations omitted).

In addition to being consistent with prior Supreme Court opinions and other circuit court opinions, this Court's holding is also consistent with the acknowledged purposes of legislative immunity. In *Tenney v Brandhove*, 341 U.S. 367 (1951), the Supreme Court noted that legislative immunity "would be of little value if [state legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based on a jury's speculation as to motives." *Id.*, at 377. Indeed, Courts have long recognized that lawsuits brought against lawmakers creates a distraction and forces legislators to divert their time, energy, and attention from their legislative tasks to defend the litigation. *Consumers Union*, 446 U.S. at 733 (quotations and citations omitted).

In *Minton*, the Fifth Circuit also noted that "official immunity doctrines are premised upon the concern that the threat of personal liability may deter government officials from executing their offices with the decisiveness and good faith judgment required for the public good." *Id.*, 803 F.2d at134. Although the Fifth Circuit concluded that official immunity doctrines do not bar suits in which officials are sued only in their official capacities, given the facts at issue here, today's holding is not inconsistent with the purpose and spirit of absolute legislative immunity. In sum, the

Case 3:12-cv-00657-BAJ-RLB   Document 178   09/30/13   Page 16 of 19

Court concludes that the defense of legislative immunity may be asserted by the Legislature in this case.

### 2. Whether the Legislature's Alleged Acts Were Functionally Legislative

However, "not all actions taken by officials with legislative duties are protected by legislative immunity - only those duties that are functionally legislative." *Hughes v. Tarrant County*, 948 F.2d 918, 920 (5th Cir. 1991). "In other words, only legislative acts are entitled to absolute immunity, while non-legislative or administrative acts are only entitled to qualified immunity." *Bryan v. City of Madison*, 130 F. Supp. 2d 798, 806 (S.D. Miss. 1999) (citing *Hughes*, 948 F.2d at 920).

In *Hughes*, the United States Court of Appeals for the Fifth Circuit noted that two different tests may be used to determine whether the actions of a legislator are legislative duties or administrative duties:

> The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are 'legislative facts,' such as 'generalizations concerning a policy or state of affairs,' then the decision is legislative. If the facts used in the decision making are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the 'particularity of the impact of the state action.' If the action involves establishment of a general policy, it is legislative; if the action singles out specific individuals and affects them differently from others, it is administrative.

*Hughes*, 948 F.2d at 921 (citation omitted).

Here, Hall alleges that, despite receiving the 2010 U.S. Census data, the Legislature failed to pass amendments to the 1993 Judicial Election Plan during

17

Regular Session 2004 and Regular Session 2006. (Doc. 1, ¶ 57.) Hall further alleges that the Legislature has the authority to approve, revise, and/or redact the current Judicial Election Plan to ensure that it complies with federal law. (Doc. 76, ¶¶ 13, 15.) Thus, according to Hall, the Legislature's failure to do so is in contravention of federal law. (Doc. 76, ¶ 12.)

Considering the guidelines set out in *Hughes*, the Court concludes that the Legislature's alleged acts were functionally legislative. Indeed, Hall does not allege that the Legislature's failure to pass amendments to the 1993 Judicial Election Plan was based on facts specific to individual persons only, and not legislative facts. Nor does Hall allege that the Legislature's decision singled out an individual. Rather, his Complaint repeatedly alleges that the Legislature's failure to act continues to impact him and a proposed class of similarly situated African American voters in the City of Baton Rouge.

In sum, the Court is persuaded that the Legislature acted in accordance with its legislative duties, and that its alleged acts fall within the "sphere of legitimate legislative immunity." This does not mean that the Legislature's alleged actions, its failure to act, or the alleged actions of the other named Defendants, were/are constitutional or that their alleged actions can stand. Indeed, the Legislature's repeated failure to enact redistricting legislation that reflects the racial demographics of the City of Baton Rouge is arguably derelict. However, for the reasons stated above, the Court finds that the Legislature is entitled to absolute legislative immunity from

Case 3:12-cv-00657-BAJ-RLB   Document 178   09/30/13   Page 18 of 19

suit. Therefore, Hall has failed to state a claim upon which relief can be granted, and his remaining claims against the Legislature must be dismissed.

IV. Conclusion

Accordingly,

**IT IS ORDERED** that Defendant **Louisiana Legislature's Motion to Dismiss Pursuant to Fed. R. Civ. P. Rules 12(b)(1) and 12(b)(6) (Doc. 100)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Kenneth Hall's claims against the Louisiana House of Representatives, by and through Charles "Chuck" Kleckley, *in his official capacity* as Speaker of the Louisiana House of Representatives, and Walt Leger, III, *in his official capacity* as Speaker Pro Tempore of the Louisiana House of Representatives, and the Louisiana Senate, by and through John Alario, Jr., *in his official capacity* as President of the Louisiana Senate, and Sharon Weston Broom, *in her official capacity* as President Pro Tempore of the Louisiana Senate are **DISMISSED**, with prejudice.

Baton Rouge, Louisiana, this 30th day of September, 2013.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**