UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KENNETH HALL                                              CIVIL ACTION

VERSUS

STATE OF LOUISIANA, ET AL.                    NO.: 12-00657-BAJ-RLB

RULING AND ORDER

Before the Court is a **Motion on Behalf of the State of Louisiana, Louisiana Governor Bobby Jindal and Louisiana Attorney General James D. "Buddy" Caldwell to Dismiss Intervenor Bryon Sharper's Complaint and Supplemental Complaint (Doc. 142)**, filed by Defendants the State of Louisiana, Governor Piyush Jindal ("Jindal"), and Attorney General James Caldwell ("Caldwell") (collectively "Defendants"), seeking an order from this Court dismissing Intervenor Plaintiff Byron Sharper's ("Sharper") claims, pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). Sharper opposes the motion. (Doc. 147.) Defendants were granted leave to file a supplemental memorandum in support of the motion. (Doc. 147.) In response, Sharper filed a supplemental memorandum in opposition. (Doc. 199.) Oral argument is not necessary. The Court has jurisdiction pursuant to 28 U.S.C. 1331.

## I.   Background

Sharper filed this intervenor lawsuit[1] pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. §§ 1983 ("Section 1983"), 1986; Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973; Section 5 of the Voting Rights Act of 1965[2], as amended, 42 U.S.C. § 1973c; the First Amendment to the United States Constitution, U.S. CONST. amend. I; the Fourteenth Amendment to the United States Constitution, U.S. CONST. amend. XIV, § 1; the Fifteenth Amendment to the United States Constitution, U.S. CONST. amend. XV, § 1, "the right of majority rule, we the people, penumbra constitution provisions" and "the democratic principles of majority rule and individualist egalitarianism as related to the 'one-person, one-vote' principal of the Equal Protection Clause of the Fourteenth Amendment" against Defendants the State of Louisiana, Governor Piyush Jindal[3], Attorney General James Caldwell[4],

---

[1] On May 1, 2013, the Court granted Sharper's motion to intervene. (Doc. 127.) Accordingly, Sharper filed a Complaint, Supplemental Complaint, and Second Amending and Supplemental Complaint. (Docs. 128, 133, 181.) Where, as here, the plaintiff's subsequent complaints refer to, adopt, and incorporate the original complaint, it cannot be said that the subsequent complaints superceded the original complaint. *Stewart v. City of Houston Police Dep't*, 372 Fed. Appx. 475, 478 (5th Cir. 2010) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Thus, in considering the instant motion, the Court shall analyze Sharper's Original Complaint (Doc. 128), Supplemental Complaint (Doc. 133), and Second Amending and Supplemental Complaint (Doc. 181).

[2] Sharper's original Complaint, and subsequent Amending and Supplemental Complaints alleged that Defendants failed to obtain federal preclearance for the current Judicial Election Plan, in violation of the Voting Rights Act of 1965. However, in light of the United States Supreme Court's opinion in *Shelby County, Alabama v. Eric H. Holder, Attorney General, et al.*, 570 U.S. ___ (2013), this Court dismissed Sharper's Section 5 claims, without prejudice. (Doc. 173.) Thus, Sharper's Section 5 claims shall not be considered by the Court.

[3] Defendant Piyush "Bobby" Jindal is sued in his official capacity as the Governor of the State of Louisiana.

[4] Defendant James "Buddy" Caldwell is sued in his official capacity as the Attorney General of the State of Louisiana.

Secretary of State Tom Schedler[5], the City of Baton Rouge, the Parish of East Baton Rouge, the City Court of Baton Rouge, Mayor Melvin Holden[6], the Louisiana House of Representatives[7], the Louisiana Senate[8], Judge Laura Davis[9], Judge Suzan Ponder[10], and Judge Alex Wall.[11]  (Docs. 128, 133, 181.)

Sharper alleges that the current 1993 Judicial Election Plan, enacted by the Louisiana State Legislature in 1993, dilutes and diminishes the voting rights of African American voters in the City of Baton Rouge, in violation of the U.S. Constitution and the Voting Rights Act of 1965.  Sharper further alleges that the 1993 Judicial Election Plan, codified at La. R.S. § 1(4)(a)(b)(c), which divides the City of Baton Rouge into two election Sections (Sections 1 and 2) and five election Divisions

---

[5] Defendant Tom Schedler is sued in his individual and official capacities as the Louisiana Secretary of State.

[6] Defendant Melvin "Kip" Holden is sued in his official capacity as the Mayor of the City of Baton Rouge.

[7] The Louisiana House of Representatives is sued by and through Charles "Chuck" Kleckley, in his official capacity as Speaker of the Louisiana House of Representatives, and Walt Leger, III, in his official capacity as Speaker Pro Tempore of the Louisiana House of Representatives.

[8] The Louisiana Senate is sued by and through John Alario, Jr., in his official capacity as President of the Louisiana Senate, and Sharon Weston Broom, in her official capacity as President Pro Tempore of the Louisiana Senate.

[9] Sharper originally sued Defendant Laura Davis in her individual and official capacities as a Judge on the City Court of Baton Rouge.  On March 11, 2014, the Court granted Sharper's motion to dismiss Davis as a Defendant.  (Doc. 208.)

[10] Sharper originally sued Defendant Suzan Ponder in her individual and official capacities as a Judge on the City Court of Baton Rouge.  On March 11, 2014, the Court granted Sharper's motion to dismiss Ponder as a Defendant.  (Doc. 208.)

[11] Sharper originally sued Defendant Alex "Brick" Wall is his individual and official capacities as a Judge on the City Court of Baton Rouge.  On March 11, 2014, the Court granted Sharper's motion to dismiss Wall as a Defendant.  (Doc. 208.)

(Divisions A, B, C, D, and E)[12], impermissibly dilutes the votes of African Americans, who now make up 54.3% of the total City population.[13]

According to Sharper, the 1993 Judicial Election Plan discriminates against African Americans because African American voters, who make up the majority of Section 1 and the City population, are allotted only two judges, while White voters, who make up the majority of Section 2 but a minority of the City population, are allotted three judges.  Sharper further alleges that the Defendants' refusal to reapportion the City Court judges and/or redraw the geographic boundaries of the Divisions in accordance with the City of Baton Rouge's 2010 Census demographic data is an intentional attempt to dilute the votes of African Americans.

Accordingly, Sharper seeks a ruling and judgment declaring, *inter alia*, that the 1993 Judicial Election Plan violates: (1) the First Amendment's guarantee of freedom of speech, made applicable to the States by the Equal Protection Clause of the Fourteenth Amendment; (2) Sharper's fundamental right to vote, as protected by the Fourteenth Amendment; (3) the Equal Protection Clause of the Fourteenth Amendment; (4) the Due Process Clause of the Fourteenth Amendment; (5) the Privileges and Immunities Clause of the Fourteenth Amendment; (6) the Fifteenth

---

[12] Under the current Judicial Election Plan, the City of Baton Rouge is divided into two judicial election Sections: Section 1 and Section 2.  Each Section is divided into multiple Divisions.  Section 1 is divided into Divisions B and D, and Section 2 is divided into Divisions A, C, and E.  Each Division elects one judge to the City Court of Baton Rouge.

[13] Sharper also points the Court to the United States Census Data, which indicates that the total population of Whites, not Hispanic or Latino, in the City of Baton Rouge decreased from 118,429 or 53.9% in the year 1990 to 86,679 or 37.8% in the year 2010.  (Doc. 128, ¶¶ 16.)

Amendment; (7) Section 2 of the Voting Rights Act of 1965; (8) "penumbra rights of the Bill of Rights and/or the Due Process Clause of the Constitution of the United States"; and (9) the "the right of Majority Rule within the Due Process, Privileges and Immunities, and Equal protection Clauses of the Constitution of the United States." Sharper further requests an injunction forbidding Defendants from enforcing the 1993 Judicial Election Plan, including enjoining Defendants from "administering, implementing, or conducting" any future elections until Defendants devise and implement a judicial election system that complies with Section 2 of the Voting Rights Act. Sharper also seeks a ruling and judgment holding Defendants liable under Section 1983, and granting him attorney's fees, pursuant to 42 U.S.C. § 1988. Finally, Sharper requests that, if the Court finds Defendants have violated the Fourteenth and Fifteenth Amendments, the Court "bail-in" the State of Louisiana, pursuant to Section 3(c) of the Voting Rights Act of 1965, 42 U.S.C. § 1973a(c).[14]

As to the instant motion, Defendants seek an order from this Court dismissing Sharper's claims, pursuant to Rules 12(b)(1) and 12(b)(6). Defendants contend that the Court lacks subject matter jurisdiction to adjudicate the claims brought against them, as Sharper's claims are barred by Eleventh Amendment immunity. In the alternative,

---

[14] Section 3(c) of the Voting Rights Act authorizes federal courts to require preclearance by any non-covered state or political subdivision found to have violated the Fourteenth or Fifteenth Amendments. *Shelby County v. Holder*, 679 F.3d 848, 855 (D.C. Cir. 2012), *rev'd on other grounds*, 570 U.S. ___ (2013) (citing 42 USCS § 1973a(c)). Specifically, courts presiding over voting discrimination suits may "retain jurisdiction for such period as [they] may deem appropriate" and order that during that time no voting change take effect unless either approved by the court or unopposed by the Attorney General. *Id.* Thus, Section 3(c) is commonly referred to as the judicial "bail-in" provision. *Id.*

Defendants argue that they are entitled to qualified immunity.  In the alternative, Defendants contend that Sharper has failed to state a claim upon which relief can be granted because: (1) Jindal and Caldwell are not the proper Defendants; (2) the one-person, one-vote principal does not apply to the judiciary; (3) he has failed to state a claim upon which relief can be granted under Section 2 of the Voting Rights Act; (4) he has failed to state a claim upon which relief can be granted under Section 3(c) of the Voting Rights Act; (5) he has failed to state a claim upon which relief can be granted under the Fifteenth Amendment; (6) he has failed to state a claim upon which relief can be granted under the Privileges and Immunities Clause of the Fourteenth Amendment; and (7) he has failed to state a claim upon which relief can be granted under Section 1983.

Sharper opposes the motion and argues that his claims are not barred by Eleventh Amendment immunity, Defendants are not entitled to qualified immunity, and he has sufficiently alleged claims pursuant to the one-person, one-vote principal, Section 2 of the Voting Rights Act, Fifteenth Amendment, Privileges and Immunities Clause of the Fourteenth Amendment, and Section 1983.  Sharper further argues that Jindal and Caldwell are proper Defendants.  Sharper also contends that he seeks relief under Section 3(c) of the Voting Rights Act only.  Thus, Defendants request that the Court dismiss his claims under Section 3(c).

## II.   Standard of Review

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims.  *In re FEMA Trailer*

6

*Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286-287 (5th Cir. 2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998)).   Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim. *Id.* (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).   A court should consider a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.   *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2001)).   Considering a Rule 12(b)(1) motion to dismiss first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice."   *Id.* (citing *Ramming*, 281 F.3d at 161).

A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6).   *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir. 1992).   A complaint is subject to dismissal under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted."   Fed.R.Civ.P. 12(b)(6).   In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.   *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010) ("Under the Rule 12(b)(6) standard, all well-pleaded facts are viewed in the light most favorable to the plaintiff . . . ."); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In ruling on a Rule 12(b)(1) motion, however, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009), *cert. denied*, 558 U.S. 1111 (2009); *Ramming*, 281 F.3d at 161 (stating that a court ruling on a Rule 12(b)(1) motion may evaluate "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.)"[15] A motion to dismiss for lack of subject matter jurisdiction should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief. *Wagstaff v. United States Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007).

However, "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Celestine v. TransWood, Inc.*, 467 Fed. Appx. 317, 318 (5th Cir. 2012) (quoting *Ramming*, 281 F.3d at 161). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* (quoting

---

[15] Here, none of the parties submitted affidavits, testimony, or other evidentiary materials. Thus, the Court's review is limited to whether the allegations in Sharper's Original Complaint, Supplemental Complaint, and Second Amending and Supplemental Complaint are sufficient to establish subject matter jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) ("[I]f the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands.").

*Ramming*, 281 F.3d at 161).  A pleading stating a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction[.]"  *Id.* (citing Fed. R. Civ. P. 8(a)(1)).  In federal question cases, the party must demonstrate a non-frivolous claim based on federal law.  *Gibbs v. Buck*, 307 U.S. 66, 72 (1939).  When a district court finds it lacks subject matter jurisdiction, its determination is not on the merits of the case, and does not bar the plaintiff from pursuing the claim in a proper jurisdiction.  *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (*per curiam*).

## III.   Analysis

### A.   Subject Matter Jurisdiction

#### 1.   Eleventh Amendment Immunity

A close review of Sharper's allegations reviews that they are almost identical to the allegations made by Plaintiff Kenneth Hall.[16]  Accordingly, for the reasons set forth in the Court's ruling and order granting in part and denying in part Defendants' motions to dismiss Hall's claims (Doc. 174), the Court concludes that Sharper's Section 1983[17] claims[18] against the State of Louisiana are proscribed by Eleventh Amendment

---

[16] For a detailed summary of Hall's claims *see* Docs. 173-179.

[17] "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.' [T]his provision safeguards certain rights conferred by federal statutes." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citing *Maine v. Thiboutot*, 448 U.S. 1 (1980)).

[18] Sharper's Section 1983 claims include: (1) a Section 1983 claim that the 1993 Judicial Election Plan violates the First Amendment's guarantee of freedom of speech, made applicable to the States by the Equal Protection Clause of the Fourteenth Amendment; (2) a Section 1983 claim that the 1993 Judicial Election Plan infringes Sharper's fundamental right to vote, as protected by the Fourteenth Amendment; (3) a Section 1983 claim that the 1993 Judicial Election Plan violates the Equal Protection Clause of the Fourteenth Amendment; (4) a Section 1983 claim that the 1993 Judicial Election Plan violates the Due Process Clause of the Fourteenth Amendment; (5) a Section 1983 claims that the 1993 Judicial Election Plain violations the Privileges and Immunities Clause of the Fourteenth Amendment;

sovereign immunity, and such claims must be dismissed. As it relates to Sharper's

Section 1983 claims against Jindal and Caldwell, the Court concludes that Sharper has

met the *Ex parte Young* exception.[19] *See* doc. 174. Thus, Sharper's Section 1983 claims

against Jindal and Caldwell are not proscribed by Eleventh Amendment sovereign

immunity. Accordingly, Defendants' request that the Court dismiss Sharper's Section

1983 claims against the State of Louisiana is **GRANTED**. Defendants' request that

the Court dismiss Hall's Section 1983 claims against Jindal and Caldwell is **DENIED**.

### 2. Qualified Immunity

In support of their motion, Jindal and Caldwell argue that they are entitled to

qualified immunity. Qualified immunity protects government officials sued in their

individual capacities "from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable

person would have known." *James v. Dallas Hous. Auth.*, 526 Fed. Appx. 388, 391-392

(5th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also*

*Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985) (holding that officials in their

individual capacities "may . . . be able to assert personal immunity defenses," including

qualified immunity, that are not available in official-capacity suits); *Sanders-Burns v.*

---

(6) a Section 1983 claim that the 1993 Judicial Election Plan violates the Fifteenth Amendment; (7) a Section 1983 claim that the 1993 Judicial Election Plan violates Section 2 of the Voting Rights Act of 1965; and (8) a Section 1983 claim that the 1993 Judicial Election Plan violates the "democratic principles of majority rule and individualistic egalitarianism" related to the "one-person, one-vote" principle of the Equal Protection Clause of the Fourteenth Amendment.

[19]In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity, thereby permitting suits against state officials in their official capacity in order to enjoin enforcement of an unconstitutional state statute. *Okpalobi v. Foster*, 244 F.3d 405, 411 (5th Cir. 2001) (citing *Ex parte Young*, 209 U.S. at 157).

*City of Plano*, 594 F.3d 366, 371 (5th Cir. 2010) (stating that qualified immunity is "a defense that is only relevant to individual capacity claims"). Here, Sharper has alleged claims against Jindal and Caldwell in their official capacities *only*. Thus, the doctrine of qualified immunity is inapplicable. Accordingly, Defendants' request that the Court dismiss Hall's Section 1983 claims against Jindal and Caldwell on this basis is **DENIED**.

### B.   Whether Hall Has Sufficiently Pled Claims Upon Which Relief Can Be Granted

#### 1.   Whether Jindal and Caldwell are Proper Defendants

For the reasons set forth in the Court's ruling and order granting in part and denying in part Defendants' motions to dismiss Hall's claims (Doc. 174), the Court concludes that Sharper has sufficiently alleged direct allegations against Jindal and Caldwell, and that Jindal and Caldwell are proper Defendants. Accordingly, Defendants' request that the Court dismiss Sharper's claims against Jindal and Caldwell on this basis is **DENIED**.

#### 2.   Whether the "One-Person, One-Vote" Principle of the Equal Protection Clause of the Fourteenth Amendment Applies to Sharper's Claims

In support of their motion, Defendants argue that the "one-person, one-vote" principle of the Equal Protection Clause of the Fourteenth Amendment does not apply to judicial elections. Thus, the Court must dismiss Sharper's claims.

In opposition, Sharper argues that the Louisiana Legislature incorporated the "one-person, one-vote" principal into the 1993 Judicial Election Plan when former

Senator John Michael Guidry testified that the Plan would be based on the "one-person, one-vote" principal and that the allotment of City Court judges would be based on the percentage of African American and White residents according the 1990 U.S. census. Accordingly, Sharper contends the "one-person, one-vote" principal "has been codified into state law." (Doc. 199, p. 5.) Thus, his claims should not be dismissed on this basis.

It is well established that the "one-person, one-vote" principle of the Equal Protection Clause of the Fourteenth Amendment does not apply to the judiciary. *Wells v. Edwards*, 347 F.Supp. 453 (M.D. La. 1972), *aff'd*, 409 U.S. 1095 (1973)). However, vote dilution and "one-person, one-vote" claims are distinct. *Chisom v. Roemer*, 501 U.S. 380, 402-03 (1991); *Republican Party v. Martin*, 980 F.2d 943, 954 (4th Cir. 1992); *see also Voter Info. Project, Inc. v. City of Baton Rouge*, 612 F.2d 208, 210-12 (5th Cir. 1980) (recognizing distinction between claims grounded in "one-person, one-vote" and vote dilution in a Rule 12(b)(6) challenge to an at-large method of electing state and city judges). Therefore, *Wells* does not require this Court also dismiss Sharper's vote dilution claims. "To hold that a system designed to dilute the voting strength of black citizens and prevent the election of blacks as Judges is immune from attack would be to ignore both the language and purpose of the Fourteenth and Fifteenth Amendments." *Voter Information Project, Inc.*, 612 F.2d at 211; *see also Chisom*, 501 U.S. at 402-403 ("[Respondents] reason that because we have held the one-person, one-vote rule inapplicable to judicial elections, it follows that judicial elections are entirely immune from vote dilution  claims. The conclusion, however, does not follow from the

12

premise."). Accordingly, Defendants' request that the Court dismiss Sharper's claims on the basis of the "one-person, one-vote" principle of the Equal Protection Clause of the Fourteenth Amendment is **GRANTED**. The Court's ruling, however, shall not be construed as a dismissal of Sharper's Voting Rights Claims on the basis of vote dilution.

### 3. Whether Sharper Has Sufficiently Alleged Facts to State a Claim Upon Which Relief Can Be Granted Under Section 2 of the Voting Rights Act

For the reasons set forth in the Court's ruling and order denying Defendants' motions to dismiss Hall's claims (Doc. 174) and the Court's ruling and order denying Defendant Schedler's motions to dismiss Hall's claims (Doc. 175), the Court concludes that Sharper has sufficiently alleged claims upon which relief can be granted under Section 2 of the Voting Rights Act. Accordingly, Defendants' request that the Court dismiss Sharper's claims under Section 2 of the Voting Rights Act is **DENIED**.

### 4. Whether Sharper Has Sufficiently Alleged Facts to State a Claim Upon Which Relief Can Be Granted Under Section 3(c) of the Voting Rights Act

A review of Sharper's Second Amending and Supplemental Complaint reveals that he does *not* allege a claim under Section 3(c) of the Voting Rights Act. (Doc. 181.) Indeed, Section 3(c) does not provide for a cause of action. Rather, parties may seek relief under Section 3(c). 42 U.S.C. § 1973a(c). Accordingly, Sharper's Second Amending and Supplemental Complaint requests that the Court "bail-in" the State of Louisiana, pursuant to Section 3(c), only after a finding that Defendants violated the Fourteenth and Fifteenth Amendments. (Doc. 181, *Prayer for Relief*.)

13

In sum, the Court concludes that Sharper has not alleged claims under Section 3(c). Accordingly, Defendants' request that the Court dismiss Sharper's claims under Section 3(c) of the Voting Rights Act is **DENIED**.

      5.      **Whether Sharper Has Sufficiently Alleged Facts to State a Claim Upon Which Relief Can Be Granted Under the Fifteenth Amendment**

In support of their motion, Defendants argue that the Fifteenth Amendment is not implicated here because the 1993 Judicial Election Plan, on its face, does not restrict the right to vote based on race, and because the United States Department of Justice precleared the Plan.

In opposition, Sharper argues that the fundamental right to vote can be denied by a debasement of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of that right.

Defendants failed to cite, nor has the Court identified, any case law that stands for the proposition that an election plan must, on its face, discriminate on the basis of race in order for the Fifteenth Amendment to be implicated.  Rather, it is well established that "the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).  In sum, the Court finds Defendants' unsupported argument unavailing. Accordingly, Defendants' request that the Court dismiss Sharper's claims under the Fifteenth Amendment is **DENIED**.

14

**6.   Whether Sharper Has Sufficiently Alleged Facts to State a Claim Upon Which Relief Can Be Granted Under the Privileges and Immunities Clause**

In support of their motion, Defendants argue that "the right to vote for state officers 'is a right or privilege of state citizenship, not of national citizenship which alone is protected by the privileges and immunities clause.'" (Doc. 195, p. 9.) Thus, Sharper's claims under the Privileges and Immunities Clause of the Fourteenth Amendment fail as a matter of law.

A claim under the Fourteenth Amendment's Privileges and Immunities Clause is to be narrowly construed. *Deubert v. Gulf Federal Savings Bank*, 820 F.2d 754, 760 (5th Cir. 1987). "The clause protects only uniquely federal rights such as the right to petition Congress, the right to vote in federal election[s], the right to interstate travel, the right to enter federal lands, or the rights of a citizen in federal custody." *Id.* Therefore, the key inquiry is whether the privilege claimed is one that arises by virtue of national citizenship. *Mitchell v. Beaumont Indep. Sch. Dist.*, No. 1:05-CV-195, 2006 U.S. Dist. LEXIS 55862, at *48-49 (E.D. Tex. July 24, 2006) (citations omitted).

Here, Defendants' alleged actions have no bearing on Sharper's national citizenship rights, and hence, did not deprive him of any federal privileges and immunities protected by the Clause. *Id.* at *49. Therefore, the Court finds that Sharper has failed to state a claim upon which relief can be granted under the Privileges and Immunities Clause. Accordingly, Defendants' request that the Court dismiss Sharper's claims under the Privileges and Immunities Clause of the Fourteenth Amendment is **GRANTED**.

15

7.   **Whether Sharper Has Sufficiently Alleged Facts to State a Claim Upon Which Relief Can Be Granted Under Section 1983**

While Defendants' argument is not entirely clear, it appears Defendants contend that Sharper has failed to sufficiently allege a claim under Section 1983 because he has merely made general allegations regarding a conspiracy to intentionally discriminate, and because he has not identified a state or municipal custom or policy.

In opposition, Sharper argues that he has sufficiently alleged Section 1983 claims. Namely, that he has sufficiently alleged that Defendants acted under color of state law and that Defendants' conduct deprived him of a right, privilege, or immunity secured by the Constitution or federal law.

As noted above, "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.' [T]his provision safeguards certain rights conferred by federal statutes." *Blessing*, 520 U.S. at 340 (1997). Accepting all well-pleaded facts in the complaint as true and viewing them in the light most favorable to Sharper, the Court finds that he has sufficiently alleged that Jindal and Caldwell acted under color of state law, and that Defendants' conduct deprived him of a right, privilege, or immunity secured by the Constitution or federal law. Further, the cases cited by Defendants relate to municipal liability. *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). As concluded above, Sharper's Section 1983 claims against the State of Louisiana must be dismissed. Accordingly, the State of Louisiana's liability under

Section 1983 is no longer implicated.  Accordingly, Defendants' request that the Court dismiss Sharper's Section 1983 claims is **DENIED**.

IV.   **Conclusion**

Accordingly,

**IT IS ORDERED** that Defendants' **Motion on Behalf of the State of Louisiana, Louisiana Governor Bobby Jindal and Louisiana Attorney General James D. "Buddy" Caldwell to Dismiss Intervenor Bryon Sharper's Complaint and Supplemental Complaint (Doc. 142)** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendants' request that the Court dismiss Sharper's 42 U.S.C. § 1983 claims against the State of Louisiana is **GRANTED**. Sharper's 42 U.S.C. § 1983 claims *only* against the State of Louisiana are hereby **DISMISSED**, with prejudice.  Consequently, his request for relief under 42 U.S.C. § 1988 against the State of Louisiana is also **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' request that the Court dismiss Sharper's 42 U.S.C. § 1983 claims against Jindal and Caldwell is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' request that the Court dismiss Sharper's claims on the basis of the "one-person, one-vote" principle of the Equal Protection Clause of the Fourteenth Amendment is **GRANTED**.  Sharper's claims against Defendants the State of Louisiana, Jindal, and Caldwell *only* on the basis of the "one-person, one-vote" principle of the Equal Protection Clause of the Fourteenth Amendment are hereby **DISMISSED**, with prejudice.  The Court's ruling, however,

shall not be construed as a dismissal of Sharper's Voting Rights Claims on the basis of vote dilution.

**IT IS FURTHER ORDERED** that Defendants' request that the Court dismiss Sharper's claims under Section 2 of the Voting Rights Act is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' request that the Court dismiss Sharper's claims under Section 3(c) of the Voting Rights Act is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' request that the Court dismiss Sharper's claims under the Fifteenth Amendment is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' request that the Court dismiss Sharper's claims under the Privileges and Immunities Clause of the Fourteenth Amendment is **GRANTED**.

Baton Rouge, Louisiana, this 31st day of March, 2014.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**