# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KENNETH HALL | : | |
| | : | CIVIL ACTION NO. |
| VERSUS | : | |
| | : | 3:12-CV-00657 -BAJ-RLB |
| STATE OF LOUISIANA, ET AL | : | |
| | : | HON.  CHIEF BRIAN A. JACKSON |
| | : | |
| | : | SEPTEMBER 10, 2013 |

### TRANSCRIPT OF MOTION TO DISQUALIFY COUNSEL

===============================================================

### A P P E A R A N C E S:

FOR THE PLAINTIFF, KENNETH HALL:
    RONALD RAY JOHNSON, ESQ.
    STEPHEN M. IRVING, ESQ.

FOR CITY OF BATON ROUGE:
    CHRISTINA PECK, ESQ.
    JAMES HILBURN, ESQ.

FOR CITY COURT OF BATON ROUGE:
    PAUL SPAHT, ESQ.

REPORTED BY: CLARE SMITH-NEELY, CCR

## UNITED STATES COURTHOUSE
### 777 FLORIDA STREET
### BATON ROUGE, LOUISIANA 70801    (225) 389-3565

1           BY THE COURT: GOOD MORNING EVERYONE.  BE SEATED.

2                PLEASE CALL THE CASE.

3           BY THE CLERK: CIVIL ACTION, 12-657-BAJ, KENNETH

4                HALL, ET AL VERSUS STATE OF LOUISIANA,

5           ET AL.

6           BY THE COURT:  COUNSEL FOR THE PLAINTIFFS.

7           BY MR. IRVING: YOUR HONOR, STEVE IRVING.

8           BY THE COURT:  WAIT. REMEMBER THE RULES OF COURT,

9                GENTLEMEN.  EVERYTHING WE SAY IS

10          RECORDED. PLEASE STEP TO THE PODIUM UNLESS

11          OTHERWISE EXCUSED FROM DOING SO.

12          BY MR. IRVING: SORRY.  YOUR HONOR, STEVE IRVING,

13               COUNSEL FOR THE PLAINTIFF.

14          BY THE COURT: MR. IRVING.

15          BY MR. HILBURN: GOOD MORNING, YOUR HONOR, MAY IT

16               PLEASE THE COURT, JAMES HILBURN ON BEHALF

17          OF THE CITY OF BATON ROUGE AND THE PARISH OF

18          EAST BATON ROUGE.

19          BY THE COURT: COUNSEL.

20          BY MR. JOHNSON: GOOD MORNING, YOUR HONOR,

21               RONALD JOHNSON REPRESENTING THE PLAINTIFF,

22          HALL.

23          BY THE COURT: VERY WELL.  OKAY, MR. JOHNSON, IT'S

24               YOUR MOTION TO DISQUALIFY MS. PECK.

25          LET THE RECORD REFLECT THAT NONE OF THE PARTIES

1    ARE PRESENT IN COURT AT THIS TIME, BUT, OF

2    COURSE, THEY ARE REPRESENTED BY ABLE COUNSEL. I

3    WILL GIVE YOU AN OPPORTUNITY AT THIS TIME TO

4    PROVIDE ARGUMENT THAT SUPPORT YOUR MOTION.

5    BY MR. IRVING: THANK YOU, YOUR HONOR.

6         YOUR HONOR, WE'D LIKE TO BEGIN BY OFFERING

7    SEVERAL EXHIBITS.  THE FIRST EXHIBIT IS GOING TO

8    BE THE TRANSCRIPT AND IT'S ON A CD, OF THE

9    HEARING OF MAY 19, 2004.  THERE WAS NO WAY TO

10   TAKE JUST THE PORTION OF THE HEARING THAT'S

11   RELEVANT OFF; THAT'S PROHIBITED BOTH BY COPYRIGHT

12   AND BY SOFTWARE.  SO, I HAVE PREPARED A NOTE

13   WHICH I'VE SHOWN TO OPPOSING COUNSEL WHICH GIVES

14   THE START TIME OF EACH OF THE EVENTS ON  THE TAPE

15   -- ON THE CD, SO THAT THE COURT WON'T HAVE TO

16   LISTEN TO A WHOLE HOUR OF MANY THINGS THAT ARE

17   UNRELATED.

18   BY THE COURT: TELL ME ABOUT THE COPYING OF THE

19        CD.

20   BY MR. IRVING: YOUR HONOR, THIS IS THE

21        LEGISLATIVE HEARING FOR THE HOUSE OF

22   GOVERNMENTAL AFFAIRS FOR MAY 19, 2004, ON

23   REPRESENTATIVE JACKSON'S BILL, WHICH WAS HOUSE

24   BILL 1013.

25   BY THE COURT: AND AGAIN, HOW DOES THAT RELATE TO

1          THIS -- THE ISSUES IN THIS MOTION? HOW DOES

2      THAT RELATE TO ANYTHING, IN EFFECT, THEY

3      HAVE DONE?

4      BY MR. IRVING: THE VIDEO SHOWS MS. PECK AND THE

5          THREE JUDGES WHO ARE CURRENTLY PARTIES TO

6      THIS CASE, SPEAKING TO THE LEGISLATURE ABOUT

7      HOUSE BILL 1013.

8      BY THE COURT: SO, WHAT SPECIFICALLY -- WHAT DID

9          MS. PECK TESTIFY?

10      BY. MR. IRVING: MS. PECK STATES -- MS. PECK

11          APPEARED BEFORE THE LEGISLATURE, AND IN THE

12      HEARING PROVIDED A BASIS TO OPPOSE. SHE STATED

13      SHE WAS PROVIDING INFORMATION TO THE LEGISLATURE

14      BUT SHE PROVIDED A BASIS TO OPPOSE HOUSE BILL

15      1013.  SHE WAS JOINED BY HER THREE CLIENTS, AND

16      THE THREE CLIENTS STATED TO THE LEGISLATURE THAT

17      THEY OPPOSED HOUSE BILL 1013 BECAUSE IT WOULD

18      FORCE THE THREE OF THEM TO RUN FOR TWO SEATS IN

19      THE MAJORITY DISTRICT.

20      BY THE COURT: ALL RIGHT.  LET ME TRY TO MAKE

21          SURE THE RECORD IS CLEAR.  THIS IS A MOTION

22      FILED BY PLAINTIFF, KENNETH HALL, TO DISQUALIFY

23      COUNSEL, CHRISTINA BERTHELOT PECK, FROM

24      REPRESENTING THE DEFENDANTS, CITY OF BATON ROUGE

25      AND EAST BATON ROUGE PARISH, AS WELL AS THE CITY

1          COURT OF BATON ROUGE.  IS THAT CORRECT?

2          BY MR. IRVING: YES, SIR.

3          BY THE COURT: WHAT I'M CONCERNED ABOUT HERE,

4               COUNSEL, IS THE LAW REQUIRING

5          DISQUALIFICATION OR REFUSAL -- THE RECUSAL OF ANY

6          LAWYER.  NOW, YOU SEEK AN ORDER DISQUALIFYING

7          MS. PECK FROM REPRESENTING THE CITY OF BATON

8          ROUGE, THE PARISH OF EAST BATON ROUGE, AND THE

9          BATON ROUGE CITY COURT; IS THAT CORRECT?

10         BY MR. IRVING: THAT IS CORRECT, YOUR HONOR.

11         BY THE COURT: LET ME JUST TELL YOU, FROM MY

12              REVIEW OF THE RECORD, SIR, SHE DOES NOT, AT

13         THIS TIME, REPRESENT THOSE THREE ENTITIES.  IN

14         FACT, MR. PAUL SPAHT, WHO IS PRESENT IN COURT AT

15         THIS TIME, REPRESENTS THOSE THREE ENTITIES.  MR.

16         SPAHT, WILL YOU MAKE AN APPEARANCE AND CONFIRM

17         THAT, PLEASE?

18         BY MR. SPATE: I'M PAUL SPAHT.  AND, YOUR HONOR,

19              I'M REPRESENTING JUDGE PROSSER AND JUDGE

20         PONDER AND JUDGE WALL.

21         BY THE COURT: WAIT, I'M SORRY, YOU'RE

22              REPRESENTING THE JUDGES.  MS. PECK CONTINUES

23         TO REPRESENT THE CITY PARISH, THE CITY AND THE

24         PARISH, AND THE JUDGE -- AND THE CITY COURT,

25         CORRECT?

1           BY MR. SPATE: CORRECT.

2           BY THE COURT: ALL RIGHT.  BUT AT ONE POINT, IS

3               IT YOUR UNDERSTANDING, MR. SPATE, THAT MS.

4           PECK ALSO, AT SOME POINT, NOT IN THESE

5           PROCEEDINGS, BUT SOME OTHER PRIOR PROCEEDING,

6           REPRESENTED THE JUDGES -- THE THREE JUDGES WHO

7           HAVE BEEN IDENTIFIED BY MR. IRVING?

8           BY MR. SPATE: THAT IS CORRECT.

9           BY THE COURT: THANK YOU, MR. SPATE.  NOW, MR.

10              IRVING, YOU CLAIM THAT, AT LEAST IN YOUR

11          PLEADINGS, THAT HAVING REPRESENTED THE THREE

12          JUDGES, NOT IN THIS MATTER BUT IN A PRIOR MATTER,

13          CLOSELY RELATED BUT, IN FACT, A LEGISLATIVE

14          MATTER, THAT THAT CREATED A CONFLICT OF INTEREST,

15          IN PART, BECAUSE ACCORDING TO YOU, SHE MAY BE

16          CALLED AS A WITNESS IN THIS CASE.

17          BY MR. IRVING: CORRECT.

18          BY THE COURT: AND SO FOR THAT REASON -- YOU ALSO

19              CLAIM THAT SHE SHOULD BE DISQUALIFIED

20          BECAUSE SHE IS ENGAGING IN DUAL REPRESENTATION OF

21          THE JUDGES AND THE CITY OF BATON ROUGE, AND THE

22          PARISH OF EAST BATON ROUGE, AND THE CITY COURT OF

23          BATON ROUGE AT THIS TIME, CORRECT?

24          BY MR. IRVING: YOUR HONOR, THE DUAL-

25              REPRESENTATION SITUATION MAY EXIST AS A

1      RESULT OF AN ASSOCIATION WHICH SHE HAS A

2      CONNECTION TO. BUT AT THE PRESENT TIME, THE BASIS

3      FOR HER DISQUALIFICATION THAT ARE SPECIFICALLY

4      KNOWN, IS THAT, FIRST OF ALL SHE HAS REPRESENTED

5      A PARTY WITH AN INTEREST ADVERSE TO THE CITY

6      PARISH IN AN EARLIER MATTER THAT IS DIRECTLY,

7      VERY CLOSELY RELATED TO THIS PROCEEDING.  IN

8      FACT, IT'S BEEN CITED SEVERAL TIMES TO THE COURT

9      IN THIS PROCEEDING.

10           AND THE SECOND THING, THAT IN CONNECTION

11      WITH HER ACTIVITIES BEFORE THE LEGISLATURE, THAT

12      SHE WILL BE CALLED AS A WITNESS IN THIS MATTER.

13      BY THE COURT: ALL RIGHT.  WELL, LET ME JUST, SO

14           THAT THE RECORD, AGAIN, IS CLEAR, THE BASIS

15      OF YOUR CONCERN, IS AGAIN, APPARENTLY THE DUAL-

16      REPRESENTATION ISSUE AS WELL AS THE POSSIBILITY

17      OF MS. PECK BEING CALLED AS A WITNESS.

18           IT SHOULD BE CLEAR, ON THE RECORD, THAT THE

19      LOUISIANA RULES OF PROFESSIONAL RESPONSIBILITY

20      HAVE BEEN ADOPTED BY THIS COURT.  THAT IS, IN THE

21      MIDDLE DISTRICT OF LOUISIANA'S LOCAL RULES,

22      LOCAL RULE 83.2.3.

23           NOW, THE COURT IS ALSO REQUIRED TO CONSIDER

24      THE ADA'S MODEL RULES REGARDING REPRESENTATION,

25      CONFLICTS AND POSSIBLE WAIVERS.

1           NOW, LOUISIANA'S RULE 1.7, OF COURSE, GUIDES

2      THE COURT.  NOT JUST LOUISIANA COURTS, BUT EVEN

3      FEDERAL COURTS THAT HAVE ADOPTED THAT RULE ON

4      ISSUES OF CONFLICT OF INTEREST.  AND IT'S CLEAR

5      IN RULE 1.7 THAT A CONCURRENT REPRESENTATION

6      COULD CREATE A CONFLICT AS WELL AS A PAST

7      REPRESENTATION OF A CLIENT.  AND IT SPECIFICALLY

8      REQUIRES THAT THE COURT CONSIDER WHETHER THE

9      REPRESENTATION OF ONE CLIENT WILL ADVERSELY

10      EFFECT THE INTERESTS OF ANOTHER CLIENT.

11           NOW, I WILL ALSO NOTE THAT THIS MATTER IS

12      BEING FILED BY AN ADVERSE PARTY, THAT IS, THE

13      PLAINTIFFS IN THE CASE.  NOT BY ANY OF THE

14      DEFENDANTS IN THE CASE.  BUT, I WOULD ASK YOU,

15      SIR, TO TELL ME, MR. IRVING, IF YOU WOULD, HOW

16      MS. PECK'S CONTINUED REPRESENTATION OF THOSE

17      THREE GOVERNMENT ENTITIES IN THIS CASE ARE

18      DIRECTLY ADVERSED -- ADVERSE TO THE INTERESTS OF

19      THE THREE JUDGES IN THE CASE?

20      BY MR. IRVING: YOUR HONOR, THE THREE JUDGES.

21      BY THE COURT: THE JUDGES WHO ARE DEFENDANTS IN

22           THE CASE.

23      BY MR. IRVING: SURE.  YOUR HONOR, THE THREE

24           JUDGES STATED TO THE LEGISLATURE IN THE

25      HEARING IN 2004, THAT THEY OPPOSED THE BILL WHICH

1        WOULD HAVE SHIFTED ONE OF THE SEATS FROM THE

2        MAJORITY DISTRICT TO THE MINORITY DISTRICT.

3        THEY OPPOSED IT BECAUSE THE EFFECT OF THE

4        LEGISLATION WOULD FORCE THE THREE OF THEM TO RUN

5        FOR TWO SEATS IN THE WHITE, OR MAJORITY DISTRICT.

6        THE THIRD JUDGE WOULD HAVE BEEN FORCED TO RUN IN

7        THE MINORITY DISTRICT.  THE JUDGE WOULD HAVE

8        STILL BEEN ABLE TO RUN BUT WOULD HAVE HAD TO RUN

9        IN THE MINORITY DISTRICT.

10            THAT WAS THE BASIS FOR THEIR OPPOSITION.

11       THAT CONTINUES -- THAT SITUATION CONTINUES TODAY.

12       IN OTHER WORDS, INCUMBANCY PROTECTION IS ONE OF

13       THEIR GOALS.

14       BY THE COURT: I UNDERSTAND THAT.  BUT HOW IS THAT

15            ADVERSE TO WHAT HAS BEEN, UP TO THIS POINT,

16       IN VARIOUS MOTIONS AND IN ARGUMENTS TO THIS

17       COURT, HOW IS THAT ADVERSE FROM THE STATED

18       POSITIONS, AT LEAST, OF THE THREE GOVERNMENTAL

19       ENTITIES INVOLVED?

20       BY MR. IRVING:  MY APPRECIATION OF THE CITY

21            PARISH, YOUR HONOR, IS THAT THE CITY PARISH

22       IS OBLIGATED TO COMPLY WITH THE LAW AND THAT THE

23       CITY PARISH HAS NO BASIS AND HAS NOT ASSERTED

24       INCUMBANCY PROTECTION AS ONE OF THE GOALS OF THE

25       CITY PARISH.

1      BY THE COURT:  OKAY, WELL, LET ME STOP YOU THERE.

2           BECAUSE RULE 1.782 REQUIRES THAT, "THERE IS

3      A SIGNIFICANT RISK THAT THE REPRESENTATION OF ONE

4      OR MORE CLIENTS WILL BE," AND I'LL USE THE TERM

5      HERE, "MATERIALLY LIMITED BY THE LAWYER'S

6      REPRESENTATION OF ANOTHER CLIENT."

7           HOW, IF YOU KNOW, IS THE REPRESENTATION BY

8      MS. PECK OF THE THREE GOVERNMENTAL ENTITIES, HOW

9      DOES THAT MATERIALLY LIMIT THE REPRESENTATION OF

10     THE THREE JUDGES?

11     BY MR. IRVING: YOUR HONOR, THE THREE JUDGES HAVE

12          AN INTEREST IN INCUMBANCY PROTECTION.

13     BY THE COURT: NO QUESTION ABOUT IT.

14     BY MR. IRVING: AND THAT IS POTENTIALLY ADVERSE

15          TO THE CITY PARISH, WHICH HAS AN INTEREST

16     IN UPHOLDING THE LAW AND HAVING ITS JUDICIAL

17     DISTRICTS PROPERLY APPORTIONED.

18     BY THE COURT: BUT AT ANY TIME, THE THREE

19          GOVERNMENTAL ENTITIES COULD DECIDE, YOU KNOW

20     WHAT, WE'RE NOT GONNA FIGHT THIS LAWSUIT. YOU

21     KNOW, WE THINK THEY DIBBLE IN DEMOGRAPHICS. I

22     WON'T OPINE AS TO WHETHER THEY SHOULD DO THIS.

23     BUT IT'S POSSIBLE THAT THEY COULD OPINE THAT IN

24     THE INTEREST OF ENSURING THAT EVERYBODY'S VOTE IS

25     TREATED FAIRLY.

1      YOU KNOW, WE'RE GONG TO AGREE WITH THE

2      PLAINTIFFS.  THAT THERE OUGHT TO BE SOME

3      REALIGNMENT OF THE JUDGES AND THE WAY THEY DRAW

4      THE DISTRICTS.  AND AT THAT POINT, ARGUABLY, THE

5      INTEREST OR CERTAINLY THE STATED POSITION OF THE

6      THREE GOVERNMENT ENTITIES WOULD SUDDENLY BE

7      DEEMED ADVERSE OF THAT OF THE THREE INDIVIDUAL

8      JUDGES WHO ARE MADE DEFENDANTS HERE.

9          BUT, AGAIN, THAT WON'T TIE THE GOVERNMENTS

10     -- THEIR HANDS, IF YOU WILL, OF THE THREE

11     GOVERNMENTAL ENTITIES, RIGHT?

12     BY MR. IRVING: IT WILL NOT TIE THE HANDS OF THE

13          THREE GOVERNMENTAL ENTITIES.  IT MAY EFFECT

14     THE ADVICE THAT THE THREE GOVERNMENTAL ENTITIES

15     GET IN TERMS OF HOW AND WHEN TO TAKE SUCH ACTION.

16     THE COURT HAS REPEATEDLY STATED THAT LEGISLATIVE

17     -- THE LEGISLATIVE APPROACH WOULD BE THE BEST WAY

18     TO ADDRESS THE ISSUE IN THIS -- THAT'S BEEN

19     PRESENTED IN THIS COURT. IN ORDER TO OBTAIN THE

20     LEGISLATIVE APPROACH TO THE PROBLEM, IT'S

21     NECESSARY FOR THE ENTITIES TO BE ADVISED.

22     BY THE COURT:  MR. IRVING, LET ME JUST STOP YOU

23          THERE. IT'S CLEAR TO ME THAT THERE WILL BE

24     NO LEGISLATIVE FIX.  I'VE SAID THAT ON THE RECORD

25     BEFORE. AND YOU'RE RIGHT. I'VE SAID THAT

1       REPEATEDLY, GOING INTO THE LEGISLATIVE SESSION

2       AND EVEN AFTER THE LEGISLATIVE SESSION. AND I

3       WE HAVE HAD AT LEAST ONE HEARING DURING THE

4       LEGISLATIVE SESSION.

5       BY MR. IRVING: THAT'S CORRECT.

6       BY THE COURT: AND THE LEGISLATURE, FOR WHATEVER

7            REASON, ELECTED NOT TO ADDRESS THIS ISSUE

8       AND SO IT HAS NOW FORCED THE FEDERAL COURTS TO DO

9       SO, SOMETHING THAT SO MANY PEOPLE ASSERT SHOULD

10      NEVER HAPPEN.

11           AGAIN, I WON'T OPINE ON WHETHER IT SHOULD OR

12      SHOULD NOT.  MY ROLE HERE IS TO APPLY THE FEDERAL

13      LAW AS CONGRESS HAS MANDATED.

14           BUT THE POINT I GUESS I'M GETTING TO, MR.

15      IRVING, IS THAT I'M NOT ALL TOGETHER CONVINCED AT

16      THIS POINT THAT WE HAVE A VIOLATION OF RULE 1.7.

17      WITH RESPECT TO THE POSSIBILITY OF MS. PECK BEING

18      CALLED AS A WITNESS, I WILL TELL YOU RIGHT NOW,

19      I'M DISINCLINED TO ALLOW THAT IN THE FIRST PLACE.

20      IT SEEMS TO ME THAT TO THE EXTENT SHE MAY HAVE

21      TESTIFED BEFORE A LEGISLATIVE BODY OR ANYWHERE

22      ELSE WHERE THERE HAS BEEN A TRANSCRIPTION OF HER

23      TESTIMONY, EITHER VIA VIDEO OR A WRITTEN

24      TRANSCRIPT, THAT CERTAINLY SHOULD BE ENOUGH.

25           I WILL TELL YOU NOW THAT IT IS UNLIKELY,

1    THAT I WILL ALLOW YOU OR ANYONE ELSE TO CALL ANY

2    LAWYER, INCLUDING MS. PECK, TO TESTIFY.  MS.

3    PECK, IT SEEMS TO ME, LIKE ANY OTHER LAWYER, CAN

4    NOT, EXCEPT UNDER, AS YOU WELL KNOW, VERY, VERY

5    LIMITED AND WELL-DELINEATED CIRCUMSTANCES,

6    PROVIDE TESTIMONY WITH RESPECT TO REPRESENTATION

7    GIVEN TO A CURRENT OR A FORMER CLIENT.  SO, I

8    DON'T KNOW WHAT'S TO BE GAINED BY CALLING HER AS

9    A WITNESS.  A: I CAN'T IMAGINE THAT HER CLIENTS

10    WOULD OFFER ANY WAIVERS THAT WOULD ALLOW HER TO

11    ESSENTIALLY BREACH THE ATTORNEY-CLIENT PRIVILEGE

12    AND TO OFFER COMMUNICATION.

13    BUT I JUST -- AND AGAIN, TO THE EXTENT THAT

14    YOU WISH TO COMPEL HER TO TESTIFY ABOUT EVENTS

15    THAT SHE WAS PERSONALLY INVOLVED IN WITH THE

16    LEGISLATURE, PERHAPS, AND I WON'T USE THE WORD

17    LOBBYING, BUT TESTIFYING BEFORE THE LEGISLATURE

18    ON THIS ISSUE.  AGAIN, THERE IS A FULL TRANSCRIPT

19    OF HER TESTIMONY.

20    BY MR. IRVING: YOUR HONOR, THERE IS A FULL

21    TRANSCRIPT OF THAT TESTIMONY BUT WE DO NOT

22    KNOW WHAT OTHER LOBBYING WAS DONE BY MS. PECK AND

23    HER CLIENTS IN TERMS OF INDIVIDUAL ONE-ON-ONE

24    CONVERSATIONS WITH MEMBERS OF THE LEGISLATURE IN

25    CONNECTION WITH BOTH THE BILL IN 2004, THE BILL

1    IN 2006, AND PERHAPS EVEN THE BILL IN 2013.

2    THOSE WOULD NOT BE SUBJECT TO ATTORNEY-CLIENT

3    PRIVILEGE.

4    BY THE COURT: WHY IS THAT AN ISSUE IN THIS CASE?

5        MY DECISION WILL NOT BE BASED UPON ANY

6    LOBBYING EFFORTS MADE BY ANYONE. AS LONG AS YOU

7    REGISTER AS A LOBBYIST AND COMPORT WITH THE RULES

8    OF THE STATE OF LOUISIANA, THE RULES OF THE

9    LEGISLATURE AND TO THE EXTENT THERE ARE RULES

10   GUIDING, YOU KNOW, LAWYER CONDUCT WITH RESPECT TO

11   LEGISLATIVE BODIES.  AS LONG AS YOU ADHERE -- SHE

12   SPECIFICALLY, ADHERE TO THOSE RULES, YOU KNOW,

13   SHE'S CERTAINLY ENTITLED TO ENGAGE IN THAT SORT

14   OF CONDUCT.

15       BUT HERE, AGAIN, TELL ME AGAIN WHY THAT

16   WOULD HAVE A BEARING OR BE RELEVANT TO THE ISSUES

17   THAT I HAVE TO TAKE UP WHEN I SET THE TRIAL?

18   BY MR. IRVING: WE THINK THAT THE LEGISLATIVE

19       INTEREST IN INCUMBENCY PROTECTION,

20   COMMUNICATED TO THE LEGISLATURE VIA LOBBYING, MAY

21   BE AN ISSUE THAT WOULD BE PART OF THE EVIDENCE

22   PRESENTED TO THE COURT.

23   BY THE COURT: HOW IS THAT AN ELEMENT OF ANY OF

24       THE CLAIMS BROUGHT BY THE PLAINTIFFS?

25   BY MR. IRVING: ALL RIGHT, IT MIGHT BE AN ELEMENT

1        OF THE CLAIMS AGAINST SOME OF THE PARTIES,

2    YOUR HONOR, SUCH AS THE JUDGES.

3    BY THE COURT: HOW?

4    BY MR. IRVING: WELL, IF THE JUDGES LOBBIED THE

5        LEGISLATURE FOR THE PURPOSE OF INCUMBANCY

6    PROTECTION.

7    BY THE COURT: LET ME JUST STOP YOU THERE, MR.

8        IRVING.  FOR WHAT IT'S WORTH, AND I WILL

9    TELL THAT I WILL ASSUME, JUST BASED UPON YOUR

10    REPRESENTATION AS AN OFFICER OF THE COURT.

11    AGAIN, I WILL GIVE ANYONE, ANY PARTY, ON THE

12    DEFENSE SIDE, ANYONE LAWYERS REPRESENTING THE

13    DEFENDANTS, AN OPPORTUNITY TO BE HEARD ON THE

14    ISSUE.

15        BUT I'M PREPARED TO ASSUME THAT SUCH

16    LOBBYING EFFORTS OCCURRED. I WON'T DOUBT THAT.

17    BASED UPON THE ARGUMENTS THAT WERE PREVIOUSLY

18    MADE AT PRIOR HEARINGS, IT'S CLEAR TO ME THAT

19    THERE WERE SOME LOBBYING EFFORTS, IF YOU WILL,

20    THE LEGISLATURE.  LOBBYING EFFORTS INTENDED TO

21    THWART ANY OPPORTUNITY OF THE LEGISLATURE TO GO

22    ON AND CREATE A LEGISLATIVE FIX, IF YOU WILL.

23    I ASSUME THAT HAPPENED.  IF YOU'RE TELLING ME

24    THAT HAPPENED.  NO OTHER PERSON STANDS AND

25    REFUTES THAT.  I'LL ACCEPT THAT.

1    STILL, I'M LEFT WITH WHAT DIFFERENCE DOES IT

2    MAKE?  I JUST DON'T -- I'M HAVING DIFFICULTY

3    UNDERSTANDING WHY THAT'S RELEVANT, MR. IRVING.

4    THAT'S WHAT I'M ASKING YOU TO HELP ME WITH, OKAY?

5    BY MR. IRVING: OKAY. IF IT IS, IN FACT, AN

6    UNCONTRADICTED FACT, THAT THE JUDGES LOBBIED

7    BOTH IN TERMS OF PRESENTING TO THE LEGISLATURE IN

8    THE COMMITTEE HEARING, AND IN ONE-ON-ONE MEETINGS

9    WITH LEGISLATORS, THAT THE JUDGES PRESENTED TO

10   THE LEGISLATURE THEIR OPPOSITION AND THEIR BASIS

11   FOR OPPOSITION BEING INCUMBANCY PROTECTION, THEN

12   THAT IS A FACT FOR THE COURT TO CONSIDER, AND

13   OBVIOUSLY IF IT'S NOT CONTESTED, THEN TO THE

14   EXTENT IT'S RELEVANT, NO EVIDENCE NEEDS TO BE

15   RECEIVED ON IT.  BUT WE THINK THAT IF IT IS, IN

16   FACT, CONTESTED THAT THERE WERE LOBBYING EFFORTS

17   FOR INCUMBANCY PROTECTION, THAT THAT MAY BE

18   RELEVANT AS TO THE CLAIMS ON SOME OF THE PARTY'S.

19   AND SO FOR THAT REASON, SHE MAY BE A WITNESS.

20   BY THE COURT:  WELL, AND I UNDERSTAND THAT.  BUT,

21   AGAIN, AS I'VE STATED PREVIOUSLY, THIS COURT

22   HAS GIVEN, IN MY VIEW, THE LEGISLATURE AMPLE

23   OPPORTUNITIES TO ADDRESS THIS ISSUE, TO ENACT

24   LEGISLATION THAT WOULD COME INTO COMPLIANCE WITH

25   THE CONSTITUTION AND THE LAWS OF THE UNITED

 1        STATES.   IT'S FAILED TO DO THAT.  WHY IT FAILS

 2        TO DO IT, ITS MOTIVATION, ITS REASONS OF WHY SOME

 3        MEMBERS OF THE LEGISLATURE WERE UNWILLING OR

 4        REFUSE TO SUPPORT THOSE EFFORTS AT SEEKING A

 5        CONSTITUTIONAL SOLUTION HERE -- WELL, I CAN TELL

 6        YOU THAT AT THIS POINT, I'M NOT, YOU KNOW, I'M

 7        PARTICULARLY INTERESTED IN THAT. THE FACT IS,

 8        AGAIN, THE LEGISLATURE HAS FAILED TO DISCHARGE

 9        ITS DUTIES AND NOW IT BECOMES INCUMBENT UPON THE

10        FEDERAL COURTS TO PROVIDE THE RELIEF THAT THE

11        LEGISLATURE HAS REFUSED TO PROVIDE.

12        LET ME HEAR FROM THE DEFENDANTS.

13        BY MR. HILBURN:  THANK YOU, YOUR HONOR.  MY

14            EXPERIENCE WITH THIS COURT IS YOU LIKE US TO

15        GET TO THE POINT AND NOT WASTE TIME.

16        BY THE COURT: ABSOLUTELY, MR. HILBURN, THAT'S

17            ABSOLUTELY RIGHT.

18        BY MR. HILBURN: IT IS MY UNDERSTANDING, THIS

19            COURT DOES NOT LIKE TRIALS WITHIN TRIALS.

20        WHAT IN THE WORLD CAN MS. PECK OFFER ABOUT A

21        HEARING BEFORE THE LEGISLATURE IN 2004 AND

22        ANOTHER ONE IN 2006 INVOLVING THE 2000 CENSUS.

23        AND IF YOU WATCH THE VIDEO TAPE, YOUR HONOR, I'LL

24        TELL YOU WHAT'S ON IT.  THE QUESTION BASICALLY

25        WAS, THE NUMBERS WERE 50-50 ROUGHLY, BUT THE

1     VOTING AGE NUMBERS ---

2     BY THE COURT: WAIT, WAIT, LET ME STOP YOU.  WHAT

3          YEAR ARE WE TALKING ABOUT?

4     BY MR. HILBURN: WHEN THEY WERE INTERPRETING THE

5          2000 CENSUS DATA.

6     BY THE COURT: 2000 DATA. OKAY, ALL RIGHT.

7     BY MR. HILBURN YES, SIR.  BUT WHAT MS. PECK HAD

8          POINTED OUT TO THE LEGISLATURE AT THE TIME,

9     AND IT'S ON THE TAPE, IS -- BUT THE VOTING AGE

10    POPULATION WAS NOT 50-50,  WHICH IS CRITICAL FOR

11    THIS CASE.  SO I GUESS, STEPPING BACK A SECOND,

12    IT'S MY UNDERSTANDING THAT WE'RE GOING TO TRY

13    THIS CASE BASED ON DEMOGRAPHIC DATA, THE LAW THAT

14    IS APPLICABLE IN THIS CASE, ONE MAN-ONE VOTE, ET

15    CETERA.  THIS CASE, TO ME, HAS NOTHING TO DO WITH

16    WHAT HAPPENED NINE YEARS AGO AT THE LEGISLATURE

17    OR SEVEN YEARS AGO AT THE LEGISLATURE, AND THIS

18    IS JUST AN ATTEMPT TO DISQUALIFY MS. PECK BECAUSE

19    SHE IS QUALIFIED TO HANDLE THESE TYPES OF CASES

20    FOR THE CITY PARISH.

21    BY THE COURT: WELL, I AGREE WITH YOU THAT

22          ACTIVITIES THAT OCCURRED SOME NINE YEARS AGO

23    ARE NOT AT ISSUE HERE.  I'M MORE CONCERNED WITH

24    MORE CONTEMPORARY CENSUS DATA.  THE 2010 CENSUS

25    DATA IS AT ISSUE HERE, AND SO, AGAIN I AGREE WITH

1          YOU.

2          BY MR. HILBURN: THANK YOU.

3          BY THE COURT: ALL RIGHT.  LET ME ALSO ADDRESS AN

4               ISSUE AND I DON'T KNOW IF MR. JOHNSON, OR

5          MR. IRVING, IF YOU'D LIKE TO ADDRESS IT, BUT I

6          WILL -- I'D CERTAINLY LIKE TO ADDRESS YOUR

7          ASSERTION THAT MS. PECK HAS NOT RECEIVED THE

8          WRITTEN CONSENT OF THE AFRICAN-AMERICAN JUDGES

9          ON THE CITY COURT TO REPRESENT THE CITY COURT.

10              WOULD YOU LIKE TO BE HEARD ON THAT?  OR IS

11         THAT AN ISSUE YOU'D LIKE TO -- THAT YOU BELIEVE

12         TO BE RELEVANT HERE?  I WILL TELL YOU MY REACTION

13         TO THAT IS THAT I'M NOT SURE THAT, FRANKLY, THE

14         CONSENT OF ANY OF THE OTHER JUDGES IS REQUIRED.

15         AS I APPRECIATE IT, A MAJORITY OF JUDGES, AND I

16         MAY BE WRONG ABOUT THIS, MR. IRVING.  I WOULD --

17         IF I AM, I, OF COURSE, WILL ASK YOU TO CORRECT ME

18         HERE.  BUT I ASSUME THAT THE MAJORITY OF THE

19         JUDGES OF THAT COURT HAVE AGREED AND DECIDED THAT

20         MS. PECK WILL REPRESENT THE COURT.  IS THAT

21         CORRECT?

22         BY MR. IRVING: YOUR HONOR, THE EXACT VOTING

23              PROCESS THAT OCCURRED WITHIN THE COURTROOM

24         IS UNKNOWN TO US.  WE'RE NOT AWARE THAT THERE WAS

25         ANY VOTE OF THE JUDGES AMONG THE COURT AS TO MS.

1        PECK REPRESENTING THE COURT.

2            WE DID SUBPOENA, IN CONNECTION WITH THIS

3        HEARING, ANY WAIVERS OF CONFLICT.  THERE WAS A

4        WAIVER OF CONFLICT FILED BY JUDGES WALL, PROSSER,

5        DAVIS AND PONDER THAT WAS DATED SEPTEMBER 6TH THAT

6        WAS FILED IN THE RECORD.  WE ALSO SUBPOENAED THE

7        CITY PARISH AND MS. PECK, TO DETERMINE IF THEY

8        HAD ANY SUCH DOCUMENTS, AND I HAVE SUBPOENA

9        RETURNS FROM BOTH OF THEM INDICATING THAT THEY DO

10       NOT.

11           AND I OFFER TO PRESENT IN FILE INTO

12       EVIDENCE THE SUBPOENA RETURNS, THE CITY PARISH

13       RETURN AS "PLAINTIFF'S EXHIBIT 1" AND MS. PECK'S

14       RETURNS AS "PLAINTIFF'S EXHIBIT 2."

15       BY THE COURT: ANY OBJECTIONS?

16       BY MR. HILBURN: NO, SIR.

17       BY THE COURT: VERY WELL, WITHOUT OBJECTION.

18           "PLAINTIFF'S EXHIBIT 1" AND "2" IN THIS

19       MATTER WILL BE ADMITTED.

20           ALL RIGHT.  WELL, WITH RESPECT TO THAT, LET

21       ME JUST SAY THAT I'VE NOT BEEN PROVIDED ANY

22       AUTHORITY THAT SUGGESTS THAT A MAJORITY OF THE

23       VOTE OF THE JUDGES IS REQUIRED TO RETAIN COUNSEL

24       TO REPRESENT THE COURT.  I DON'T KNOW IF THAT'S

25       THE CASE, MR. IRVING, OR NOT.  AGAIN, I'VE BEEN

1      PROVIDED WITH NO AUTHORITY ON THAT.  IN MY VIEW

2      THAT'S A MATTER OF INTERNAL GOVERNANCE BY THE

3      CITY COURT JUDGES, AND AGAIN, I'M NOT SURE THAT

4      THAT HAS ANY BEARING HERE.

5           I MEAN, I UNDERSTAND YOUR ARGUMENT, AND IT

6      MAKES SENSE.  BUT, AGAIN, ABSENT ANY AUTHORITY

7      THAT INDICATES, A: THAT THE CONCURRENCE OF ALL

8      THE JUDGES IS REQUIRED FOR THE RETENTION OF

9      COUNSEL, AND B: THAT SOMEHOW THE INTERNAL PROCESS

10     WAS NOT ADHERED TO, AND THEN, FINALLY, THAT IF

11     THERE WAS A VIOLATION OF THAT RULE OF GOVERNANCE

12     OF THAT COURT, UNLESS THERE IS SOME AUTHORITY

13     THAT ALLOWS ME TO RESOLVE THAT, FRANKLY, I DON'T

14     BELIEVE I HAVE JURISDICTION.

15     BY MR. IRVING: YOUR HONOR, UNDER RULE 1.13, IF

16          THERE'S GOING TO BE A CONCURRENT

17     REPRESENTATION SITUATION, WHERE THE JUDGES ARE

18     BEING REPRESENTED OR HAVE BEEN REPRESENTED IN

19     THEIR INDIVIDUAL CAPACITY AND ARE BEING

20     REPRESENTED IN THEIR COLLECTIVE CAPACITY, THE

21     WAIVER IN THAT CASE MUST COME FROM SOMEONE IN

22     AUTHORITY WHO IS NOT INVOLVED IN THE CONFLICT.

23     SO, IT WOULD HAVE TO COME FROM ONE OF THE OTHER

24     TWO JUDGES.

25     BY THE COURT: WELL, IT SOUNDS SENSIBLE TO ME.

1           BUT, AGAIN, I BELIEVE THAT THERE'S MORE

2    ISSUES HERE.  AGAIN, ISSUES OF INTERNAL

3    GOVERNANCE WITH THAT COURT, WHICH I'M NOT ALLOWED

4    TO PROBE AT THIS TIME.  I'M NOT SURE IT'S

5    RELEVANT.  THERE'S NOTHING IN YOUR PLEADINGS THAT

6    PROVIDED ME AUTHORITY FOR THAT OTHER THAN THE

7    RULE OF PROFESSIONAL  RESPONSIBILITY, AS YOU'VE

8    MENTIONED.

9           HOWEVER, I WILL ALSO OBSERVE THAT, AGAIN,

10   THERE ARE RULES OF COURT THAT OFTEN GOVERN THESE

11   TYPES OF ISSUES AND I WILL DECLINE TO BASE MY

12   RULING IN THIS CASE ON ANY SUCH -- THE EXISTENCE

13   OR PERHAPS NON-EXISTENCE OF ANY SUCH RULE.

14   WOULD THE DEFENSE LIKE TO BE HEARD ON THAT?

15   BY MR. HILBURN: YES, YOUR HONOR, JUST TO CLARIFY.

16          AT THE OUTSET WE DID FILE THE

17   MOTION TO DISMISS THE ENTITY KNOWN AS BATON ROUGE

18   CITY COURT.  IT'S NOT AN ENTITY CAPABLE OF BEING

19   SUED.  WE REPRESENT CITY OF BATON ROUGE AND

20   PARISH OF EAST BATON ROUGE, THE COLLECTIVE ENTITY

21   AND THERE'S NO PROBLEMS WITH US REPRESENTING THE

22   CITY OF BATON ROUGE AND THE PARISH OF BATON ROUGE

23   WITHOUT GETTING ANY INPUT FROM ANY OF OUR

24   EMPLOYEES OR OFFICERS.  THE PARISH ATTORNEY

25   DIRECTS THAT REPRESENTATION.

1          THANK YOU.

2          BY THE COURT: THANK YOU.

3              OKAY, THE COURT WILL RULE RIGHT NOW.  I

4          WILL DENY THE PLAINTIFF'S MOTION TO DISQUALIFY

5          MS. PECK, FOR THE REASONS CITED IN THE

6          PLAINTIFF'S MOTION.  AGAIN, I SPECIFICALLY FIND

7          THAT THE PLAINTIFFS FAILED TO DEMONSTRATE THAT

8          THE CONTINUED REPRESENTATION BY MS. PECK OF THE

9          CITY OF BATON ROUGE, THE PARISH OF EAST BATON

10         ROUGE, AND THE BATON ROUGE CITY COURT, CREATE THE

11         KIND OF CONFLICT THAT IS DESCRIBED IN THE LOCAL

12         RULES AS WELL AS THE LOUISIANA RULES OF

13         PROFESSIONAL RESPONSIBILITY.

14             NOW, THERE HAVE BEEN WAIVERS MADE, IS THAT

15         CORRECT, MR. IRVING -- DESCRIBE CERTAIN WAIVERS

16         THAT WERE FILED?

17         BY MR. HILBURN: YES, YOUR HONOR.  MR. SPAHT, ON

18             BEHALF OF THE THREE DEFENDANT JUDGES, HAS

19         FILED A FORMAL WAIVER INTO THE RECORD DATED

20         SEPTEMBER 6TH OF THIS YEAR.

21         BY THE COURT:  RIGHT. IT'S MY POINT IS SIMPLY

22             THAT I'M NOT EVEN SURE IT'S THE KIND OF --

23         TO THE EXTENT THAT IT IS A CONFLICT FOR WHICH A

24         WAIVER COULD BE FILED, AT LEAST WITH RESPECT TO

25         THOSE THREE. I FRANKLY THINK THAT'S SUFFICIENT

1    HERE. I CAN'T IMAGINE THAT MS. PECK WOULD BE

2    CALLED AS A WITNESS IN THIS CASE FOR A VARIETY OF

3    REASONS, SOME OF WHICH I'VE ALREADY STATED ON THE

4    RECORD.

5         BUT, AGAIN, I WOULD FIND THAT THE

6    PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT

7    COUNSEL SHOULD BE DISQUALIFIED IN THIS CASE.  I

8    WILL ALSO CITE THE 1998 CASE OF MICHELLE VS

9    MILLER.  IT WAS AN EASTERN DISTRICT CASE, WHERE

10   FORMER CHIEF JUDGE MOREY SEAR SET OUT A THREE-

11   PART TEST TO DETERMINE IF IT IS LIKELY THAT A

12   GOOD LAWYER WOULD BE A NECESSARY WITNESS IN A

13   CASE.  I WILL NOT DESCRIBE THE ELEMENTS OF THAT

14   TEST BUT I WILL SAY THAT, EVEN ASSUMING THAT THE

15   PLAINTIFFS ARE ABLE TO SATISFY THE THREE ELEMENTS

16   OF THAT TEST, THE PLAINTIFFS ARE ALSO REQUIRED TO

17   SHOW THAT MS. PECK'S TESTIMONY WOULD, IN FACT, BE

18   PREJUDICIAL AND I DON'T FIND THAT THAT, IN FACT,

19   IS THE CASE HERE.  I DON'T EVEN FIND THAT IT IS

20   THE CASE THAT MS. PECK'S TESTIMONY MAY BE

21   PREJUDICIAL, EVEN, AGAIN, IF THE PLAINTIFF

22   SATISFIED THE THREE ELEMENTS OF THE TEST.

23        SO FOR THOSE REASONS, THE MOTION OF THE

24   PLAINTIFFS TO DISQUALIFY MS. PECK IS DENIED.

25   I WILL, HOWEVER GRANT, THIS IS JUST SO THE RECORD

1       IS CLEAR, DOCUMENT NUMBER 164, WHICH IS

2       DEFENDANT'S MOTION FOR LEAVE TO FILE AN

3       OPPOSITION TO THE MOTION TO DISQUALIFY.  THAT

4       MOTION WAS FIELD ON BEHALF OF JUDGES' PONDER,

5       PROSSER AND WALL.  AND AGAIN, THE COURT WILL

6       GRANT THAT MOTION.  AGAIN, THAT'S SIMPLY A MOTION

7       FOR LEAVE TO FILE AN OPPOSITION.  SO THAT MOTION

8       WILL BE GRANTED, AND ORDERED INTO THE RECORD.

9            SO, LET ME JUST TAKE A MOMENT TO DESCRIBE

10      WHAT I THINK WILL HAPPEN NEXT. ALL RIGHT.

11           WE HAVE SEVERAL PENDING MOTIONS IN THIS

12      CASE.  THE COURT HAS ALREADY RULED ON SEVERAL

13      OTHER MOTIONS.  BUT AGAIN, WE HAVE SEVERAL

14      MOTIONS STILL PENDING WHICH THE COURT WILL ISSUE

15      RULINGS ON WITHIN THE NEXT TWO WEEKS.  I'LL

16      ANTICIPATE SETTING A TRIAL DATE IN THIS CASE;

17      THAT TRIAL DATE WILL BE SET SOMETIME IN EARLY

18      DECEMBER.  THE TRIAL WILL NOT BE IN EARLY

19      DECEMBER; I WILL SIMPLY SET THE TRIAL IN EARLY

20      -- I'M SORRY, IN EARLY OCTOBER.

21           SO, AGAIN I WOULD ASK COUNSEL TO BE

22      PREPARED TO GO FORWARD WHENEVER WE SELECT THE

23      TRIAL DATE. I WON'T SPECULATE AS TO WHEN THE DATE

24      IS, OTHER THAN TO TELL YOU THAT I  WILL

25      ANTICIPATE THAT IT WOULD BE IN EARLY 2014.

1    ALL RIGHT.  IS THERE ANYTHING FURTHER ON THIS

2    MATTER?

3    BY MR. IRVING: NO, YOUR HONOR.

4    BY MR. HILBURN: NO, SIR.

5    BY THE COURT: OKAY, IF THERE'S NOTHING FURTHER,

6         COURT IS ADJOURNED.

7    REPORTER'S NOTE: (THEREFORE, AT THIS TIME, THE

8    PROCEEDINGS WERE CONCLUDED.)

9

10         C E R T I F I C A T E

11

12         I CERTIFY THAT THE FOREGOING IS A

13    CORRECT TRANSCRIPT FROM THE RECORD OF THE

14    PROCEEDINGS IN THE ABOVE-ENTITLED NUMBERED

15    MATTER.

16

17    _____

18    CLARE SMITH-NEELY, CCR

19    OFFICIAL COURT REPORTER

20

21

22

23

24

25