UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KENNETH HALL AND                                      CIVIL ACTION
BYRON SHARPER

VERSUS                                               NO. 12-657-BAJ-RLB

STATE OF LOUISIANA, et al.

---

## ORDER

Before the Court are various Motions to Quash Nonparty Deposition Subpoenas and

Subpoenas to Produce Documents. (R. Docs. 220, 222, 223, 227).  On April 14, 2014, after

hearing oral argument, the Court took the Motions to Quash under advisement.  For the reasons

detailed below, the Motions to Quash are **GRANTED in part** and **DENIED in part**.

I.      BACKGROUND

In this action, Plaintiff, Kenneth Hall, and Intervenor, Byron Sharper (Plaintiffs), allege

Louisiana's Judicial Election Plan of 1993, Louisiana Revised Statute § 13:1952, intentionally

dilutes and/or has the effect of diluting the voting power of African Americans in violation of

Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973, as well as the First, Fourteenth

and Fifteenth Amendments to the United States Constitution. (R. Docs. 1, 74, 76, 128, 133, 180).

According to Plaintiffs, since implementing the 1993 Judicial Election Plan, the demographics of

Baton Rouge's voting population has significantly changed and African Americans now

constitute the majority of the voting age population.  In an attempt to redistrict the Baton Rouge

City Court sub-districts to address the changing demographics, House Bills 1013, 945, 318 and 198 were proposed in 2004, 2006, 2013 and 2014, respectively.[1]  All were unsuccessful.

As applied to modern demographics, the 1993 Plan allegedly dilutes the voting power of African Americans and results in the under-representation of African American judges to the Baton Rouge City Court.  Plaintiffs also suggest the actual process of electing judges to the Baton Rouge City Court is racially discriminatory.  Plaintiffs urge that the State's continued use of the 1993 Plan, at the least, disparately impacts African Americans, if it does not intentionally discriminate.

The State of Louisiana, Governor Jindal, Attorney General Caldwell, Secretary of State Schedler, the City of Baton Rouge, the Parish of East Baton Rouge, and Mayor Holden remain as Defendants.[2]  According to the February 19, 2014 Scheduling Order (R. Doc. 202), the discovery deadline was April 21, 2014 (R. Doc. 202 at 1).

## II.      APPLICABLE LAW

### A.      Voting Rights Act and Constitutional Violations

To prove racial discrimination in violation of the Fourteenth Amendment's Equal Protection Clause and the Fifteenth Amendment's right to vote, a plaintiff must prove the government acted with discriminatory intent.  To demonstrate discriminatory intent, a plaintiff can, but need not offer direct evidence — e.g., statements made by the legislative body or its members.  Instead, a plaintiff may rely on circumstantial evidence to show that lawmakers purposefully discriminated against that plaintiff on the basis of race. *See Ketchum v. Byrne*, 740

---

[1] The Louisiana Legislative Digest summarized the purpose of each House Bill as: "Changes the election sections for the City Court of Baton Rouge and provides that three judges are elected from election section one and two judges are elected from election section two." 2004 H.B. No. 1013; 2006 H.B. No. 945; 2013 H.B. No. 318; 2014 H.B. No. 198.

[2] Governor Jindal, Attorney General Caldwell, Secretary of State Schedler, and Mayor Holden are all sued in their official capacities.

F.2d 1398, 1406 (7th Cir.1984) ("In [*Rogers v. Lodge*, 458 U.S. 613, 622-27 (1982)], the Supreme Court affirmed the district court's finding of intentional discrimination based on indirect and circumstantial evidence and endorsed its reliance on a 'totality of the circumstances' approach.").

To evaluate claims of racial vote dilution under the Fourteenth Amendment's Equal Protection Clause, courts rely on the totality of the circumstances test. The test allows courts to infer an "invidious discriminatory purpose . . . from the totality of the relevant facts," including the discriminatory effect of a redistricting scheme, by considering either circumstantial or direct evidence. *Rogers*, 458 U.S. at 618.

Unlike the Fourteenth and Fifteenth Amendments, proof of discriminatory intent is sufficient, but not necessary, to sustain a claim under the Voting Rights Act. Instead, a Voting Rights Act plaintiff may carry his or her burden by either satisfying the more restrictive intent test or the more lenient results test. *See Thornburg v. Gingles*, 478 U.S. 30, 43-44 (1986). Under the results test, the essential "question . . . is whether as a result of the challenged practice or structure plaintiffs do not have an equal opportunity to participate in the political processes and to elect candidates of their choice." *Thornburg*, 478 U.S. at 44. To effectively answer this question, "a court must assess the impact of the contested structure or practice on minority electoral opportunities on the basis of objective factors." *Id.*

**B.      Rules 26 and 45 of the Federal Rules of Civil Procedure**

Rule 26(b)(1) of the Federal Rules of Civil Procedure governs the scope of discovery. Under Rule 26, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." A relevant discovery request seeks information that is "either admissible is reasonably calculated to lead to the discovery of admissible evidence." *McLeod,*

*Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1484 (5th Cir. 1990) (quoting Fed. R. Civ. P. 26(b)(1)).  The scope of discovery is not without limits, however, and the Court may protect a party from responding to discovery when: (i) it is unreasonably cumulative or duplicative, or obtainable from some other less-burdensome source; (ii) the party seeking discovery has had the opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2).

Rule 45 governs the issuance of subpoenas to obtain discovery from non-parties.  The party issuing the subpoena "must take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1).  Additionally, the Rule provides that, on a timely motion, the issuing court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter, or otherwise subjects the subpoenaed person to undue burden. Fed. R. Civ. P. 45(c)(3).  The moving party has the burden of demonstrating that compliance with the subpoena would be unduly burdensome. *See Wiwa v. Royal Dutch Petroleum Co*., 392 F.3d 812, 818 (5th Cir. 2004).  A court's consideration of a motion to quash a third-party subpoena as unduly burdensome should be governed by the following factors: (1) relevance of the information sought; (2) the requesting party's need for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity of the description of the documents; and (6) the burden imposed. *Wiwa*, 392 F.3d at 818.

Subpoenas issued for discovery purposes, such as those at issue here, are also subject to the discovery limitations outlined in Rule 26(b). See *Hussey v. State Farm Lloyds Ins. Co*., 216 F.R.D. 591, 596 (E.D. Tex. 2003); 9A Wright & Miller, Federal Practice & Procedure 2d § 2459

("Of course, the matter sought by the party issuing the subpoena must be reasonably calculated to lead to admissible evidence as is required by the last sentence of Rule 26(b)(1).")

## III.   DISCUSSION

### A.   Motion to Quash Subpoena Issued to Christina Peck

On April 4, 2014, Plaintiffs issued a Rule 45 subpoena to Christina Peck.  The subpoena asked Ms. Peck to appear for a deposition on April 15, 2014 and to produce documents. (R. Doc. 220-1 at 3, 7).  The Notice of Deposition explains that questions "will be limited to [Ms. Peck's] testimony given before the House and Governmental Affairs Committee on May 19, 2004 and information related to House Bill 1013. (R. Doc. 220-1 at 1).  The subpoena additionally seeks production of the following documents:

**Document Request No. 1**
All documents and communications, including e-mails, concerning the Baton Rouge City Court, the Judicial Election Plan, and the Voting Rights Act, including: (a) contracts of employment between you and Judges Ponder, Wall and Davis and the Baton Rouge City Court; (b) evidence of payment under those contracts; (c) expert reports, opinions and drafts of reports and opinions from any expert retained as a result of any contracts of employment; and (d) revisions and/or changes to the 1993 Judicial Election Plan.

**Document Request Nos. 2-6**
All documents related to the legislative redistricting process leading to the planning, development, negotiation, drawing, revision or redrawing of the 1993 Judicial Election Plan, House Bill 1013 of 2004, House Bill 945 of 2006, House Bill 318 of 2013 and House Bill 198 of 2014, and any documents related to the defeat of House Bill 1013 of 2004, 945 of 2006, 318 of 2013 and 198 of 2014 (proposed House Bills).

**Document Request No. 7**
All documents – including payments for services, agreements of representation and contracts of employment – of any person or entity as a voting rights expert, attorney, or lobbyist relating to the planning, development, negotiation, drawing, revision or redrawing of the 1993 Judicial Election Plan, House Bill 1013 of 2004 and House Bill 945 of 2006.

(Peck Subpoena, R. Doc. 220-1 at 13-14).

According to Plaintiffs, Christina Peck appeared and testified before the Louisiana Legislature on behalf of former Defendants, City Court Judges Suzan Ponder, Alex Wall and Laura Prosser (the judges), in opposition to the redistricting legislation, House Bill 1013 of 2004 and House Bill 945 of 2006.  Plaintiffs therefore suggest the testimony and documents sought from Christina Peck are relevant and discoverable.[3]  The three judges are former Defendants, but Ms. Peck did not represent them in this litigation. (Order Dismissing Judges, R. Doc. 177). Instead, Ms. Peck currently serves as counsel of record for Defendants, City of Baton Rouge, Parish of East Baton Rouge and Mayor Holden.  As such, Ms. Peck moved to quash the subpoena on April 8, 2014 "because it is overly broad, seeks production of information protected by the attorney-client privilege and the attorney work product protection, and is unduly burdensome." (R. Doc. 220 at 3).

An opposing party's counsel is not "absolutely immune from being deposed." *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).[4]  However, courts should only allow an opponent's counsel to be deposed in limited circumstances — i.e., where the party seeking the deposition has shown that: (1) "no other means exist to obtain the information than to depose opposing counsel;" (2) "the information sought is relevant and nonprivileged"; and (3)

---

[3] Plaintiff Hall had alleged, among other things, that the three judges "actively campaigned and testified in opposition" to legislation that would have reapportioned the City Court judgeships and also "acted individually and in concert with others in the intentional defiance of the Plaintiff's right of suffrage." (R. Doc. 1 at ¶ 77; R. Doc. 74 at ¶ 13).

[4] Ms. Peck cites several Eastern and Middle District cases to support her suggestion that article 508 of the Louisiana Code of Evidence instructs the Court's resolution of her Motion to Quash. (R. Doc. 220-3 at 2-3).  However, Louisiana's Code of Evidence is inapplicable because: "Questions of privilege that arise in the course of adjudication of federal rights are governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." *U.S. v. Zolin*, 491 U.S. 554, 562 (1989) (quoting Fed. R. Evid. 501).  But, even though article 508 is not controlling, the Court notes that article 508 and the federal common law essentially employ the same substantive analysis in considering whether to allow the deposition of opposing counsel. *Compare* La. C. Evid. art. 508 (considering whether the information sought is (a) essential to the case, (b) not intended to harm or harass, (c) narrowly tailored and (d) not available from any other source), *with* Fed. R. Civ. P. 26(b),(g) (discovery requests may not be overly broad or intended to harass), *and Shelton*, 805 F.2d at 1327 (considering, among other things, whether the information is "crucial" and may be obtained by any other means).

"the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327.  Regardless

of the movant, *Shelton* makes clear that the party asking to depose its opponent's counsel bears

the burden of proof.

Plaintiffs' case does not present the limited circumstances described by the *Shelton*

Court.  To begin, to the extent the questioning in the deposition will be limited to Ms. Peck's

testimony on House Bill 1013 given before the House and Governmental Affairs Committee on

May 19, 2004, counsel has obtained a transcript of that testimony. (R. Doc. 225 at 5).[5]  There is

no need to depose Ms. Peck about what was said when the testimony itself is available.  As the

District Judge previously explained to Plaintiffs, "to the extent [Ms. Peck] may have testified

before a legislative body or anywhere else where there has been a transcript of her testimony . . .

that certainly would be enough." (Mot. to Disqualify Hr'g Tr., R. Doc. 219 at 12).

Plaintiffs' remaining claims concern the current effects of the 1993 Judicial Election Plan

and the failure of the legislature to enact subsequent legislation that would have allegedly

remedied any negative effects resulting from the 1993 Plan's continued use.  Plaintiffs argue that

Ms. Peck's testimony is relevant to the claims of intentional discrimination and the claim for

vote dilution "based on the 2010 Census Data." (R. Doc. 225 at 5).  Plaintiffs have not

sufficiently identified how any lobbying efforts or testimony by Ms. Peck before the legislature,

years prior to that data being available, are relevant, much less crucially relevant, to their claims

before the Court.  The Court reiterates the District Judge's reasoning that the outcome of this

case "will not be based upon any lobbying efforts made by anyone" and so long as Ms. Peck

adheres to any rules governing "lawyer conduct with respect to legislative bodies . . . she's

certainly entitled to engage in that sort of conduct." (R. Doc. 219 at 14).

---

[5] Plaintiff Hall's opposition mistakenly refers to a transcript of testimony occurring in May, 2014 instead of 2004.

Beyond that, even assuming that Ms. Peck's testimony before any legislative body some ten years ago is relevant to the remaining claims, questioning Ms. Peck regarding the circumstances surrounding that testimony such as any communications she had with her clients in preparation for such appearance, would necessarily infringe upon confidential attorney-client communications. The attorney-client privilege is held by the clients, not Ms. Peck, and she is without authority to waive it. *See American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1128 (5th Cir. 1971) (explaining that as holder of privilege, only client may waive it and fact that "one ceases to be a client after communication with the attorney makes no difference; the lawyer's lips must continue to remain sealed").

Even if the legislative testimony provided by Ms. Peck is relevant to Plaintiffs' claims of intentional discrimination and non-privileged, that information is not "crucial" to those claims, given they may be proven through circumstantial evidence. *See Miller v. Johnson*, 515 U.S. 900, 916 (1995) (plaintiffs may use direct or circumstantial evidence to establish violation of Voting Rights Act); *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 266-67 (1977) (direct and circumstantial evidence can be used to show intentional discrimination under the Equal Protection Clause).

Finally, Plaintiffs only allege that Ms. Peck provided testimony before lawmakers regarding House Bill 1013 of 2004 and House Bill 945 of 2006.  Nonetheless, they have subpoenaed information which potentially spans Ms. Peck's 30 year career of litigating Voting Rights Act cases, including all documents "concerning the . . . Voting Rights Act" as well as all documents "related to the legislative redistricting process" for specified time periods, regardless of whether any such documents were ever provided to or presented to any legislative body. (R.

Doc. 220-1 at 13).  The subpoena gave Ms. Peck approximately 11 days to comply.  Plaintiff has made no showing to justify such an overreaching and burdensome request.

To the extent that the requests for documents seek to obtain evidence of communications, contracts and payments between Ms. Peck and her former clients, Plaintiffs have not shown how those items are both non-privileged and relevant to the remaining causes of action.  The city court judges are no longer parties to this suit.  Even if non-privileged evidence exists of a relationship between Ms. Peck and her former clients, Plaintiffs have not demonstrated the relevance of that relationship to the remaining causes of action.

The Court finds that the circumstances sufficient for the deposition of opposing counsel are not present.  The Court also finds that the subpoena request fails to allow for a reasonable time to comply and is also unduly burdensome.  For these reasons, Ms. Peck's Motion to Quash is **GRANTED**.

### B.      Motion to Quash Subpoena Issued to the City Court Judges

On April 4, 2014 and April 7, 2014, Plaintiffs subpoenaed Judges Ponder, Prosser and Wall ("the judges") to appear for depositions and to produce the following:

> **Document Request Nos. 1-5**
> All documents related to the legislative redistricting process which led to the defeat, planning, development, negotiation, drawing, revision or redrawing of the 1993 Judicial Election Plan, House Bill 1013 of 2004, House Bill 945 of 2006, House Bill 318 of 2013 and House Bill 198 of 2014.
>
> **Document Request No. 6**
> All documents – including payments for services, agreements of representation and contracts of employment – indicating retention of any person or entity as a voting rights expert, attorney, or lobbyist relating to the planning, development, negotiation, drawing, revision or redrawing of the 1993 Judicial Election Plan, House Bill 1013 of 2004 and House Bill 945 of 2006.

(R. Doc. 222-3 at 11).

In their Motion to Quash and supporting Memorandum (R. Doc. 222), the City Court judges request that this Court quash the subpoenas because (1) Plaintiffs have failed to comply with Louisiana Code of Evidence article 519 and (2) the information sought by the subpoenas is irrelevant. (R. Doc. 222-1).

In opposition, Plaintiffs argue that article 519 is inapplicable because this is a federal case involving matters of federal law.  Plaintiff Hall further notes that the judges' attempt to apply, by analogy, cases regarding Louisiana Code of Evidence article 508, are distinguishable for this same reason.  The Court agrees and will not quash the subpoenas for failure to follow the procedural and substantive requirements of article 519.

In both the Opposition and during oral argument, counsel for Plaintiffs explained that he intends to depose the judges as "merely fact witness[es] who opposed, testified, and who may have lobbied the Defendants and/or state legislators before, during, and post legislative hearings considering amendments to the Judicial Election Plan." (R. Doc. 226 at 3).  Essentially, Plaintiffs intend to question the judges about their activities before the legislature.

Contrary to Plaintiff's position, however, the judges were not mere fact witnesses when testifying before the legislature.  Plaintiffs repeat their argument that the judges' actions were non-judicial and outside of their function as judicial officers.  This argument was rejected by the District Judge in his order dismissing the judges' from this action. (R. Doc. 177 at 14-19).  In that ruling, the court specifically concluded that these acts were "judicial in nature" even if certain actions "may" have been taken "for their own personal benefit, and not for the benefit of the citizens of Baton Rouge generally." (R. Doc. 177 at 18).  The Court noted that even allegations of bad faith or malice are not sufficient to overcome immunity.  The Court

determined that the judges were entitled to absolute judicial immunity and dismissed the suit against them.[6]

Despite having those claims dismissed, Plaintiffs seek to depose the judges and presumably inquire about the circumstances surrounding those same acts that have previously been found to be judicial in nature.  The judges argue that any testimony or information they could provide is irrelevant.  In opposition, Plaintiffs summarily assert that the judges' actions over the past ten years go to the very heart of his case.  Plaintiffs' case, however, no longer includes those claims against the judges that they "actively campaigned and testified in opposition" to legislation that would have reapportioned the City Court judgeships and also "acted individually and in concert with others in the intentional defiance of the Plaintiff's right of suffrage." (R. Doc. 1 at ¶ 77; R. Doc. 74 at ¶ 13).  There is also no question that the judges have no role in the enforcement of the 1993 Judicial Election Plan and no duty or responsibility to take action in response to any shift in the voting population in the Baton Rouge area.

Plaintiffs also contend the judges' interest in incumbency protection may be relevant to their claims.  Plaintiffs have not shown, however, why the subjective intent or motivations of an individual citizen regarding a decision by the legislature as to whether to enact a law is relevant.  Plaintiff Hall has provided no legal support for the proposition that the subjective intent of the judges bears on the presence of discriminatory intent of the legislative body.

Even if the Court were to assume that the statements of the judges to the legislature were relevant, the testimony opposing the proposed House Bills is available in the transcripts of those hearings.  Second, there is no dispute that the three judges have an interest in incumbency protection. (R. Doc. 219 at 10) ("No question about it.").  As such, facts relevant to those points

---

[6] The District Judge noted that judicial immunity included immunity from suit as well as immunity from damages. (R. Doc. 177 at 15).

are readily available from other sources.  Finally, the District Judge conceded his willingness to assume that lobbying efforts occurred in connection with the proposed House Bills. (R. Doc. 219 at 15) ("Based upon the arguments that were previously made at prior hearings, it's clear to me that there were some lobbying efforts.").  The District Judge, however, also made clear that Plaintiffs did not show how those lobbying efforts are relevant to their claims. (R. Doc. 222-6). Plaintiffs have likewise failed to do so here, especially where the claims against those judges have been dismissed.[7]  This Court agrees that Plaintiffs have again not shown the relevance of any lobbying efforts by the judges.  As such, the Court **GRANTS** the judges' Motion to Quash the Rule 45 subpoenas issued by Plaintiffs.

### C.    Motion to Quash Subpoenas Issued to the Legislators

On April 4, 2014, Plaintiffs issued subpoenas to John A. Alario, Jr., President of the Louisiana Senate; Charles Kleckley, Speaker of the Louisiana House of Representatives; Dr. William Blair, Demographer of the Louisiana Legislature; and Alfred Speer, Clerk of the Louisiana House of Representatives (legislators), for both the production of documents and deposition testimony.  Broadly summarized, the subpoenas ask for information concerning: (1) the identities of persons participating in the legislative redistricting process; (2) communications the legislators had with any other government official or interested party about the 1993 Plan or any of the proposed House Bills; (3) the factual information considered in connection with the 1993 Plan and the proposed House Bills; (4) finalized maps and any drafts of maps relevant to the 1993 Plan and the proposed House Bills, as well as the individuals contributing to the creation of those maps and the data they relied on; and (5) documents, reports or other

---

[7] In argument before the District Judge at a hearing concerning a motion to disqualify Ms. Peck, counsel for Plaintiffs stated that the lobbying efforts of the judges and Ms. Peck "might be an element of the claims against some of the parties . . . such as the judges." (R. Doc. 222-6 at 14-15).  Again, those claims are no longer part of this litigation.

information provided by any experts or consultants associated with the 1993 Plan and the proposed House Bills.

The legislators argue that the subpoenas should be quashed because, as Judge Jackson previously held, Senator Alario's and Representative Kleckley's conduct related to Plaintiffs' claims was legislative in nature and entitled them to absolute immunity. (R. Doc. 223-1 at 7); (Order, R. Doc. 178 at 18). The legislators suggest that because the requested documents and intended testimony center on the same legislative acts, the legislators and their staff are absolutely immune from testifying on those matters. (R. Doc. 223-1 at 7).

The legislators also argue that the documents sought are irrelevant because the intent of the legislators has no bearing on Plaintiffs' claims which may be proven by circumstantial, as opposed to only direct evidence. (R. Doc. 223-1 at 8, 10-11).

Finally, the legislators suggest that the subpoenas are unduly burdensome. Plaintiffs seek documents spanning 21 years and covering 23 specific categories. The scope of the documents in each category is essentially limitless. The subpoenas commanded the legislators and staff to appear for deposition and produce those documents on April 16, 2014 — within less than two weeks of service and only 6 days before the discovery deadline, all while the legislature is in session. (R. Doc. 223-1 at 12).

The legislators do not object, however, "to furnishing Mr. Hall with any document or files considered public records under Louisiana law including the legislative histories, committee minutes, and available audio and video for the named bills." (R. Doc. 223-1 at 2).

The District Judge, citing *Tenney v. Brandhove*, 341 U.S. 367 (1951), has already determined that the individual legislators are absolutely immune from liability for their legislative acts. (R. Doc. 178 at 16). The question here, however, is whether that legislative

13

immunity gives rise to a general evidentiary privilege, allowing them to refuse to provide evidence in a civil lawsuit related to their legislative activities.

The Speech or Debate Clause of the First Amendment gives *federal* legislators "two distinct privileges: (1) freedom from questioning, which is in the nature of a testimonial privilege, and (2) freedom from liability, which means that reference may not be made in court to a defendant's legislative activities." *U.S. v. Swindall*, 971 F.2d 1531, 1544 (11th Cir. 1992) (member of the U.S. House of Representatives); *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502-03 (1975) (absolute privilege from testimony and absolute immunity from liability in Speech or Debate Clause applies to Congress).

However, the Speech or Debate Clause only applies to U.S. Congressmen and not to state legislators. Instead, the state lawmaker's "legislative privilege is governed by federal common law, as applied through Rule 501 of the Federal Rules of Evidence." *Favors v. Cuomo*, 285 F.R.D. 187, 209 (E.D.N.Y. 2012); *Village of Arlington*, 429 U.S. at 268 (recognizing a testimonial privilege for state legislators and severely limiting, but not foreclosing, the possibility of piercing the privilege in discriminatory-intent claims). Unlike the absolute privilege afforded to members of Congress, the legislative privilege for state lawmakers is qualified and capable of yielding. *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 93-94 (S.D.N.Y. 2003); *Hobert v. City of Stafford*, 784 F. Supp. 2d 732, 763 (S.D. Tex. 2011) (recognizing a qualified privilege for local legislators).

The Court, therefore, recognizes the existence of a common law state legislative privilege that may yield in certain circumstances. As such, the question becomes whether the disclosure of certain evidence should be allowed. In making this determination, the Court must balance the

interest of the party seeking the evidence against the interest of the one claiming the privilege by

considering the following factors:

(i)     the relevance of the evidence sought to be protected;
(ii)    the availability of other evidence;
(iii)   the seriousness of the litigation and the issues involved;
(iv)    the role of the government in the litigation; and
(v)     the possibility of future timidity by government employees who will be
        forced to recognize that their secrets are violable.

*Perez v. Perry*, No. 11-360, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) (citing *Rodriguez*,

280 F. Supp. 2d at 101).  In considering these factors, "the court's goal is to determine whether

the need for disclosure and accurate fact finding outweighs the legislature's 'need to act free of

worry about inquiry into [its] deliberations.'" *Veasey v. Perry*, No. 13-193, 2014 WL 1340077, at

*2 (S.D. Tex. April 3, 2014) (citing *Comm. for a Fair & Balanced Map v. Ill. State Bd. of

Elections*, No. 11-5065, 2011 WL 4837508, at *7 (N.D. Ill. Oct.12, 2011)).

The legislators argue that the evidence requested is irrelevant to show discriminatory

intent.  Contrary to the legislators' argument, statements made by members of the lawmaking

body are relevant to show discriminatory intent, which may be part of the proof used to establish

Plaintiffs' substantive claims.  *See Village of Arlington*, 429 U.S. at 268.  But this is just one

factor among many that Plaintiffs may use to prove their claims.  As acknowledged by the

Supreme Court,

> Inquiries into congressional motives or purposes are a hazardous matter. When
> the issue is simply the interpretation of legislation, the Court will look to
> statements by legislators for guidance as to the purpose of the legislature, because
> the benefit to sound decision-making in this circumstance is thought sufficient to
> risk the possibility of misreading Congress' purpose. It is entirely a different
> matter when we are asked to void a statute that is, under well-settled criteria,
> constitutional on its face, on the basis of what fewer than a handful of
> Congressmen said about it. What motivates one legislator to make a speech about
> a statute is not necessarily what motivates scores of others to enact it, and the
> stakes are sufficiently high for us to eschew guesswork.

*Hunter v. Underwood*, 471 U.S. 222, 228 (1985); *see also Palmer v. Thompson*, 403 U.S. 217, 224 (1971) ("no case in this Court has held that a legislative act may violate equal protection solely because of the motivations of the men who voted for it"); *Hispanic Coal. on Reapportionment v. Legislative Reapportionment Comm.*, 536 F. Supp. 578, 586 (D. Pa. 1982) (discriminatory statements made by chairman of city redistricting committee were insufficient to prove discriminatory intent absent a showing that state legislative body adopted chairman's views).  The Court finds that while certain requested evidence may be relevant, "it is not central to the outcome of this case." *Comm. for a Fair & Balanced Map,* 2011 WL 4837508, at *8.

Even where contemporaneous statements by members of the decision making body may be relevant, those can be reflected in transcripts, meeting minutes, or reports.  *Village of Arlington*, 429 U.S. at 268.  The legislators have recognized that these types of other evidence, specifically "any document or files considered public records under Louisiana law including the legislative histories, committee minutes, and available audio and video for the named bills," are not objected to and will be provided. (R. Doc. 223-1 at 2).  During argument, counsel for the legislators indicated that some of Plaintiffs' document requests concerning the objective evidence available to and relied upon by the legislators in connection with the 1993 Judicial Election Plan, including Election Sections 1 and 2, and the House Bills proposed in 2004, 2006, 2013 and 2014 are matters of public record.  As these documents are matters of public record, this factor weighs against disclosure.[8]

The Court finds that the third and fourth factors weigh in favor of disclosure.  Plaintiffs raise serious questions about the continued use of the Judicial Election Plan of 1993 and its effect

---

[8] While such publicly available evidence may be useful in establishing discriminatory intent, the Court recognizes, however, the "practical reality that officials seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority." *Veasey*, 2014 WL 1340077, at *3.

of diluting the voting power of African Americans in violation of Section 2 of the Voting Rights Act, as well as the First, Fourteenth and Fifteenth Amendments to the United States Constitution. Plaintiffs allege that discriminatory motives were likewise involved in the failed attempts to redistrict the Baton Rouge City Court sub-districts to address the changing demographics in the defeat of House Bills 1013, 945, 318 and 198 that were proposed in 2004, 2006, 2013 and 2014, respectively.  The role of the government in the alleged conduct is direct.

The fifth factor weighs against disclosure.  Courts have long recognized that disclosure of confidential documents and communications concerning intimate legislative activities should be avoided. *Veasey*, 2014 WL 1340077, at *3 n.7 (collecting cases).  Failure to afford protection to such confidential communications between lawmakers and their staff will not only chill legislative debate but also discourage earnest discussion within governmental walls.  The Court also recognizes that inquiries regarding the specific motives of individual legislators, or advice and recommendations used by those legislators to support their decision, will encourage timidity and hamper the legislative process.

The Court finds that the balance struck by the district court in *Committee for a Fair and Balanced Map* is instructive and also appropriate in this case.  2011 WL 4837508, at *9-10.  As the *Committee* Court explained, the privilege applies to any documents or information that contains or involves opinions, motives, recommendations or advice about legislative decisions between legislators or between legislators and their staff.  The broad and speculative assumptions made by Plaintiffs are insufficient to warrant a finding that the legislative privilege should yield in this case to allow disclosure of the motives, intent and communications of the subpoenaed legislators or the identities of specific legislators involved in the decision-making process.  The privilege therefore also applies to any information that would reveal such opinions and motives.

This includes any procedures used by lawmakers in the legislative process as well as the identification of any specific legislators that were involved in any particular step in the process. The Court finds that any need for this information is outweighed by the purpose of the qualified privilege.

With respect to facts or information that were made available to lawmakers at the time of their decision, the Court concludes that these materials are not shielded. Indeed, to the extent that this information is part of the public record, the legislators represent that they will provide that information.[9] This also includes, however, information, reports or recommendations provided by outside consultants, experts or lobbyists utilized in consideration of the legislation and any contractual agreements related thereto.

With these parameters in place, the Court now turns to the specific document requests made by the Plaintiffs. In their Opposition, Plaintiffs claim that the subpoenas were issued "narrowly" and should not be quashed in any way. (R. Doc. 235 at 1). Contrary to that assertion, the subpoena is quite expansive in both the time periods covered as well as the near limitless scope of materials requested. Perhaps realizing the privileged nature of certain information that would be responsive under the subpoena, Plaintiffs have offered to "amend the subpoena duces tecum to remove" any documents or information "containing the motives and intent of individual members of the Louisiana Legislature." (R. Doc. 235 at 9).

As noted above, Plaintiffs also served these subpoenas during the legislative session and demanded production of the documents and depositions to occur in less than two weeks. Considering the expansive scope of the requests and the potentially privileged nature of the information requested, it was also unreasonable to expect the preparation of a privilege log

---

[9] Assuming Defendants intend to present expert testimony, much of this is likely discoverable under Rule 26(a)(2)(B)(ii) of the Federal Rules of Civil Procedure.

within the requisite amount of time.  In addition, Plaintiffs also failed to give the required notice to the remaining Defendants of these Rule 45 subpoenas.  The Court therefore finds that the subpoenas did not give the third party legislators and their staff a reasonable time to comply and also subjects them to an undue burden.  Pursuant to Rule 45, the Court must quash or modify any such subpoena.  Fed. R. Civ. P. 45(d)(3)(A).

      For the foregoing reasons and for those set forth in the following section, the legislators' Motion to Quash is **GRANTED in part** and **DENIED in part**.

      The requests for documents contained in the subpoenas are modified in that the legislators are not required to produce any responsive documents or information that contains or involves opinions, motives, recommendations or advice about the referenced legislation, including communications between either legislators, or legislators and their staff.  This also includes any procedures used by lawmakers in the legislative process as well as the identification of any specific legislators that were involved in any particular step in the process.

      To the extent there are documents responsive to Plaintiffs' requests that have been made a part of the legislative record or would otherwise constitute public records, including "the legislative histories, committee minutes, and available audio and video for the named bills" as identified by the legislators in the Motion to Quash, those documents are properly the subject of discovery and the Court does not find that they would be covered by any privilege. (R. Doc. 223-1 at 2).  The responsive date on the subpoena, however, is modified and this information shall be provided no later than **May 7, 2014**.  Plaintiffs are responsible for providing a copy to all other parties in the litigation.

      Finally, to the extent not covered by documents in the public record, the legislators shall provide any facts or information in their possession that were made available to lawmakers at the

time of their decisions, including any information, reports or recommendations provided by outside consultants, experts or lobbyists in consideration of the legislation, as well as any contractual agreements related thereto.  This information shall be provided no later than **May 7, 2014**.  Plaintiffs are responsible for providing a copy to all other parties in the litigation.  Any documents being withheld as privileged under this Order shall be identified in a privilege log pursuant to Rule 45(e)(2) of the Federal Rules of Civil Procedure and provided to Plaintiffs along with the production of documents.

With respect to the subpoenaed depositions, the Motion to Quash is **GRANTED**. Plaintiffs did not provide reasonable notice to the other parties in the litigation or to the subpoenaed parties.   Plaintiffs waited until the legislative session had begun, and with less than three weeks remaining to conduct discovery, to subpoena the President of the Senate, the Speaker of the House, a demographer, and the Clerk of the Louisiana House of Representatives, as well as four other individuals.  Substantively, Plaintiffs have not set forth the discoverable, non-privileged and relevant information that would be obtained through these depositions in accordance with the factors outlined above.  The Court finds that quashing the deposition subpoenas is appropriate pursuant to Rule 45(A)(i), (ii) and (iv).

### D.      Motion to Quash by State of Louisiana and Notice and Timing of Subpoenas

Rule 45 of the Federal Rules of Civil Procedure provides that "[s]erving a subpoena requires delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1).  "If the subpoena commands the production of documents . . . , then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4).  The "purpose of such notice is to afford other parties an opportunity to object to the production or inspection." *Westside–Marrero Jeep Eagle, Inc. v. Chrysler Corp. Inc.*, No. 97–

3012, 1998 WL 186705, at *7 (E.D. La. April 17, 1998) (citing prior version at Fed. R. Civ. P. 45(b)(1)).  Rule 30(b)(1) of the Federal Rules of Civil Procedure requires that "[a] person who wants to depose a person by oral questions must give reasonable written notice to every other party."  Failure to serve a copy of a subpoena upon an opposing party or to give notice of its content deprives that party of any meaningful right to object or to otherwise protect its interests.

Plaintiffs issued 8 subpoenas to the various third parties on either April 4, 2014 or April 7, 2014 commanding them to appear for depositions and produce documents on either April 15, 2014 or April 16, 2014.  Defendant, State of Louisiana first learned of the subpoenas issued to the various third parties upon either contact with the third parties or when those third parties filed their Motions to Quash.  In any event, Defendant did not become aware of the various subpoenas before Thursday, April 10, 2014 — only 1 business day before the Court's April 14, 2014 hearing and just 2 to 3 days before the depositions were scheduled and the requested documents were due.

"A party's failure to serve a copy of a subpoena on his opponent, as required by [Rule 45(a)(4)], has been held to substantiate a decision to quash the subpoena." *Williams v. Weems Community Mental Health Center*, No. 04–179, 2006 WL 905955, at *2 (S.D. Miss. April 7, 2006) (citing *Butler v. Biocore Med. Tech., Inc*., 348 F.3d 1163, 1173 (10th Cir. 2003)); *Firefighter's Inst. for Racial Equality v. City of St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000).  The Court finds that given the circumstances, Plaintiffs' failure to comply with Rule 30(b)(1) and 45(a)(4) deprived Defendant of a fair opportunity to protect its interests, resulting in prejudice. For that reason, in addition to those already given, the Court **GRANTS in part** and **DENIES in part** Defendant State of Louisiana's Motion to Quash the subpoenas for Plaintiffs' failure to provide notice and serve a copy of the subpoenas on all parties (R. Doc. 227).  The Court finds

that the document requests contained in the subpoenas to the legislators are modified in scope and timing as limited above.  All other subpoenas are quashed.

In addition to not giving sufficient notice of the subpoenas to all parties, the Court also finds Plaintiffs failed to provide sufficient notice to all of the actual subpoenaed third parties. Plaintiffs served their subpoenas on either April 4 or 7 and required the third parties to appear and produce documents between April 15 and 16.  In other words, some of the third parties had at most 12 days to respond, while others were given as little as 9 days to comply with numerous and, in some instances, lengthy requests.  The timeframes are clearly unreasonable, particularly when the 14 day period for serving objections under Rule 45(c)(2)(B) is generally considered a reasonable time.  And so, the subpoenas must additionally be quashed as they "fail(s) to allow a reasonable time to comply." Fed. R. Civ. P. 45(c)(3)(A)(i); *see also Thomas v. IEM*, Inc., No. 06-886, 2008 WL 695230, at *3 (M.D. La. Mar. 12, 2008) (subpoenas would be quashed where they only allowed 9 days business days to respond and produce documents); *Freeport McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Resource, Inc.*, No. 03–1496, 2004 WL 595236, at *9 (E.D. La. Mar. 23, 2004) (on its face, 14 days to respond to subpoena to produce documents is generally considered reasonable, but reasonableness may vary depending on the circumstances of each case).

## IV.    CONCLUSION

For the reasons given above, based on the parties' arguments in their memoranda and during oral argument, **IT IS ORDERED** that:

The Motion to Quash the Deposition Subpoena and Subpoena to Produce Documents issued to Christina Peck (R. Doc. 220) is **GRANTED**;

22

The Motion to Quash the Deposition Subpoenas and Subpoenas to Produce Documents issued to Judges Suzan Ponder, Laura Prosser and Alex Wall (R. Doc. 222) is **GRANTED**;

The Motion to Quash the Deposition Subpoenas and Subpoenas to Produce Documents issued to John A. Alario, Jr., President of the Louisiana Senate; Charles Kleckley, Speaker of the Louisiana House of Representatives; Dr. William Blair, Demographer of the Louisiana Legislature; and Alfred Speer, Clerk of the Louisiana House of Representatives, (R. Doc. 223) is **DENIED in part** and **GRANTED in part**.  Discovery regarding the categories of documents referenced above is permitted and must be produced by **May 7, 2014** but denied as to materials that remain shielded by privilege as well as the subpoenaed depositions.

Defendant State of Louisiana's Motion to Quash Nonparty Deposition Subpoenas and Subpoenas to Produce Documents (R. Doc. 227) is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** as it relates to the subpoenas issued to Christina Peck and Judges Suzan Ponder, Laura Prosser and Alex Wall, which are quashed.  With respect to the subpoenas issued to John A. Alario, Charles Kleckley, Dr. William Blair and Alfred Speer, the Motion is **DENIED** regarding the production of documents falling within the categories of documents referenced above but **GRANTED** as to materials that remain shielded by privilege as well as the subpoenaed depositions.

Unless specifically set forth in this Order, all other deadlines set forth in the Scheduling Order (R. Doc. 202) or in the April 14, 2014 Minute Entry (R. Doc. 241) remain in effect.

Signed in Baton Rouge, Louisiana, on April 23, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**