## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KENNETH HALL,** | * | **CIVIL ACTION 3:12-cv-657** |
| *Plaintiff* | * | |
| | * | |
| **VERSUS** | * | |
| | * | **CHIEF JUDGE BRIAN A. JACKSON** |
| **STATE OF LOUISIANA, PIYUSH** | * | |
| **("BOBBY") JINDAL, in his official** | * | |
| **capacity as Governor of the State of** | * | **MAGISTRATE RICHARD L. BOURGEOIS** |
| **Louisiana, JAMES "BUDDY"** | * | |
| **CALDWELL, in his official capacity as** | * | |
| **Attorney General, and TOM** | * | |
| **SCHEDLER, in his official capacity as** | * | |
| **the Louisiana Secretary of State, CITY** | * | |
| **OF BATON ROUGE, PARISH OF** | * | |
| **EAST OF BATON ROUGE, and** | * | |
| **BATON ROUGE CITY COURT,** | * | |
| *Defendants* | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING ACTION BY PLAINTIFF, KENNETH HALL

**MAY IT PLEASE THE COURT:**

Plaintiff, Kenneth Hall has alleged claims against Defendant, Tom Schedler, in his official capacity as the Louisiana Secretary of State (hereinafter referred to as "the Secretary of State" or "the Secretary"), relating to the 1993 Judicial Election Plan enacted for the purposes of electing City Court Judges in Baton Rouge. In his numerous complaints, Plaintiff has alleged that the Secretary of State (among others) violated the First, Fourteenth, and Fifteenth Amendments, the Civil Rights Act, and the Voting Rights Act. But Plaintiff does not have any evidence to prove that the Secretary violated any of these laws. Likewise, Plaintiff does not have any evidence to prove that the Secretary may act in any way to provide him with any prospective relief that he requests.

Plaintiff admits that the Secretary did nothing to intentionally discriminate against him. Plaintiff admits that he has no evidence that the Secretary discriminated against him unintentionally. Plaintiff admits that he has no evidence to prove that the Secretary has anything to do with the drawing or redrawing of election districts or the enactment of reapportionment laws, which is the ultimate remedy he seeks in this action. Plaintiff even admits that the Secretary does not have the power or authority to not perform his duties in holding and certifying election results, acknowledging that the Secretary's duties are non-discretionary.

Instead, Plaintiff's sole claim rests upon the allegation that the Secretary of State has a "duty to report to the legislature and the Governor that election subdistricts have become unconstitutionally constituted."[1] But Plaintiff has no evidentiary or legal basis to even prove that such a duty exists. And considering the non-discretionary nature of the Secretary's election duties, it cannot exist. The Secretary of State does not have the expertise, ability, or authority to make a unilateral determination that an election is constitutional or unconstitutional. And because he cannot make this determination, he cannot possibly have a duty to inform the legislature of such a decision. Therefore, the Secretary cannot be held to have violated Plaintiff's rights for not performing such a task, either in his official or individual capacity.

Lastly, Plaintiff cannot prove that he would receive the remedy he seeks even if the Secretary of State did, in fact, comply with every injunctive request Plaintiff makes of him in this case. For instance, Plaintiff now claims that the Secretary should inform the legislature that the 1993 Judicial Election Plan is allegedly unconstitutional. But the legislature is well aware of Plaintiff's allegations, and therefore the Secretary's disclosure would be of no moment. Likewise, Plaintiff has requested that the Secretary be enjoined from holding and/or certifying further elections under the Plan (though Plaintiff admits that the Secretary has no discretion to do

---

[1] *See* Responses to Discovery attached hereto as Exhibit "A" at Interrogatory 4.

so). But even if the Secretary could perform such a task, this would mean that the currently elected judges would remain in office, and still perpetuate the conditions which Plaintiff claims to be unconstitutional. Thus, any action by the Secretary of State must be premised upon a finding by this Court as to the unconstitutionality of the 1993 Judicial Election Plan. But if the Court does make such a finding, the Secretary of State is already compelled to refrain from holding any further elections thereunder. Therefore, even if Plaintiff prevails in this action, there is no Order that this Court may issue that would cause the Secretary of State to act any differently than he would had he not been involved in the matter at all. Therefore, considering that the Court cannot render a finding that the Secretary of State violated any of the statutory or constitutional provisions upon which this action arises, and because the Secretary of State may not grant Plaintiff any independent injunctive remedy, the entire action against the Secretary of State must be dismissed.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Kenneth Hall, brought this action by means of a Complaint filed on October 18, 2012[2] based upon alleged racial discrimination and improper assignment of voter districts for the election of City Court judges in Baton Rouge, Louisiana. Plaintiff named as a defendant (among others), Secretary of State Tom Schedler,[3] despite that admittedly, "the Louisiana House and Governmental Affairs Committee and Louisiana Senate and Governmental Affairs Committee

---

[2] *See* Rec. Doc. 1.

[3] Plaintiff states that suit against the Secretary of State is brought against him in his official capacity (*Id.* at par. 8), a fact noted by the Court in its Ruling and Order regarding the Secretary of State's Motion to Dismiss (Rec. Doc. 175 at FN 9). Plaintiff makes reference, however, to suit against all Defendants both as individually elected state defendants and as successors in office to their prior respective State of Louisiana office holders (Rec. Doc. 1 at Par. 9). While the Secretary does not believe this provision successfully pleads a cause of action against the Secretary of State in his personal capacity, the Secretary reiterates all arguments herein and also incorporates all arguments in the Secretary's Motion for Summary Judgment Regarding Action of Plaintiff-Intervenor, Byron Sharper, insofar as they relate to a personal capacity claim.

have state jurisdiction over redistricting of City Court," and "the Louisiana Legislature has joint authority with the City of Baton Rouge over all judicial redistricting and the allotment number of judges for City Court."[4] Mr. Hall has subsequently amended his Complaint four times, adding numerous additional parties and numerous additional allegations.[5]

Throughout his complaints, Plaintiff has made general allegations of discrimination against all defendants and generally refers to the 1993 Judicial Election Plan as "Defendants'" plan, but Plaintiff's only specific claims against the Secretary of State are as follows:

- Secretary of State Tom Schedler [is an] enforcement official, maintaining, executing, and enforcing the 1993 Judicial Election Plan in the form it currently exists.[6]

- Defendant, Secretary of State of Louisiana, is an elected public official of the Defendant, State of Louisiana, and as such, is the Chief Executive Officer; he is charged with maintaining voter records, and is the enforcement officer of the State of Louisiana election laws, and as such, implements and maintains State of Louisiana and its municipal election standards, regulations, practices, and procedures as required by the State of Louisiana, the City of Baton Rouge, and the Parish of East Baton Rouge, particularly, governing and regulating enforcement of the previously identified discriminatory 1993 Judicial Election Plan.[7]

- All Defendants [including] the Secretary of State of Louisiana … are particularly aware that the 1993 Judicial Election Plan redistricting the Baton Rouge City Court may seem fair on its face; nevertheless, their application of the Plan invidiously discriminates against, and adversely impacts, Plaintiff, as a citizen and voter, as their state action as individuals and/or public officials violate the equal protection of laws, the right to vote, due process of law, and Plaintiff's rights as a racial majority of the City of Baton Rouge, to communicate and associate the majority of power of his vote with that of similarly situated citizens.[8]

- Defendant, Secretary of State has the legal and administrative capacity, and authority to enforce the election laws of Louisiana and to grant Plaintiff Hall essential aspects of the relief sought particularly not to

---

[4] Rec. Doc. 1 at p. 4.
[5] *See* Rec. Doc. 13, 74, 76, and 180.
[6] Complaint, Rec. Doc. 1 at par. 68.
[7] Second Supplemental and Amending Compaint, Rec Doc. 74, at par. 9.
[8] *Id.* at par. 31.

endorse, or enforce the challenged Judicial Election Plan, which contains the assignment of enumerated and selective voting precincts and sections in violation of federal law. Despite being aware of Plaintiff Hall's challenges to the 1993 Judicial Election Plan by holding elections for City Court on November 6, 2012 and December 8, 2012, in violation of Plaintiff's [sic] Halls [sic] constitutional rights.[9]

- The Secretary of State certifies all candidates elected for public office in Louisiana, particularly those winning candidates … for the just held elections for City Court within 30 days of the general election. The Secretary of State will soon issue all (unopposed and the prevailing candidates in the December 8, 2012 election) commissions to all elected candidates elected for City Court, who are expected to receive those commissions and assume the office of City Court Judge … for the six year term commencing January 1, 2013, with the attendant emoluments of office.[10]

Throughout the remainder of Plaintiff's complaints, he frequently lumps all defendants together as one, alleging that they intentionally discriminated against him, diluted his vote, and violated his constitutional and statutory rights.[11] He has also requested numerous remedies, including declaratory and injunctive remedies relating to all levels of the election process, with his ultimate prayer being the declaration that the 1993 Judicial Election Plan is unconstitutional, and that parties reapportion the City Court election districts so as to comply with the Constitution and the Voting Rights Act.

The Secretary of State has filed several Motions to Dismiss seeking the full dismissal of Plaintiff's claims against him.[12] The Court denied the Secretary's motions, ruling that Plaintiff's §1983 claims survived the Secretary's claims of sovereign immunity because Plaintiff's complaints allege that "Schedler has some connection with the enforcement of the 1993 Judicial Election Plan and is currently exercising and/or threatening to exercise that duty [and that] Hall

---

[9] Third Supplemental and Amending Complaint, Rec. Doc. 76, at par. 11.
[10] *Id.* at par. 18.
[11] Plaintiff also initially alleged violations of § 5 of the Voting Rights Act, however, after the United States Supreme Court's holding in *Shelby County*, those claims have since been dismissed.
[12] *See* Rec. Doc. 40, 42, and 47; *see also* Motion for Reconsideration, Rec. Doc. 185 and Ruling and Order, Rec. Doc. 218.

sufficiently alleges an ongoing violation of federal law, and that he seeks relief that is properly characterized as prospective."[13] For these same reasons, the Court also found that Plaintiff's claims under Section 2 of the Voting Rights Act were also sufficiently pled in his complaints.[14]

## II.    LAW AND ARGUMENT

But Plaintiff cannot provide a single piece of evidence or legal basis to prove that any action by the Secretary of State violated any federal laws or that the Secretary of State performed any task that he was not legally required to perform. He further cannot provide a single piece of evidence or legal basis to prove that the Secretary did not perform any task was so required. Plaintiff cannot submit any legal or evidentiary basis to prove that any action of the Secretary caused discrimination against him or caused his vote to be diluted. Lastly, he cannot provide any basis to conclude that the Secretary of State has the ability to grant him any prospective relief that he requests.

### A.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[15] Unsubstantiated assertions are not competent summary judgment evidence.[16] Nor are conjecture or speculation adequate to satisfy the nonmovant's burden.[17]

---

[13] Ruling and Order, Rec. Doc. 175, at p. 16.
[14] *Id.* at p. 17.
[15] F.R.C.P. 56(c) (West. 2014).
[16] Grimes v. Texas Dept of Mental Health, 102 F.3d 137, 139 (5th Cir. 1996).
[17] Little v. Liquid Air Corp., 37 F.3d 1069, 1079 (5th Cir. 1994).

**B. Plaintiff cannot provide any evidence sufficient to create a genuine issue of material fact to support his contention that the Secretary of State has violated his Constitutional and statutory rights.**

Plaintiff has claimed that the Secretary of State's actions in relation to the 1993 Judicial Election Plan amount to a violation of the First Amendment, the Fourteenth and Fifteenth Amendments pursuant to a violation of 42 USC §1983, and a violation 42 USC §1973. But Plaintiffs admittedly cannot provide a single legal or evidentiary basis to justify these allegations. As such, there is no genuine issue of material fact to support the contention that the Secretary has violated any of these provisions.

    i. <u>Plaintiff cannot provide any evidence sufficient to create a genuine issue of material fact that the Secretary of State intentionally discriminated against him. Therefore, the Court should enter a finding that the Secretary of State did not violate the provisions of the Equal Protection Clause of the Fourteenth and Fifteenth Amendments or 42 USC §1983, and Plaintiffs' claims arising thereunder the should be dismissed.</u>

In order to state a claim of racial discrimination under the Equal Protection Clause and § 1983, a plaintiff must demonstrate that the governmental official was motivated by intentional discrimination on the basis of race.[18] "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."[19]

Likewise, "[t]o prove racial discrimination in violation … the Fifteenth Amendment's right to vote, a plaintiff must prove the government acted with discriminatory intent."[20] Accordingly, "vote dilution does not give rise to a cause of action under the Fifteenth Amendment."[21]

---

[18] See Washington v. Davis, 426 U.S. 229, 238-42 (1976); Vera v. Tue, 73 F.3d 604, 609 (5th Cir. 1996).
[19] Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 265 (1977).
[20] Order, Rec. Doc. 277.
[21] *See Reno v. Bossier Parish,* 528 U.S. 320, 334 n.3 (2000); *Holder v. Hall,* 512 U.S. 874, 920 (1994) (Thomas, J. concurring in judgment); *Mobile v. Bolden,* 446 U.S. 55, 84 n.3 (1980) (Stevens, J. concurring); *see also Tigrett v. Cooper,* No. 10–2724–STA–tmp, 2012 WL 691892, at *10 (W.D.Tenn. Mar. 2, 2012) (summarizing Supreme Court precedent).

Though Plaintiff, in his Complaints, alleged numerous times that all Defendants intentionally discriminated against him, in his responses to discovery requests, Plaintiff readily admits that the Secretary of State did not intentionally discriminate against him or any other party or class in relation to the subject matter of this litigation. For instance, please see the following requests for admission, interrogatories, and Plaintiff's responses thereto:

**REQUEST FOR ADMISSION NO. 1:**

Please admit that you do not possess any evidence to support the contention that the Louisiana Secretary of State has intentionally discriminated against you or the African American population of the City of Baton Rouge in relation to the subject matter of this litigation.

**ANSWER TO REQUEST FOR ADMISSION NO. 1:**

There is no known evidence that the Secretary of State had, as of the date of the filing of this litigation, personally intentionally discriminated against Plaintiff or the African American population of the City of Baton Rouge in relation to the subject matter of this litigation.

**REQUEST FOR ADMISSION NO. 2:**

Please admit that you do not possess any evidence to support the contention that the Louisiana Secretary of State has violated 42 USC §1983 in relation to the subject matter of this litigation.

**ANSWER TO REQUEST FOR ADMISSION NO. 2:**

There is no known evidence that the Secretary of State had, as of the date of the filing of this litigation, personally intentionally violated 42 USC §1983 in relation to the subject matter of this litigation.[22]

…

**INTERROGATORY NO. 5:**

Please state with specificity any evidence or support you have to prove the contention that the Louisiana Secretary of State has intended to discriminate

---

[22] Plaintiff did not provide a response regarding unintentional violations of 42 USC §1983. According to Fed. R. Civ. P. 36(a)(3) any allegation set forth in a Request for Admission that is not denied within 30 days of service is deemed to be admitted.

against you and/or African American voters in relation to the subject matter of
this litigation.

**ANSWER TO INTERROGATORY NO. 5:**

There is no contention that the Secretary of State intentionally
discriminated against [Plaintiff] and/or any other African American voters in
relation to the subject matter of this litigation. …

**INTERROGATORY NO. 6:**

Please state with specificity any action taken by the Louisiana Secretary of
State to intentionally discriminate against you and/or African American voters in
relation to the subject matter of this litigation.

**ANSWER TO INTERROGATORY NO.6:**

There is no contention that the Secretary of State intentionally
discriminated against [Plaintiff] and/or any other African American voters in
relation to the subject matter of this litigation. …[23]

Therefore, because intentional discrimination is vital to Plaintiff's claims arising under the

Fourteenth and Fifteenth Amendments and 42 USC §1983, and because Plaintiff cannot present

any evidence to prove that the Secretary of State intended to discriminate against him or any

African Americans in the City of Baton Rouge, there can be no genuine issue of material fact as

to the Secretary of State's violation of these provisions. Accordingly, the Court should enter a

finding that the Secretary of State did not violate the Fourteenth and Fifteenth Amendments and

42 USC §1983, and all of Plaintiff's claims against the Secretary of State arising thereunder must

be dismissed.

      ii.  <u>Plaintiffs cannot provide any evidence sufficient to create a genuine issue of
material fact that the Secretary of State in any way violated his First
Amendment rights.</u>

Plaintiff's complaints contain only vague references to the First Amendment, alleging

(without any factual support) only that Defendants' actions have infringed upon his right to

---

[23] Plaintiff Kenneth Hall's Objections and Responses to Defendant Secretary of State Discovery Requests
attached hereto as Exhibit "A."

freedom of speech. It does not appear that these claims have been directed at the Secretary of State, though, as all references thereto that appear outside of the initial paragraphs of Plaintiff's Complaint relate only to the Parish of East Baton Rouge and its President and the City Court Judges, Susan Ponder, Alex Wall, and Laura Davis, who have since been dismissed from the action.[24] Even in relation to these Defendants, though, Plaintiff's only reference to the First Amendment is in stating that the Parish and its Mayor-President are charged with responsibility that its election laws comply with the First Amendment, and that the Judges must individually comply therewith.[25]

Regardless, Plaintiff does not possess any factual or evidentiary support to prove that the Secretary of State has in any way acted in a way so as to violate his freedom of speech. Plaintiff does not allege that any action of the Secretary of State has burdened his representational rights for reasons of ideology, belief, or political association[26] and he does not allege that the Secretary of State has restricted his right to speak freely. Further, Plaintiff admits that the Secretary of State does not have the authority to apportion or reapportion election districts.[27] Therefore, any right to speech that could have possibly been infringed due to the apportionment of the 1993 Judicial Election Plan could not have been accomplished by the Secretary of State. Therefore, it cannot be said that the Secretary has acted in a way so as to suppress Plaintiff's freedom of speech. Accordingly, the Court must also enter a finding that the Secretary of State did not violate Plaintiff's First Amendment rights, and this claim also must be dismissed.

---

[24] Rec. Doc. 74.
[25] *Id.*
[26] *See* Vieth v. Jubelirer, 541 U.S. 267, 124 S.Ct. 1769 (2004).
[27] *See* Discovery Responses attached hereto as Exhibit "A" at Response to Request for Admission No. 6 "It is admitted that the Secretary of State does not have authority to apportion or reapportion election districts for the Baton Rouge City Court."

iii.   <u>Plaintiff cannot provide any evidence sufficient to create a genuine issue of material fact that the Secretary of State violated Section 2 of the Voting Rights Act. Therefore, the Court should enter a finding that the Secretary of State has not violated 42 USC 1973*a*, and all of Plaintiffs' claims arising thereunder should be dismissed.</u>

Plaintiff's only remaining claim against the Secretary of State alleges that the Secretary violated Section 2 of the Voting Rights Act. In his complaints, Plaintiff has alleged the Secretary purposely violated these provisions with the intent to discriminate against him, and that he did so by "enforcing" the 1993 Judicial Election Plan, presumably by holding and certifying elections for City Court Judges in accordance therewith. But now, it appears that Plaintiff has changed his reasoning, admitting now that the Secretary of State has not intentionally violated the Voting Rights Act[28] and that he does not have the ability or authority to decline to hold elections or certify the results.[29] Instead, Plaintiff's sole argument now rests upon the premise that the Secretary of State "has failed to do his duty to report to the legislature and the Governor that election subdistricts have become unconstitutionally constituted and has promulgated the results of elections in the unconstitutional subdistricts without noting that the elections were held in illegal subdistricts."[30] But this duty simply does not and cannot exist, and therefore it cannot serve as a basis to find the Secretary of State to be in violation of the Voting Rights Act.

---

[28] Responses to Discovery attached hereto as Exhibit "A" at Answer to Interrogatory No. 8 ("There is no contention that the Secretary of State violated the Voter Rights Act in relation to the subject matter of this litigation. …")

[29] *Id.* at Answer to Interrogatory No. 2 ("There is no contention that the Secretary of State can or should refuse to hold elections"); *See also* Answer to Interrogatory No. 3 (When asked state any law or statute which provides the Secretary of State discretion as to which elections for which he will certify commissions, Plaintiff did not state that that the Secretary has any authority to decline to issue commissions. Instead, he stated only that the Secretary of State "can and should, as the official responsible for enforcing election laws report when a condition exists which makes an election unconstitutional.").

[30] *Id.* at Answer to Interrogatory No. 6.

> a. *Plaintiff cannot provide any evidence to support that the Secretary of State has a "duty" to report "unconstitutional" elections.*

When asked to provide any legal or statutory authority which provides the Secretary of State discretion as to which elections he will hold or certify or which commissions he will issue, Plaintiff responded that Article IV § 7 of the Louisiana Constitution of 1974 dictates that "the Secretary of State can and should, as the official responsible for enforcing election laws report when a condition exists which makes an election unconstitutional."[31] It the infringement of this duty (and this duty only), which Plaintiff alleges comes from this Constitutional provision, that Plaintiff claims is the action that the Secretary of State is "currently taking to maintain, enforce, or execute the 1993 Judicial Election Plan."[32]

But Article IV § 7 says nothing about any duty to report allegedly unconstitutional conditions to the Governor and the Legislature. Article IV § 7 reads, in its entirety:

> There shall be a Department of State.  The secretary of state shall head the department and shall be the chief election officer of the state.  **He shall prepare and certify the ballots for all elections, promulgate all election returns, and administer the election laws, except those relating to voter registration and custody of voting machines.**  He shall administer the state corporation and trademark laws; serve as keeper of the Great Seal of the State of Louisiana and attest therewith all official laws, documents, proclamations, and commissions; administer and preserve the official archives of the state; promulgate and publish all laws enacted by the legislature and retain the originals thereof; and countersign and keep an official registry of all commissions.  He may administer oaths, and

---

[31] *Id.* at Answer to Interrogatory No. 3.
[32] *Id.* at Answer to Interrogatory No. 4.

shall have other powers and perform other duties authorized by this constitution

or provided by law.[33]

The Article says nothing about any reporting duties of any nature. In fact, it is silent as to any discretionary task, whatsoever. Therefore, because this Article does not even provide for the duty which the Secretary is alleged to have violated, and because this Article is the only legal basis upon which Plaintiff asserts the duty's existence, Plaintiff has failed to provide a single legal authority to support his contentions against the Secretary of State.

> *b.  Plaintiff cannot provide any evidence to support the contention that the Secretary of State has the ability or discretion to determine that an election is "unconstitutional."*

Plaintiff has also failed to provide a basis upon which this duty could even be inferred. On the contrary, the election tasks that are designated to the Secretary of State by the Louisiana Constitution imply that such a duty <u>cannot</u> exist.

In order for the Secretary of State to possess a duty to report unconstitutional election conditions, he must first have the ability, authority, and capacity to make a determination that such conditions are in fact unconstitutional. But the Secretary of State does not have such a capacity or authority. He is not a Judge charged with the ability to rule that a law is unconstitutional. Further, he is not charged with obtaining the knowledge to be capable of making such a determination.

The Secretary of State's duties concerning elections are strictly ministerial in nature. He prepares and certifies election ballots, holds elections in accordance with the dictates of state legislation, certifies that elections were conducted in accordance with that legislation, and issues commissions to the winning candidates. He does not have the discretion to pick and choose which elections are held or certified, and he does not have the discretion to pick and choose

---

[33] Emphasis added.

which commissions are issued. He does not have the task of monitoring every election in the state for Federal Constitutional issues. He likewise does not have the discretion to make a unilateral determination that an election law is unconstitutional. And considering how hotly the issue of the constitutionality of the 1993 Judicial Election Plan has been contested by both sides in this action, it is right that the Secretary should not be able to do so.

Therefore, because Plaintiff's only potential allegation as to the Secretary of State's violation of the Voting Rights Act stems from a duty that does not and cannot exist, the Court should also enter a finding that the Secretary of State has not violated 42 USC §1973*a* and dismiss all claims arising thereunder.

### C. Plaintiffs cannot provide any evidence sufficient to create a genuine issue of material fact as to the Secretary of State's ability to provide a remedy in this matter.

The Secretary of State further contends that without a finding that the Secretary violated any of Plaintiff's rights in this action, the Court cannot hold him accountable for Plaintiff's relief, prospective or otherwise. But even if the Court may do so, there is no relief that the Secretary of State may give to Plaintiff to satisfy his requests.

As discussed above, Plaintiff has already admitted that the Secretary of State has no ability or authority to draw or apportion election districts. Therefore, the Secretary of State cannot redraw or reapportion the City Court election districts that Plaintiff desires and cannot be ordered to do so.

And even if the Secretary was under a duty to report the alleged unconstitutionality of the election plan to the Legislature and the Governor, such efforts would be fruitless since both are well-aware of Plaintiff's allegations relating thereto.

Also fruitless would be any Court Order directing the Secretary to decline to hold elections under the contested Plan, as the failure to hold elections would only perpetuate the allegedly unconstitutional conditions present due to the current makeup of the City Court electorate. Thus, for the Court to order the Secretary of State to refuse to hold or certify elections under the 1993 Judicial Election Plan, the Court must first make a determination that the Plan violates the Constitution, and that another Plan must be enacted so as to comply therewith. Therefore, the next election would be held under a different Plan.

As noted previously, the Secretary of State's duties are ministerial and non-discretionary. He must therefore hold and certify elections in accordance with any new and different plan, regardless of this Court's Order directing him to do so. As such, it is the Secretary's own proscribed duties, and not the authority of this Court, that will grant Plaintiff any relief that he requests from the Secretary of State. Therefore, because this action cannot provide Plaintiff with a remedy from the Secretary of State, and especially considering that the Secretary has not violated any of Plaintiff's Constitutional or statutory rights in this matter, all of Plaintiff's claims against him should be dismissed.

## III.    CONCLUSION

Plaintiff cannot provide any evidentiary or legal support for his contentions that the Secretary of State has violated the First, Fourteenth, or Fifteenth Amendments, the Civil Rights Act, or the Voting Rights Act. As such, this Court should issue a finding stating that no such violation has been made. Likewise, Plaintiff cannot provide any evidentiary or legal support for his contention that the Secretary of State may grant him any relief that he prays for in this matter. Accordingly, all claims against the Secretary should be dismissed.

Respectfully Submitted:

**SHOWS, CALI & WALSH, LLP**

/S/ Beth P. Everett
E. Wade Shows, La. Bar Roll No. 7637
John C. Walsh, La. Bar Roll No. 24903
Grant J. Guillot, La. Bar Roll No. 32484
SHOWS, CALI & WALSH, LLP
628 St. Louis Street (70802)
P.O. Drawer 4425
Baton Rouge, Louisiana 70821
Telephone: (225) 346-1461
Facsimile:  (225) 346-1467

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **2nd** day of **June, 2014,** a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and notice will be sent to counsel for Plaintiff, KENNETH HALL,  and all other counsel of record by operation of the court's electronic filing system.

/s/ Beth P. Everett
BETH P. EVERETT