UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KENNETH HALL,** | * | **CIVIL ACTION 3:12-cv-657** |
| *Plaintiff* | * | |
| | * | |
| **VERSUS** | * | |
| | * | **CHIEF JUDGE BRIAN A. JACKSON** |
| **STATE OF LOUISIANA, PIYUSH** | * | |
| **("BOBBY") JINDAL, in his official** | * | |
| **capacity as Governor of the State of** | * | **MAGISTRATE DOCIA L. DALBY** |
| **Louisiana, JAMES "BUDDY"** | * | |
| **CALDWELL, in his official capacity as** | * | |
| **Attorney General, and TOM** | * | |
| **SCHEDLER, in his official capacity as** | * | |
| **the Louisiana Secretary of State, CITY** | * | |
| **OF BATON ROUGE, PARISH OF** | * | |
| **EAST OF BATON ROUGE, and** | * | |
| **BATON ROUGE CITY COURT,** | * | |
| *Defendants* | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING ACTION BY PLAINTIFF-INTERVENOR, BYRON SHARPER**</u>

**MAY IT PLEASE THE COURT:**

Plaintiff-Intervenor, Byron Sharper, has alleged claims against Defendant, Tom Schedler in his official capacity as the Louisiana Secretary of State (hereinafter referred to as "the Secretary of State" or "the Secretary") and in his individual capacity, relating to the 1993 Judicial Election Plan enacted for the purposes of electing City Court Judges in Baton Rouge. In his complaints, Mr. Sharper has alleged that the Secretary of State (among others) violated the Fourteenth and Fifteenth Amendments, the Civil Rights Act, and the Voting Rights Act. He also seeks to enjoin the Secretary of State in his individual capacity from performing job duties that he admits that the Secretary is "compelled" to perform. But Mr. Sharper does not have any evidence to prove that the Secretary violated any of these laws. Likewise, Mr. Sharper does not have any evidence to prove that the Secretary may act in any way to provide them with a

remedy. Mr. Sharper lastly has submitted no basis upon which he may bring this action against the Secretary of State in his individual capacity.

Mr. Sharper admits that the Secretary did nothing to intentionally discriminate against him. He admits that he has no evidence that the Secretary discriminated against them unintentionally. Mr. Sharper admits that he has no evidence to prove that the Secretary has anything to do with the drawing or redrawing of election districts or the enactment of reapportionment laws. He even admits that the Secretary does not have the power or authority to not perform his duties in holding elections and in certifying election results, acknowledging that the Secretary's duties are non-discretionary.

Instead, Mr. Sharper's sole claim rests upon the allegation that the Secretary of State has a "duty to report to the legislature and the Governor that election subdistricts have become unconstitutionally constituted."[1] But Mr. Sharper has no evidentiary or legal basis to even prove that such a duty exists. And considering the non-discretionary nature of the Secretary's election duties, it <u>cannot</u> exist. The Secretary of State does not have the expertise, ability, or authority to make a unilateral determination that an election is constitutional or unconstitutional. And because he cannot make this determination, he cannot possibly have a duty to inform the legislature of such a decision. Therefore, the Secretary cannot be held to have violated Plaintiff's rights for not performing such a task.

Likewise, Mr. Sharper has no basis to bring any claim against the Secretary of State his individual capacity, seeking to compel him to perform duties pursuant to his official position.

---

[1] *See* Responses to Discovery attached hereto as Exhibit "A" at Interrogatory 4.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, Kenneth Hall, brought this action by means of a Complaint filed on October 18, 2012[2] based upon alleged racial discrimination and improper assignment of voter districts for the election of City Court judges in Baton Rouge, Louisiana. Plaintiff named as a defendant (among others), Secretary of State Tom Schedler, despite that admittedly, "the Louisiana House and Governmental Affairs Committee and Louisiana Senate and Governmental Affairs Committee have state jurisdiction over redistricting of City Court," and "the Louisiana Legislature has joint authority with the City of Baton Rouge over all judicial redistricting and the allotment number of judges for City Court."[3] Mr. Hall has subsequently amended his Complaint four times.[4] Plaintiff-Intervenor, Byron Sharper, filed a Complaint echoing the arguments of Plaintiff Hall on May 13, 2013.[5] Mr. Sharper also amended his Complaint on May 20, 2013.[6]

Plaintiff-Intervenor Sharper has made general allegations of discrimination against all defendants and generally refers to the 1993 Judicial Election Plan as "Defendants'" plan. He also frequently lumps all defendants together as one, alleging that they intentionally discriminated against him, diluted his vote, and violated his constitutional and statutory rights. But Mr. Sharper makes only the following specific allegations against the Secretary of State:

- Defendant, Tom Schedler, is the Chief Election Officer of the Defendant, State of Louisiana, with authority over elections in Louisiana, and he is sued both in his individual (personal) and official capacity as the Louisiana Secretary of State.[7]

- Yet Defendants, [including] Secretary of State … have all failed in their constitutional and statutory duties to provide for equality of treatment under the law among citizens and voters of Baton Rouge in City Court elections.[8]

---

[2] *See* Rec. Doc. 1.
[3] Rec. Doc. 1 at p. 4.
[4] *See* Rec. Doc. 13, 74, 76, and 180.
[5] Rec. Doc. 128.
[6] Rec Doc. 133.
[7] Intervenor-Plaintiff Byron Sharper's Complaint, Rec. Doc. 128, at par. 7.
[8] *Id.* at par. 33.

- Intervenor-Plaintiff seeks to enjoin Defendant, Tom Schedler, in his individual capacity from further enforcing (perspective [sic] relief) the challenged Judicial Election Plan, which is in violation of federal law.[9]

- The State's Judicial Election Plan compels Defendant Schedler as Chief Elections Officer to discriminate against African American voting age population because of race, color, and residence, as assigned to designated precincts within Election Sections 1 and 2, and to enforce and carry out City Court elections according to voter and registration assignments designated in the Judicial Election Plan.[10]

- Intervenor-Plaintiff meets the basic qualifications as a qualified elector to vote for judges to Baton Rouge City Court, but is … not treated fairly and equally as are white electors and candidates by the State of Louisiana, the Louisiana Legislature, and the Secretary of State in the application of the Judicial Election Plain [sic] in elections for City Court because of the gerrymandered election plan that establishes inequality in the voting age population …[11]

The Secretary of State has previously filed a Motion to Dismiss Mr. Sharper's complaints, however, this Court denied the Secretary's motion.[12]

## II.   LAW AND ARGUMENT

Mr. Sharper cannot provide a single piece of evidence or legal basis to prove that any action by the Secretary of State violated any federal laws or that the Secretary of State performed any task that he was not legally required to perform. He further cannot provide a single piece of evidence or legal basis to prove that the Secretary did not perform any task was so required. Mr. Sharper cannot submit any legal or evidentiary basis to prove that any action of the Secretary caused discrimination against him or caused his vote to be diluted. He further cannot provide any basis to conclude that the Secretary of State has the ability to grant him any prospective relief that he requests. Lastly, Mr. Sharper cannot provide any basis to prove that the Secretary of

---

[9] *Id.* at par. 48.
[10] *Id.* at par. 49.
[11] *Id.* at par. 54(ii).
[12] *See* Rec. Doc. 136 and Rec. Doc. 215.

State's alleged violations were done in his personal capacity or that he may personally grant him any relief outside of his official duties.

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[13] Unsubstantiated assertions are not competent summary judgment evidence.[14] Nor are conjecture or speculation adequate to satisfy the nonmovant's burden.[15]

### B. Mr. Sharper cannot provide any evidence sufficient to create a genuine issue of material fact to support his contention that the Secretary of State has violated his Constitutional and statutory rights.

Mr. Sharper has claimed that the Secretary of State's actions in relation to the 1993 Judicial Election Plan amount to a violation of the Fourteenth and Fifteenth Amendments pursuant to a violation of 42 USC §1983, and a violation 42 USC §1973. But Mr. Sharper admittedly cannot provide a single legal or evidentiary basis to justify these allegations. As such, there is no genuine issue of material fact to support the contention that the Secretary has violated any of these provisions.

> i. <u>Mr. Sharper cannot provide any evidence sufficient to create a genuine issue of material fact that the Secretary of State intentionally discriminated against him. Therefore, the Court should enter a finding that the Secretary of State did not violate the provisions of the Equal Protection Clause of the Fourteenth and Fifteenth Amendments or 42 USC §1983, and Mr. Sharper's claims arising thereunder the should be dismissed.</u>

In order to state a claim of racial discrimination under the Equal Protection Clause and § 1983, a plaintiff must demonstrate that the governmental official was motivated by intentional

---

[13] F.R.C.P. 56(c) (West. 2014).
[14] Grimes v. Texas Dept of Mental Health, 102 F.3d 137, 139 (5th Cir. 1996).
[15] Little v. Liquid Air Corp., 37 F.3d 1069, 1079 (5th Cir. 1994).

discrimination on the basis of race.[16] "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."[17]

Likewise, "[t]o prove racial discrimination in violation … the Fifteenth Amendment's right to vote, a plaintiff must prove the government acted with discriminatory intent."[18] Accordingly, "vote dilution does not give rise to a cause of action under the Fifteenth Amendment."[19]

Though Mr. Sharper, in his Complaints, alleged numerous times that all Defendants intentionally discriminated against him, in his responses to discovery requests, Mr. Sharper readily admits that the Secretary of State did not intentionally discriminate against him or any other party or class in relation to the subject matter of this litigation. For instance, please see the following requests for admission, interrogatories, and Mr. Sharper's responses thereto:

**REQUEST FOR ADMISSION NO. 1:**

Please admit that you do not possess any evidence to support the contention that the Louisiana Secretary of State has intentionally discriminated against you or the African American population of the City of Baton Rouge in relation to the subject matter of this litigation.

**ANSWER TO REQUEST FOR ADMISSION NO. 1:**

There is no known evidence that the Secretary of State had, as of the date of the filing of this litigation, personally intentionally discriminated against Intervenor or the African American population of the City of Baton Rouge in relation to the subject matter of this litigation.

---

[16] See Washington v. Davis, 426 U.S. 229, 238-42 (1976); Vera v. Tue, 73 F.3d 604, 609 (5th Cir. 1996).
[17] Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 265 (1977).
[18] Order, Rec. Doc. 277.
[19] See Reno v. Bossier Parish, 528 U.S. 320, 334 n.3 (2000); Holder v. Hall, 512 U.S. 874, 920 (1994) (Thomas, J. concurring in judgment); Mobile v. Bolden, 446 U.S. 55, 84 n.3 (1980) (Stevens, J. concurring); see also Tigrett v. Cooper, No. 10–2724–STA–tmp, 2012 WL 691892, at *10 (W.D.Tenn. Mar. 2, 2012) (summarizing Supreme Court precedent).

**REQUEST FOR ADMISSION NO. 2:**

Please admit that you do not possess any evidence to support the contention that the Louisiana Secretary of State has violated 42 USC §1983 in relation to the subject matter of this litigation.

**ANSWER TO REQUEST FOR ADMISSION NO. 2:**

There is no known evidence that the Secretary of State had, as of the date of the filing of this litigation, personally intentionally violated 42 USC §1983 in relation to the subject matter of this litigation.[20]

…

**INTERROGATORY NO. 5:**

Please state with specificity any evidence or support you have to prove the contention that the Louisiana Secretary of State has intended to discriminate against you and/or African American voters in relation to the subject matter of this litigation.

**ANSWER TO INTERROGATORY NO. 5:**

There is no contention that the Secretary of State intentionally discriminated against Intervenor and/or any other African American voters in relation to the subject matter of this litigation. …

**INTERROGATORY NO. 6:**

Please state with specificity any action taken by the Louisiana Secretary of State to intentionally discriminate against you and/or African American voters in relation to the subject matter of this litigation.

**ANSWER TO INTERROGATORY NO.6:**

There is no contention that the Secretary of State intentionally discriminated against Intervenor and/or any other African American voters in relation to the subject matter of this litigation. …[21]

---

[20] Mr. Sharper did not provide a response regarding unintentional violations of 42 USC §1983. According to Fed. R. Civ. P. 36(a)(3) any allegation set forth in a Request for Admission that is not denied within 30 days of service is deemed to be admitted.

[21] Plaintiff-Intervenor Byron Sharper's Objections and Responses to Defendant Secretary of State Discovery Requests attached hereto as Exhibit "A."

Therefore, because intentional discrimination is vital to Mr. Sharper's claims arising under the Fourteenth and Fifteenth Amendments and 42 USC §1983, and because Plaintiff cannot present any evidence to prove that the Secretary of State intended to discriminate against him or any African Americans in the City of Baton Rouge, there can be no genuine issue of material fact as to the Secretary of State's violation of these provisions. Accordingly, the Court should enter a finding that the Secretary of State did not violate the Fourteenth and Fifteenth Amendments and 42 USC §1983, and all of Mr. Sharper's claims against the Secretary of State arising thereunder must be dismissed.

> ii. <u>Mr. Sharper cannot provide any evidence sufficient to create a genuine issue of material fact that the Secretary of State violated Section 2 of the Voting Rights Act. Therefore, the Court should enter a finding that the Secretary of State has not violated 42 USC 1796*a*, and all of Mr. Sharper's claims arising thereunder should be dismissed.</u>

Mr. Sharper's only remaining claim against the Secretary of State alleges that the Secretary violated Section 2 of the Voting Rights Act. In his complaints, Mr. Sharper has alleged the Secretary purposely violated these provisions with the intent to discriminate against him, and that he did so by "enforcing" the 1993 Judicial Election Plan, presumably by holding and certifying elections for City Court Judges in accordance therewith. But now, it appears that Mr. Sharper has changed his reasoning, admitting now that the Secretary of State has not intentionally violated the Voting Rights Act[22] and that he does not have the ability or authority to decline to hold elections or certify the results.[23] Instead, Mr. Sharper's sole argument now rests

---

[22] Responses to Discovery attached hereto as Exhibit "A" at Answer to Interrogatory No. 8 ("There is no contention that the Secretary of State violated the Voter Rights Act in relation to the subject matter of this litigation. …")

[23] *Id.* at Answer to Interrogatory No. 2 ("There is no contention that the Secretary of State can or should refuse to hold elections"); *See also* Answer to Interrogatory No. 3 (When asked state any law or statute which provides the Secretary of State discretion as to which elections for which he will certify commissions, Plaintiff did not state that that the Secretary has any authority to decline to issue commissions. Instead, he stated only that the Secretary of State "can and should, as the official

upon the premise that the Secretary of State "has failed to do his duty to report to the legislature and the Governor that election subdistricts have become unconstitutionally constituted and has promulgated the results of elections in the unconstitutional subdistricts without noting that the elections were held in illegal subdistricts."[24] But this duty simply does not and cannot exist, and therefore it cannot serve as a basis to find the Secretary of State to be in violation of the Voting Rights Act.

> a. Mr. Sharper cannot provide any evidence to support that the Secretary of State has a "duty" to report "unconstitutional" elections.

When asked to provide any legal or statutory authority which provides the Secretary of State discretion as to which elections he will hold or certify or which commissions he will issue, Mr. Sharper responded that Article IV § 7 of the Louisiana Constitution of 1974 dictates that "the Secretary of State can and should, as the official responsible for enforcing election laws report when a condition exists which makes an election unconstitutional."[25] It the infringement of this duty (and this duty only), which Mr. Sharper alleges comes from this Constitutional provision, that Mr. Sharper claims is the action that the Secretary of State is "currently taking to maintain, enforce, or execute the 1993 Judicial Election Plan."[26]

But Article IV § 7 says nothing about any duty to report allegedly unconstitutional conditions to the Governor and the Legislature. Article IV § 7 reads, in its entirety:

> There shall be a Department of State. The secretary of state shall head the department and shall be the chief election officer of the state. **He shall prepare and certify the ballots for all elections, promulgate all election returns, and**

---

responsible for enforcing election laws report when a condition exists which makes an election unconstitutional.").
[24] *Id.* at Answer to Interrogatory No. 6.
[25] *Id.* at Answer to Interrogatory No. 3.
[26] *Id.* at Answer to Interrogatory No. 4.

> **administer the election laws, except those relating to voter registration and custody of voting machines.** He shall administer the state corporation and trademark laws; serve as keeper of the Great Seal of the State of Louisiana and attest therewith all official laws, documents, proclamations, and commissions; administer and preserve the official archives of the state; promulgate and publish all laws enacted by the legislature and retain the originals thereof; and countersign and keep an official registry of all commissions. He may administer oaths, and shall have other powers and perform other duties authorized by this constitution or provided by law.[27]

The Article says nothing about any reporting duties of any nature. In fact, it is silent as to any discretionary task, whatsoever. Therefore, because this Article does not even provide for the duty which the Secretary is alleged to have violated, and because this Article is the only legal basis upon which Mr. Sharper asserts the duty's existence, Mr. Sharper has failed to provide a single legal authority to support his contentions against the Secretary of State.

> b. *Mr. Sharper cannot provide any evidence to support the contention that the Secretary of State has the ability or discretion to determine that an election is "unconstitutional."*

Mr. Sharper has also failed to provide a basis upon which this duty could even be inferred. On the contrary, the election tasks that are designated to the Secretary of State by the Louisiana Constitution imply that such a duty <u>cannot</u> exist.

In order for the Secretary of State to possess a duty to report unconstitutional election conditions, he must first have the ability, authority, and capacity to make a determination that such conditions are in fact unconstitutional. But the Secretary of State does not have such a capacity or authority. He is not a Judge charged with the ability to rule that a law is

---

[27] Emphasis added.

unconstitutional. Further, he is not charged with obtaining the knowledge to be capable of making such a determination.

The Secretary of State's duties concerning elections are strictly ministerial in nature. He prepares and certifies election ballots, holds elections in accordance with the dictates of state legislation, certifies that elections were conducted in accordance with that legislation, and issues commissions to the winning candidates. He does not have the discretion to pick and choose which elections are held or certified, and he does not have the discretion to pick and choose which commissions are issued. He does not have the task of monitoring every election in the state for Federal Constitutional issues. He likewise does not have the discretion to make a unilateral determination that an election law is unconstitutional. And considering how hotly the issue of the constitutionality of the 1993 Judicial Election Plan has been contested by both sides in this action, it is right that the Secretary should not be able to do so.

Therefore, because Mr. Sharper's only potential allegation as to the Secretary of State's violation of the Voting Rights Act stems from a duty that does not and cannot exist, the Court should also enter a finding that the Secretary of State has not violated 42 USC §1973 and dismiss all claims arising thereunder.

### C. Mr. Sharper cannot provide any evidence sufficient to create a genuine issue of material fact as to the Secretary of State's ability to provide a remedy in this matter.

The Secretary of State furthermore contends that without a finding that the Secretary violated any of Plaintiff's rights in this action, the Court cannot hold him accountable for Mr. Sharper's relief, prospective or otherwise. But even if the Court may do so, there is no relief that the Secretary of State may give to Mr. Sharper to satisfy his requests.

As discussed above, Mr. Sharper has already admitted that the Secretary of State has no ability or authority to draw or apportion election districts. Therefore, the Secretary of State cannot redraw or reapportion the City Court election districts that Mr. Sharper desires and cannot be ordered to do so.

Further, based upon Mr. Sharper's discovery responses, the only way that the Secretary of State actively "enforces" the 1993 Judicial Election Plan is by failing to report the unconstitutionality thereof to the Legislature and the Governor. But even if the Secretary was under a duty to report the alleged unconstitutionality of the election plan to the Legislature and the Governor, such efforts would be fruitless since both are well-aware of Mr. Sharper's allegations relating thereto.

Also fruitless would be any Court Order directing the Secretary to decline to hold elections under the contested Plan, as the failure to hold elections would only perpetuate the allegedly unconstitutional conditions present due to the current makeup of the City Court electorate. Thus, for the Court to order the Secretary of State to refuse to hold or certify elections under the 1993 Judicial Election Plan, the Court must first make a determination that the Plan violates the Constitution, and that another Plan must be enacted so as to comply therewith. Therefore, the next election would be held under a different Plan.

As noted previously, the Secretary of State's duties are ministerial and non-discretionary. He must therefore hold and certify elections in accordance with any new and different plan, regardless of this Court's Order directing him to do so. As such, it is the Secretary's own proscribed duties, and not the authority of this Court, that will grant Mr. Sharper any relief that he requests from the Secretary of State. Therefore, because this action cannot provide Mr. Sharper with a remedy from the Secretary of State, and especially considering that the Secretary

has not violated any of Mr. Sharper's Constitutional or statutory rights in this matter, all of Plaintiff's claims against him should be dismissed.

> **D. Mr. Sharper cannot provide any evidence sufficient to create a genuine issue of material fact as to the Secretary of State's personal responsibility in this action. Therefore, all causes of action against the Secretary of State in his individual capacity should be dismissed.**

Lastly, considering all of the above arguments, as well as the allegations of Mr. Sharper in his complaints as well as in his discovery responses, it is clear that the Secretary of State has no personal responsibility in this action and no personal ability to grant Mr. Sharper any relief he requests.

The Court previously ruled that Mr. Sharper's claims arising under § 1983 survived Eleventh Amendment immunity due to the doctrine of *Ex Parte Young*. However, as this Court has previously noted, "In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity, thereby permitting suits against state officials in their official capacity in order to enjoin enforcement of an unconstitutional state statute. *Okpalobi v. Foster,* 244 F.3d 405, 411 (5th Cir. 2001) (citing *Ex parte Young,* 209 U.S. at 157)."[28]

Regardless of any immunity, though, it is clear that Mr. Schedler, as an individual citizen, has nothing to do with this action. All violations alleged by Mr. Sharper stem from Mr. Schedler's official duties as the Secretary of State, duties which are non-discretionary. Further, Mr. Sharper's requested relief in the form of an injunction from further enforcing the 1993 Judicial Election Plan arises only out of Mr. Schedler's duties in the official capacity of his office. Mr. Sharper has provided no basis, evidentiary or otherwise, to prove that anything Mr. Schedler has done could have or did personally violate Mr. Sharper's rights or that Mr. Schedler

---

[28] Rec Doc. 215.

as a private citizen may correct such violations. Accordingly, all claims against Mr. Schedler in his individual capacity should also be dismissed.

### III.     CONCLUSION

Mr. Sharper cannot provide any evidentiary or legal support for his contentions that the Secretary of State has violated the Fourteenth or Fifteenth Amendments, the Civil Rights Act, or the Voting Rights Act. As such, this Court should issue a finding stating that no such violation has been made. Likewise, Mr. cannot provide any evidentiary or legal support for his contention that the Secretary of State may grant him any relief that he prays for in this matter or that Mr. Schedler has any individual responsibility for any alleged violations. Accordingly, all claims against the Secretary should be dismissed

Respectfully Submitted:

**SHOWS, CALI & WALSH, LLP**

/S/ Beth P. Everett
E. Wade Shows, La. Bar Roll No. 7637
John C. Walsh, La. Bar Roll No. 24903
Grant J. Guillot, La. Bar Roll No. 32484
SHOWS, CALI & WALSH, LLP
628 St. Louis Street (70802)
P.O. Drawer 4425
Baton Rouge, Louisiana 70821
Telephone: (225) 346-1461
Facsimile:  (225) 346-1467

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **2nd** day of **June, 2014,** a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and notice will be sent to counsel for Plaintiff, KENNETH HALL,  and all other counsel of record by operation of the court's electronic filing system.

/s/ Beth P. Everett
BETH P. EVERETT