# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **KENNETH HALL** | **CIVIL ACTION** |
| **VERSUS** | |
| **STATE OF LOUISIANA, ET AL.** | **NO.: 12-00657-BAJ-RLB** |

## RULING AND ORDER

Before the Court is a **Motion for Partial Summary Judgment (Doc. 288)**, filed by Plaintiff Kenneth Hall ("Hall") and Intervenor Plaintiff Byron Sharper ("Sharper") (collectively "Plaintiffs"), seeking an order from this Court granting summary judgment to Plaintiffs, pursuant to Federal Rule of Civil Procedure 56. Defendants the State of Louisiana, Piyush Jindal, James D. Caldwell, Melvin Holden, the Parish of East Baton Rouge, and the City of Baton Rouge oppose the motion. (Doc. 307.) Defendant Tom Schedler also filed a memorandum in opposition. (Doc. 309.) Plaintiffs filed a reply memorandum in response to both memoranda in opposition. (Doc. 431.) Oral argument is not necessary. Jurisdiction is proper, pursuant to 28 U.S.C. § 1331. For the reasons stated herein, Plaintiffs' motion is **DENIED**.

I.   **Undisputed Facts**

According to the undisputed facts[1]:

- The Fourteenth Amendment provides that "no person shall be denied the equal protection of the laws."

- The Fifteenth Amendment provides that the "right of citizens to vote shall not be denied or abridged by any State on the basis of race or color."

- The Judicial Election Plan and/or Act 609 is codified at La. R.S. § 13:1952(4)(a), (b), and (c).

- Plaintiff Kenneth Hall resides and votes in election Section 2.

- All candidates elected as judge in election Section 2, since 1993, were White.

- Section 2 of the Voting Rights Act applies to every election in which registered voters are permitted to vote. *Chisom v. Edwards*, 839 F.2d 1056, 1064 (5th Cir. 1988).

II.  **Plaintiffs' Allegations**

Plaintiffs[2] filed this lawsuit[3] pursuant to the Civil Rights Act of 1871, as

---

[1] Pursuant to Federal Rule of Civil Procedure 56(c) and Local Rule 56.1, Plaintiffs submitted a "Statement of Uncontested Material Facts." (Doc. 288-12.) Defendants the State of Louisiana, the Parish of East Baton Rouge, the City of Baton Rouge, Piyush Jindal, James D. Caldwell, and Melvin Holden filed an opposition, in which they contest a number of Plaintiffs' material facts. (Doc. 307-1.) Defendant Tom Schedler also filed an opposition, in which he contests a number of Plaintiffs' material facts. (Doc. 309-3.) Accordingly, only some of the material facts propounded by Plaintiffs are considered uncontested for purposes of this ruling and order. *See* Local Rule 56.2.

[2] Hall filed his original complaint on October 18, 2012. (Doc. 1.) Subsequently, Hall filed a First Amending and Supplemental Complaint, Second Amending and Supplemental Complaint, Third Amending and Supplemental Complaint, and Fourth Amending and Supplemental Complaint. (Docs. 13, 74, 76, 180.) On May 1, 2013, the Court granted Sharper's Motion to Intervene. (Doc. 127.) Subsequently, Sharper filed a Complaint, Supplemental Complaint, and Second Amending and Supplemental Complaint. (Docs. 128, 133, 181.) Where, as here, the plaintiff's subsequent complaints

2

amended, 42 U.S.C. §§ 1983 ("Section 1983"), 1986; Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973; Section 5 of the Voting Rights Act of 1965[4], as amended, 42 U.S.C. § 1973c; the First Amendment to the United States Constitution, U.S. CONST. amend. I; the Fourteenth Amendment to the United States Constitution, U.S. CONST. amend. XIV, § 1; the Fifteenth Amendment to the United States Constitution, U.S. CONST. amend. XV, § 1, against Defendants the State of Louisiana, the Parish of East Baton Rouge, the City of Baton Rouge, Piyush Jindal[5] ("Jindal"), James Caldwell[6] ("Caldwell"), Tom Schedler[7] ("Schedler"), Melvin Holden[8] ("Holden"),

---

refer to, adopt, and incorporate the original complaint, it cannot be said that the subsequent complaints superceded the original complaint. *Stewart v. City of Houston Police Dep't*, 372 Fed. Appx. 475, 478 (5th Cir. 2010) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)). As such, the Court shall refer to the allegations in each of Hall's Complaints and Sharper's Complaints collectively.

[3] Hall's original complaint was filed as a class action. (Doc. 1.) Subsequently, Hall filed Plaintiff's Motion to Certify Case as a Class Action (Doc. 58), which was denied as premature, without prejudice to Hall's right to re-file the motion, if necessary. (Doc. 172.) Hall's renewed Motion to Certify Case as a Class Action is currently pending. (Doc. 206.)

[4] Plaintiffs initially alleged that Defendants failed to obtain federal preclearance for the current Judicial Election Plan, in violation of Section 5 of the Voting Rights Act of 1965. However, in light of the United States Supreme Court's opinion in *Shelby County, Alabama v. Eric H. Holder, Attorney General, et al.*, 570 U.S. ___ (2013), this Court dismissed Plaintiffs' Section 5 claims, without prejudice. (Doc. 173.)

[5] Defendant Piyush Jindal is sued in his official capacity as the Governor of the State of Louisiana.

[6] Defendant James Caldwell is sued in his official capacity as the Attorney General of the State of Louisiana.

[7] Defendant Tom Schedler is sued in his official capacity as the Louisiana Secretary of State.

[8] Defendant Melvin Holden is sued in his official capacity as the Mayor of the City of Baton Rouge.

the City Court of Baton Rouge[9], the Louisiana House of Representatives[10], the Louisiana Senate[11], Laura Davis[12], Suzan Ponder[13], and Alex Wall.[14] Plaintiffs allege that the current Judicial Election Plan, enacted by the Louisiana State Legislature in 1993, dilutes the voting rights of African American voters in the City of Baton Rouge, in violation of the U.S. Constitution and the Voting Rights Act of 1965. Plaintiffs further allege that Act 609, codified at La. R.S. § 13:1952(4)(a)-(c) (the "Judicial Election Plan"), which divides the City of Baton Rouge into two election Sections (Sections 1 and 2) and five election Divisions (Divisions A, B, C, D, and E)[15], impermissibly dilutes the votes of African Americans, who now make up 54.3% of the

---

[9] Hall's claims against the City Court of Baton Rouge were dismissed by the undersigned. (Doc. 176.)

[10] Plaintiffs originally sued the Louisiana House of Representatives by and through Charles "Chuck" Kleckley, in his official capacity as Speaker of the Louisiana House of Representatives, and Walt Leger, III, in his official capacity as Speaker Pro Tempore of the Louisiana House of Representatives. Plaintiffs' claims against the Louisiana House of Representatives were dismissed by the undersigned. (Docs. 178, 216.)

[11] Plaintiffs originally sued the Louisiana Senate by and through John Alario, Jr., in his official capacity as President of the Louisiana Senate, and Sharon Weston Broom, in her official capacity as President Pro Tempore of the Louisiana Senate. Plaintiffs' claims against the Louisiana Senate were dismissed by the undersigned. (Docs. 178, 216.)

[12] Plaintiffs originally sued Defendant Laura Davis in her individual and official capacities as a Judge on the City Court of Baton Rouge. Plaintiffs' claims against Judge Davis were dismissed by the undersigned. (Docs. 177, 205, 208.)

[13] Plaintiffs originally sued Defendant Suzan Ponder in her individual and official capacities as a Judge on the City Court of Baton Rouge. Plaintiffs' claims against Judge Ponder were dismissed by the undersigned. (Docs. 177, 205, 208.)

[14] Plaintiffs originally sued Defendant Alex Wall is his individual and official capacities as a Judge on the City Court of Baton Rouge. Plaintiffs' claims against Judge Wall were dismissed by the undersigned. (Docs. 177, 205, 208.)

[15] Under the Judicial Election Plan, the City of Baton Rouge is divided into two judicial election Sections: Section 1 and Section 2. Each Section then divided into multiple Divisions. Section 1 is divided into Divisions B and D, and Section 2 is divided into Divisions A, C, and E. Each Division elects one judge to the City Court of Baton Rouge. La. R.S. § 13:1952(4)(c).

4

total City population.[16]

According to Plaintiffs, the current Judicial Election Plan discriminates against African Americans because African American voters, who make up the majority of Section 1 and the City population, are allotted only two judges, while White voters, who make up the majority of Section 2 but a minority of the City population, are allotted three judges. Plaintiffs further allege that the Defendants' refusal to reapportion the City Court judges and/or redraw the geographic boundaries of the Divisions in accordance with the City of Baton Rouge's 2010 Census demographic data is an intentional attempt to dilute the votes of African Americans.

Accordingly, Plaintiffs seek a ruling and judgment declaring, *inter alia*, that the 1993 Judicial Election Plan violates: (1) the First Amendment's guarantee of freedom of speech, made applicable to the States by the Equal Protection Clause of the Fourteenth Amendment; (2) Plaintiffs' fundamental right to vote, as protected by the Fourteenth Amendment; (3) the Equal Protection Clause of the Fourteenth Amendment; (4) the Due Process Clause of the Fourteenth Amendment; (5) the Privileges and Immunities Clause of the Fourteenth Amendment[17]; (6) the Fifteenth Amendment; (7) Section 2 of the Voting Rights Act of 1965; (8) "penumbra rights of the Bill of Rights and/or the Due Process Clause of the Constitution of the United States"; (9) the "democratic principles of majority rule and individualistic egalitarianism"

---

[16] According to the United States Census Bureau, Black or African American residents made up 54.5 percent of the total population at the time of the 2010 Census. United States Census Bureau, http://factfinder2.census.gov/faces/tableservices/jsf/pages/productview.xhtml?src=bkmk.

[17] Plaintiffs' claims under the Privileges and Immunities Clause of the Fourteenth Amendment were dismissed by the undersigned. (Docs. 214, 240.)

related to the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment[18]; and (10) "the right of Majority Rule within the Due Process, Privileges and Immunities, and Equal protection Clauses of the Constitution of the United States."

Plaintiffs also request an injunction forbidding Defendants from enforcing the 1993 Judicial Election Plan, including enjoining Defendants from "calling," "holding," "administering," "implementing," "supervising," "conducting," or "certifying" any future elections until Defendants devise and implement a judicial election system that complies with Section 2 of the Voting Rights Act. Plaintiffs further seek a ruling and judgment holding Defendants liable under Section 1983, and granting Plaintiffs attorneys' fees, pursuant to 42 U.S.C. § 1988 ("Section 1988").

Finally, Plaintiffs requests that, if the Court finds Defendants have violated the Fourteenth and Fifteenth Amendments, the Court "bail-in" the State of Louisiana, pursuant to Section 3(c) of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973a(c).

As to the instant motion, Plaintiffs seek an order of this Court finding that Defendants violated the Equal Protection Clause of the Fourteenth Amendment and the Fifteenth Amendment, holding Defendants liable under Section 1983, and granting Plaintiffs attorney's fees, pursuant to Section 1988. According to Plaintiffs, it is undisputed that each of the Defendants have "violated and continue to violate Plaintiffs' rights, as afforded by the Equal Protection Clause of the Fourteenth

---

[18] Sharper's claims on the basis of the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment were dismissed by the undersigned. (Doc. 214.)

Amendments and the right to vote afforded by the Fifteenth Amendment." (Doc. 288, p. 2.) Accordingly, Plaintiffs contend there are no genuine issues of dispute as to any material fact and they are entitled to judgment as a matter of law.

In opposition, Defendants the State of Louisiana, Jindal, Caldwell, Schedler, Holden, the Parish of East Baton Rouge, and the City of Baton Rouge (collectively "Defendants") argue that Plaintiffs have failed to point to sufficient evidence to establish that there are no genuine issues of dispute as to any material fact. Accordingly, Defendants contend Plaintiffs' motion must be denied.

## III. Standard of Review

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party carries its burden of proof under Federal Rule of Civil Procedure 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). This burden is not satisfied by some metaphysical doubt as to

alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323; *Liquid Air Corp.*, 37 F.3d at 1075.

In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997). The court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the court must deny the motion for summary judgment. *International Shortstop, Inc.*, 939 F.2d at 1263.

### IV. Analysis

#### A. Plaintiffs' Remaining Fourteenth Amendment Claims

As noted above, Plaintiffs' claims against the Baton Rouge City Court, Judge Davis, Judge Ponder, Judge Wall, the Louisiana House of Representatives, and the Louisiana Senate were dismissed by the undersigned. (Docs.176-178, 205, 208, 216.)

Accordingly, the only remaining Defendants are the State of Louisiana, the Parish of East Baton Rouge, the City of Baton Rouge, Jindal, Caldwell, Schedler, and Holden.

As noted above, Plaintiffs' claims on the basis of the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment *and* Plaintiffs' claims under the Privileges and Immunities Clause of the Fourteenth Amendment were dismissed by the undersigned.[19] (Docs. 214, 240.) Accordingly, the only remaining Fourteenth Amendment claims include Plaintiffs' claims that the Judicial Election Plan violates: (1) Plaintiffs' fundamental right to vote, as protected by the Fourteenth Amendment; (2) the Equal Protection Clause of the Fourteenth Amendment; and (3) the Due Process Clause of the Fourteenth Amendment.

Here, Plaintiffs request summary judgment on their claim under the Equal Protection Clause of the Fourteenth Amendment *only*. Accordingly, the Court shall limit its analysis to Plaintiffs' Equal Protection Clause claims against the State of Louisiana, the Parish of East Baton Rouge, the City of Baton Rouge, Jindal, Caldwell, Schedler, and Holden.

---

[19] In its Ruling and Order granting in part and denying in part Defendants' motion to dismiss Hall's claims, the Court dismissed Hall's claims under the Privileges and Immunities Clause of the Fourteenth Amendment. (Doc. 240.) In its Ruling and Order granting in part and denying in part Defendants' motion to dismiss Sharper's claims, the Court dismissed Sharper's claims under the Privileges and Immunities Clause of the Fourteenth Amendment *and* his claims on the basis of the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment. (Doc. 214.) Where, as here, the basis of the Court's dismissal applies to all Defendants, the Court may *sua sponte* dismiss the plaintiff's claim as to all defendants. *Silverton v. Dep't of Treasury,* 644 F.2d 1341, 1345 (9th Cir. 1981) ("A [d]istrict [c]ourt may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants.")

### B. Plaintiffs' Claims Under the Equal Protection Clause of the Fourteenth Amendment

Plaintiffs allege that the Judicial Election Plan violates the Equal Protection Clause of the Fourteenth Amendment because: (1) it dilutes the voting power of African Americans; and (2) Defendants have failed to amend and/or revise the Plan despite the City's changing demographics.

The essence of a vote dilution claim under the Fourteenth Amendment is "that the State has enacted a particular voting scheme as a purposeful device 'to minimize or cancel out the voting potential of racial or ethnic minorities.'" *Miller v. Johnson*, 515 U.S. 900, 911 (1995) (quoting *City of Mobile v. Bolden*, 446 U.S. 55, 66 (1980)). *See also Rogers v. Lodge*, 458 U.S. 613, 617 (U.S. 1982) (voting scheme violates the Fourteenth Amendment if it is "'conceived or operated as [a] purposeful device[ ] to further racial discrimination' by minimizing, cancelling out or diluting the voting strength of racial elements in the voting population.") (citations omitted).

To succeed on a vote dilution claim, the plaintiff must "prove that the purpose and operative effect" of the challenged election scheme "is to dilute the voting strength of [minority] citizens." *Rodriguez v. Harris County, Texas*, 964 F. Supp. 2d 686, 800 (S.D. Tex. 2013) (citing *Voter Info. Project, Inc. v. City of Baton Rouge*, 612 F.2d 208, 212 (5th Cir. 1980)). *See also Rogers*, 458 U.S. at 617 ("Cases charging that multimember districts unconstitutionally dilute the voting strength of racial minorities are thus subject to the standard of proof generally applicable to Equal Protection Clause cases.") It is not, however, necessary for a plaintiff to demonstrate that discriminatory purpose is the only underlying motivation for the challenged election

scheme as long as it is one of the motives. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265-66 (1977).

To prove discriminatory purpose, the plaintiff does not need to advance direct evidence of discriminatory intent. *Rodriguez*, 964 F. Supp. 2d at 800 (citing *Rogers*, 458 U.S. at 618). Absent direct evidence, "discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another." *Rodriguez*, 964 F. Supp. 2d at 800 (citing *Washington v. Davis*, 426 U.S. 229, 242 (1976)). Relevant factors to be considered include, but are not limited to: (1) whether there is bloc voting along racial lines; (2) whether minorities are excluded from the political process; (3) whether minority voter registration is low; (4) whether elected officials are unresponsive to the needs of minorities; (5) whether the minority group occupies a depressed socioeconomic status because of inferior education or employment and housing discrimination. *Rodriguez*, 964 F. Supp. 2d at 800-801 (citing *Backus v. South Carolina*, 857 F. Supp. 2d 553, 558 (D.S.C. 2012), *aff'd* 133 S.Ct. 156 (2012)).

To prove discriminatory effect, a plaintiff must establish that the election scheme impermissibly dilutes the voting rights of the racial minority. *Rodriguez*, 964 F. Supp. 2d at 801. Generally, this requires proof that the racial minority's voting potential has been minimized or cancelled out or the political strength of such a group has been adversely affected. *Id.* (citing *Mobile v. Bolden*, 446 U.S. 55, 66, 84 (1980)). Additionally, a plaintiff must offer "a reasonable alternative voting practice to serve

11

as the benchmark 'undiluted' voting practice." *Id.* (quoting *Reno v. Bossier Parish Sch. Bd. (Reno I)*, 520 U.S. 471, 480 (1997)).

A close review of Defendants' written submissions to the Court reveals that Defendants failed to dispute that the Judicial Election Plan has a discriminatory effect on African American voters. Thus, the only remaining issue is whether there are genuine disputes of material fact as to whether Defendants acted with a discriminatory purpose in failing to amend and/or revise the Judicial Election Plan.

### 1. **Discriminatory Intent**

In support of the motion, Plaintiffs argue that Defendants have engaged in persistent, purposeful, and intentional efforts to diminish the voting strength of African American voters and exclude them from the political process. According to Plaintiffs, it is undisputed that each of the Defendants have "violated and continue to violate Plaintiffs' rights, as afforded by the Equal Protection Clause of the Fourteenth Amendment . . . ." (Doc. 288, p. 2.)

The Court first notes that Plaintiffs fail to identify each remaining Defendant or point to specific evidence to establish that the remaining Defendants acted with a discriminatory purpose. Instead, Plaintiffs point to the Louisiana Legislature's repeated failure to amend and/or revise the Judicial Election Plan. While the Court does not dispute that the Louisiana Legislature has repeatedly failed to amend and/or revise the Judicial Election Plan, despite the undeniable change in the City's

demographics, such evidence alone is insufficient to establish discriminatory intent on the part of the remaining Defendants.[20]

To the extent Plaintiffs contend that the remaining Defendants opposed efforts to amend and/or revise the Judicial Election Plan *and* acted with a discriminatory purpose when they did so *or* denied African American voters equal protection under the law by not taking any action to amend and/or revise the Judicial Election Plan, Plaintiffs have failed to point to sufficient evidence to establish such. Indeed, Plaintiffs' submission is limited to the alleged acts of members of the Louisiana Legislature, Judges Davis, Ponder, and Wall, and Christina Peck - all of whom have been dismissed as parties to this litigation *or* were never named as a Defendant. Plaintiffs's failure to identify each remaining Defendant and point to specific evidence establishing that each remaining Defendant engaged in a series of official actions that were taken for invidious purposes *or* cite to specific evidence establishing each remaining Defendants' unresponsiveness to African American voters precludes judgment in Plaintiffs' favor.[21]

Further, Plaintiffs fail to point to sufficient evidence to establish that there is bloc voting along racial lines; that African American voters are excluded from the political process; that African American voter registration is low; that elected officials,

---

[20] As noted above, Plaintiffs' claims against the Louisiana Legislature were dismissed by the undersigned. (Docs. 178, 216.) Accordingly, the Louisiana Houses of Representatives and the Louisiana Senate are no longer parties to this litigation.

[21] For example, in support of their motion, Plaintiffs point to one instance in or around 2006 during which Jindal, Caldwell, and the Louisiana Legislature failed to "hold public hearings to respond to the claims of racial grievances asserted herein," despite a request by "African American citizens" that they do so. It is axiomatic that such limited evidence is insufficient to establish that the remaining Defendants acted with discriminatory intent.

including the current Baton Rouge City Court judges, are unresponsive to the needs of African Americans; or that African Americans have higher rates of poverty because of inferior education, unemployment, or housing discrimination. While the Court's analysis is not limited to these factors, the Plaintiffs' failure to point to sufficient evidence of such coupled with their failure to distinguish the alleged acts of each remaining Defendant coupled with their failure to point to sufficient evidence to establish that each remaining Defendant opposed efforts to amend and/or revise the Judicial Election Plan *and* acted with a discriminatory purpose when they did so *or* denied African American voters equal protection under the law by not taking any action to amend and/or revise the Judicial Election Plan is fatal to their motion.[22]

In sum, the Court concludes that Plaintiffs have failed to meet their burden of proof under Rule 56. Accordingly, Plaintiffs' request for summary judgment on their Equal Protection Clause claim is **DENIED**.

### C. Plaintiffs Are Not Precluded From Bringing a Vote Dilution Claim Under the Fifteenth Amendment

In opposition, Schedler argues that Plaintiffs are precluded from bringing a vote dilution claim under the Fifteenth Amendment. Thus, Plaintiffs' request for summary judgment on their Fifteenth Amendment claim must be denied. Such an argument was recently rejected by United States District Judge James J. Brady:

> As to Plaintiffs' Fifteenth Amendment claim, a review of the jurisprudence reveals a purported circuit split on whether a vote dilution claim is cognizable under the Fifteenth Amendment. *See Backus*, 857

---

[22] The Court notes that Plaintiffs will be afforded the opportunity to present such evidence at trial. However, Plaintiffs failed to do so in support of the instant motion.

> F.Supp.2d at 569 (recognizing the split). This purported split results from the Supreme Court leaving open the question of whether the Fifteenth Amendment is a vehicle by which to bring a vote dilution claim. *See Voinovich v. Quilter*, 507 U.S. 146, 159 (1993) ("This Court has not decided whether the Fifteenth Amendment applies to vote dilution claims; in fact, we never have held any legislative apportionment inconsistent with the Fifteenth Amendment.").
>
> In *Backus*, the court pointed to the differing opinions of the Fifth Circuit and the Third Circuit to illustrate the circuit split. While the court in *Backus* and Schedler view the Fifth Circuit's decision in *Prejean v. Foster*, 227 F.3d 504, 519 (5th Cir. 2000) as definitively stating that a vote dilution claim is not cognizable under the Fifteenth Amendment, this Court disagrees. In fact, the panel in *Prejean* did not specifically address whether the Fifteenth Amendment applied to vote dilution claims[,] as it was charged with determining whether subdistricting for state judicial elections was done for predominately racial reasons in violation of the Fifteenth Amendment. *Prejean*, 227 F.3d at 518. Instead, to dismiss the state's "floodgates of litigation" argument, the panel stated, "Indeed, the Supreme Court has rejected application of the Fifteenth Amendment to vote dilution causes of action." *Id.* at 519. This is not a definitive pronouncement of the Fifth Circuit's position, but rather recognition of the fact that the jurisprudence makes it difficult to succeed on a vote dilution claim under the Fifteenth Amendment.
>
> Difficult neither means precluded nor impossible. *See e.g.*, *Rogers v. Lodge*, 458 U.S. 613 (1982) (affirming the Fifth Circuit and district court's finding that a county's at-large voting method impermissibly diluted the vote of black residents in violation of, inter alia, their Fifteenth Amendment rights); *Jones v. City of Lubbock*, 727 F.2d 364, 370-372 (5th Cir. 1984) (evaluating a Fifteenth Amendment claim under the assumption that it proscribes voting dilution). Accordingly, the Court finds that Plaintiffs may bring a vote dilution claim under the Fifteenth Amendment.

*Terrebonne Parish NAACP v. Jindal*, No. 14-069-JJB-SCR, 2014 U.S. Dist. LEXIS 98580, at * 19-21 (M.D. La. July 18, 2014). Accordingly, the undersigned concludes that Plaintiffs may bring a vote dilution claim under the Fifteenth Amendment.

15

### D. Plaintiffs's Claims Under the Fifteenth Amendment

In support of their motion, Plaintiffs argue that the Judicial Election Plan discriminates against African Americans, in violation of the Fifteenth Amendment. "Laws violate the Fifteenth Amendment if their purpose and effect are to discriminate against people on the basis of race/ethnicity with respect to their ability to vote." *Backus*, 857 F. Supp. 2d at 570 (internal citations omitted).

Vote dilution claims under the Fifteenth Amendment are essentially congruent with vote dilution claims under the Fourteenth Amendment. *Backus*, 857 F. Supp. 2d at 569 (citing *Washington v. Finlay*, 664 F.2d 913, 919 (4th Cir. 1981)). Both require proof of discriminatory purpose and discriminatory, or dilutive, effect. *Id.* (citing *Washington*, 664 F.2d at 919).

For the same reasons that Plaintiffs have failed meet their burden of proof under Rule 56 to establish that they are entitled to judgment on their Fourteenth Amendment vote-dilution claim, the Court concludes Plaintiffs they have failed meet their burden of proof under Rule 56 to establish that they are entitled to judgment on their Fifteenth Amendment vote-dilution claim. Accordingly, Plaintiffs' request for summary judgment on their Fifteenth Amendment claim is **DENIED**.

### E. Plaintiffs' Claims Under Section 1983 and Request for Attorneys' Fees Under Section 1988

Plaintiffs also seek an order from this Court holding Defendants liable under Section 1983, and granting Plaintiffs attorneys' fees, pursuant to Section 1988. However, because the Court concludes that Plaintiffs are not entitled to judgment as a matter of law on their claims under the Equal Protection Clause of the Fourteenth

Amendment and Fifteenth Amendment, the Court need not evaluate whether they are entitled to judgment as a matter of law on their Section 1983 claims. *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997) *(*"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'") As such, the Court is also precluded from granting Plaintiffs attorneys' fees under Section 1988 at this time. Accordingly, Plaintiffs' request for summary judgment on their Section 1983 claim, based on Defendants' alleged violation of the Equal Protection Clause of the Fourteenth Amendment and Fifteenth Amendment, is **DENIED**. Further, Plaintiffs attorneys' fees, pursuant to Section 1988, is **DENIED** at this time.

### F. Defendants' Motion to Strike

Also before the Court is a **Motion to Strike Evidence Attached to Plaintiffs' Motion for Summary Judgment (Rec. Doc. 288) (Doc. 311)**, filed by Defendants, seeking an order from this Court striking six exhibits submitted by Plaintiffs in support of their motion for partial summary judgment: (1) affidavit of Judge Don R. Johnson, Ph.D. with accompanying exhibits; (2) affidavit of Judge Trudy White with accompanying exhibits; (3) affidavit of Judge Yvette Mansfield Alexander; (4) Information Bulletin No. 76, City Parish Planning Commission; (5) Notes of Ken DeJean 1997; and (6) affidavit of Ernest L. Johnson. However, filing a motion to strike is no longer the correct method for challenging an affidavit submitted in support of a summary judgment motion or oppositions.

"Prior to December 1, 2010, the proper method by which to attack an affidavit was by filing a motion to strike. Under the now-applicable Rule 56(c)(2), however, it is no longer necessary for a party to file such a motion; instead, the party may simply object to the material."[23] *Cutting Underwater Technologies USA, Inc. v. Eni U.S. Operating Co.*, No. 09-387, 2011 U.S. Dist. LEXIS 29325, at *10 (E.D. La. Mar. 22, 2011) (citing Rule 56, advisory committee's note to 2010 amendments). "If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial." Fed.R.Civ.P. 56 (advisory committee's notes to 2010 amendment). In light of this change, Defendants' motion to strike will be treated as objections.

Defendants assert multiple basis upon which their objections to the exhibits submitted by Plaintiffs are based. Defendants fail to identify, however, which specific statements or specific portions of each exhibit are inadmissible. Further, Defendants fail to cite to any binding case law to support their objections. Additionally, given the Court's ruling on Plaintiffs' motion for partial summary judgment, an order sustaining such objections would not assist Defendants. Finally, because Defendants' failure to challenge admissibility at the summary judgment stage does not preclude them from raising such objections at trial, the Court shall decline to rule on Defendants' objections at this time.

---

[23] Rule 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2).

## V. Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff Kenneth Hall and Intervenor Plaintiff Byron Sharper's **Motion for Partial Summary Judgment (Doc. 288)** is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' **Motion to Strike Evidence Attached to Plaintiffs' Motion for Summary Judgment (Rec. Doc. 288) (Doc. 311)** is **DENIED**.

Baton Rouge, Louisiana, this 28th day of July, 2014.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**