# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **KENNETH HALL** | **CIVIL ACTION** |
| **VERSUS** | |
| **STATE OF LOUISIANA, ET AL.** | **NO.: 12-00657-BAJ-RLB** |

## RULING AND ORDER

Before the Court is a **Motion for Summary Judgment (Doc. 289)**, filed by Defendants Piyush Jindal[1] ("Jindal") and James D. Caldwell[2] ("Caldwell") (collectively "Defendants"), seeking an order from this Court granting them summary judgment, pursuant to Federal Rule of Civil Procedure 56. Plaintiff Kenneth Hall ("Hall") and Intervenor Plaintiff Byron Sharper ("Sharper") (collectively "Plaintiffs") oppose the motion. (Doc. 310.) Defendants filed a reply memorandum. (Doc. 432.) Oral argument is not necessary. Jurisdiction is proper, pursuant to 28 U.S.C. § 1331. For the reasons stated herein, Defendants' motion is **DENIED**.

---

[1] Defendant Piyush Jindal is sued in his official capacity as the Governor of the State of Louisiana.

[2] Defendant James D. Caldwell is sued in his official capacity as the Attorney General of the State of Louisiana.

## I. Undisputed Facts

In support of the motion, Defendants attached a statement of uncontested facts to their motion for summary judgment. (Doc. 289-2.) In contravention of Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Middle District of Louisiana, Plaintiffs failed to submit a separate statement of the material facts as to which there exists a genuine issue to be tried. Fed.R.Civ.P. 56(c); L.R. 56.2. Instead, Plaintiffs submitted a document entitled, "Statement of Disputed Facts" that in no way indicates whether Plaintiffs admit or deny the statement of facts submitted by Defendants. *See* Docs. 289-2, 310-2.

When the non-movant fails to properly address the movant's assertion of facts, Local Rule 56.2 requires the Court to deem such facts admitted for the purposes of the motion. L.R. 56.2; *see also* Fed.R.Civ.P. 56(e). Accordingly, the following facts are considered undisputed:

- The powers of government of the State of Louisiana are divided into three separate branches: legislative, executive, and judicial. La. Const. art. II, § 1.

- Except as otherwise provided by the Constitution of the State of Louisiana, no[t] one of the branches of government, nor any person holding office in one of them, shall exercise power belonging to either of the others. La. Const. art. II, § 2.

- The legislative power of the State of Louisiana is vested in the legislature, consisting of a Senate and a House of Representatives. La. Const. art. III, § 1.

- The creation and/or assignment of voting districts is within the authority of the legislative branch of the State of Louisiana, who created the current Election Sections for the election of Baton Rouge City Court Judges and is the proper authority to change or amend the geographic

2

boundaries of these election sections. La. Const. art. III, § 1; La. R.S. 13:1952.

- The Attorney General is a member of the executive branch of the Louisiana State Government. *See* La. Const. art. IV, § 1.

- The powers and the duties of the Attorney General are set forth in La. Const. art. IV, § 8.

- The Attorney General does not have the power to legislate, which is a power vested in the legislature by the constitution. *See* La. Const. art. III, § 1; *See also* La. Const. art. IV, § 8.

- James D. "Buddy" Caldwell was elected as Louisiana's 43rd Attorney General in 2007 and then re-elected in 2011.

- Prior to the United States Supreme Court ruling in the case of *Shelby County v. Holder*, 133 S.Ct. 2612 (2013), the Attorney General's office made submissions to the United States Department of Justice on behalf of the State of Louisiana for the purposes of seeking preclearance for state statutes pursuant to 42 U.S.C.A. § 1973c and 28 C.F.R. § 51.23.

- The preclearance submission of Act No. 609 of the 1993 Regular Session of the Louisiana Legislature (referred to as the Judicial Election Plan for the Baton Rouge City Court) was submitted at a time when Richard P. Ieyoub served as the Attorney General for the State of Louisiana.

- The United States Department of Justice did not interpose any objection[s] and precleared Act 609 (1993).

- The Plaintiff-Intervenor has no evidence of personal, intentional discrimination by the Attorney General.

- The Plaintiff-Intervenor has no evidence of personal, intentional discrimination to support the allegation that the Attorney General violated 42 U.S.C. Section 1983, *et seq*.

- The Plaintiff-Intervenor did not sue the Attorney General in an individual capacity.[3]

---

[3] Defendants' subsequent statement that, "therefore, there is no 42 U.S.C. Section 1983, *et seq*. claim by the Intervenor" was omitted, as it is a misstatement of law and the holdings of this Court.

- A Plaintiff is required to notify the Attorney General of a constitutional challenge, but the Attorney General does not need to be made [*sic*] a defendant to the litigation. *See* La. Code Civ.P. art. 1880; La. R.S. 13:4448; 28 U.S.C. § 2403(b).

- The Plaintiff has no evidence of personal, intentional discrimination by the Attorney General.

- The Plaintiff has no evidence of personal, intentional discrimination to support the allegation that the Attorney General violated 42 U.S.C. Section 1983, *et seq.*

- The Governor is a member of the executive branch of Louisiana State Government. *See* La. Const. art. IV, § 1.

- The powers and the duties of the Governor are set forth in La. Const. art. IV, § 5.

- The Governor does not have the power to legislate, which is a power vested in the legislature by the constitution. *See* La. Const. art. III, § 1; *See* also La. Const. art. IV, § 5.

- Bobby Jindal was elected as Governor in 2007 and then re-elected in 2011.

- The creation and/or assignment of voting districts is not within the authority of the Governor of the State of Louisiana. *See* La. Const. art. III, § 1; La. R.S. 13:1952. Governor Jindal has not vetoed any legislation relative to the creation and/or assignment of voting districts by the Baton Rouge City Court.

- The Plaintiff has no evidence to support his allegation that the Governor has intentionally discriminated against the Plaintiff and/or minority voters.

- The Plaintiff-Intervenor has no evidence to support his allegation that the Governor has intentionally discriminated against the Plaintiff and/or minority voters.

- The Governor has no authority to conduct elections for Baton Rouge City Court, and the Plaintiff-Intervenor admits that it has no evidence showing that the Governor has this authority.

- The Plaintiff-Intervenor did not sue the Governor in an individual capacity.[4]

- No act or omission by the Governor or the Attorney General can alter the outcome of this case.

- The relief requested by the Plaintiff and Intervenor exceeds the scope of powers and duties of the Governor and the Attorney General.

- The Plan of Government for the Parish of East Baton Rouge, City of Baton Rouge, sets forth provisions for the City Court and its Judges. Plan of Government Section 11.04.[5]

## II. Plaintiffs' Allegations

Plaintiffs[6] filed this lawsuit[7] pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. §§ 1983 ("Section 1983"), 1986; Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973; Section 5 of the Voting Rights Act of 1965[8], as

---

[4] Defendants' subsequent statement that, "therefore, there is no 42 U.S.C. Section 1983, *et seq.* claim by the Intervenor" was omitted, as it is a misstatement of law and the holdings of this Court.

[5] Defendants' subsequent statement that, "[n]o act or omission by the Governor or the Attorney General can alter the Plan of Government" was omitted, as it is a misstatement of law.

[6] Hall filed his original complaint on October 18, 2012. (Doc. 1.) Subsequently, Hall filed a First Amending and Supplemental Complaint, Second Amending and Supplemental Complaint, Third Amending and Supplemental Complaint, and Fourth Amending and Supplemental Complaint. (Docs. 13, 74, 76, 180.) On May 1, 2013, the Court granted Sharper's Motion to Intervene. (Doc. 127.) Subsequently, Sharper filed a Complaint, Supplemental Complaint, and Second Amending and Supplemental Complaint. (Docs. 128, 133, 181.) Where, as here, the plaintiff's subsequent complaints refer to, adopt, and incorporate the original complaint, it cannot be said that the subsequent complaints supercede the original complaint. *Stewart v. City of Houston Police Dep't*, 372 Fed. Appx. 475, 478 (5th Cir. 2010) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)). As such, the Court shall refer to the allegations in Hall's Complaints and Sharper's Complaints collectively.

[7] Hall's original complaint was filed as a class action. (Doc. 1.) Subsequently, Hall filed Plaintiff's Motion to Certify Case as a Class Action (Doc. 58), which was denied as premature, without prejudice to Hall's right to re-file the motion, if necessary. (Doc. 172.) Hall's renewed Motion to Certify Case as a Class Action is currently pending. (Doc. 206.)

[8] Plaintiffs initially alleged that Defendants failed to obtain federal preclearance for the Judicial Election Plan, in violation of Section 5 of the Voting Rights Act of 1965. However, in light of the United States Supreme Court's opinion in *Shelby County, Alabama v. Eric H. Holder, Attorney General, et al.*,

5

amended, 42 U.S.C. § 1973c; the First Amendment to the United States Constitution, U.S. CONST. amend. I; the Fourteenth Amendment to the United States Constitution, U.S. CONST. amend. XIV, § 1; the Fifteenth Amendment to the United States Constitution, U.S. CONST. amend. XV, § 1, against Defendants the State of Louisiana, the Parish of East Baton Rouge, the City of Baton Rouge, Jindal, Caldwell, Tom Schedler[9] ("Schedler"), Melvin Holden[10] ("Holden"), the City Court of Baton Rouge[11], the Louisiana House of Representatives[12], the Louisiana Senate[13], Laura Davis[14], Suzan Ponder[15], and Alex Wall.[16] Plaintiffs allege that the Judicial Election Plan,

---

570 U.S. ___ (2013), this Court dismissed Plaintiffs' Section 5 claims, without prejudice. (Doc. 173.)

[9] Defendant Tom Schedler is sued in his official capacity as the Louisiana Secretary of State.

[10] Defendant Melvin Holden is sued in his official capacity as the Mayor of the City of Baton Rouge.

[11] Hall's claims against the City Court of Baton Rouge were dismissed by the undersigned. (Doc. 176.)

[12] Plaintiffs originally sued the Louisiana House of Representatives by and through Charles "Chuck" Kleckley, in his official capacity as Speaker of the Louisiana House of Representatives, and Walt Leger, III, in his official capacity as Speaker Pro Tempore of the Louisiana House of Representatives. Plaintiffs' claims against the Louisiana House of Representatives were dismissed by the undersigned. (Docs. 178, 216.)

[13] Plaintiffs originally sued the Louisiana Senate by and through John Alario, Jr., in his official capacity as President of the Louisiana Senate, and Sharon Weston Broom, in her official capacity as President Pro Tempore of the Louisiana Senate. Plaintiffs' claims against the Louisiana Senate were dismissed by the undersigned. (Docs. 178, 216.)

[14] Plaintiffs originally sued Defendant Laura Davis in her individual and official capacities as a Judge on the City Court of Baton Rouge. Plaintiffs' claims against Judge Davis were dismissed by the undersigned. (Docs. 177, 205, 208.)

[15] Plaintiffs originally sued Defendant Suzan Ponder in her individual and official capacities as a Judge on the City Court of Baton Rouge. Plaintiffs' claims against Judge Ponder were dismissed by the undersigned. (Docs. 177, 205, 208.)

[16] Plaintiffs originally sued Defendant Alex Wall is his individual and official capacities as a Judge on the City Court of Baton Rouge. Plaintiffs' claims against Judge Wall were dismissed by the undersigned. (Docs. 177, 205, 208.)

6

enacted by the Louisiana State Legislature in 1993, dilutes the voting rights of African American voters in the City of Baton Rouge, in violation of the United States Constitution and the Voting Rights Act of 1965. Plaintiffs further allege that Act 609, codified at La. R.S. § 13:1952(4)(a)-(c) (the "Judicial Election Plan"), which divides the City of Baton Rouge into two election Sections (Sections 1 and 2) and five election Divisions (Divisions A, B, C, D, and E)[17], impermissibly dilutes the votes of African Americans, who now make up 54.3% of the total City population.[18]

According to Plaintiffs, the Judicial Election Plan discriminates against African Americans because African American voters, who make up the majority of Section 1 and the City population, are allotted only two judges, while White voters, who make up the majority of Section 2 but a minority of the City population, are allotted three judges. Plaintiffs further allege that the Defendants' refusal to reapportion the City Court judges and/or redraw the geographic boundaries of the Divisions in accordance with the City of Baton Rouge's 2010 Census demographic data is an intentional attempt to dilute the votes of African Americans.

Accordingly, Plaintiffs seek a ruling and judgment declaring, *inter alia*, that the Judicial Election Plan violates: (1) the First Amendment's guarantee of freedom of

---

[17] Under the Judicial Election Plan, the City of Baton Rouge is divided into two judicial election Sections: Section 1 and Section 2. Each Section then divided into multiple Divisions. Section 1 is divided into Divisions B and D, and Section 2 is divided into Divisions A, C, and E. Each Division elects one judge to the City Court of Baton Rouge. La. R.S. § 13:1952(4)(c).

[18] According to the United States Census Bureau, Black or African American residents made up 54.5 percent of the total population at the time of the 2010 Census. United States Census Bureau, http://factfinder2.census.gov/faces/tableservices/jsf/pages/productview.xhtml?src=bkmk.

speech, made applicable to the States by the Equal Protection Clause of the Fourteenth Amendment; (2) Plaintiffs' fundamental right to vote, as protected by the Fourteenth Amendment; (3) the Equal Protection Clause of the Fourteenth Amendment; (4) the Due Process Clause of the Fourteenth Amendment; (5) the Privileges and Immunities Clause of the Fourteenth Amendment[19]; (6) the Fifteenth Amendment; (7) Section 2 of the Voting Rights Act of 1965; (8) "penumbra rights of the Bill of Rights and/or the Due Process Clause of the Constitution of the United States"; (9) the "democratic principles of majority rule and individualistic egalitarianism" related to the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment[20]; and (10) "the right of Majority Rule within the Due Process, Privileges and Immunities, and Equal protection Clauses of the Constitution of the United States."

Plaintiffs also request an injunction forbidding Defendants from enforcing the Judicial Election Plan, including enjoining Defendants from "calling," "holding," "administering," "implementing," "supervising," "conducting," or "certifying" any future elections until Defendants devise and implement a judicial election system that complies with Section 2 of the Voting Rights Act. Plaintiffs further seek a ruling and judgment holding Defendants liable under Section 1983, and granting Plaintiffs attorneys' fees, pursuant to 42 U.S.C. § 1988 ("Section 1988").

Finally, Plaintiffs requests that, if the Court finds Defendants have violated the

---

[19] Plaintiffs' claims under the Privileges and Immunities Clause of the Fourteenth Amendment were dismissed by the undersigned. (Docs. 214, 240.)

[20] Sharper's claims on the basis of the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment were dismissed by the undersigned. (Doc. 214.)

8

Fourteenth and Fifteenth Amendments, the Court "bail-in" the State of Louisiana, pursuant to Section 3(c) of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973a(c).

As to the instant motion, Defendants content that Plaintiffs' Section 1983 claims have prescribed. In the alternative, Defendants argue that Plaintiffs cannot point to sufficient evidence to establish that Defendants are liable under Section 1983. Accordingly, Defendants argue summary judgment against Plaintiffs is warranted.

In opposition, Plaintiffs contend there is sufficient evidence to establish that Defendants are liable under Section 1983. Plaintiffs fail to address, however, Defendants' contention that Plaintiffs' Section 1983 claims are prescribed.

### III. Standard of Review

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party carries its burden of proof under Federal Rule of Civil Procedure 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable

jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323; *Liquid Air Corp.*, 37 F.3d at 1075.

In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997). The court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the court must deny the motion for summary judgment. *International Shortstop, Inc.*, 939 F.2d at 1263.

### IV. Analysis

#### A. Whether Plaintiffs' Section 1983 Claims Are Prescribed

In support of the motion, Defendants argue that Louisiana's one year statute of limitations for delictual actions applies to Plaintiffs' Section 1983 claims. Defendants

10

further contend that under federal law, a cause of action under Section 1983 accrues when the plaintiff knew or should have known of the injury that is the basis of the litigation. It is not clear from Defendants' motion exactly when Defendants contend Plaintiffs knew or should have known about the alleged injuries that are the basis of this lawsuit. Instead, Defendants contend that any Section 1983 claims based on actions that took place more than one year before Hall's Original Complaint - or before October 18, 2011 - are prescribed.

As noted above, Plaintiffs failed to present any argument in opposition to Defendants' contention.

Federal courts look to federal law to ascertain when a Section 1983 action accrues and the limitations period begins to run; however, "state law supplies the applicable limitations period and tolling provisions." *Harris v. Hegmann*, 198 F.3d 153, 156-57 (5th Cir. 1999). In Louisiana, the applicable limitations period is one year. *See Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002); La. Civ. Code Ann. Art. 3492. In general, a Section 1983 action does not accrue until a plaintiff "knows or has reason to know of the injury which is the basis of the action." *Harris*, 198 F.3d at 157 (internal quotation marks and citation omitted).

While it is not clear from Defendants' written submission to the Court, it appears Defendants argue that, based on Plaintiffs' own allegations, all parties became aware that African Americans are the majority of the City's population, voting age population, and registered voters "[a]fter the 2010 United States Census." (Doc. 289-1,

p. 8.) Accordingly, Plaintiffs knew or had reason to know of the injuries which are the basis of their lawsuit on some unspecified date in 2010.

According to the United States Census Bureau, it released census data to the State of Louisiana on February 3, 2011.[21] However, even assuming, *arguendo*, that Defendants' alleged wrongful act took place the day they became aware of the census data, Defendants' wrongful act does not mark the accrual of a claim. Rather, the clock begins with the plaintiff's injury. *Harris*, 198 F.3d at 157.

According to the Louisiana Legislature's records, its 2010 Regular Legislative Session convened on March 29, 2010 and adjourned on June 21, 2010.[22] Thus, it is reasonable to conclude that members of the Louisiana Legislature were aware of the change in the City's demographics at the time the Regular Legislative Session convened. Further, it is reasonable to conclude that all parties to this litigation were aware that the Judicial Election Plan was not amended or revised by the Louisiana Legislature as early as June 22, 2010, the day after the 2010 Regular Legislative Session concluded.[23]

---

[21] United States Census Bureau, *U.S. Census Bureau Delivers Louisiana's 2010 Census Population Totals, Including First Look at Race and Hispanic Origin Data for Legislative Redistricting*, https://www.census.gov/newsroom/releases/archives/2010_census/cb11-cn13.html.

[22] The Court notes that the Louisiana Legislature held a Post-Census Special Legislative Session that adjourned on or about March 30, 2011. However, Defendants fail to state, and the Court has been unable to determine, whether the Judicial Election Plan's geographic boundaries could have been redrawn during this special session. In contrast, there is nothing in the record to suggest that the Louisiana Legislature was precluded from amending or revising the Judicial Election Plan during the 2010 Regular Legislative Session.

[23] According to the undisputed facts listed above, the legislative power of the State of Louisiana is vested in the legislature, consisting of a Senate and a House of Representatives. La. Const. art. III, § 1. Accordingly, amendment or revision of the Judicial Election Plan is within the authority of the Louisiana Legislature. La. Const. art. III, § 1; La. R.S. 13:1952.

Here, Plaintiffs' allege that under the Judicial Election Plan, African Americans, who make up the majority of Section 1 and the City population, are allotted only two judges, while White voters, who make up the majority of Section 2 but a minority of the City population, are allotted three judges. As a result, the Judicial Election Plan dilutes the votes of African American voters and prevents them from electing the candidate(s) of their choice. In other words, precise injury allegedly suffered by Plaintiffs is the dilution of their voting strength each time a City Court election is held.

According to Plaintiffs' allegation, approximately two years elapsed between the Louisiana Legislature's 2010 Regular Legislative Session and the next City Court election. Indeed, according to the Louisiana Secretary of State's website, the next City Court election did not occur until November 6, 2012.[24] Accordingly, African American voters did not have the opportunity to elect the candidate(s) of their choice until approximately two years after the 2010 Regular Legislative Session, or on November 6, 2012. As such, it cannot be said that Plaintiffs incurred an actual injury until November 6, 2012, the date they were allegedly denied the opportunity to elect the candidate(s) of their choice. In other words, the earliest Plaintiffs knew or could have known about the precise injury alleged was November 6, 2012.

It is undisputed that Hall filed his Original Complaint on October 18, 2012, approximately two months after the qualifying period for the November 2012 City Court election closed and approximately two weeks *before* Plaintiffs incurred the

---

[24] Louisiana Secretary of State, *Election Results*, http://electionresults.sos.la.gov/graphical/. *See also* Doc. 1, ¶ 66.

precise injury alleged. Thus, it cannot be said that Plaintiffs' Section 1983 claims are prescribed. Accordingly, Defendants' request that the Court dismiss Plaintiffs' Section 1983 claims on this basis is **DENIED**.

### B. Whether Plaintiffs Must Establish that Defendants Were "Personally Involved" to Establish Their Claims Under Section 1983

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.' [T]his provision safeguards certain rights conferred by federal statutes." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citing *Maine v. Thiboutot*, 448 U.S. 1 (1980)). To establish Section 1983 liability, a plaintiff must show: "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." *See Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).

In support of the motion, Defendants argue that Plaintiffs cannot point to sufficient evidence to establish that Jindal and Caldwell were personally involved in the acts causing the alleged deprivation of Plaintiffs' constitutional rights. Defendants also argue that they cannot be held vicariously liable for the acts of their subordinates. Therefore, Defendants argue Plaintiffs' Section 1983 claims against Jindal and Caldwell must be dismissed.

In support of their argument Defendants rely on *Lozano v. Smith*, 718 F.2d 756 (1983) and *Alton v. Texas A&M Univ.*, 168 F.3d 196 (1999). Such reliance is misplaced.

It is well established that Section 1983 lawsuits naming a defendant in his or her official capacity do not involve personal liability. *Turner v. Houma Mun. Fire &*

14

*Police Civ. Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. La. 2000). As such, personal involvement by a defendant is only required in individual capacity claims. *See, e.g.*, *Roebuck v. Diamond Detective Agency*, 484 Fed. Appx. 976, 978 (5th Cir. 2012) (because the plaintiff failed to argue the defendants were personally involved in the purported unconstitutional actions against him, his Section 1983 claims against the defendants in their *individual capacity* were dismissed) (citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999) (emphasis added)); *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (outlining the difference between individual-capacity and official-capacity suits). Here, Plaintiffs have alleged claims against Defendants in their official capacities *only*.[25] Thus, *Lozano* and its progeny are easily distinguishable, and thus, inapplicable here. Accordingly, evidence of personal involvement by Jindal and Caldwell is not required.

Further, the Court has already rejected Defendants' argument that Plaintiffs' Section 1983 claims against them must be dismissed because Defendants cannot grant Plaintiffs the relief that they seek. *See, e.g.*, Doc. 174, p. 17. Once again, Defendants have failed to cite to binding case law to support their assertion that they are not the proper defendants in this matter. Accordingly, this argument is, once again, rejected.

---

[25] While Defendants' argument is not entirely clear, it appears their argument is based on the conclusion that Plaintiffs have alleged Section 1983 claims against Jindal and Caldwell in their individual capacities. Such conclusion is also incorrect. Indeed, a review of Plaintiffs' Complaints clearly reveals that Plaintiffs have alleged claims against Jindal and Caldwell in their official capacities *only*. *See* Doc. 1, ¶¶ 6-7; Doc. 128, ¶¶ 5-6; *see also* Doc. 214, pp. 10-11.

### C. Defendants' Motion to Strike

Also before the Court is a **Motion to Strike Memorandum in Opposition to Motion for Summary Judgment (Doc. 340)**, filed by Defendants, seeking an order from this Court striking Plaintiffs' memorandum in opposition. Plaintiffs oppose the motion. (Doc. 432.)

In support of the motion, Defendants argue that any arguments made by Plaintiffs in their memorandum in opposition to the motion for summary judgment that are based on Defendants' alleged state law obligations should be stricken, as such state law claims were not alleged in Plaintiffs' Complaints and were not disclosed in discovery.

In opposition, Plaintiffs contend that they have not alleged claims against Defendants under the state statutory provisions cited in their memorandum in opposition; nor do they intend to do so.

Nothing in Plaintiffs' memorandum in opposition to the motion for summary judgment suggests it was an attempt to allege new state law claims against Defendants. Further, as noted by the undersigned during a hearing on June 28, 2014, Plaintiffs' citation to Defendants' alleged obligations under state law or in equity is insufficient to establish liability on the part of Defendants under the Voting Rights Act of 1965 and the United States Constitution. Additionally, given the Court's ruling on Defendants' motion for summary judgment, an order striking Plaintiffs' memorandum in opposition would not assist Defendants.

V.   Conclusion

Accordingly,

**IT IS ORDERED** that Defendants Piyush Jindal and James D. Caldwell's **Motion for Summary Judgment (Doc. 289)** is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' **Motion to Strike Memorandum in Opposition to Motion for Summary Judgment (Doc. 340)** is **DENIED**.

Baton Rouge, Louisiana, this 30th day of July, 2014.

_____
**BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**