# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**KENNETH HALL**                                    **CIVIL ACTION**

**VERSUS**

**STATE OF LOUISIANA, ET AL.**                      **NO.: 12-00657-BAJ-RLB**


## RULING AND ORDER

Before the Court is a **Motion for Summary Judgment Regarding Action by Plaintiff, Kenneth Hall (Doc. 290)**, filed by Defendant Tom Schedler ("Schedler"), seeking an order from this Court granting summary judgment, pursuant to Federal Rule of Civil Procedure 56, and dismissing Plaintiff Kenneth Hall's ("Hall") claims. Hall opposes the motion. (Doc. 304.) Schedler filed a reply memorandum. (Doc. 427.) Oral argument is not necessary. Jurisdiction is proper, pursuant to 28 U.S.C. § 1331. For the reasons stated herein, Schedler's motion is **GRANTED IN PART** and **DENIED IN PART**.

Also before the Court is a **Motion for Summary Judgment Regarding Action by Plaintiff-Intervenor, Byron Sharper (Doc. 291)**, filed by Schedler, seeking an order from this Court granting summary judgment, pursuant to Federal Rule of Civil Procedure 56, and dismissing Intervenor Plaintiff Byron Sharper's ("Sharper") claims. Sharper opposes the motion. (Doc. 305.) Schedler filed a reply memorandum. (Doc. 428.) Oral argument is not necessary. Jurisdiction is proper,

pursuant to 28 U.S.C. § 1331.  For the reasons stated herein, Schedler's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    Undisputed Facts

### A.    Plaintiff Kenneth Hall

In accordance with Rule 56.1 of the Local Rules of the United States District Court for the Middle District of Louisiana, Schedler attached a statement of undisputed facts to his Motion for Summary Judgment Regarding Action by Plaintiff, Kenneth Hall.  (Doc. 290-3.)  In contravention of Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Middle District of Louisiana, Hall failed to submit a separate statement of the material facts as to which there exists a genuine issue to be tried.  Fed.R.Civ.P. 56(c); L.R. 56.2.  Instead, Hall submitted a document entitled, "Statement of Disputed Facts" that in no way indicates whether Hall admits or denies the statement of facts submitted by Schedler. *(*Doc. 304-1.)

When the non-movant fails to properly address the movant's assertion of facts, Local Rule 56.2 requires the Court to deem such facts admitted for the purposes of the motion.  L.R. 56.2; *see also* Fed.R.Civ.P. 56(e).  Accordingly, the following facts are considered undisputed:

· Hall does not possess any evidence that the Secretary of State has intentionally discriminated against Plaintiff or the African American population of the City of Baton Rouge in relation to the subject matter of this litigation.

· Hall does not possess any evidence to [establish] that the Secretary of State has intentionally violated 42 U.S.C. § 1983 in relation to the subject matter of this

litigation.

- Hall does not possess any evidence to support the contention that the Secretary of State was involved in the formation of the 1993 Judicial Election Plan.

- [The Secretary of State] does not have any authority to create any laws regarding the apportionment or reapportionment of election districts for the Baton Rouge City Court.

- The Secretary of State does not have any authority to apportion or reapportion election districts for the Baton Rouge City Court.

- Hall does not contend that the Secretary of State can or should refuse to hold elections.

- There is no contention that the Secretary of State intentionally violated the Voting Rights Act in relation to the subject matter of this litigation.

- The Secretary of State's duties regarding elections are ministerial.

- The Secretary of State's duties regarding elections are non-discretionary.

**B.    Intervenor Plaintiff Byron Sharper**

In accordance with Rule 56.1 of the Local Rules of the United States District Court for the Middle District of Louisiana, Schedler attached a statement of undisputed facts to his Motion for Summary Judgment Regarding Action by Plaintiff-Intervenor, Byron Sharper.  (Doc. 291-3.)  In contravention of Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Middle District of Louisiana, Sharper failed to submit a separate statement of the material facts as to which there exists a genuine issue to be tried.  Fed.R.Civ.P. 56(c); L.R. 56.2.

Instead, Sharper submitted a document entitled, "Statement of Disputed Facts" that in no way indicates whether Sharper admits or denies the statement of facts submitted by Schedler. (Doc. 305-1.)

When the non-movant fails to properly address the movant's assertion of facts, Local Rule 56.2 requires the Court to deem such facts admitted for the purposes of the motion. L.R. 56.2; *see also* Fed.R.Civ.P. 56(e). Accordingly, the following facts are considered undisputed:

- Sharper does not possess any evidence that the Secretary of State has intentionally discriminated against Plaintiff or the African American population of the City of Baton Rouge in relation to the subject matter of this litigation.

- Sharper does not possess any evidence to [establish] that the Secretary of State has intentionally violated 42 U.S.C. § 1983 in relation to the subject matter of this litigation.

- Sharper does not possess any evidence to support the contention that the Secretary of State was involved in the formation of the 1993 Judicial Election Plan.

- [The Secretary of State] does not have any authority to create any laws regarding the apportionment or reapportionment of election districts for the Baton Rouge City Court.

- The Secretary of State does not have any authority to apportion or reapportion election districts for the Baton Rouge City Court.

- Sharper does not contend that the Secretary of State can or should refuse to

hold elections.

- There is no contention that the Secretary of State intentionally violated the Voting Rights Act in relation to the subject matter of this litigation.

- The Secretary of State's duties regarding elections are ministerial.

- The Secretary of State's duties regarding elections are non-discretionary.

## II. Plaintiffs' Allegations

Hall and Sharper[1] (collectively "Plaintiffs") filed this lawsuit[2] pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. §§ 1983 ("Section 1983"), 1986; Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973; Section 5 of the Voting Rights Act of 1965[3], as amended, 42 U.S.C. § 1973c; the First Amendment to the United States Constitution, U.S. CONST. amend. I; the Fourteenth Amendment to the United States Constitution, U.S. CONST. amend. XIV, § 1; the Fifteenth Amendment to the United States Constitution, U.S. CONST. amend. XV, § 1, against Defendants

---

[1] Hall filed his original complaint on October 18, 2012. (Doc. 1.) Subsequently, Hall filed a First Amending and Supplemental Complaint, Second Amending and Supplemental Complaint, Third Amending and Supplemental Complaint, and Fourth Amending and Supplemental Complaint. (Docs. 13, 74, 76, 180.) On May 1, 2013, the Court granted Sharper's Motion to Intervene. (Doc. 127.) Subsequently, Sharper filed a Complaint, Supplemental Complaint, and Second Amending and Supplemental Complaint. (Docs. 128, 133, 181.) Where, as here, the plaintiff's subsequent complaints refer to, adopt, and incorporate the original complaint, it cannot be said that the subsequent complaints superceded the original complaint. *Stewart v. City of Houston Police Dep't*, 372 Fed. Appx. 475, 478 (5th Cir. 2010) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). As such, the Court shall refer to the allegations in each of Hall's Complaints and Sharper's Complaints collectively.

[2] Hall's original complaint was filed as a class action. (Doc. 1.) Subsequently, Hall filed Plaintiff's Motion to Certify Case as a Class Action (Doc. 58), which was denied as premature, without prejudice to Hall's right to re-file the motion, if necessary. (Doc. 172.) Hall's renewed Motion to Certify Case as a Class Action is currently pending. (Doc. 206.)

[3] Plaintiffs initially alleged that Defendants failed to obtain federal preclearance for the Judicial Election Plan, in violation of Section 5 of the Voting Rights Act of 1965. However, in light of the United States Supreme Court's opinion in *Shelby County, Alabama v. Eric H. Holder, Attorney General, et al.*, 570 U.S. ___ (2013), this Court dismissed Plaintiffs' Section 5 claims, without prejudice. (Doc. 173.)

the State of Louisiana, the Parish of East Baton Rouge, the City of Baton Rouge, Piyush Jindal[4], James D. Caldwell[5], Schedler[6], Melvin Holden[7], the City Court of Baton Rouge[8], the Louisiana House of Representatives[9], the Louisiana Senate[10], Laura Davis[11], Suzan Ponder[12], and Alex Wall.[13] Plaintiffs allege that the Judicial Election Plan, enacted by the Louisiana State Legislature in 1993, dilutes the voting rights of African American voters in the City of Baton Rouge, in violation of the U.S.

---

[4] Defendant Piyush Jindal is sued in his official capacity as the Governor of the State of Louisiana.

[5] Defendant James D. Caldwell is sued in his official capacity as the Attorney General of the State of Louisiana.

[6] Defendant Tom Schedler is sued in his official capacity as the Louisiana Secretary of State.

[7] Defendant Melvin Holden is sued in his official capacity as the Mayor of the City of Baton Rouge.

[8] Hall's claims against the City Court of Baton Rouge were dismissed by the undersigned. (Doc. 176.)

[9] Plaintiffs originally sued the Louisiana House of Representatives by and through Charles "Chuck" Kleckley, in his official capacity as Speaker of the Louisiana House of Representatives, and Walt Leger, III, in his official capacity as Speaker Pro Tempore of the Louisiana House of Representatives. Plaintiffs' claims against the Louisiana House of Representatives were dismissed by the undersigned. (Docs. 178, 216.)

[10] Plaintiffs originally sued the Louisiana Senate by and through John Alario, Jr., in his official capacity as President of the Louisiana Senate, and Sharon Weston Broom, in her official capacity as President Pro Tempore of the Louisiana Senate. Plaintiffs' claims against the Louisiana Senate were dismissed by the undersigned. (Docs. 178, 216.)

[11] Plaintiffs originally sued Defendant Laura Davis in her individual and official capacities as a Judge on the City Court of Baton Rouge. Plaintiffs' claims against Judge Davis were dismissed by the undersigned. (Docs. 177, 205, 208.)

[12] Plaintiffs originally sued Defendant Suzan Ponder in her individual and official capacities as a Judge on the City Court of Baton Rouge. Plaintiffs' claims against Judge Ponder were dismissed by the undersigned. (Docs. 177, 205, 208.)

[13] Plaintiffs originally sued Defendant Alex Wall is his individual and official capacities as a Judge on the City Court of Baton Rouge. Plaintiffs' claims against Judge Wall were dismissed by the undersigned. (Docs. 177, 205, 208.)

Constitution and the Voting Rights Act of 1965. Plaintiffs further allege that Act 609, codified at La. R.S. § 13:1952(4)(a)-(c) (the "Judicial Election Plan"), which divides the City of Baton Rouge into two election Sections (Sections 1 and 2) and five election Divisions (Divisions A, B, C, D, and E)[14], impermissibly dilutes the votes of African Americans, who now make up 54.3% of the total City population.[15]

According to Plaintiffs, the Judicial Election Plan discriminates against African Americans because African American voters, who make up the majority of Section 1 and the City population, are allotted only two judges, while White voters, who make up the majority of Section 2 but a minority of the City population, are allotted three judges. Plaintiffs further allege that the Defendants' refusal to reapportion the City Court judges and/or redraw the geographic boundaries of the Divisions in accordance with the City of Baton Rouge's 2010 Census demographic data is an intentional attempt to dilute the votes of African Americans.

Accordingly, Plaintiffs seek a ruling and judgment declaring, *inter alia*, that the Judicial Election Plan violates: (1) the First Amendment's guarantee of freedom of speech, made applicable to the States by the Equal Protection Clause of the Fourteenth Amendment; (2) Plaintiffs' fundamental right to vote, as protected by the Fourteenth Amendment; (3) the Equal Protection Clause of the Fourteenth Amendment; (4) the

---

[14] Under the Judicial Election Plan, the City of Baton Rouge is divided into two judicial election Sections: Section 1 and Section 2. Each Section then divided into multiple Divisions. Section 1 is divided into Divisions B and D, and Section 2 is divided into Divisions A, C, and E. Each Division elects one judge to the City Court of Baton Rouge. La. R.S. § 13:1952(4)(c).

[15] According to the United States Census Bureau, Black or African American residents made up 54.5 percent of the total population at the time of the 2010 Census. United States Census Bureau, http://factfinder2.census.gov/faces/tableservices/jsf/pages/productview.xhtml?src=bkmk.

Due Process Clause of the Fourteenth Amendment; (5) the Privileges and Immunities Clause of the Fourteenth Amendment[16]; (6) the Fifteenth Amendment; (7) Section 2 of the Voting Rights Act of 1965; (8) "penumbra rights of the Bill of Rights and/or the Due Process Clause of the Constitution of the United States"; (9) the "democratic principles of majority rule and individualistic egalitarianism" related to the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment[17]; and (10) "the right of Majority Rule within the Due Process, Privileges and Immunities, and Equal protection Clauses of the Constitution of the United States."

Plaintiffs also request an injunction forbidding Defendants from enforcing the Judicial Election Plan, including enjoining Defendants from "calling," "holding," "administering," "implementing," "supervising," "conducting," or "certifying" any future elections until Defendants devise and implement a judicial election system that complies with Section 2 of the Voting Rights Act. Plaintiffs further seek a ruling and judgment holding Defendants liable under Section 1983, and granting Plaintiffs attorneys' fees, pursuant to 42 U.S.C. § 1988 ("Section 1988").

Finally, Plaintiffs requests that, if the Court finds Defendants have violated the Fourteenth and Fifteenth Amendments, the Court "bail-in" the State of Louisiana, pursuant to Section 3(c) of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973a(c).

---

[16] Plaintiffs' claims under the Privileges and Immunities Clause of the Fourteenth Amendment were dismissed by the undersigned. (Docs. 214, 240.)

[17] Sharper's claims on the basis of the "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment were dismissed by the undersigned. (Doc. 214.)

As to the instant motions, Schedler argues that Plaintiffs cannot point to sufficient evidence to establish claims against him under the Fourteenth and Fifteenth Amendments, Section 2 of the Voting Rights Act, or Section 1983. Schedler also argues that Hall cannot point to sufficient evidence to establish claims against him under the First Amendment. Accordingly, Schedler argues summary judgment against Plaintiffs is warranted.

In opposition, Plaintiffs generally argue that there is sufficient evidence to establish their claims against Schedler under the Fourteenth and Fifteenth Amendments, Section 2 of the Voting Rights Act, and Section 1983. Sharper fails to address, however, Schedler's contention that Sharper cannot point to sufficient evidence to establish a claims under the First Amendment.

## III.   Standard of Review

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party carries its burden of proof under Federal Rule of Civil Procedure 56, the opposing party must direct the court's attention to specific evidence

in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323; *Liquid Air Corp.*, 37 F.3d at 1075.

In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997). The court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the court must deny the motion for summary judgment. *International Shortstop, Inc.*, 939 F.2d at 1263.

## IV.    Analysis

### A.    Hall's First Amendment Claim

In support of the motion regarding Hall's claims, Schedler contends that there are no genuine disputes as to any material facts related to Hall's First Amendment claim.  Schedler contends that beyond a few vague, unsupported allegations in his Complaint, Hall has failed to identify which of his First Amendment rights were violated; nor has Hall established that Schedler violated such rights.  Accordingly, Schedler argues that Hall's First Amendment claim against him must be dismissed as a matter of law.

As noted above, Hall failed to present any argument in opposition.  Indeed, Hall's memorandum in opposition fails to address his First Amendment claim; nor did Hall attempt to point to evidence in the record to establish a genuine dispute as to any material fact related to his First Amendment claim.

Where, as here, the non-movant fails to direct the Court's attention to specific evidence in the record which demonstrates that the non-movant can satisfy the fact finder that he is entitled to a verdict in its favor, Rule 56 mandates that summary judgment be entered against the non-movant.  *Liquid Air Corp.*, 37 F.3d at 1075; *Celotex*, 477 U.S. at 323*; Anderson*, 477 U.S. at 250.

Accordingly, Schedler's request that the Court dismiss Hall's First Amendment claim against him is **GRANTED**.

## B.  Plaintiffs' Claim Under the Equal Protection Clause of the Fourteenth Amendment[18]

In support of the motions, Schedler argues that Plaintiffs cannot point to sufficient evidence in the record to establish that Schedler acted with discriminatory intent.  Thus, Schedler argues that Plaintiffs' claim under the Equal Protection Clause of the Fourteenth Amendment must be dismissed as a matter of law.

Here, Plaintiffs allege that the Judicial Election Plan violates the Equal Protection Clause of the Fourteenth Amendment because: (1) it dilutes the votes of African American voters; and (2) Defendants have failed to amend and/or revise the Plan despite the City's demographic changes.

The essence of a vote dilution claim under the Fourteenth Amendment is "that the State has enacted a particular voting scheme as a purposeful device 'to minimize or cancel out the voting potential of racial or ethnic minorities.'" *Miller v. Johnson*, 515 U.S. 900, 911 (1995) (quoting *City of Mobile v. Bolden*, 446 U.S. 55, 66 (1980)).  *See also Rogers v. Lodge*, 458 U.S. 613, 617 (U.S. 1982) (voting scheme violates the Fourteenth Amendment if it is "'conceived or operated as [a] purposeful device[ ] to further racial discrimination' by minimizing, cancelling out or diluting the voting strength of racial elements in the voting population.") (citations omitted).

---

[18] As noted in the Court's previous Ruling and Order (Doc. 460), the only remaining Fourteenth Amendment claims include Plaintiffs' claims that the Judicial Election Plan violates: (1) Plaintiffs' fundamental right to vote, as protected by the Fourteenth Amendment; (2) the Equal Protection Clause of the Fourteenth Amendment; and (3) the Due Process Clause of the Fourteenth Amendment.  Here, Schedler requests summary judgment on Plaintiffs' Equal Protection Clause claim *only*.  Accordingly, the Court shall limit its analysis to Plaintiffs' Equal Protection Clause claim.

To succeed on a vote dilution claim, the plaintiff must "prove that the purpose and operative effect" of the challenged election scheme "is to dilute the voting strength of [minority] citizens." *Rodriguez v. Harris County, Texas*, 964 F. Supp. 2d 686, 800 (S.D. Tex. 2013) (citing *Voter Info. Project, Inc. v. City of Baton Rouge*, 612 F.2d 208, 212 (5th Cir. 1980)). *See also Rogers*, 458 U.S. at 617 ("Cases charging that multimember districts unconstitutionally dilute the voting strength of racial minorities are thus subject to the standard of proof generally applicable to Equal Protection Clause cases.") It is not, however, necessary for a plaintiff to demonstrate that discriminatory purpose is the only underlying motivation for the challenged election scheme as long as it is one of the motives. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265-66 (1977).

To prove discriminatory purpose, the plaintiff does not need to advance direct evidence of discriminatory intent. *Rodriguez*, 964 F. Supp. 2d at 800 (citing *Rogers*, 458 U.S. at 618). Absent direct evidence, "discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another." *Rodriguez*, 964 F. Supp. 2d at 800 (citing *Washington v. Davis*, 426 U.S. 229, 242 (1976)). Relevant factors to be considered include, but are not limited to: (1) whether there is bloc voting along racial lines; (2) whether minorities are excluded from the political process; (3) whether minority voter registration is low; (4) whether elected officials are unresponsive to the needs of minorities; (5) whether the minority group occupies a depressed socioeconomic status because of inferior education or employment and housing discrimination.

13

*Rodriguez*, 964 F. Supp. 2d at 800-801 (citing *Backus v. South Carolina*, 857 F. Supp. 2d 553, 558 (D.S.C. 2012), *aff'd* 133 S.Ct. 156 (2012)).

To prove discriminatory effect, a plaintiff must establish that the election scheme impermissibly dilutes the voting rights of the racial minority. *Rodriguez*, 964 F. Supp. 2d at 801. Generally, this requires proof that the racial minority's voting potential has been minimized or cancelled out or the political strength of such a group has been adversely affected. *Id.* (citing *Mobile v. Bolden*, 446 U.S. 55, 66, 84 (1980)). Additionally, a plaintiff must offer "a reasonable alternative voting practice to serve as the benchmark 'undiluted' voting practice." *Id.* (quoting *Reno v. Bossier Parish Sch. Bd. (Reno I)*, 520 U.S. 471, 480 (1997)).

Here, Schedler does not dispute that the Judicial Election Plan has a discriminatory effect on African American voters. Thus, the only remaining issue is whether there is a genuine dispute of material fact as to whether the Louisiana Secretary of State's office acted with a discriminatory purpose.[19]

In opposition to the motions, Plaintiffs fail to address whether the Louisiana Secretary of State's office acted with a discriminatory purpose. Indeed, Plaintiffs' memoranda in opposition fail point to any direct or circumstantial evidence to meet the standard set out in *Washington v. Davis* or the factors set out in *Rodriguez*.

---

[19] Schedler argues that Plaintiffs must establish that Schedler was personally involved in the alleged constitutional deprivations or that he "personally intentionally discriminated" against African American voters in order for Plaintiffs to prevail. Such an argument underscores Schedler's misunderstanding of the nature and purpose of official capacity lawsuits. *See Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. La. 2000) ("Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. Accordingly, a § 1983 suit naming defendants only in their 'official capacity' does not involve personal liability to the individual defendant.") (internal citations omitted).

Instead, Plaintiffs argue that the Secretary of State had a "duty" to: (1) "investigate," "discover," and "report" unlawful state elections to the Louisiana Legislature; and (2) "refuse to accept qualification papers from [City Court judge] candidates" where the election districts have not been reapportioned in accordance with state law. Plaintiffs fail to argue, however, that the Secretary of State's failure to do so is evidence of discriminatory intent. Indeed, the words "discriminatory," "intent," and/or "purpose" do not appear *anywhere* in Plaintiffs' memoranda in opposition.

In support of their argument, Plaintiffs cite to an article of the Louisiana Constitution, four Louisiana statutes, and a General Opinion issued by the Attorney General of the State of Louisiana, which, when taken together, purportedly establish some duty on the part of the Secretary of State's Office to investigate, discover, and/or report alleged unlawful state elections. However, Plaintiffs fail to cite to any federal law or binding court opinion to support their argument.

Further, during a hearing on June 28, 2014, counsel for Plaintiffs conceded that Plaintiffs are unable to cite to any federal law, state law, or binding court opinion that imposes an affirmative duty on the Secretary of State's Office to investigate the constitutionality of or report alleged unlawful state elections. Counsel for Plaintiffs further conceded that Plaintiffs are unable to cite to any federal law, state law, or binding court opinion that grants the Secretary of State's Office the authority to determine the constitutionality of alleged unlawful state elections. Accordingly,

Plaintiffs' argument is unavailing and insufficient to establish a genuine dispute of material fact.

In sum, the Court concludes that Plaintiffs have wholly failed to make a showing sufficient to establish the existence of an element essential to Plaintiffs' case and on which Plaintiffs' will bear the burden of proof at trial. As such, Rule 56 mandates that summary judgment be entered against Plaintiffs.

Accordingly, Schedler's request that the Court dismiss Plaintiffs' Fourteenth Amendment vote dilution claim is **GRANTED**.

### C. Plaintiffs Are Not Precluded From Bringing a Vote Dilution Claim Under the Fifteenth Amendment

In support of the motions, Schedler argues that Plaintiffs are precluded from bringing a vote dilution claim under the Fifteenth Amendment. This argument was advance by Schedler and rejected by the undersigned in the Court's previous Ruling and Order. (Doc. 460, pp. 14-15.) For the reasons noted in that Ruling and Order, the Court concludes that Plaintiffs may bring a vote dilution claim under the Fifteenth Amendment. However, to prevail on such a claim, Plaintiffs must establish the requisite elements.

### D. Plaintiffs' Claims Under the Fifteenth Amendment

Vote dilution claims under the Fifteenth Amendment are essentially congruent with vote dilution claims under the Fourteenth Amendment. *Backus*, 857 F. Supp. 2d at 569 (citing *Washington v. Finlay*, 664 F.2d 913, 919 (4th Cir. 1981)). Both require proof of discriminatory purpose and discriminatory, or dilutive, effect. *Id.* (citing *Washington*, 664 F.2d at 919).

For the same reasons that Plaintiffs have failed to create a genuine dispute of material fact as to their Fourteenth Amendment vote-dilution claim, the Court concludes that Plaintiffs have failed to create a genuine dispute of material fact as to their Fifteenth Amendment vote-dilution claim. Accordingly, Schedler's request that the Court dismiss Plaintiffs' Fifteenth Amendment vote dilution claim is **GRANTED**.

### E.    Plaintiffs' Claims Under Section 1983

While Schedler's argument is not entirely clear, it appears that Schedler argues that, if the Court dismisses Plaintiffs' vote dilution claims under the Fourteenth and Fifteenth Amendments, it must also dismiss Plaintiffs' Section 1983 claim. However, as noted by the Court above, Plaintiffs' claims that the Judicial Election Plan violates: (1) Plaintiffs' fundamental right to vote, as protected by the Fourteenth Amendment; and (2) the Due Process Clause of the Fourteenth Amendment have not been dismissed.

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). Because at least two of Plaintiffs' constitutional claims are viable, dismissal of Plaintiffs' Section 1983 claim would be premature. Accordingly, Schedler's request that the Court dismiss Plaintiffs' Section 1983 claim is **DENIED**.

### F.     Plaintiffs's Claims Under Section 2 of the Voting Rights Act of 1965

In support of the motions, Schedler also argues that Plaintiffs' cannot establish a genuine dispute of material fact as to whether the Louisiana Secretary of State's Office violated Section 2 of the Voting Rights Act.

To establish a Section 2 violation on a vote dilution theory, Plaintiffs must meet the two-part test set out in *Thornburg v. Gingles*, 478 U.S. 30 (1986).

> First, plaintiffs must satisfy, as a threshold matter, three preconditions. Specifically, the minority group must demonstrate that: (1) it is sufficiently large and geographically compact to constitute a majority in a single-member district; (2) it is politically cohesive; and (3) the white majority votes sufficiently as a bloc to enable it--in the absence of special circumstances--usually to defeat the minority's preferred candidates. Failure to establish all three of these elements defeats a [ § 2] claim. Second, if the preconditions are proved, plaintiffs must then prove that based on the totality of the circumstances, they have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

*Fairley v. Hattiesburg*, 584 F.3d 660, 667 (5th Cir. 2009) (citing *Sensley v. Albritton*, 385 F.3d 591, 595 (5th Cir. 2004)).

Here, Schedler does not contend that Plaintiffs cannot point to sufficient evidence to meet the *Gingles* two-part test. Rather, Schedler argues that Plaintiffs cannot point to sufficient evidence to establish that Schedler has a duty to report unlawful state elections or the authority to determine if a state election is unlawful. However, such findings are immaterial as they are not required under the *Gingles* two-part test. In other words, Schedler has failed to meet his burden of proof under Rule 56. Accordingly, Schedler's request that the Court dismiss Plaintiffs' Section 2 claim

against him is **DENIED**.

## G.   Whether Schedler is a Proper Defendant

Finally, Schedler argues that there is no genuine dispute of material fact that he is unable to grant Plaintiffs the relief they seek.  As such, he is not a proper Defendant.  Thus, each of Plaintiffs' claims against him must be dismissed.

First, the Court notes that it has already rejected this argument.  (Doc. 175, pp. 2-22.)  Moreover, Schedler fails to cite, nor has the Court identified, any law or binding court opinion to support his contention that he is an improperly named Defendant in this matter.  Accordingly, Schedler's request that the Court dismiss Plaintiffs' claims on this basis is **DENIED**.

## H.   Schedler's Motions to Strike

Also before the Court are two motions to strike **(Docs. 323, 324)**, filed by Schedler, seeking an order from this Court striking Plaintiffs' memoranda in opposition to Schedler's motions for summary judgment.  Plaintiffs oppose both motions.  (Docs. 344, 345.)

In support of the motions to strike, Schedler argues that any arguments made by Plaintiffs in their memoranda in opposition to the motions for summary judgment that are based on Schedler's alleged state law obligations should be stricken, as such state law claims were not alleged in Plaintiffs' Complaints and were not disclosed during discovery.

In opposition, Plaintiffs contend that they have not alleged claims against Schedler under the state statutory provisions cited in their memorandum in opposition; nor do they intend to do so.

Nothing in Plaintiffs' memoranda in opposition to the motions for summary judgment suggests their citation to the state law provisions was an attempt to allege new state law claims against Defendants. Further, as noted by the undersigned during a hearing on June 28, 2014, Plaintiffs' citation to Defendants' alleged obligations under state law or in equity is insufficient to establish liability on the part of Defendants under the Voting Rights Act of 1965 and the United States Constitution. Additionally, given the Court's ruling on Schedler's motions for summary judgment, an order striking Plaintiffs' memoranda in opposition would not assist Schedler.

## V. Conclusion

Accordingly,

**IT IS ORDERED** that Defendant Tom Schedler's **Motion for Summary Judgment Regarding Action by Plaintiff, Kenneth Hall (Doc. 290)** is **DENIED IN PART** and **GRANTED IN PART**.

- Schedler's request that the Court dismiss Plaintiff Kenneth Hall's First Amendment claim against Schedler is **GRANTED**. Accordingly, Plaintiff Kenneth Hall's First Amendment claim against Defendant Tom Schedler is **DISMISSED**, with prejudice.

- Schedler's request that the Court dismiss Plaintiff Kenneth Hall's Fourteenth Amendment vote dilution claim against Schedler is **GRANTED**. Accordingly,

Plaintiff Kenneth Hall's Fourteenth Amendment vote dilution claim against Defendant Tom Schedler is **DISMISSED**, with prejudice.

- Schedler's request that the Court dismiss Plaintiff Kenneth Hall's Fifteenth Amendment vote dilution claim against Schedler is **GRANTED**. Accordingly, Plaintiff Kenneth Hall's Fifteenth Amendment vote dilution claim against Defendant Tom Schedler is **DISMISSED**, with prejudice.

- Schedler's request that the Court dismiss Plaintiff Kenneth Hall's Section 1983 claim against Schedler is **DENIED**.

- Schedler's request that the Court dismiss Plaintiff Kenneth Hall's Section 2 of the Voting Rights Act of 1965 claim against Schedler is **DENIED**.

- Schedler's request that the Court dismiss Plaintiff Kenneth Hall's claims against Schedler on the basis that Schedler cannot grant Hall the relief he seeks is **DENIED**.

**IT IS FURTHER ORDERED** Defendant Tom Schedler's **Motion for Summary Judgment Regarding Action by Plaintiff-Intervenor, Byron Sharper (Doc. 291)** is **DENIED IN PART** and **GRANTED IN PART**.

- Schedler's request that the Court dismiss Intervenor Plaintiff Byron Sharper's Fourteenth Amendment vote dilution claim against Schedler is **GRANTED**. Accordingly, Intervenor Plaintiff Byron Sharper's Fourteenth Amendment vote dilution claim against Defendant Tom Schedler is **DISMISSED**, with prejudice.

- Schedler's request that the Court dismiss Intervenor Plaintiff Byron Sharper's Fifteenth Amendment vote dilution claim against Schedler is **GRANTED**.

Accordingly, Intervenor Plaintiff Byron Sharper's Fifteenth Amendment vote dilution claim against Defendant Tom Schedler is **DISMISSED**, with prejudice.

- Schedler's request that the Court dismiss Intervenor Plaintiff Byron Sharper's Section 1983 claim against Schedler is **DENIED**.

- Schedler's request that the Court dismiss Intervenor Plaintiff Byron Sharper's Section 2 of the Voting Rights Act of 1965 claim against Schedler is **DENIED**.

- Schedler's request that the Court dismiss Intervenor Plaintiff Byron Sharper's claims against Schedler on the basis that Schedler cannot grant Sharper the relief he seeks is **DENIED**.

**IT IS FURTHER ORDERED** that Schedler's **Motion to Strike Memorandum in Opposition to Motion for Summary Judgment (Doc. 323)** is **DENIED**.

**IT IS FURTHER ORDERED** that Schedler's **Motion to Strike Memorandum in Opposition to Motion for Summary Judgment (Doc. 324)** is **DENIED**.

Baton Rouge, Louisiana, this 30th day of July, 2014.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**