UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KENNETH HALL                                                 CIVIL ACTION

VERSUS

STATE OF LOUISIANA, ET AL.                 NO.: 12-00657-BAJ-RLB

## RULING AND ORDER

Before the Court is the **Motion to Vacate Judgment (Doc. 563)** filed by Plaintiff Kenneth Hall and Intervenor-Plaintiff Byron Sharper (together, "Plaintiffs"), moving the Court to vacate its June 9, 2015 Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 60(b)(6). Plaintiffs argue that circumstances beyond their control after this Court's issuance of judgment have mooted this action such that they are now unable to seek appellate review. Defendants State of Louisiana, Piyush "Bobby" Jindal, James D. "Buddy" Caldwell, Tom Schedler, City of Baton Rouge, Parish of East Baton Rouge, and Melvin "Kip" Holden (collectively, "Defendants") oppose the motion. (Docs. 564, 565, 566). With leave of Court, Plaintiffs filed a reply memorandum in support of their motion to vacate. (Doc. 572). For reasons explained herein, Plaintiffs' motion to vacate is **DENIED**.

1

## I. BACKGROUND

Plaintiffs had brought suit seeking declaratory and injunctive relief in their challenge of the districting system for election to the City Court of Baton Rouge. That system ("the 2–3 system"), which was enacted in 1993 by the Louisiana Legislature via Act 609, divided the City Court electorate into two election sections: Section One, which elected two judges, and Section Two, which elected three judges. *See* La. R.S. § 13:1952(4)(b)–(c). Plaintiffs claimed that the 2–3 system effectively afforded African American minority voters of Baton Rouge less opportunity to elect judicial candidates of their choice to the City Court. Trial was held in this matter on August 4–6, 2014 and, due to a medical emergency that necessitated the recess and continuance of trial, on November 17–19, 2014.

On June 9, 2015, the Court issued a judgment in favor of Defendants and against Plaintiffs on claims brought under Section 2 of the Voting Rights Act of 1965 ("VRA") and the VRA amendments of 1982, 52 U.S.C. § 10301 (previously codified at 42 U.S.C. § 1973), the Fourteenth and Fifteenth Amendments to the U.S. Constitution, and 42 U.S.C. §§ 1983, 1986.

On June 11, 2015, the Louisiana Legislature enrolled House Bill 76, which provided for the reapportionment of election sections and the number of judges elected from such sections for the City Court. The bill provided for a change in the composition of precincts for the two election sections and further provided that Section One was to elect two judges, Section Two was to elect two judges, and one judge was to be elected at-large from the entire territorial area of the City of Baton

Rouge ("the 2–2–1 system").[1] House Bill 76 was signed into law as Act 374 on July 1, 2015, and effective immediately.[2] On July 7, 2015, Plaintiffs filed the instant motion seeking vacatur of the Court's June 9th ruling. Plaintiffs have not filed a notice of appeal from the June 9th ruling.

## II. DISCUSSION

### A. Mootness

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). "Federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *DeFunis v. Odegaard*, 416 U.S. 312, 316, (1974) (*North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). "To qualify as a case fit for federal court adjudication, an actual controversy must be extant in all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 66 (1997) (citation and internal quotation omitted).

Here, there is no dispute that when its June 9th ruling was issued, the Court had before it an actual, live controversy. Plaintiffs assert, however, that the Louisiana Legislature's subsequent enactment of the 2–2–1 system in place of the

---

[1] *See 2015 Regular Session House Bill No. 76 by Representative Alfred Williams*, LOUISIANA STATE LEGISLATURE, http://www.legis.la.gov/legis/BillInfo.aspx?s=15RS&b=HB76&sbi=y (follow "Text" hyperlink; then follow "HB76 Enrolled" hyperlink) (last visited Aug. 18, 2015).

[2] *See HB76 by Representative Alfred C. Williams*, LOUISIANA STATE LEGISLATURE, http://www.legis.la.gov/legis/BillInfo.aspx?s=15RS&b=HB76&sbi=y (last visited Aug. 18, 2015).

2–3 system has mooted the action, such that they have no opportunity to seek appellate review of the Court's June 9th judgment denying them relief.³

Defendants State of Louisiana, Piyush "Bobby" Jindal, and James D. "Buddy" Caldwell argue that Plaintiffs' claims are not moot because the 2–2–1 system was not the specific relief requested. (*See* Doc. 566 at pp. 8–10). The Court finds such an argument misguided. In its prior ruling, the Court did not make any findings with respect to the legality of a 2–2–1 system, and, indeed, Plaintiffs would not have had the benefit of selecting their plan of choice even had they prevailed. As the Court acknowledged, even in the event that a VRA Section 2 violation had been found, legal precedent would have guided the Court to first afford the Louisiana Legislature an opportunity to devise its own plan to repair the defect in the 2–3 system. (Doc. 562 at pp. 12–13 n.7 (*citing Chisom v. Roemer*, 853 F.2d 1186, 1192 (5th Cir. 1988); *Miss. State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400, 405 (5th Cir. 1991)). Thus, with respect to the VRA claim, the Court could not have guaranteed Plaintiffs the form of a specific electoral system as relief. For the purposes of a mootness inquiry for the claims seeking declaratory and injunctive relief under the now-defunct 2–3 system, then, it is irrelevant to the Court whether the recently-enacted City Court election system was Plaintiffs' preferred form of a remedy.

---

³ An exception to the mootness rule exists where there is evidence, or a legitimate reason to believe, that the legislature will reenact the challenged law or one that is substantially similar. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982); *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004). "[T]he mere power to reenact a challenged law is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists. Rather, there must be evidence indicating that the challenged law likely will be reenacted." *Nat'l Black Police Ass'n v. D.C.*, 108 F.3d 346, 349 (D.C. Cir. 1997). No parties have presented any legitimate reason to believe that the Louisiana Legislature will re-enact the 2–3 system.

4

To the extent that Plaintiffs sought declaratory and injunctive relief under the 2–3 system, the Court agrees that those claims for relief have been mooted with the enactment of a wholly new system that reapportions precincts, removes a seat from Election Section Two, and adds a seat elected at-large from the City of Baton Rouge. Plaintiffs can no longer challenge that electoral system which does not exist in order to obtain prospective relief. *See Houston Chronicle Pub. Co. v. City of League City, Tex.*, 488 F.3d 613, 619 (5th Cir. 2007) (noting, in the context of a party challenging the lower court's issuance of permanent injunction, that "disputes concerning repealed legislation are generally moot").

This finding of mootness, however, does *not* extend to Plaintiffs' claims for damages under 42 U.S.C. §§ 1983, 1986. (*See* Doc. 359 at ¶ 148). Defendants City of Baton Rouge, Parish of East Baton Rouge, Melvin "Kip" Holden, and Tom Schedler have, in two separate briefs, focused on the fact that Plaintiffs had alleged and attempted to prove that Defendants had committed intentional, purposeful discrimination in enacting and maintaining the 2–3 system. (Doc. 564 at p. 5, Doc. 565 at pp. 4–5). At trial, Plaintiffs presented no evidence whatsoever regarding a calculation of compensatory or punitive damages. Although Plaintiffs' counsel recognized that the record was "not primarily built" for a finding of intentional discrimination, he explicitly stated during summation that Plaintiffs had not abandoned those claims which required proof of intentional discrimination. (Tr. VI at 203:13–203:20). Notwithstanding a change in the City Court electoral system, Plaintiffs could have appealed the Court's judgment denying them damages under

§§ 1983, 1986 but chose not to. Those claims did not seek prospective relief but instead concerned liability stemming from intentionally discriminatory conduct; thus, such claims were not mooted by the enactment of the 2–2–1 system.

### B. Vacatur

Having concluded that *only* the claims seeking declaratory and injunctive relief under the VRA and the Fourteenth and Fifteenth Amendments are mooted, the Court now must decide whether to vacate its judgment with respect to those claims. Plaintiffs incorrectly state that vacatur is "required" in this matter. (*See* Doc. 563-1 at p. 1). For support, they cite an outdated legal standard from the U.S. Supreme Court's opinion in *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), which articulated the rule that a court was to reverse or vacate the judgment if the case became moot on appeal, and to remand with a direction to dismiss. (*See id.* at p. 8).[4]

In *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994), however, the Supreme Court rejected the longstanding rule reflected in *Munsingwear*. Instead of characterizing vacatur as a standard course of action upon a finding of mootness, the Court placed the burden on "the party seeking relief from the status quo . . . to demonstrate not merely equivalent responsibility for the mootness, but equitable entitlement to the extraordinary remedy of vacatur." *Id.* at 26.

---

[4] Plaintiffs also rely heavily on the case of *Diffenderfer v. Central Baptist Church of Miami*, 404 U.S. 412 (1972), which predates today's controlling standard from *Bancorp*, discussed *infra*.

Vacatur is thus an extraordinary equitable remedy and not an automatic right. "[V]acatur is to be determined on a case-by-case basis, governed by facts and not inflexible rules." *Staley v. Harris Cnty., Tex.*, 485 F.3d 305, 310 (5th Cir. 2007). Barring unusual circumstances, "a vacatur decision under *Bancorp* is informed almost entirely, if not entirely, by the twin considerations of fault and public interest." *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 118 (4th Cir. 2000).[5]

Regarding fault, the Supreme Court specified that the "principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Bancorp*, 513 U.S. at 24. "Vacatur of the lower court's judgment is warranted only where mootness has occurred through happenstance, rather than through voluntary action of the losing party." *Murphy v. Fort Worth Indep. Sch. Dist.*, 334 F.3d 470, 471 (5th Cir. 2003). Here, though some Defendants provided governmental records showing that some individuals who had testified on behalf of Plaintiffs at trial had advocated for the passage of House Bill 76, (*see* Docs. 566-2, 566-3), no party contends that Plaintiffs themselves caused the Louisiana Legislature to adopt House Bill 76 by their voluntary action.

Even without a finding that Plaintiffs forfeited vacatur through their voluntary action, they are still not entitled to vacatur as a matter of right. "Whether a party's voluntary conduct was not done with specific intent to moot the case is certainly one factor we may consider, but the absence of such specific intent does

---

[5] Though *Bancorp*'s application is typically manifested in matters regarding appellate vacatur for mootness, U.S. circuit courts have held that the *Bancorp* considerations are also relevant to a district court's vacatur decision for mootness under Rule 60(b)(6), even if those considerations are not fully inclusive of the factors that may be considered by a district court in deciding a vacatur motion. *See Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 121 (4th Cir. 2000).

7

not outweigh other equitable factors." *Staley*, 485 F.3d at 312. The Court must take account of the public interest, including the value of precedent. "Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *Bancorp*, 513 U.S. at 26–27 (*Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)). The possibility that this Court's judgment could influence litigation in the future is not in itself a reason for vacatur, or else the argument would apply to every case that became moot pending appeal and vacatur would not be an extraordinary remedy at all. *See Ford v. Wilder*, 469 F.3d 500, 505–06 (6th Cir. 2006). This Court heeds the caution that "vacatur might be abused by the losing party to advance a legal position rejected by the [] court." *Staley*, 485 F.3d at 310.

The equitable factors in the instant case weigh against vacating this Court's prior ruling. First, the Court itself had urged the Louisiana Legislature to act where it found that an amendment to the 2–3 system was outside the purview of the judiciary. Based on the evidence adduced at trial in conjunction with the parties' pre-trial and post-trial submissions, the Court found substantial grounds to support a conclusion that the current City Court election districting system resulted in *de facto* discrimination, though it did not ultimately conclude that violations of the VRA or of the Constitution existed. (*See* Doc. 562). Opining that its legal conclusions led to a troubling practical result, this Court urged the Legislature, which is not a

party to this suit,[6] to "redistrict the City Court of Baton Rouge in accordance with the principles of constituent representation that should be strived toward in any elected body." (*Id.* at pp. 42–43). Although there is no evidence before the Court showing that the issuance of this Court's June 9th opinion directly led to the legislature's enrollment of HB 76, it would undermine the virtue of judicial consistency were this Court to vacate its own judgment in light of legislative action amending the City Court election system—particularly where the Court specifically encouraged such legislative action.

The Court also notes that its judgment did not have a great effect on non-parties to the litigation. *See Houston Chronicle Pub. Co. v. City of League City, Tex.*, 488 F.3d 613, 620 (5th Cir. 2007) (identifying as an equitable consideration the scope of the effect of the ruling for which vacatur is sought). No class was certified in this matter, (*see* Doc. 557), so this Court's judgment was entered against named Plaintiffs only. Moreover, this is not an instance in which the Court's challenged ruling held a statute facially unconstitutional or unconstitutional as applied. *Cf. Khodara Envtl., Inc. ex rel. Eagle Envtl. L.P. v. Beckman*, 237 F.3d 186, 194 (3d Cir. 2001); *Nat'l Black Police Ass'n v. D.C.*, 108 F.3d 346, 347 (D.C. Cir. 1997). Indeed,

---

[6] The Louisiana House of Representatives and Louisiana Senate were initially named as defendants in this suit, but were dismissed as parties in September 2013, upon Rule 12(b)(1) and 12(b)(6) motions to dismiss. (*See* Doc. 178).

Plaintiffs point out that one of the remaining Defendants, Louisiana Governor Piyush "Bobby" Jindal played a part in the enactment of the 2-2-1 system because he signed Act 374 into law. Notwithstanding the fact that the Governor's veto power affords him some discretion regarding whether to implement a new City Court election system, the Governor did not participate in molding the substance of the bill as did the lawmakers of the Louisiana Legislature. In weighing equitable considerations, the Court notes that twenty days elapsed after the enrollment of HB 76 before Governor Jindal signed the bill into law on July 1, 2015, yet during that time Plaintiffs filed no motion to enjoin Jindal's signature to prevent the new City Court system from taking effect as law.

9

with a conclusion that *no* VRA or constitutional violation had occurred, this Court did not strike down a law or enjoin statutory enforcement as a result of its ruling. The effect of its judgment was limited. In addition, the Court's ruling was highly fact-specific, observing that data from one additional election cycle may very well have led to a different outcome. (Doc. 562 at p. 2). *See Staley*, 485 F.3d at 313 (fact- and party-specificity viewed as equitable factors in favor of letting a judgment stand).

Plaintiffs have failed to meet their burden to prove that the extraordinary remedy of vacatur is warranted. For the above discussed reasons, this Court refuses to vacate its prior ruling.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion to Vacate Judgment (Doc. 563)** filed by Plaintiff Kenneth Hall and Intervenor-Plaintiff Byron Sharper is **DENIED**.

Baton Rouge, Louisiana, this 24th day of August, 2015.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA